# EXHIBIT A-46

# MASTER SERVICES AGREEMENT

This **MASTER SERVICES AGREEMENT** (this "Agreement") is entered into as of January 7, 2020 (the "Effective Date") by and between BAM Trading Services Inc. on behalf of itself and its Affiliates ("BAM TRADING") and Binance Holdings Limited, a company incorporated under the Laws of the Cayman Islands ("BINANCE"). As used in this Agreement, "Party" means either BAM TRADING, on the one hand, or BINANCE, on the other hand, as appropriate, and "Parties" means BAM TRADING and BINANCE, collectively.

**WHEREAS**, BINANCE owns a digital currency trading platform which operates in multiple countries;

**WHEREAS**, concurrently with the execution of this Agreement, the Parties have entered into that certain Software License Agreement (the "License Agreement") pursuant to which BINANCE granted BAM TRADING, a strategic partner of BINANCE, a license to the Licensed Software in order to operate a digital currency trading platform for the U.S. market;

**WHEREAS**, BAM TRADING desires for BINANCE to host the Licensed Software, provide BAM TRADING and End Users access to and use of the Licensed Software in the hosted environment, and maintain, support, and develop and implement BAM TRADING - specific enhancements to, the Licensed Software; and

**WHEREAS**, BINANCE desires to provide such services in accordance with the terms of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties agree as follows:

**1. DEFINITIONS**

Capitalized terms used in this Agreement will have the meanings set forth below.

| | |
|---|---|
| *Affiliate* | means, with respect to any Party, any Person that directly, or indirectly through one or more intermediaries, Controls, or is Controlled by, or is under common Control with, such Party, whether such Person is now in existence or hereafter formed. The term "Control" and its derivatives means any of (1) the possession, direct or indirect, of the power to direct or cause the management and policies of a Person and (2) ownership of more than 50 percent of the capital stock of a Person or, in the case of a non-corporate Person, an equivalent interest. |
| *Applicable Law* | means (regardless of jurisdiction) any applicable (1) federal, national, state and local laws, ordinances, regulations, orders, statutory instrument, rules, treaties, codes of practice, guidance notes, policy statements, customary laws, decrees, injunctions, or |

| | |
|---|---|
| | judgments and (2) ruling, declaration, regulation, requirement, request or interpretation issued by any (or any quasi-) regulatory, judicial, administrative or governmental body or person. |
| *Center* | has the meaning set forth in Section 12.7. |
| *Confidential Information* | has the meaning set forth in Section 6.1. |
| *Custom Enhancements* | has the meaning set forth in Section 5.1. |
| *Deliverables* | means the Licensed Software, Documentation, and any other materials provided or made accessible to BAM TRADING by BINANCE under this Agreement. |
| *Development Services* | has the meaning set forth in Section 5.1. |
| *Dispute* | has the meaning set forth in Section 12.7. |
| *Documentation* | means all documentation and supportive literature which explains the use or operation of, or otherwise relates to, the Licensed Software, including all proprietary user or operating manuals, brochures or electronic text. |
| *DR Plan* | has the meaning set forth in Section 9. |
| *Electronic Message* | means any communication made (1) by telephone, email or other computer or electronic initiated transmission, (2) by any other telegraphically transmitted means, or (3) otherwise over any distance other than by physical delivery. |
| *End Users* | means BAM TRADING's employees, customers, agents, contractors, and other third parties authorized by BAM TRADING to access and use the Licensed Software. |
| *Enhancement Request* | has the meaning set forth in Section 5.1. |
| *Enhancement Work Order* | has the meaning set forth in Section 5.1. |
| *Hosting Environment* | means equipment, software and other infrastructure controlled or maintained by BINANCE that is used to host the Licensed Software. |
| *Hosting Services* | has the meaning set forth in Section 4.1. |
| *Industry Standards* | means the best practices exercised by Persons who host, operate and/or maintain digital currency exchanges or financial services platforms. |
| *Intellectual Property Rights* | means all past, present, and future rights of the following types, which may exist or be created under the Applicable Laws of any jurisdiction in the world: (1) rights associated with works of authorship, including exclusive exploitation rights, copyrights, |

| | |
|---|---|
| | moral rights, and mask work rights; (2) trademark and trade name rights and similar rights; (3) trade secret rights; (4) patents and industrial property rights; (5) other proprietary rights in intellectual property of every kind and nature; and (6) rights in or relating to registrations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the rights referred to in subsections (1) through (5) of this sentence. |
| *License Agreement* | has the meaning set forth in the recitals. |
| *Licensed Software* | has the meaning set forth in the License Agreement. |
| *Maintenance Changes* | means (1) changes, bug fixes, updates, upgrades and enhancements to existing functionality of the Licensed Software to facilitate improvement in terms of efficiency and/or performance of the Licensed Software and (2) new releases of the Licensed Software. |
| *Malware* | has the meaning set forth in Section 7.2(J). |
| *Person* | means an individual, partnership, corporation, limited liability company, unincorporated organization, association, trust, joint venture, joint stock company, a governmental agency (or political subdivision thereof) or any other entity. |
| *Platform* | means the Licensed Software as hosted by BINANCE in the Hosted Environment. |
| *Rules* | has the meaning set forth in Section 12.7. |
| *Services* | means the Development Services, Hosting Services and Support Services. |
| *Support Services* | has the meaning set forth in Section 4.2. |
| *Term* | has the meaning set forth in Section 2. |

2. **TERM**

The term of this Agreement will commence on the Effective Date and continue until it is terminated in accordance with the provisions of Section 10 (the "Term").

3. **ACCESS AND USE**

Commencing on the Effective Date and continuing throughout the Term, BINANCE will provide BAM TRADING and the End Users with browser-based access to the Licensed Software through an Internet connection meeting or exceeding the requirements set forth in Exhibit A. There will be no limitation on the number of End Users who may access the Licensed Software in the Hosting Environment, including concurrent End Users.

4. **HOSTING AND SUPPORT SERVICES**

  **4.1**  Hosting Services. BINANCE's obligations with respect to the hosting of the Licensed Software include the services described in Exhibit A, as well as any services, functions or responsibilities reasonably required for the proper provision of such services in accordance with Industry Standards (collectively, the "Hosting Services").

  **4.2**  Maintenance and Support Services. BINANCE's obligations with respect to maintenance and support of the Licensed Software include the services described in Exhibit A, as well as any services, functions or responsibilities reasonably required for the proper provision of such services in accordance with Industry Standards (collectively, the "Support Services") BINANCE will make available to BAM TRADING or, at the request of BAM TRADING, implement on the Platform, (A) Maintenance Changes and updated Documentation relating thereto at the same time as BINANCE makes such changes available to other users of the Licensed Software, and (B) Custom Enhancements and updated Documentation relating thereto within 10 days after acceptance thereof by BAM TRADING, unless a different time frame is agreed by the Parties in writing.

**5.**  **DEVELOPMENT SERVICES**

  **5.1**  Enhancement Requests. BAM TRADING may, from time to time during the Term, request that BINANCE perform services ("Development Services") to develop enhancements to the Licensed Software to implement BAM TRADING'S requirements (such enhancements, "Custom Enhancements"). If BAM TRADING desires for BINANCE to implement a Custom Enhancement, BAM TRADING will submit a request that describes the requested features, functionality and timing for development and implementation of the Custom Enhancement (each, an "Enhancement Request"). Within 10 business days following receipt of an Enhancement Request, BINANCE will provide BAM TRADING with a proposal for Custom Enhancement, the schedule for when and how such Enhancement will be implemented, and other relevant information, substantially in the form of Exhibit B (each, an "Enhancement Work Order"). BINANCE will commence development of the Custom Enhancement promptly following the Parties' agreement on and execution of the applicable Enhancement Work Order. Custom Enhancements will be developed at no cost to BAM TRADING.

  **5.2**  Review and Acceptance. All Custom Enhancements will be subject to BAM TRADING's review and testing during the applicable acceptance period set forth in the Enhancement Work Order, in order to confirm that such Custom Enhancements conform to the acceptance criteria identified in the applicable Enhancement Work Order, if any. If BAM TRADING identifies nonconformities in any Custom Enhancements, BAM TRADING will notify BINANCE and provide a description of such nonconformity. BINANCE will correct the nonconforming Custom Enhancement and cause it to comply with the relevant acceptance criteria promptly following BINANCE's receipt of the notice of nonconformity. The acceptance process will be repeated until the Custom Enhancement is accepted by BAM TRADING.

**6.**  **CONFIDENTIALITY**

  **6.1**  General. BINANCE and BAM TRADING each acknowledge that they may be furnished with, receive or otherwise have access to information of or concerning the other Party that such Party considers to be confidential, a trade secret or otherwise restricted. As used in this Agreement, "Confidential Information" will mean all information, in any form, furnished or

made available directly or indirectly by one Party to the other under this Agreement which is marked confidential, restricted, or with a similar designation, or that, based on the type or nature of the information and the circumstances of disclosure, should reasonably be understood by the receiving Party to be confidential or proprietary.

**6.2** <u>Obligations</u>.

**(A)** Subject to the licenses granted to BAM TRADING in the License Agreement, BAM TRADING and BINANCE will each (1) hold Confidential Information received from the other Party in confidence and, except as expressly permitted by Section 6.2(B) or Section 6.2(C), or by the express, prior written approval of the disclosing Party in each instance, which approval may be withheld or granted by the disclosing Party in its sole discretion, not provide, disseminate, sell, assign, lease, transfer or otherwise dispose of, disclose to or make available any Confidential Information of the disclosing Party to any third party, (2) use the Confidential Information of the other Party only for performing its obligations or exercising its rights under this Agreement, and (3) use at least the same degree of care as it employs to avoid unauthorized disclosure of its own information, but in any event no less than commercially reasonable efforts, to prevent disclosing to third parties the Confidential Information of the other Party.

**(B)** Subject to the licenses granted to BAM TRADING in the License Agreement, each Party may disclose Confidential Information of the other Party to its employees, directors, attorneys, auditors, accountants, and subcontractors, provided that (1) the recipient has a need to know the Confidential Information for purposes of performing his or her obligations under or with respect to this Agreement or as otherwise naturally occurs in such person's scope of responsibility and (2) such disclosure is made pursuant to obligations of confidentiality that are no less stringent than those set forth in this Section 6.2.

**(C)** A Party may disclose Confidential Information of the other Party under compulsion of legal process by a court of competent jurisdiction or Applicable Law, provided that, promptly upon receiving any such request and to the extent that it may legally do so, such Party advises the other Party of the request prior to making such disclosure in order that the other Party may interpose an objection to such disclosure, take action to assure confidential handling of the Confidential Information, or take such other action as it deems appropriate to protect the Confidential Information.

**(D)** Upon a Party's request at any time and upon the termination of this Agreement for any reason, the other Party will return or destroy, as such Party may direct, all material in any medium that contains the Confidential Information of such Party.

**6.3** <u>Exclusions</u>. Section 6.2 will not apply to any particular information that the receiving Party can demonstrate: (A) was, at the time of disclosure to it, in the public domain; (B) after disclosure to it, was published or otherwise became part of the public domain through no fault of the receiving Party; (C) was in the possession of the receiving Party at the time of disclosure to it without any obligation of to restrict its further use or disclosure; (D) was received after disclosure to it from a third party who had a lawful right to disclose such information to it without any obligation to restrict its further use or disclosure; or (E) was independently developed by the receiving Party without reference to Confidential Information of the furnishing

Party.

## 7. REPRESENTATIONS, WARRANTIES AND ADDITIONAL COVENANTS

    **7.1**    <u>Mutual Representations and Warranties</u>. Each Party represents and warrants that:

    **(A)**    it is duly incorporated or organized, validly existing and in good standing under the laws of the state or country of its incorporation or organization; and

    **(B)**    it has all requisite corporate power and authority to execute, deliver and perform its obligations under this Agreement, and it has duly authorized the execution, delivery and performance of this Agreement.

    **7.2**    <u>Additional BINANCE Representations, Warranties and Covenants</u>. BINANCE represents, warrants and covenants that:

    **(A)**    the execution, delivery and performance of this Agreement by BINANCE will not conflict with, result in a breach of, or constitute a default under any other agreement to which BINANCE is a party or by which BINANCE is bound;

    **(B)**    BINANCE will provide the Services with promptness, diligence and in a professional manner, in accordance with the practices and professional standards used in well-managed operations performing services similar to the Services, and BINANCE will use adequate numbers of qualified individuals with suitable training, education, experience and skill to perform the Services;

    **(C)**    BINANCE will maintain the equipment in the Hosting Environment so that such equipment operates in accordance with its specifications, including: (1) maintaining equipment in good operating condition, subject to normal wear and tear and (2) undertaking repairs and preventive maintenance on equipment in accordance with the applicable manufacturer's recommendations;

    **(D)**    the Services and the Hosting Environment comply with, and will, for the duration of the Term, comply with, the provisions, descriptions, and representations (including performance capabilities, accuracy, completeness, characteristics, specifications, configurations, standards, functions and requirements) which are contained in the Documentation;

    **(E)**    BINANCE is in compliance with, and will, for the duration of the Term, comply with, all Applicable Laws governing BINANCE's obligations under this Agreement, and has obtained and BINANCE will maintain all applicable permits and licenses required of BINANCE in connection with its obligations under this Agreement;

    **(F)**    the Platform is in compliance with, and BINANCE will, for the duration of the Term, maintain the Platform so that it complies with, all Applicable Laws, and in a manner so as not to cause BAM TRADING to be in violation of any Applicable Laws;

    **(G)**    there is no outstanding litigation, arbitrated matter or other dispute to which BINANCE is a party which, if decided unfavorably to BINANCE, would reasonably be expected to have a material adverse effect on BINANCE's ability to fulfill its obligations under

this Agreement;

**(H)** the Services and Platform do not and will not, for the duration of the Term, infringe or misappropriate any third party's Intellectual Property Rights;

**(I)** BINANCE will promptly notify BAM TRADING if BINANCE learns of any claim, pending or threatened, or any fact upon which a claim could be made, that asserts that the Services or Platform may infringe upon any third party's Intellectual Property Rights;

**(J)** BINANCE will ensure that no viruses, Trojan horses, worms, spyware, back doors, email bombs, malicious code or similar items (collectively, "Malware") is coded or introduced by BINANCE into the Platform or BAM TRADING's systems, and will use best efforts to prevent Malware from being introduced by third parties into the Platform or BAM TRADING's systems. In the event that any Malware is detected by BINANCE, BINANCE will promptly remove, and mitigate the effects of, the Malware and restore any affected data; and

**(K)** the Platform does not include any code that is designed and intended to disable or otherwise shut down all or any portion of Platform, and BINANCE will ensure that no such code is coded or introduced into the Platform or BAM TRADING's systems.

**7.3** **Disclaimer.** EXCEPT AS SPECIFIED IN THIS AGREEMENT, THE LICENSE AGREEMENT AND THE DOCUMENTATION, NEITHER PARTY MAKES ANY OTHER WARRANTIES, AND EACH PARTY EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**8.  LIMITATION OF LIABILITY**

EXCEPT WITH RESPECT TO DAMAGES ARISING FROM BREACH OF SECTION 6 OR SECTION 7, AND A PARTY'S FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, IN NO EVENT, WHETHER IN CONTRACT OR IN TORT (INCLUDING BREACH OF WARRANTY, NEGLIGENCE AND STRICT LIABILITY IN TORT), WILL A PARTY BE LIABLE FOR INDIRECT OR CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGES, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES IN ADVANCE.

**9.  DISASTER RECOVERY AND BUSINESS CONTINUITY**

BINANCE will have and maintain a disaster recovery and business continuity plan ("DR Plan") for each data center that it uses to provide the Hosting Services. The DR Plans will permit BINANCE to reinstate the impacted Services as promptly as possible, and in any case in accordance with Industry Standard recovery time objectives and recovery point objectives. Unless otherwise agreed by the Parties in writing, BINANCE will test the operability of each DR Plan at least once during each 12-month period during the Term and will promptly thereafter provide the results of each test to BAM TRADING. BINANCE will implement the applicable DR Plan upon the occurrence of a disaster.

## 10. TERMINATION

**10.1** <u>Termination by BAM TRADING</u>. BAM TRADING may terminate this Agreement upon a notice to BINANCE.

**10.2** <u>Termination by BINANCE</u>. BINANCE may only terminate this Agreement if required by Applicable Law or BAM TRADING materially breaches its obligations hereunder and fails to cure such material breach within 60 days of its receipt of notice from BINANCE of such material breach.

**10.3** <u>Effect of Termination</u>. Upon termination of this Agreement, BAM TRADING will cease use of the Platform (provided that such termination will not affect BAM TRADING's license to the Licensed Software under the License Agreement) and BINANCE will promptly provide to BAM TRADING a copy of the BAM TRADING and End User data residing in the Platform (including any backup data) in the format reasonably specified by BAM TRADING.

**10.4** <u>Survival</u>. The provisions of Section 1, Section 6, Section 8, Section 10.3, this Section 10.4, Section 11, and Section 12, as well as any other provision of this Agreement that contemplates performance or observance subsequent to termination or expiration of this Agreement will survive termination of this Agreement and continue in full force and effect.

## 11. NOTICES

All notices given hereunder will be signed by or on behalf of the Party giving them and given by sending the same by (A) prepaid recognized commercial courier (e.g., DHL), or (B) an Electronic Message confirmed by a signed copy sent that same business day by prepaid first class post (e.g., United States mail) or by prepaid commercial courier. Any notice sent by post or by prepaid commercial courier as provided in this Section 10 will be deemed to have been given five business days after being sent and any notice sent by email shall be deemed to have been given upon dispatching if confirmation of transmission is received. Evidence that the notice was properly addressed, stamped and posted shall be presumptive evidence of posting. A notice received outside business hours (9:30 a.m. to 4:00 p.m. Pacific time on a business day) will be considered received when business hours resume. All notices to the Parties will be validly sent to the relevant address set out above. Notices given hereunder may be given in such manner as the sender and the recipient may agree in writing from time to time.

## 12. MISCELLANEOUS

**12.1** <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which will be deemed an original but all of which taken together will constitute one and the same instrument.

**12.2** <u>Amendment</u>. Any amendment to this Agreement must be agreed in writing and be signed by all the Parties. Unless otherwise agreed, an amendment will not affect any legal rights or obligations which may already have arisen.

**12.3** <u>Binding Nature and Assignment</u>. This Agreement will be binding on and will inure to the benefit of the Parties and each of their successors and assigns. Neither Party may, or

will have the power to, assign this Agreement without the prior written consent of the other, except that BAM TRADING may assign its rights and obligations under this Agreement without the approval of BINANCE, to an entity that acquires all or substantially all of the assets of BAM TRADING, to an Affiliate, or to a successor in a merger or acquisition of BAM TRADING

**12.4**   Entire Agreement. This Agreement, including all Exhibits attached hereto and any Enhancement Work Orders entered into hereunder, constitutes the entire agreement of the Parties. If any provision herein is determined to be void or unenforceable in whole or in part for any reason whatsoever, such unenforceability or invalidity will not affect the enforceability or validity of the remaining provisions or parts contained in this Agreement and such void or enforceable provisions will be deemed to be severable from any other provisions or parts herein contained.

**12.5**   Interpretation. In this Agreement, unless the context otherwise requires, (A) words importing the singular shall include the plural and vice versa and words importing the masculine gender shall include the feminine and the neuter and vice versa; (B) references to Sections and Exhibits are to Sections of and Exhibits to, this Agreement; (C) a reference to "including" means including without limiting the generality of any description preceding such term and any general statement followed by or referable to an enumeration of specific matters shall not be limited to matters similar to those specifically mentioned; (D) references to any enactment shall be deemed to include references to such enactment as re-enacted, amended, supplemented, restated or extended from time to time; and (E) where any expression is defined or the interpretation of it is set out herein, other parts of speech of such expression shall have a corresponding meaning References to and the use of the word "days" will mean calendar days, unless otherwise specified. The Section headings are used for convenience only and will not affect the construction or interpretation of this Agreement. The Exhibits form part of this Agreement and will have the same force and effect as if they were expressly set out in the body of this Agreement and any reference to this Agreement will include the Exhibits.

**12.6**   Governing Law. The validity, interpretation, construction and performance of this Agreement will be governed by the laws of the State of New York without regard to the choice of law principles thereof.

**12.7**   Arbitration. Without limiting the right of a Party to seek specific performance, injunctive relief or any other equitable remedy in connection with any alleged breach of Section 5, any dispute, controversy or claim arising out of or relating to this Agreement or its subject matter (including a dispute regarding the existence, validity, formation, effect, interpretation, performance or termination of this Agreement) (each, a "Dispute") will be finally settled by arbitration. The place of arbitration will be Hong Kong, and the arbitration will be administered by the Hong Kong International Arbitration Centre (the "Center") in accordance with the Center's Administered Arbitration Rules in force when the notice of arbitration is submitted (the "Rules"). The arbitration will be decided by a tribunal of three arbitrators to be appointed in accordance with the Rules. Arbitration proceedings (including any arbitral award rendered) will be in English. The tribunal will decide any dispute submitted by the Parties strictly in accordance with the substantive law of the State of New York and will not apply any other substantive law. Subject to the agreement of the tribunal, any Dispute(s) which arise subsequent to the commencement of arbitration of any existing Dispute(s) will be resolved by the tribunal already appointed to hear the existing Dispute(s). The award of the arbitration tribunal will be

final and conclusive and binding upon the Parties as from the date rendered. Judgment upon any award may be entered and enforced in any court having jurisdiction over a party or any of its assets. For the purpose of enforcing this agreement to arbitrate, the Parties irrevocably and unconditionally submit to the jurisdiction of the courts of Hong Kong and waive any defenses to such enforcement based on lack of personal jurisdiction or inconvenient forum. For the purpose of enforcement of an award, the Parties irrevocably and unconditionally waive any defense of inconvenient forum in any court of competent jurisdiction.

**12.8** <u>Equitable Remedies</u>. Each Party acknowledges that, in the event it breaches (or attempts or threatens to breach) its obligations provided in Section 6 or if BINANCE breaches (or attempts or threatens to breach) its obligations under Section 10.3, the other Party may be irreparably harmed. In such a circumstance, the non-breaching Party may proceed directly to court. If a court of competent jurisdiction should find that a Party has breached (or attempted or threatened to breach) any such obligations, the breaching Party agrees that, without any additional findings of irreparable injury or other conditions to injunctive relief, it will not oppose the entry of an appropriate order compelling its performance and restraining it from any further breaches (or attempted or threatened breaches).

**12.9** <u>Waiver of Default</u>. No waiver by any Party of any of the provisions of this Agreement will be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party will operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement will operate or be construed as a waiver thereof, nor will any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**12.10** <u>Export Controls</u>. The Parties acknowledge that the Deliverables may be subject to export controls under the Applicable Laws of the United States and other countries. Without limiting the Parties' other obligations under this Agreement, neither Party will export or re-export any such items or any direct product thereof or undertake any transaction in violation of any Applicable Laws. BINANCE will be responsible for, and will coordinate and oversee, compliance with such Applicable Laws in respect of such items exported or imported hereunder.

**12.11** <u>Relationship of Parties</u>. BINANCE, in furnishing the Services, is acting as an independent contractor, and BINANCE has the sole right and obligation to supervise, manage, contract, direct, procure, perform or cause to be performed, all Services to be performed by BINANCE under this Agreement. BINANCE is not an agent of BAM TRADING and has no authority to represent BAM TRADING as to any matters, except as expressly authorized in this Agreement.

IN WITNESS WHEREOF, BAM TRADING and BINANCE have each caused this Agreement to be signed and delivered by its duly authorized officer, all as of the Effective Date.

| **BAM TRADING SERVICES INC.** | **BINANCE HOLDINGS LIMITED** |
|---|---|
| DocuSigned by: *Catherine Coley* (62D54DDC0A8942C) | DocuSigned by: *Changpeng Zhao* (48787FC11D74433) |
| Signature | Signature |
| Catherine Coley | Changpeng Zhao |
| Name | Name |
| CEO                        1/7/2020 | CEO                        1/7/2020 |
| Title                           Date | Title                           Date |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BAM

BTS00039036

# Exhibit A
# Hosting and Support Services

## 1. HOSTING SERVICES

**1.1   Access Requirements.**  The Licensed Software should be accessible worldwide by visitors using all major desktop, mobile web or API clients.

**1.2   Hosting Services.**  BINANCE's obligations under this Agreement will include the following:

| # | Service, Function or Responsibility |
|---|---|
| **Hosting and Availability** | |
| (A) | Provide and maintain all resources and services required to host the Licensed Software in accordance with the requirements of this Agreement and Industry Standards. |
| (B) | Provide notice to BAM TRADING of any changes to the Hosting Environment that may have an adverse impact on BAM TRADING's use of the Platform. |
| (C) | Provide one production environment and one staging environment |
| (D) | Implement and maintain physical access controls for the Hosting Services that comply with Industry Standards. |
| (E) | Use best efforts to make the Platform available and functioning in accordance with its intended use to BAM TRADING and End Users on a 24 x 7 basis, 365 days each year, excluding scheduled maintenance windows. |
| (F) | Implement and maintain automated monitoring of Platform availability, response times for transactions on the Platform, and automatic alarming and notification of intrusion activities. |
| (G) | Notify BAM TRADING and End Users of unavailability of the Platform or material components thereof, and issues with transaction response times as soon as such issues are discovered by providing notice on the Platform, and notify BAM TRADING by telephone of any outages of the Platform.  Notify BAM TRADING as soon as availability of the Platform resumes. |
| (H) | Provide industry-standard full data backup and recovery for BAM TRADING and End User data stored on the Platform and send copies of data to an off-site facility. |
| **User Access** | |
| (I) | Provide a process for the establishment of accounts on the platform for End Users. |
| (J) | Provide access to the Licensed Software in the hosting environment to BAM TRADING and End Users on a 24 x 7 basis, 365 days each year. |

1

## 2. SUPPORT SERVICES

| # | Service, Function or Responsibility |
|---|---|
| **Maintenance Services** | |
| (A) | Perform preventive and remedial maintenance on the equipment and software in the Hosting Environment in accordance with Industry Standards to ensure availability of the Platform. |
| (B) | Notify BAM TRADING of the maintenance windows for the Platform and in any case schedule maintenance windows during time periods that will minimize impact on End User access to and use of the Platform. Provide reasonable advance notice to BAM TRADING if any Platform outages are expected to occur during a maintenance window. |
| (C) | Provide to BAM TRADING all Maintenance Changes for the Licensed Software, and implement such changes on the Platform only during scheduled maintenance windows, provided that, if a Maintenance Change is comprised of a new version or release of the Licensed Software, implement such Maintenance Change following BAM TRADING's written approval. |
| (D) | Support each version of the Licensed Software in accordance with the Agreement for the duration such version is in use by BAM TRADING. |
| (E) | Perform testing on all Maintenance Changes prior to providing to BAM TRADING or implementing in the production environment. |
| **Support Desk** | |
| (F) | Provide multiple channels for BAM TRADING and End Users to submit inquiries and report incidents and problems on a 24 x 7 basis, including telephone, website, and email. |
| **User Support** | |
| (G) | Respond to and resolve user inquiries regarding the Platform, such as issues with system access, within Industry Standard time frames. |
| (H) | Provide training on the use and features of the Platform to BAM TRADING as reasonably requested. |
| **Incident Response and Resolution** | |
| (I) | For all incidents and problems that arise with respect to the Platform, proactively triage and resolve the issue as soon as reasonably practicable (commensurate with the severity of the issue) and in accordance with Industry Standard time frames. |
| (J) | Notify and update BAM TRADING on a periodic basis regarding the status of resolution, with the frequency of such updates commensurate with the severity of the issue. |

2

Exhibit B
Form of Enhancement Work Order

Enhancement Work Order
No. [__]

This Enhancement Work Order is entered into by and between BAM Trading Services Inc. ("BAM TRADING") and Binance Holdings Limited ("BINANCE") and is hereby incorporated into and made a part of that certain Master Services Agreement (the "Agreement"), effective as of [__], 2020 by and between BAM TRADING and BINANCE. Unless otherwise defined herein, all capitalized terms that are used in this Enhancement Work Order will have the meanings given to such terms in the Agreement. The effective date of this Enhancement Work Order is [__], 2020.

1. **GENERAL INFORMATION**

| | |
|---|---|
| **Description of Custom Enhancement:** | |
| **Objective of Custom Enhancement:** | |
| **Specific Services or Features of Licensed Software affected by Custom Enhancement:** | |
| **BAM TRADING Sponsor:** | |
| **BINANCE Sponsor:** | |

1

2. **LICENSOR RESOURCES**

| BINANCE personnel assigned to project (including location): | List below or attach list. |||
|---|---|---|---|
| | Level/Role | | Location |
| | | | |
| | | | |
| | | | |
| BINANCE subcontractors that will work on project (if any): | Name | Level/Role | Location | Nature of Services Provided |
| | | | | |
| | | | | |
| | | | | |
| | List below or attach list. ||||

3. **SCHEDULE**

| Project start date: | |
|---|---|
| Project completion date: | |

4. **DELIVERABLES**

The deliverables applicable to this Enhancement Work Order are set forth below. The deliverables will be subject to BAM TRADING's review and acceptance in accordance with Section 5.2 of the Agreement.

| Name of Deliverable | Description | Milestone / Due Date | Acceptance Criteria | Acceptance Period (# days) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2

3

## 5. ADDITIONAL INFORMATION

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BAM                                                                             BTS00039041

This Enhancement Work Order will become effective upon execution by both Parties below and BINANCE will thereafter develop the Custom Enhancement in accordance with the terms set forth herein. Any change to this Enhancement Work Order after it is approved must be agreed by the Parties in a written amendment.

**BAM TRADING SERVICES INC.**  **BINANCE HOLDINGS LIMITED**

_____  _____
Signature                          Signature

_____  _____
Name                               Name

_____  _____
Title                    Date      Title                    Date

1