# EXHIBIT A-47

# SOFTWARE LICENSE AGREEMENT

This **SOFTWARE LICENSE AGREEMENT** (this "Agreement") is entered into as of January 7, 2020 (the "Effective Date") by and between BAM Technology Services Inc., a Delaware corporation, on behalf of itself and its Affiliates ("BAM TRADING") and Binance Holdings Limited, a company incorporated under the Laws of the Cayman Islands ("BINANCE"). As used in this Agreement, "Party" means either BAM TRADING, on the one hand, or BINANCE, on the other hand, as appropriate, and "Parties" means BAM TRADING and BINANCE, collectively.

**WHEREAS**, BINANCE owns a digital currency trading platform which it operates in multiple countries;

**WHEREAS**, BAM TRADING, desires to obtain a license to the Licensed Software in order to operate a digital currency trading platform for the U.S. market, and BINANCE desires to grant such license; and

**WHEREAS**, concurrently with the execution of this Agreement, the Parties have entered into that certain Master Services Agreement (the "Services Agreement") pursuant to which BINANCE will host, support and maintain the Licensed Software, and develop enhancements to the Licensed Software as requested by BAM TRADING.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties agree as follows:

**1. DEFINITIONS**

Capitalized terms used in this Agreement will have the meanings set forth below.

| | |
|---|---|
| *Affiliates* | means, with respect to any Party, any Person that directly, or indirectly through one or more intermediaries, Controls, or is Controlled by, or is under common Control with, such Party, whether such Person is now in existence or hereafter formed. The term "Control" and its derivatives means any of (1) the possession, direct or indirect, of the power to direct or cause the management and policies of a Person and (2) ownership of more than 50 percent of the capital stock of a Person or, in the case of a non-corporate Person, an equivalent interest. |
| *Applicable Law* | means (regardless of jurisdiction) any applicable (1) federal, national, state and local laws, ordinances, regulations, orders, statutory instrument, rules, treaties, codes of practice, guidance notes, policy statements, customary laws, decrees, injunctions, or judgments and (2) ruling, declaration, regulation, requirement, request or interpretation issued by any (or any |

| | |
|---|---|
| | quasi-) regulatory, judicial, administrative or governmental body or person. |
| *Center* | has the meaning set forth in Section 10.7. |
| *Confidential Information* | has the meaning set forth in Section 5.1. |
| *Custom Enhancements* | has the meaning set forth in the Services Agreement. |
| *Deliverables* | means the Licensed Software, Documentation, Custom Enhancements and any other materials provided to BAM TRADING by BINANCE under this Agreement. |
| *Dispute* | has the meaning set forth in Section 10.7. |
| *Documentation* | means all documentation and supportive literature which explains the use or operation of, or otherwise relates to, the Licensed Software, including all proprietary user or operating manuals, brochures or electronic text. |
| *Electronic Message* | means any communication made (1) by telephone, email or other computer or electronic initiated transmission, (2) by any other telegraphically transmitted means, or (3) otherwise over any distance other than by physical delivery. |
| *Intellectual Property Rights* | means all past, present, and future rights of the following types, which may exist or be created under the Applicable Laws of any jurisdiction in the world: (1) rights associated with works of authorship, including exclusive exploitation rights, copyrights, moral rights, and mask work rights; (2) trademark and trade name rights and similar rights; (3) trade secret rights; (4) patents and industrial property rights; (5) other proprietary rights in intellectual property of every kind and nature; and (6) rights in or relating to registrations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the rights referred to in subsections (1) through (5) of this sentence. |
| *Licensed Software* | means the compiled, machine-readable, and/or executable version of BINANCE's proprietary software that comprises its digital currency trading platform, as may be improved or modified by BINANCE, as more fully described in <u>Exhibit A</u>, including all Maintenance Changes and Custom Enhancements provided pursuant to this Agreement and the Services Agreement. |
| *Maintenance Changes* | means (1) changes, bug fixes, updates, upgrades and enhancements to existing functionality of the Licensed Software to facilitate improvement in terms of efficiency and/or |

2

| | |
|---|---|
| | performance of the Licensed Software and (2) new releases of the Licensed Software. |
| *Malware* | has the meaning set forth in Section 6.2(I). |
| *Open Source License* | means any license or other contractual obligation that requires, as a condition of use, modification, or distribution of the covered technology, that the covered technology or other technology incorporated into, derived from, or distributed with the covered technology (1) be disclosed or distributed as source code; (2) be licensed by the user to third parties for the purpose of making or distributing derivative works; or (3) be redistributable at no or minimal charge.  Open Source Licenses include licenses or distribution models similar to any of the following: GNU's General Public License (GPL) or Lesser/Library GPL (LGPL); the Artistic License (e.g., PERL); the Mozilla Public License; the Netscape Public License; the Common Development and Distribution License (CDDL); the Apache Software License; and the Common Public License (CPL). |
| *Open Source Software* | means software that is subject to an Open Source License. |
| *Person* | means an individual, partnership, corporation, limited liability company, unincorporated organization, association, trust, joint venture, joint stock company, a governmental agency (or political subdivision thereof) or any other entity. |
| *Rules* | has the meaning set forth in Section 10.7. |
| *Services Agreement* | has the meaning set forth in the recitals. |
| *Use* | means load, execute, store, transmit, import, display, copy, and prepare (and have prepared) derivative works. |

## 2.  LICENSE GRANT

### 2.1  Grant of License to BAM TRADING.

**(A)** BINANCE hereby grants to BAM TRADING a worldwide, non-exclusive, perpetual, irrevocable (except as set forth in Section 8.2), non-transferable, fully paid-up, royalty-free license, under all of BINANCE's Intellectual Property Rights, to Use the Licensed Software and Documentation relating thereto in the furtherance of BAM TRADING's business and operations.

**(B)** BAM TRADING may sublicense the licenses granted in Section 2.1(A) to (1) third parties, including BAM TRADING's contractors, consultants, outsourcers, service providers and other similar parties, for the benefit of BAM TRADING, and (2) to any portion of BAM TRADING's business that is divested by BAM TRADING, or the acquirer thereof, for the benefit of such divested business.

3

**(C)** BAM TRADING may make copies of the Documentation as BAM TRADING deems reasonably necessary or appropriate and may provide copies of the Documentation to BAM TRADING's employees, contractors, customers, consultants, agents, outsourcers, service providers and other similar parties as necessary for such parties to use the Licensed Software to conduct BAM TRADING's business. BAM TRADING will also have the right to copy and use the Documentation at any off-site location for back-up and recovery purposes.

2.2   Limitations and Restrictions on License Rights. There will be no limitations or restrictions on BAM TRADING's use of the Licensed Software pursuant to the licenses granted in Section 2.1, including limitations or restrictions on (1) the use of the Licensed Software on any CPU or other item of equipment regardless of size, and on any computer independent of the number of processors within such computer or (2) the number of users that may access or use the Licensed Software.

2.3   API License. BINANCE hereby grants to BAM TRADING, at no charge, a worldwide, non-exclusive, perpetual, irrevocable (except as set forth in Section 8.2), transferable, fully paid-up, royalty-free license to use any application programming interface (API) for the Licensed Software. BAM TRADING may sublicense such license to the Persons described in Section 2.1(B).

3.   **THIRD PARTY SOFTWARE**

The Licensed Software does not include any third party software or Open Source Software other than such software listed in Exhibit A.

4.   **MAINTENANCE AND DEVELOPMENT**

BAM TRADING's obligations with respect to maintenance and support of the Licensed Software, including the development of Custom Enhancements, are set forth in the Services Agreement.

5.   **CONFIDENTIALITY**

5.1   General. BAM TRADING AND BINANCE each acknowledge that they may be furnished with, receive or otherwise have access to information of or concerning the other Party that such Party considers to be confidential, a trade secret or otherwise restricted. As used in this Agreement, "Confidential Information" will mean all information, in any form, furnished or made available directly or indirectly by one Party to the other under this Agreement which is marked confidential, restricted, or with a similar designation, or that, based on the type or nature of the information and the circumstances of disclosure, should reasonably be understood by the receiving Party to be confidential or proprietary. Confidential Information also will include, whether or not marked as confidential (or with a similar designation), (A) all information concerning the operations, affairs and businesses of the disclosing Party, the financial affairs of the disclosing Party, and the relations of the disclosing Party with its customers, employees and service providers; (B) software provided to the receiving Party by the disclosing Party and the related Documentation; and (C) the terms and conditions of this Agreement.

4

5.2   Obligations.

(A)   Subject to the licenses granted to BAM TRADING in this Agreement, BAM TRADING AND BINANCE will each (1) hold Confidential Information received from the other Party in confidence and, except as expressly permitted by Section 5.2(B) or Section 5.2(C), or by the express, prior written approval of the disclosing Party in each instance, which approval may be withheld or granted by the disclosing Party in its sole discretion, not provide, disseminate, sell, assign, lease, transfer or otherwise dispose of, disclose to or make available any Confidential Information of the disclosing Party to any third party, (2) use the Confidential Information of the other Party only for performing its obligations or exercising its rights under this Agreement, and (3) use at least the same degree of care as it employs to avoid unauthorized disclosure of its own information, but in any event no less than commercially reasonable efforts, to prevent disclosing to third parties the Confidential Information of the other Party.

(B)   Subject to the licenses granted to BAM TRADING in this Agreement, each Party may disclose Confidential Information of the other Party to its employees, directors, attorneys, auditors, accountants, and subcontractors, provided that (1) the recipient has a need to know the Confidential Information for purposes of performing his or her obligations under or with respect to this Agreement or as otherwise naturally occurs in such person's scope of responsibility and (2) such disclosure is made pursuant to obligations of confidentiality that are no less stringent than those set forth in this Section 5.2.

(C)   A Party may disclose Confidential Information of the other Party under compulsion of legal process by a court of competent jurisdiction or Applicable Law, provided that, immediately upon receiving any such request and to the extent that it may legally do so, such Party advises the other Party of the request prior to making such disclosure in order that the other Party may interpose an objection to such disclosure, take action to assure confidential handling of the Confidential Information, or take such other action as it deems appropriate to protect the Confidential Information.

(D)   Upon a Party's request at any time and upon the termination of this Agreement for any reason, the other Party will return or destroy, as such Party may direct, all material in any medium that contains Confidential Information of such Party.

5.3   Exclusions. Section 5.2 will not apply to any particular information that the receiving Party can demonstrate: (A) was, at the time of disclosure to it, in the public domain; (B) after disclosure to it, was published or otherwise became part of the public domain through no fault of the receiving Party; (C) was in the possession of the receiving Party at the time of disclosure to it without any obligation of to restrict its further use or disclosure; (D) was received after disclosure to it from a third party who had a lawful right to disclose such information to it without any obligation to restrict its further use or disclosure; or (E) was independently developed by the receiving Party without reference to Confidential Information of the furnishing Party.

6.   **REPRESENTATIONS, WARRANTIES AND ADDITIONAL COVENANTS**

6.1   Mutual Representations and Warranties. Each Party represents and warrants that:

5

**(A)** it is duly incorporated or organized, validly existing and in good standing under the laws of the state or country of its incorporation or organization; and

**(B)** it has all requisite corporate power and authority to execute, deliver and perform its obligations under this Agreement, and it has duly authorized the execution, delivery and performance of this Agreement.

**6.2** <u>Additional BINANCE Representations, Warranties and Covenants</u>. BINANCE represents, warrants and covenants that:

**(A)** the execution, delivery and performance of this Agreement by BINANCE will not conflict with, result in a breach of, or constitute a default under any other agreement to which BINANCE is a party or by which BINANCE is bound;

**(B)** the Licensed Software complies with, and will, for the duration of the Services Agreement, comply with, the provisions, descriptions, and representations (including performance capabilities, accuracy, completeness, characteristics, specifications, configurations, standards, functions and requirements) which are contained in the Documentation and <u>Exhibit A</u>;

**(C)** BINANCE is in compliance with, and will, for the duration of the Services Agreement, comply with, all Applicable Laws governing BINANCE's obligations under this Agreement, and has obtained and BINANCE will maintain all applicable permits and licenses required of BINANCE in connection with its obligations under this Agreement;

**(D)** the Licensed Software is in compliance with, and BINANCE will maintain the Licensed Software so that it complies with, all Applicable Laws and in a manner so as not to cause BAM TRADING to be in violation of any Applicable Laws;

**(E)** there is no outstanding litigation, arbitrated matter or other dispute to which BINANCE is a party which, if decided unfavorably to BINANCE, would reasonably be expected to have a material adverse effect on BINANCE's ability to fulfill its obligations under this Agreement;

**(F)** the Licensed Software and Documentation do not and will not infringe or misappropriate any third party's Intellectual Property Rights;

**(G)** BINANCE will promptly notify BAM TRADING if BINANCE learns of any claim, pending or threatened, or any fact upon which a claim could be made, that asserts that the Licensed Software or any Documentation may infringe upon any third party's Intellectual Property Rights;

**(H)** the Licensed Software does not include, and BINANCE will not include in the Licensed Software, any third-party software without BAM TRADING's prior written consent;

**(I)** the Licensed Software does not include and viruses, Trojan horses, worms, spyware, back doors, email bombs, malicious code or similar items (collectively, "<u>Malware</u>"), and BINANCE will ensure that no Malware is coded or introduced by BINANCE into the

6

Licensed Software, and will use best efforts to prevent Malware from being introduced by third parties into the Licensed Software. In the event that Malware is found to have been introduced into the Licensed Software, BINANCE will promptly remove, and mitigate the effects of, the Malware and restore any affected data; and

    **(J)** the Licensed Software does not include any code that is designed and intended to disable or otherwise shut down all or any portion of any Licensed Software, and PARTY B will ensure that no such code is coded or introduced into the Licensed Software.

  **6.3** <u>Disclaimer</u>. EXCEPT AS SPECIFIED IN THIS AGREEMENT, THE SERVICES AGREEMENT AND THE DOCUMENTATION, NEITHER PARTY MAKES ANY WARRANTIES AND EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 7. **LIMITATION OF LIABILITY**

  EXCEPT WITH RESPECT TO DAMAGES ARISING FROM BREACH OF SECTION 5 OR SECTION 6, AND A PARTY'S FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, IN NO EVENT, WHETHER IN CONTRACT OR IN TORT (INCLUDING BREACH OF WARRANTY, NEGLIGENCE AND STRICT LIABILITY IN TORT), WILL A PARTY BE LIABLE FOR INDIRECT OR CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR SPECIAL DAMAGES, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES IN ADVANCE.

## 8. **TERMINATION**

  **8.1** <u>Termination by BAM TRADING</u>. BAM TRADING may terminate this Agreement upon a notice sent to BINANCE.

  **8.2** <u>Termination by BINANCE</u>. BINANCE may only terminate this Agreement if BAM TRADING materially breaches Section 2.1, and fails to cure such breach within 60 days following BAM TRADING's receipt of notice of such breach from BAM TRADING or if termination is required by Applicable Laws.

  **8.3** <u>Survival</u>. The provisions of Section 1, Section 5, Section 7, this Section 8.3, Section 9, and Section 10, as well as any other provision of this Agreement that contemplates performance or observance subsequent to termination of this Agreement will survive termination of this Agreement and continue in full force and effect.

## 9. **NOTICES**

  All notices given hereunder will be signed by or on behalf of the Party giving them and given by sending the same by (A) prepaid recognized commercial courier (e.g., DHL), or (B) an Electronic Message confirmed by a signed copy sent that same business day by prepaid first class post (e.g., United States mail) or by prepaid commercial courier. Any notice sent by post or by prepaid commercial courier as provided in this Section 9 will be deemed to have been

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BAM  BTS00039049

given five business days after being sent and any notice sent by email shall be deemed to have been given upon dispatching if confirmation of transmission is received. Evidence that the notice was properly addressed, stamped and posted shall be presumptive evidence of posting. A notice received outside business hours (9:30 a.m. to 4:00 p.m. Pacific time on a business day) will be considered received when business hours resume. All notices to the Parties will be validly sent to the relevant address set out above. Notices given hereunder may be given in such manner as the sender and the recipient may agree in writing from time to time.

## 10. MISCELLANEOUS

**10.1** <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which will be deemed an original but all of which taken together will constitute one and the same instrument.

**10.2** <u>Amendment</u>. Any amendment to this Agreement must be agreed in writing and be signed by all the Parties. Unless otherwise agreed, an amendment will not affect any legal rights or obligations which may already have arisen.

**10.3** <u>Binding Nature and Assignment</u>. This Agreement will be binding on and will inure to the benefit of the Parties and each of their successors and assigns. Neither Party may, or will have the power to, assign this Agreement without the prior written consent of the other, except that BAM TRADING may assign its rights and obligations under this Agreement without the approval of BINANCE, to an entity that acquires all or substantially all of the assets of BAM TRADING, to an Affiliate, or to a successor in a merger or acquisition of BAM TRADING.

**10.4** <u>Entire Agreement</u>. This Agreement, including all Exhibits attached hereto, constitutes the entire understanding and agreement of the Parties. If any provision herein is determined to be void or unenforceable in whole or in part for any reason whatsoever, such unenforceability or invalidity will not affect the enforceability or validity of the remaining provisions or parts contained in this Agreement and such void or enforceable provisions will be deemed to be severable from any other provisions or parts herein contained.

**10.5** <u>Interpretation</u>. In this Agreement, unless the context otherwise requires, (A) words importing the singular shall include the plural and vice versa and words importing the masculine gender shall include the feminine and the neuter and vice versa; (B) references to Sections and Exhibits are to Sections of and Exhibits to this Agreement; (C) a reference to "including" means including without limiting the generality of any description preceding such term and any general statement followed by or referable to an enumeration of specific matters shall not be limited to matters similar to those specifically mentioned; (D) references to any enactment shall be deemed to include references to such enactment as re-enacted, amended, supplemented, restated or extended from time to time; and (E) where any expression is defined or the interpretation of it is set out herein, other parts of speech of such expression shall have a corresponding meaning References to and the use of the word "days" will mean calendar days, unless otherwise specified. The Section headings are used for convenience only and will not affect the construction or interpretation of this Agreement. The Exhibit forms part of this Agreement and will have the same force and effect as if it was expressly set out in the body of this Agreement and any reference to this Agreement will include the Exhibit.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BAM    BTS00039050

**10.6** Governing Law. The validity, interpretation, construction and performance of this Agreement will be governed by the laws of the State of New York without regard to the choice of law principles thereof.

**10.7** Arbitration. Without limiting the right of a Party to seek specific performance, injunctive relief or any other equitable remedy in connection with any alleged breach of Section 5, any dispute, controversy or claim arising out of or relating to this Agreement or its subject matter (including a dispute regarding the existence, validity, formation, effect, interpretation, performance or termination of this Agreement) (each, a "Dispute") will be finally settled by arbitration. The place of arbitration will be Hong Kong, and the arbitration will be administered by the Hong Kong International Arbitration Centre (the "Center") in accordance with the Center's Administered Arbitration Rules in force when the notice of arbitration is submitted (the "Rules"). The arbitration will be decided by a tribunal of three arbitrators to be appointed in accordance with the Rules. Arbitration proceedings (including any arbitral award rendered) will be in English. The tribunal will decide any dispute submitted by the Parties strictly in accordance with the substantive law of the State of New York and will not apply any other substantive law. Subject to the agreement of the tribunal, any Dispute(s) which arise subsequent to the commencement of arbitration of any existing Dispute(s) will be resolved by the tribunal already appointed to hear the existing Dispute(s). The award of the arbitration tribunal will be final and conclusive and binding upon the Parties as from the date rendered. Judgment upon any award may be entered and enforced in any court having jurisdiction over a party or any of its assets. For the purpose of enforcing this agreement to arbitrate, the Parties irrevocably and unconditionally submit to the jurisdiction of the courts of Hong Kong and waive any defenses to such enforcement based on lack of personal jurisdiction or inconvenient forum. For the purpose of enforcement of an award, the Parties irrevocably and unconditionally waive any defense of inconvenient forum in any court of competent jurisdiction.

**10.8** Waiver of Default. No waiver by any Party of any of the provisions of this Agreement will be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party will operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement will operate or be construed as a waiver thereof, nor will any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**10.9** Export Controls. The Parties acknowledge that the Deliverables may be subject to export controls under the Applicable Laws of the United States and other countries. Without limiting the Parties' other obligations under this Agreement, neither Party will export or re-export any such items or any direct product thereof or undertake any transaction in violation of any Applicable Laws. BINANCE will be responsible for, and will coordinate and oversee, compliance with such Applicable Laws in respect of such items exported or imported hereunder.

9

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BAM

BTS00039051

IN WITNESS WHEREOF, BAM TRADING AND BINANCE have each caused this Agreement to be signed and delivered by its duly authorized officer, all as of the Effective Date.

| **BAM TRADING SERVICES INC.** | **BINANCE HOLDINGS LIMITED** |
|---|---|
| DocuSigned by: *Catherine Coley* — 62D54DDC0A8942C... <br> Signature | DocuSigned by: *Changpeng Zhao* — 48787FC11E74433... <br> Signature |
| Catherine Coley <br> Name | Changpeng Zhao <br> Name |
| CEO            1/7/2020 <br> Title            Date | CEO            1/7/2020 <br> Title            Date |

[SIGNATURE PAGE TO SOFTWARE LICENSE AGREEMENT]

# Exhibit A
# Specifications

BINANCE's digital currency trading platform consisting of the following modules, as may be modified or improved from time to time:

1. Digital currency exchange platform;
2. Matching engine;
3. Digital currency wallet services;
4. Android mobile application;
5. iOS mobile application;
6. "MIS" management console;]
7. User center;
8. Risk control center; and
9. And all other related pages, components, modules, scripts, programs and software in support of the foregoing modules.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BAM

BTS00039053