# EXHIBIT A-68

WILMERHALE

William R. McLucas

+1 202 663 6622 (t)
+1 202 663 6363 (f)
william.mclucas@wilmerhale.com

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY
BAM TRADING SERVICES INC. PURSUANT TO
17 C.F.R. § 200.83 AND 5 U.S.C. § 552**

May 26, 2023

**By Email and Secure File Transfer**

Jorge Tenreiro, Esq.
Deputy Chief, Crypto Asset and Cyber Unit
Division of Enforcement
U.S. Securities and Exchange Commission
100 Pearl Street, Suite 20-100
New York NY.  10004-2616

> Re:    **In the Matter of Binance.US (HO-13865)**

Dear Mr. Tenreiro:

We write on behalf of BAM Trading Services Inc. ("BAM Trading" or the "Company") to supplement our May 25, 2023 letter and provide further information regarding the fiat currency and digital (crypto) assets BAM Trading holds on behalf of its customers and to respond to the questions posed in your May 24, 2023 email request.  We understand, based on our discussions with the Company that, as set forth below, customers' assets are secure, appropriately segregated, and available for immediate withdrawal, subject to transaction limits imposed by the Company's banking partners and, for staked assets, any applicable unbonding periods.

**Request Item 1**:   *The total amounts of Binance.US customer assets (both crypto and fiat) held and/or controlled by BAM Trading, Changpeng Zhao, Binance Holdings Limited, Prime Trust LLC, or any other entity or individual.*

As of May 24, 2023, BAM Trading held custody of $377,908,434 customers' fiat currency and $2,246,204,447 of customers' digital assets.  While BAM Trading's wallet architecture relies on software provided under license by Binance Holdings Limited ("BHL"), neither Changpeng Zhao nor Binance Holdings Limited ("BHL") have control over any of BAM Trading's customers' assets.

The Company has historically used Prime Trust LLC ("Prime Trust") as one of its banking partners.  As of May 25, 2023, the Company holds approximately $9,830,818.40 of customer fiat in segregated accounts at Prime Trust.  BAM Trading expects to fully transfer these funds to other institutions by the week of June 5, 2023.

Wilmer Cutler Pickering Hale and Dorr LLP, 2100 Pennsylvania Avenue NW, Washington DC 20037

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

Jorge Tenreiro, Esq.
May 26, 2023

WILMERHALE

**Request Item 2**:   *Whether the 2022 audits for BAM Trading and BAM Management US Holdings Inc. have been completed and please provide copies if they have.*

FGMK LLC ("FGMK") was retained on January 5, 2023 and completed its 2022 audit of BAM Trading. on May 10, 2023.  A copy is attached at BTS00833798 to BTS00833823.  FGMK's audit of BAM Management US Holdings Inc. is ongoing and we expect that it will be completed in the next several weeks.

As reflected in Note 3 to BAM Trading's 2022 audited financials, FGMK identified the Wallet Custody Agreement as a related-party transaction with BHL.   The note summarizes the terms of the express agreement, noting that the "Company selected BHL to serve as a custodian to the Company with respect to the crypto assets in any custody account.  This agreement specified the terms of the relationship the Company would have with BHL as the custodian.  This agreement was terminated as of December 1, 2022.  Effective December 1, 2022, the Company is the custodian of its crypto assets and continues to license the wallet custody software under the Software License Agreement following the termination of the Wallet Custody Agreement."

We understand that this conclusion was based solely on the express terms of the Wallet Custody Agreement and its subsequent termination and that FGMK did not undertake to determine whether the Wallet Custody Agreement actually governed how BAM Trading custodied assets on behalf of its customers.  We further understand that FGMK's conclusion was not based on a legal assessment of the facts of BAM Trading's custody practices.  As we have previously described, the Wallet Custody Agreement was not actually implemented and the termination of that agreement in December 2022 did not result in any changes to BHL's access to or control over assets held on behalf of BAM Trading's customers.  Accordingly, we continue to believe that BAM Trading has maintained legal custody and control over its clients' assets since well before the December 2022 termination of the Wallet Custody Agreement.

**Request Item 3**:   *The public blockchain addresses for all wallets currently holding Binance.US customers' crypto assets.*

We are providing lists reflecting the public blockchain addresses for BAM Trading's omnibus hot wallets and omnibus cold wallets, including wallets used to facilitate the Company's staking program.  Copies are enclosed at BTS00833824 to BTS00833829.

Please note that these lists do not include user-specific deposit wallets.  As we have previously described, BAM Trading automatically creates user-specific deposit wallets for each user that deposits assets on the BAM Trading platform from an external wallet.  For each such user, the Company assigns deposit wallets for each blockchain supported by the BAM Trading platform, even if the user is only depositing assets relying on a subset of those blockchains.   As a result, there is a significant number of deposit wallets associated with individual customers, some of which hold digital assets and many of which that hold no assets.  We are happy to provide that

*Confidential Treatment Requested by BAM Trading Services Inc.*                    BAM-WH-CORR-031

WILMERHALE

Jorge Tenreiro, Esq.
May 26, 2023

information to the Staff in a future production, but have omitted it here in the interests of timely responding to your requests.

**Request Item 4 & 7**:  *The custody and control arrangements for all crypto assets and private keys (including, but not limited to, protocol information for the control and authorization of transfer of crypto assets; identification and location of key shard holders and whether they are currently or were formerly employed by Binance Holdings (or other Binance entity); location of any hardware wallets; and Zhao's and Binance Holdings' respective roles and authority over crypto assets held and/or controlled on behalf of Binance.US customers and BAM Trading, including any authority – whether formal or informal – to transfer crypto assets); and  Details on how Binance.US customer assets (both crypto and fiat) are segregated from BAM Trading's, BAM Management's, or any affiliated entity's or individual's assets; [and] [d]etails on how Binance.US customer [crypto] assets [] are segregated from BAM Trading's, BAM Management's, or any affiliated entity's or individual's assets.*

The following summarizes how BAM Trading maintains custody of customer crypto, followed by a summary of how it holds customer digital assets in the normal course and as part of its staking program.

A.      *Default Custody Protocols*

As we have previously described, BAM Trading maintains control of its customers' digital assets.  As of today, the Company holds all unstaked customer and proprietary digital assets in wallets maintained in an Amazon Web Services ("AWS") datacenter in Northern Virginia. Individual holdings are tracked via an internal ledger and regularly reconciled against the public blockchain balances for the Company's wallets.  The AWS account holding these wallets is associated with BHL.  However, as described below, BAM Trading maintains exclusive control over the movement of these assets and no BHL personnel have the ability to change the permissions for BAM Trading's wallets.

Digital assets deposited by customers from external wallets are held in customer-specific "deposit wallets."  If the balance of these wallets exceeds predefined thresholds, set exclusively by BAM Trading personnel, assets are transferred from the customer-specific deposit wallet to an omnibus "hot wallet."  These hot wallets are used to conduct on-chain activity associated with BAM Trading's business, including transferring customers' digital assets to external wallets. Customer initiated transfers of less than $1 million (which may vary due to customer-level KYC attributes) are automatically approved by BAM Trading's system.  Transactions larger than $1 million (or the customer-specific limit) must be manually approved by a member of BAM Trading's Clearing team.  BAM Trading has configured its hot wallets to hold approximately five-times the daily-average transaction volume for each asset listed on the BAM Trading platform.

If the balance held in a hot wallet exceeds the thresholds set by Company personnel, the excess balance is automatically transferred to one of BAM Trading's cold wallets.  These cold

WILMERHALE

Jorge Tenreiro, Esq.
May 26, 2023

wallets rely on Threshold Signature Scheme ("TSS") encryption to securely hold assets when they are not immediately needed to conduct on-chain transactions or to facilitate transfers off the platform.

The Company's TSS protocol is currently configured to rely on seven "key shards." Four shards are held by BAM Trading personnel; the remaining three shards are held by BHL personnel for disaster recovery purposes. Three of the BAM Trading shardholders are located in Canada, two of whom previously worked for BHL; the fourth is located in the United States.[1] Four shards are required to approve any transfers from the cold wallets. As a result, no transfers may be initiated without the involvement of at least one BAM Trading employee. BAM Trading's cold wallets are further configured to only permit transfers to a list of preapproved wallets. This list includes only the Company's hot wallets and wallets used to facilitate the Company's staking program. Adding additional "whitelisted" wallets requires the unanimous approval of all shardholders.

All of the customer assets maintained in the Company's deposit wallets, hot wallets, and cold wallets are unencumbered and available for immediate withdrawal.

B.    Staking Custody

As the Staff is aware, BAM Trading also offers an opt-in staking program. Assets staked as part of this program are held in one of three ways:

First, certain assets are staked from other TSS-enabled wallets in AWS's Northern Virginia datacenters. The TSS protocol for these staking wallets relies on four key shards. For each wallet, two shards are held by BAM Trading and two shards are held by BHL; two shards are required to authorize a staking operation. Like the Company's cold wallets, the TSS-enabled staking wallets are further configured to only permit transfers to a list of preapproved wallets and adding additional "whitelisted" wallets requires the unanimous approval of all shardholders.

Second, certain assets are staked from a Ledger hardware device. This device is currently maintained in a safe-deposit box in Singapore that is exclusively accessible to BAM Trading personnel. The Company expects to transition all assets from the Ledger device by no later than mid-July. Most of these assets will be transitioned to TSS-enabled staking wallets, but, as described below, some will be transferred to wallets maintained by third-party custody providers.

Third, as noted above, BAM Trading is currently in the process of transitioning custody of certain assets, including assets on the Ledger device, to Bitgo and Aegis Custody, third-party

---

[1]    On our March 9, 2023 call we indicated that two of the shardholders were located in Canada and two were located in the United States. As noted above, there is only one U.S.-based shardholder. In addition, at the time, one of the shardholders currently based in Canada was in the process of relocating from Shanghai. The Company understood that the process was complete at the time we spoke on March 9, 2023. However, we have since learned that this individual did not relocate until April 22, 2023. This individual is a former BHL employee.

*Confidential Treatment Requested by BAM Trading Services Inc.*        BAM-WH-CORR-033

WILMERHALE

Jorge Tenreiro, Esq.
May 26, 2023

digital asset custody services. These wallets are solely used for the Company's staking program and directed solely by BAM Trading personnel. The private keys for these wallets are held by BAM Trading and Bitgo and Aegis Custody, respectively. All transfers require the approval of both BAM Trading and, as appropriate, Bitgo or Aegis Custody.

Customers retain title to assets staked through any of these methods. Assets enrolled in the program are also available for immediate withdrawal, subject to any applicable unbonding periods established by the relevant protocol. As with the Company's staked assets, the Company regularly reconciles the balances of its staking wallets against its internal ledger.

**Request Item 5**:   *Details of accounts (bank account numbers and amounts) where segregated (or non-segregated, if any) client fiat assets are held.*

BAM Trading maintains customers' fiat currency in segregated accounts at Axos Bank and Prime Trust. Certain customer fiat assets are also held in segregated accounts held for the benefit of BAM Trading's customers by Nuvei and Orum, its payment processors. In addition, BitGo holds certain customer fiat in a segregated account for the benefit of BAM Trading's customers.

We are providing a summary of these accounts at BTS00833830, which provides the balance, accounting number, and purpose for each account. This summary also reflects the accounts holding the Company's corporate funds. As reflected in the summary, there is no commingling of corporate and customer fiat currency.

**Request Item 6 & 7**:   *Custody and control arrangements over customer fiat (including information sufficient to prevent dissipation of assets, identification of individuals with authorization to transfer assets); [and] [d]etails on how Binance.US customer [fiat] assets [] are segregated from BAM Trading's, BAM Management's, or any affiliated entity's or individual's assets.*

BAM Trading maintains customers' fiat currency in segregated accounts maintained with its banking partners, separate from any corporate funds. BAM Trading personnel control all transfers of fiat currency out of the Company's accounts. Customers may direct transfers of fiat currency held in their name off of the platform; transfers below predefined thresholds, set exclusively by BAM Trading personnel or its banking partners, are automatically approved by BAM Trading's systems. Larger transfers, either for the benefit of a specific customer or as part of the Company's cash management activities, may only be approved by a small number of BAM Trading executives. No Binance.com or BHL personnel may approve transfers of fiat currency held on behalf of BAM Trading customers.

Brian Schroder, BAM Trading's Chief Executive Officer, and Jasmine Lee, its Chief Financial Officer, are the only signatories authorized to move funds from BAM Trading's Prime Trust accounts. While Mr. Zhao is technically a signatory on the Company's Prime Trust accounts, he does not have authority to independently move assets. Prime Trust would not effectuate a transfer request initiated by Mr. Zhao without authorization from Ms. Lee. With respect to Axos

Jorge Tenreiro, Esq.
May 26, 2023

WILMERHALE

Bank, Mr. Shroder and Ms. Lee are the only signatories on all but one account.  The exception is an account held at Axos Bank by one of BAM Trading's affiliates, B.US Securities Inc, for which Sara Andres and David Martin are the authorized signers.

Customer fiat deposits are maintained as fiat currency until the customer uses the funds to purchase digital assets or transfers the funds off the platform.  BAM Trading has never had a practice of automatically converting customer fiat deposits to stablecoins or other digital assets. All customer fiat currency is unencumbered and available for immediate withdrawal, subject to any periodic transaction-volume limits imposed by the Company's banking partners.

*       *       *

BAM Trading requests that this letter and all information contained therein (the "Confidential Material") be maintained in confidence by the SEC and its staff and be used solely for the purposes of this inquiry.  Accordingly, the Confidential Material has been marked "Confidential Treatment Requested by BAM Trading Services Inc." for reasons of personal privacy and business confidentiality.

The Confidential Material concerns or may concern customarily non-public, confidential and privileged business, financial, commercial, and personal information concerning BAM Trading and/or its personnel.  The Confidential Material is exempt from mandatory disclosure under various provisions of the Freedom of Information Act ("FOIA"), including 5 U.S.C. § 552(b)(7) (which protects certain "records or information compiled for law enforcement purposes"),[2] 5 U.S.C. § 552(b)(4) (which protects trade secrets as well as confidential commercial or financial information obtained from a person), 5 U.S.C. § 552(b)(6) (which protects files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"),[3] and 5 U.S.C. § 552(b)(7) (which protects records or information compiled for law enforcement purposes).  Because the Confidential Material relates to the activities of BAM Trading and not the activities of any federal agency, we believe it is exempt from disclosure under FOIA.[4]  The Commission treats records falling within the FOIA exemption categories to be "nonpublic" and "will generally not publish or make available to any person" such records.  17 C.F.R. § 200.80(b). Moreover, disclosure of this Confidential Material may be prohibited under 18 U.S.C. § 1905, and further protections may be available under the Privacy Act of 1974, 5 U.S.C. § 552a.  Finally, the Confidential Material being produced voluntarily is protected from disclosure because it would not customarily be released to the public by BAM Trading.[5]

---

[2]      See, e.g., NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978).

[3]      See, e.g., U.S. Dep't of Def. v. Federal Labor Relations Authority, 510 U.S. 487 (1994).

[4]      5 U.S.C. §§ 552(b)(6) and (b)(7)(C); U.S. Dep't of Def., supra; see, e.g., U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 449 (1989).

[5]      See, e.g., Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871 (D.C. Cir. 1992), cert. denied, 507 U.S. 984 (1993).

Jorge Tenreiro, Esq.
May 26, 2023

**WILMERHALE**

In accordance with 17 C.F.R. § 200.83 and other applicable laws and regulations, the Confidential Material is submitted to the SEC with BAM Trading's request, through the undersigned, that it be kept in a non-public file and that only SEC staff have access to it.  If any person not a member of the SEC staff (including without limitation any governmental employee) should request an opportunity to inspect or copy the Confidential Material, pursuant to FOIA or otherwise, or if you or any member of the SEC staff contemplates disclosure of the Confidential Material to any other person, we request that the undersigned immediately be notified of such request, be furnished a copy of all written materials pertaining to such request (including but not limited to the request itself), and be given advance notice of any intended release so that we may, if deemed necessary or appropriate, pursue any remedies available.  *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).  We expect to be given the opportunity to object to such disclosure. We request that you telephone the undersigned rather than rely upon the U.S. mail for such notice.

Should the SEC be inclined to grant any FOIA request for the Confidential Material, BAM Trading expects that the procedures set forth in 17 C.F.R. § 200.83 and Executive Order 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), will be followed.  In that case, BAM Trading will further substantiate its request for confidential treatment, and will request a hearing on the claim of exemption.

The requests set forth in the preceding paragraphs also apply to any form of communication of any sort, including, but not limited to any tapes, memoranda, notes, transcripts, electronic documents, or communications containing extracts, summaries, or quotes,  or other writings of any sort whatsoever that are made by, or at the request of, any employee of the SEC (or any other governmental agency) and which (1) incorporate, include or relate to any of the Confidential Material; or (2) refer to any conference, meeting, or telephone conversation between BAM Trading, its current or former employees, representatives, agents, auditors, or counsel on the one hand and employees of the SEC (or any other government agency) on the other, relating to the Confidential Material.

The Confidential Material remains the property of BAM Trading.  If the SEC staff determines to transfer any of the Confidential Material to another federal agency, we request that you forward a copy of this letter to any such agency with the Confidential Material.  We request that you indicate to any such agency that BAM Trading has requested the return of this material to the undersigned at the completion of the agency's efforts in this matter and has requested that this material be accorded confidential treatment.

Provision of the Confidential Material is not intended to, and does not, waive any applicable privilege or other legal basis under which information may not be subject to production. If it were found that production of the Confidential Material constitutes disclosure of otherwise privileged matters, such disclosure would be inadvertent.  By the productions of such documents, BAM Trading does not intend to and has not waived the attorney-client privilege or any other protections.

\*        \*        \*

*Confidential Treatment Requested by BAM Trading Services Inc.*          BAM-WH-CORR-036

WILMERHALE

Jorge Tenreiro, Esq.
May 26, 2023

     Please feel free to contact me if you have any questions about these matters.

Sincerely,

/s/ William R. McLucas
William R. McLucas

*Confidential Treatment Requested by BAM Trading Services Inc.*       BAM-WH-CORR-037