# EXHIBIT A-69

# WILMERHALE

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY BAM TRADING SERVICES INC. PURSUANT TO 17 C.F.R. § 200.83 AND 5 U.S.C. § 552**

William R. McLucas

+1 202 663 6622 (t)
+1 202 663 6363 (f)
william.mclucas@wilmerhale.com

June 2, 2023

**By Email**

Jennifer Farer, Esq.
Senior Trial Counsel
Division of Enforcement
U.S. Securities and Exchange Commission
100 F St NE
Washington, DC 20549

Re: **In the Matter of Binance.US (HO-13865)**

Dear Ms. Farer:

We write on behalf of BAM Trading Services Inc. ("BAM Trading" or the "Company") in further response to your May 30, 2023 request seeking additional information regarding the fiat currency and digital (crypto) assets BAM Trading holds on behalf of its customers. It is the Company's top priority to protect customers and to avoid anything that might cause unwarranted panic in the already volatile crypto market. We reiterate, based on our discussions with the Company that, as set forth below, customers' assets are secure, appropriately segregated, and available for immediate withdrawal, subject to transaction limits imposed by the Company's banking partners and, for staked assets, any applicable unbonding periods.

Today we are responding to Items 1, 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 (excluding 18(i), which was provided in our June 1 letter), 19, 20, 21, 22, 24 of your request. We are making every effort to ensure that our responses are complete and accurate notwithstanding the extremely short deadlines allotted to provide this information. We will supplement our responses to the extent that we identify any additional responsive information. The Company remains ready to provide additional information the Staff may need to understand how the Company maintains custody of its clients' assets and to assure you that those assets are safe, secure, and immediately available to satisfy customers' requests to withdraw or transfer assets.

**Request Item 1(a)**: *We calculate $350,567,770 when we total the values of accounts holding customer funds set forth in BTS00833830. But your Letter states, as of May 24, 2023,*

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023

*BAM Trading held custody of $377,908,434 customer fiat. Explain the $27 million discrepancy between these two amounts.*

The $377,908,434 figure provided in our May 26, 2023 letter and the $350,567,770 figure in the account extracts provided at BTS00833830 provide snapshots of the Company's custodial fiat balances as of two different points in time. The $377,908,434 figure provided in our May 26, 2023 letter was taken from the Company's internal reporting tool, which provides end-of-day balances on a T+2 basis. As relevant here, that figure reflects the Company's end-of-day custodial fiat balances as of May 23, 2023. The $350,567,770 total reflected in BTS00833830 reflected the balances in each relevant bank account at a point in time on May 25, 2023.

The difference between the two figures represents a normal timing difference that arises from U.S. banking functions, including previous day carryover, chargebacks, and rollback deposits.

**Request Items 1(b) & 4**: *Identify the account(s) in which the additional funds are held, the individuals who have any control over these funds, and the individuals with any authority to transfer and/or withdraw funds; and account information for those accounts at Cross River Bank, Customers Bank, Fresno First Bank, and Silicon Valley Bank referenced in BTS00833830 that are holding customer fiat currency, including account number, account holder, identity of signatory and/or anyone with control and/or authority to transfer or withdraw funds, and all terms relating to the authorization to transfer or withdraw funds.*

As noted above, the $27 million figure does not represent an additional source of funds. The table below reflects each of the bank or payment processor accounts currently used to hold fiat on behalf of BAM Trading's customers. For each processor account, we are providing the entity BAM Trading has the relationship with, the account I.D. with the entity, and the BAM Trading personnel[1] authorized to transfer and/or withdraw funds from the accounts.

As reflected below, BAM Trading maintains customer fiat directly at Axos Bank. It also has relationships with certain third-party payment processors (i.e., fintech bank partners), who provide various money transmissions services and access to banking services for BAM Trading's customers. Currently, these institutions are BitGo Trust Company Inc. ("BitGo"), Nuvei US LLC ("Nuvei"), Orum Money Movement ("Orum"), Wyre Payments Inc. ("Wyre"), and, until very recently, Prime Trust, LLC ("Prime Trust"). BAM Trading maintains accounts and relationships with each of these payment processors, which in turn have custodial relationships with various bank partners. Under these arrangements, BAM Trading or a BAM Trading customer transfers funds to the payment processor, which then transfers the funds into the payment processor's bank account held for the benefit of the payment processor's customers. Designated personnel at the respective payment processors serve as direct signatories on the bank accounts held in the processor's name. However, BAM Trading personnel are the only individuals with authority to

---

[1] BAM Trading personnel are employed by BAM Management US Holdings Inc. ("BAM Management").

WilmerHale

Jennifer Farer, Esq.
June 2, 2023

initiate transfers of funds held at those accounts on behalf of its customers by the payment processor. BAM Trading does not have a direct relationship with the payment processors' banks.

| Relationship Entity | Account I.D. | Transfer Authority |
|---|---|---|
| Axos Bank | ▇▇▇▇▇▇ | Authorized Account Signatories:<br>• Brian Shroder<br>• Jasmine Lee |
|  | ▇▇▇▇▇▇ | Authorized Account Signatories:<br>• Brian Shroder<br>• Jasmine Lee |
|  | ▇▇▇▇▇▇ | Authorized Account Signatories:<br>• Brian Shroder<br>• Jasmine Lee |
| Prime Trust[2] (partners with Cross River Bank) |  | Authorized Account Owners:<br>• Brian Schroder<br>• Jasmine Lee<br><br>Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman<br>• Tyrell Long |
| BitGo (partners with Customers Bank) | ▇▇▇▇▇▇▇▇▇▇▇▇ | Authorized Account Owners:<br>• Katrina Fava<br>• Jason Perman |

---

[2] As noted below in response to Item 1(c), Changpeng Zhao is not a signatory on the Prime Trust account. Since our May 26, 2023 letter, the Company contacted Prime Trust to determine the exact scope of Mr. Zhao's legacy authority on the account. Through that exercise, BAM Trading determined that Mr. Zhao is not a signatory on the Prime Trust account and does not have the ability to move or withdraw funds from the account.

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023

| Relationship Entity | Account I.D. | Transfer Authority |
|---|---|---|
| Orum (partners with Silicon Valley Bank) | ■■■■■■■■■■■■■■ | Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman<br>• Tyrell Long<br>• Brian Shroder<br>• Jasmine Lee |
| Nuvei (partners with Fresno First Bank) | ■■■ | Authorized Account Owners:<br>• Brian Shroder<br>• Jasmine Lee<br><br>Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman |
| Wyre | ■■■■■■■■ | Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman<br>• Tyrell Long<br>• Brian Shroder<br>• Jasmine Lee |

**Request Item 1(c)**: *Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, or any Zhao-owned or –controlled entity has authority, formally or informally, directly or indirectly, to control, transfer, or withdraw these funds.*

Neither Mr. Zhao nor anyone acting on his behalf or on behalf of any entity that he controls has the ability to directly or indirectly control, transfer, or withdraw fiat assets held on behalf of BAM Trading's customers.[3] In our May 26 letter, we indicated that Mr. Zhao is a signatory on the Prime Trust account but this is not the case. Following last week's submission, the Company

---

[3] As you are aware, Mr. Zhao directly or indirectly owns the Company and BAM Management. However, for purposes of this response and other items seeking similar information, we assume that you are asking about Mr. Zhao or other entities that he owns or controls, and not whether BAM Trading personnel have control over the Company's accounts.

*Confidential Treatment Requested by BAM Trading Services Inc.*   BAM-WH-CORR-050

**WilmerHale**

Jennifer Farer, Esq.
June 2, 2023

contacted Prime Trust to determine the exact scope of Mr. Zhao's authority for the account. Through that exercise, Prime Trust confirmed that Mr. Zhao is not a signatory on the account. The Prime Trust account is now closed and more broadly Mr. Zhao is not currently a signatory and does not have authority to directly or indirectly transfer or withdraw funds from any of the Company's accounts that hold fiat currency on behalf of customers.

**Request Item 9**: *Provide customer deposit wallet addresses for Zhao and any Binance or BAM-affiliated entity, including, but not limited to, Merit Peak, and Sigma Chain.*

We are providing a spreadsheet reflecting the deposit wallets associated with Merit Peak and Sigma Chain on the BAM Trading platform at BTS00833832 to BTS00833835. The Company is not aware of any other deposit wallets associated with Mr. Zhao, BHL, or other entities controlled by Mr. Zhao.

**Request Item 10**: *Explain what it means to be "associated with BHL" in your Letter's response to Request 4 & 7, stating, "The AWS account holding these wallets is associated with BHL."*

As previously described to the Staff and reiterated in our May 26 letter, BAM Trading maintains all unstaked customer and proprietary digital assets in wallets maintained in an Amazon Web Services ("AWS") datacenter in Northern Virginia using software licensed from BHL. An instance of the BHL wallet custody software runs in a dedicated AWS environment that we understand is solely used to maintain custody of digital assets for BAM Trading. The Company understands that BHL established this AWS environment on behalf of BAM Trading pursuant to the Software License Agreement.

BHL does not have access to or control over the digital assets maintained in that AWS environment. As we have described, BAM Trading has ultimate control over the digital assets maintained in its dedicated instance of the BHL wallet custody software. The wallet custody software automatically transfers funds from deposit wallets to hot wallets, and hot wallets to cold wallets based on predefined thresholds within the exclusive control of BAM Trading personnel. While the private keys used to perform these automatic transfers are maintained within the AWS environment established by BHL, those private keys are controlled by BAM Trading's PNK database, which runs in a parallel AWS environment opened in its name.

No BHL personnel can currently initiate or approve transfers from BAM Trading's PNK system. Further, as we have described, transfers of assets from cold wallets to hot wallets must be approved by at least one designated BAM Trading shard holder. Designated BAM Trading personnel must also personally approve external transfers of larger than $1 million (or the customer-specific limit) through PNK.

Access to the AWS environment does not provide BHL any access to the underlying assets, BAM Trading's PNK system, or give it the ability to modify how BAM Trading has configured its instance of the wallet custody software. Because BHL personnel were involved in initially

*Confidential Treatment Requested by BAM Trading Services Inc.*                    BAM-WH-CORR-051

Jennifer Farer, Esq.
June 2, 2023

**WilmerHale**

setting up BAM Trading's AWS environment in 2019, a senior BHL developer has access to the root account for this AWS environment. This account is not used to operate or maintain the AWS environment but instead is used to establish accounts for other users, which are in turn used to manage the environment. BAM Trading has controls that generate alerts whenever the root account is accessed. The root account does not provide access to PNK or otherwise provide the root account holder access to any funds held by BAM Trading on behalf of its customers.

**Request Item 11**: *Provide the name, contact information, employment history, and any agreement with Zhao, BAM Trading, BAM Management, Binance Holdings, or any Zhao-owned or –controlled entity for all individuals who have possession and/or any access, authority, or control over BAM Trading and BAM Management accounts, crypto asset wallets, and/or any customer fiat or customer crypto assets. This response should include the date when any key or key shard holder who was a former Binance Holdings employee ended employment with Binance Holdings and started employment with BAM Trading or BAM Management.*

We identified the BAM Trading personnel that have access to or control over fiat currency held on behalf of the Company's customers in response to Items 1(c) and 4. These individuals are all employed by BAM Management and act on behalf of BAM Trading. None of these individuals is currently or formerly associated with BHL and none of these individuals have any agreements with Mr. Zhao or other entities he controls.

As noted above in response to Item 10, transfers of customer assets from BAM Trading's TSS-enabled cold wallets to hot wallets requires the approval of at least four of the seven TSS key shards. We will provide a table identifying the current BAM Trading key shard holders in response to Item 18. As we described in our May 26, 2023 letter, two of these individuals were previously employed by BHL. We understand that the three key shards held by BHL are held by current BHL employees.

Transfers of digital assets from BAM Trading's hot wallets to external wallets are controlled by the PNK system. Transfers of digital assets valued less than $1 million (or the customer specific limit) are automatically approved by the PNK system, without real-time human intervention. As set forth in Section 5.2 of the Binance.US Digital Asset & Custody Operations Policy, transfers of digital assets valued at more than $1 million (or the customer specific limit) must be manually approved by designated members of the BAM Trading Clearing team. The Clearing team, which reports to the Company's Treasurer, has six members, only one of which was formerly employed by BHL. That individual has worked for the Company since June 2021.

**Request Item 12**: *Explain the policies or procedures, formal or informal, that govern or relate to the control of key shards for BAM customer assets, including but not limited policies for contingencies in the event any key or key shard is lost or stolen.*

BAM Trading has adopted the Binance.US Digital Asset & Custody Operations Policy to govern its process for managing customers' digital assets. This policy defines the types of wallets

WilmerHale

Jennifer Farer, Esq.
June 2, 2023

used to maintain customers' digital assets, the methodology for moving assets between those wallets, and the personnel responsible for performing those actions. A copy is enclosed at BTS00833836 to BTS00833853.

At the highest level, BAM Trading ensures the integrity of the TSS encryption protocol by segregating the process for initiating a transfer and the process for approving it. Currently, transfers from BAM Trading's cold wallets to its hot wallets must be initiated via a request by an authorized member of the BAM Trading Clearing team. This request is sent by an authorized member of the BAM Trading Clearing team to authorized members of BHL's security team. The designated BHL personnel then issue the TSS request to the key shard holders, via an application on a dedicated mobile device. Four of the seven key shard holders, including at least one BAM Trading shard, must then approve the proposed transaction. Two of BAM Trading's key shard holders are members of the Clearing team and would immediately identify any unauthorized TSS requests.[4]

To further increase the security of the system, BAM Trading keeps the identities of each key shard holder hidden from both the Clearing team and the other shard holders. This ensures that a single individual, on their own, does not have the authority to both initiate and approve a transfer and that no single individual knows the identities of other persons with sufficient authority to collectively perform those actions. Further, if a key shard device is lost or stolen, the corresponding key shard is locked and deactivated and a new key shard device will be activated and distributed to the key shard holder.

**Request Item 13**: *Explain the insurance or other protections in place if a key or key shard holder violates his or her duties or responsibilities with respect to customer crypto assets.*

As we have explained, a key shard holder can either approve, deny, or take no action when a request for a transfer comes to the key shard device. The system is intentionally designed such that no single individual can undertake actions that result in the unauthorized movement of assets either within or from BAM Trading's system. These controls are further bolstered by the fact that the movement of digital assets from cold to hot wallets occur on the blockchain, where actions are publicly visible and any unauthorized transactions would generate immediate alerts and investigations by the Company's Investigations, Information Security, and Risk teams.

We are not aware of any instances in which a shard holder has attempted to take unauthorized actions with respect to the Company's digital assets. If such an action occurred, or if a shard holder regularly failed to approve authorized transactions, the Company would take action to recover or disable the individual's shard.

---

[4] As we have previously described, even if an authorized request was processed, the effect would be limited: assets can only move from cold wallets to BAM Trading's whitelisted hot wallets or staking wallets, which are exclusively controlled by the Company. Accordingly, even if an unauthorized request occurred, there would be no way to transfer the affected assets off the platform.

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023

**Request Item 14**: *Identify all communication channels associated with all wallets governed a TSS protocol.*

We understand you to be asking for information regarding how the key shard holders can communicate with each other. As described in response to Item 12, BAM Trading's system is designed to keep the identities of the key shard holders anonymous. However, the dedicated mobile device that contains the key shard application also contains a proprietary secure messaging application that allows the shard holders to communicate pseudonymously.

**Request Item 15**: *Identify all preapproved wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred and whether any of these wallets are held or controlled by Binance Holdings, Zhao, or any Zhao-owned or affiliated entity, or any other individual.*

Enclosed at BTS00833854 to BTS00833857 is the list of all whitelisted addresses for each respective digital (crypto) asset network. As the chart reflects, the only whitelisted wallets for the Company's cold wallets are the Company's hot wallets and the Company's staking wallets. The only whitelisted wallets for the staking wallets are the Company's cold wallets and certain proprietary wallets used to hold the Company's portion of the rewards generated through the staking process.

None of the whitelisted wallets for either the Company's cold wallets or cold wallets are held or controlled by Mr. Zhao, BHL, or other entities controlled by Mr. Zhao.

**Request Items 16 & 18(h)**: *Provide records of all votes or authorization by shard holders for white listing, approving, or decommissioning wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred; [and] of all key shard holder authorizations for transfers of crypto assets made in the last two years, including, but not limited to, the time windows when requests for authorization are made.*

Enclosed at BTS00833858 is a chart reflecting the participation rate of each key shard in approving proposed transactions from BAM Trading's cold wallets or TSS-enabled staking wallets between March 2023 and June 2, 2023, when the Company implemented its current seven-shard TSS structure. This includes of votes to add or remove whitelisted wallets.

**Request Item 17**: *Define "staking operation" on page 4 of your Letter for which two key shards are required to authorize, including whether two shards can authorize transfers or withdrawals from staking wallets.*

To authorize a staking operation means to either delegate the governance rights for the tokens in the relevant wallet to a staking node, or to unstake those assets from the relevant node and transfer them to a whitelisted wallet. As noted above, the only whitelisted destinations from the Company's staking wallets are its associated cold wallets or the "fee wallets" used to hold the Company's portion of the staking rewards. Any of these actions requires the approval of two of

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023

the four key shards associated with the staking wallet. All four key shards would be needed to whitelist an additional wallet and transfer asset outside of BAM Trading's platform.

**Request Item 18(a)**: *For all unstaked assets: [i]dentify the Amazon Web Services account holder(s) for BAM unstaked crypto assets.*

As noted above, BHL has established a dedicated AWS account to operate the BHL wallet custody software pursuant to the Software License Agreement between BHL and BAM Trading.

**Request Items 18(c) & 18(d)**: *Identify all key shard holder keys, addresses, and attribution for each key shard; [and] how the key shards are held.*

As noted above, the key shard is effectively an application that runs on a dedicated mobile device. When a transaction is initiated, the PNK system issues shards of a multi-signature encryption key all seven shard holders. These keys are dynamic and are re-generated for each proposed transaction. The PNK system maintains records of which key shards vote to approve each transaction.

**Request Item 18(e)**: *Explain why Binance Holdings holds key shards for purposes of "disaster recovery."*

As previously described, the Company's TSS protocol is currently configured to rely on seven "key shards." Four shards are held by BAM Trading personnel; and the Company understands that the remaining three shards are held by BHL personnel for disaster recovery purposes. Specifically, in the event that one or more of BAM Trading's key shards is lost or comprised, the three BHL key shards can be used, along with at least one surviving BAM Trading key shard, to reconstitute the lost or comprised shards; this process can also be used to decommission a comprised shard. This ensures that even in the unlikely event that three of BAM Trading's key shards are simultaneously impaired, the Company can continue operating and moving assets to and from its cold wallets.

**Request Item 18(g)**: *Identify all threshold consensus or approval requirements, whether formal or informal, direct or indirect. For example, you have stated that 4 out of 7 shards are required to approve transfers from the cold wallet, but we want to know whether there are other requirements to authorize a transfer (including informal requirements), such as a Binance Holdings shard holder must be one of the 4, a Binance Holdings shard holder must sign first to indicate approval of a transfer, or Zhao or any individual with an agreement or other relationships with Binance Holdings, Zhao, or Zhao-owned or –controlled entity directs (or can direct) shard holders to transfer assets.*

As we noted above, as of today, all transfers from BAM Trading's cold wallets must be initiated in PNK by a duly authorized member of BAM Trading's Clearing team, which consists solely of BAM Trading personnel. After this request is issued, at least four of the seven shards must approve the transfer request. As a result, no transfers may be approved without the

*Confidential Treatment Requested by BAM Trading Services Inc.*                    BAM-WH-CORR-055

Jennifer Farer, Esq.
June 2, 2023

WilmerHale

involvement of at least one BAM Trading shard holder.  As noted above, only BAM Trading Clearing personnel are authorized to initiate transfers from BAM Trading's hot wallets and at least one BAM Trading shard holder must also approve those transfers.

**Request Item 19**: *For the wallet addresses you provided with your recent submission, identify all assets held in each wallet and the volume and value of each asset held in each wallet.*

We previously produced copies of BAM Trading's omnibus hot wallets and omnibus cold wallets at BTS00833824 to BTS00833829.  These addresses can be used to obtain the real-time balance information for each wallet using the respective networks block explorers.  For example, https://etherscan.io/ allows anyone to generate the real-time balance of any wallet maintained on the Ether blockchain.

We are happy to provide information regarding the historic balances in BAM Trading's wallets at any point in time.  However, because these wallets are actively used, any balance snapshots would become immediately stale.  Accordingly, we thought it was more productive to provide the Staff with the tools to obtain real-time and ongoing information regarding the balances in the Company's digital asset wallets, given the timing constraints on this response and the burden required to generate that information.  As noted, we are happy to provide balance information for any point in time in a future production.

**Request Item 20**: *Identify all wallet addresses that were shared, co-hosted, or used to transfer assets between Binance Holdings, BAM Trading, BAM Management, Zhao, and any Zhao or Binance-affiliated individual or entity, including Merit Peak and Sigma Chain.  The response to this request should include external wallets that are not accounts on either trading platform, deposit addresses, and transfers directly between storage wallets.*

All of BAM Trading's digital asset wallets are maintained on either the BAM Trading platform or, for certain staked assets, BitGo or Aegis Custody.  We previously produced copies of BAM Trading's omnibus hot wallets and omnibus cold wallets at BTS00833824 to BTS00833829.  These omnibus hot wallets would have been used to receive any assets transferred between BAM Trading and Mr. Zhao, BHL, or any other entity controlled by Mr. Zhao.

**Request Item 21**: *Explain why wallet [REDACTED] has direct transactions with Binance.com wallets.*

The above-referenced wallet address is a Binance.US hot wallet. When BAM Trading customers withdraw their funds from BAM Trading's platform, they may be sent from a wallet such as the one identified in this request.  In the instance where customers withdraw assets off of BAM Trading's platform to Binance.com, the transactions may appear on the blockchain as direct transactions between this wallet and a Binance.com wallet.

*Confidential Treatment Requested by BAM Trading Services Inc.*        BAM-WH-CORR-056

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023

**Request Item 22**: *Explain why almost all of the BUSD transferred to wallet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from the wallet you provided ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in early 2023.*

This transaction reflects a transfer of BUSD from BAM Trading's TSS-enabled cold wallet to its operational hot wallet as part of a normal course "top up" of the hot wallet's inventory. BUSD wallet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ serves as BAM Trading's BUSD TSS-enabled cold wallet; BUSD wallet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ serves as BAM Trading's BUSD hot wallet.

**Request Item 24**: *Identify the names, job titles, and time period of employment for all BAM Trading or BAM Management employees who were formally Binance Holdings employees.*

The Company is currently in the process of collecting information responsive to this request.

\* \* \*

BAM Trading requests that this letter and all information contained therein (the "Confidential Material") be maintained in confidence by the SEC and its staff and be used solely for the purposes of this inquiry. Accordingly, the Confidential Material has been marked "Confidential Treatment Requested by BAM Trading Services Inc." for reasons of personal privacy and business confidentiality.

The Confidential Material concerns or may concern customarily non-public, confidential and privileged business, financial, commercial, and personal information concerning BAM Trading and/or its personnel. The Confidential Material is exempt from mandatory disclosure under various provisions of the Freedom of Information Act ("FOIA"), including 5 U.S.C. § 552(b)(7) (which protects certain "records or information compiled for law enforcement purposes"),[5] 5 U.S.C. § 552(b)(4) (which protects trade secrets as well as confidential commercial or financial information obtained from a person), 5 U.S.C. § 552(b)(6) (which protects files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"),[6] and 5 U.S.C. § 552(b)(7) (which protects records or information compiled for law enforcement purposes). Because the Confidential Material relates to the activities of BAM Trading and not the activities of any federal agency, we believe it is exempt from disclosure under FOIA.[7] The Commission treats records falling within the FOIA exemption categories to be "nonpublic" and "will generally not publish or make available to any person" such records. 17 C.F.R. § 200.80(b). Moreover, disclosure of this Confidential Material may be prohibited under 18 U.S.C. § 1905, and

---

[5]     *See, e.g., NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

[6]     *See, e.g., U.S. Dep't of Def. v. Federal Labor Relations Authority*, 510 U.S. 487 (1994).

[7]     5 U.S.C. §§ 552(b)(6) and (b)(7)(C); *U.S. Dep't of Def.*, *supra*; *see, e.g., U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 449 (1989).

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023

further protections may be available under the Privacy Act of 1974, 5 U.S.C. § 552a.  Finally, the Confidential Material being produced voluntarily is protected from disclosure because it would not customarily be released to the public by BAM Trading.[8]

In accordance with 17 C.F.R. § 200.83 and other applicable laws and regulations, the Confidential Material is submitted to the SEC with BAM Trading's request, through the undersigned, that it be kept in a non-public file and that only SEC staff have access to it.  If any person not a member of the SEC staff (including without limitation any governmental employee) should request an opportunity to inspect or copy the Confidential Material, pursuant to FOIA or otherwise, or if you or any member of the SEC staff contemplates disclosure of the Confidential Material to any other person, we request that the undersigned immediately be notified of such request, be furnished a copy of all written materials pertaining to such request (including but not limited to the request itself), and be given advance notice of any intended release so that we may, if deemed necessary or appropriate, pursue any remedies available.  *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).  We expect to be given the opportunity to object to such disclosure.  We request that you telephone the undersigned rather than rely upon the U.S. mail for such notice.

Should the SEC be inclined to grant any FOIA request for the Confidential Material, BAM Trading expects that the procedures set forth in 17 C.F.R. § 200.83 and Executive Order 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), will be followed.  In that case, BAM Trading will further substantiate its request for confidential treatment, and will request a hearing on the claim of exemption.

The requests set forth in the preceding paragraphs also apply to any form of communication of any sort, including, but not limited to any tapes, memoranda, notes, transcripts, electronic documents, or communications containing extracts, summaries, or quotes, or other writings of any sort whatsoever that are made by, or at the request of, any employee of the SEC (or any other governmental agency) and which (1) incorporate, include or relate to any of the Confidential Material; or (2) refer to any conference, meeting, or telephone conversation between BAM Trading, its current or former employees, representatives, agents, auditors, or counsel on the one hand and employees of the SEC (or any other government agency) on the other, relating to the Confidential Material.

The Confidential Material remains the property of BAM Trading.  If the SEC staff determines to transfer any of the Confidential Material to another federal agency, we request that you forward a copy of this letter to any such agency with the Confidential Material.  We request that you indicate to any such agency that BAM Trading has requested the return of this material to the undersigned at the completion of the agency's efforts in this matter and has requested that this material be accorded confidential treatment.

---

[8]  *See, e.g.*, *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993).

*Confidential Treatment Requested by BAM Trading Services Inc.*        BAM-WH-CORR-058

Jennifer Farer, Esq.
June 2, 2023

WILMERHALE

      Provision of the Confidential Material is not intended to, and does not, waive any applicable privilege or other legal basis under which information may not be subject to production. If it were found that production of the Confidential Material constitutes disclosure of otherwise privileged matters, such disclosure would be inadvertent. By the productions of such documents, BAM Trading does not intend to and has not waived the attorney-client privilege or any other protections.

*   *   *

      Please feel free to contact me if you have any questions about these matters.

Sincerely,

/s/ William R. McLucas
William R. McLucas