# EXHIBIT A-70

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

# WALLET CUSTODY AGREEMENT

THIS CUSTODY AGREEMENT (this "Agreement") is made as of January 7. 2020, between and among BAM Trading Services Inc., a Delaware corporation (the "Marketplace"); and Binance Holdings Limited, a company incorporated under the Laws of the Cayman Islands (the "Custodian").

**WHEREAS**, the Marketplace selected the Custodian to serve as a custodian to the Marketplace with respect to the Assets and the Custodian is ready and willing to do so, subject to and in accordance with the provisions of this Agreement. The parties agree that the Custodian's appointment will be effective on and from the date of this Agreement (the "Effective Date");

**WHEREAS**, the Marketplace will not exercise day-to-day oversight of the Custodian;

**WHEREAS**, the Marketplace may remove the Custodian and appoint a successor custodian in accordance with this Agreement;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties agree as follows:

**OPERATIVE PROVISIONS:**

## 1. DEFINITIONS

1.1. In this Agreement the following capitalized words and expressions shall, where not inconsistent with the context, have the following meanings:

| | |
|---|---|
| **Account Holder** | means Marketplace User Account Holders and the Marketplace (with respect to the Marketplace Custody Account); |
| **Applicable Law** | means (regardless of jurisdiction) any applicable (i) federal, national, state and local laws, ordinances, regulations, orders, statutory instrument, rules, treaties, codes of practice, guidance notes, policy statements, customary laws, decrees, injunctions, or judgments and any (ii) ruling, declaration, regulation, requirement, request or interpretation issued by any (or any quasi-) regulatory, judicial, administrative or governmental body or person; |
| **Assets** | means Virtual Currencies delivered to the Custodian by or on behalf of an Account Holder for holding in a Custody Account from time to time, and such other assets as the Custodian may agree to hold for and on behalf of an Account Holder from time to time, pursuant to this Agreement; |
| **Associate** | in relation to a person means another person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first person; and "control" (including the terms "controlled by" and "under common control with") means the possession, |

1

BHL-SEC-BUSD-0203506

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

| | |
|---|---|
| | directly or indirectly, of the power to direct or cause the direction of the management or policies of a person, whether through the ownership of stock or other securities, as trustee or executor, by contract or otherwise; |
| **Blockchain** | means the public transaction ledger for a particular Virtual Currency traded on the Marketplace; |
| **Breach of Duty** | means a material breach of this Agreement, including but not limited to a material breach as a result of fraud, willful misconduct, bad faith, or negligence of the relevant person; |
| **Business Day** | means each day the Marketplace is open for trading; |
| **Confirmation Protocol** | means the requirement that a transfer of Virtual Currency, including delivery into a Custody Account, may not be deemed settled and completed until the transaction has been recorded in a block and a number of consecutive subsequent blocks referring back to such block have been added to the blockchain of such Virtual Currency in a way such that any reversal or attempt to reverse such blockchain recordation becomes economically impracticable; |
| **Custody Account** | means the Marketplace Custody Account and any Marketplace User Custody Accounts; |
| **Electronic Message** | means any communication made (i) by telephone, e-mail or other computer or electronic initiated transmission or (ii) by any other telegraphically transmitted means or (iii) otherwise over any distance other than by physical delivery; |
| **Marketplace Custody Account** | means the segregated account of the Marketplace to which the Custodian will transfer Assets from the Marketplace User Custody Accounts in order to pay the Marketplace's fees; |
| **Marketplace User Account Holder** | Means a person that is a registered user on the Marketplace in accordance with the Marketplace's Terms of Service and the owner of a Marketplace User Custody Account; |
| **Marketplace User Custody Account** | means a segregated account of a Marketplace User Account Holder, including the dedicated Virtual Currency Wallet for such Marketplace User Account Holder for each Virtual Currency offered on the Marketplace; |
| **Proof of Control Examinations** | means examinations and attestations by an independent auditor of the Custodian's ability to demonstrate "proof of control" of the private keys associated with all of the Virtual Currencies owned in a Custody Account; |
| **Proper Instructions** | means any instruction or communication given as provided in clause 5 and in accordance with the Security Procedure; |

2

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL

BHL-SEC-BUSD-0203507

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

| | |
|---|---|
| **Secure Asset Fund for Users** | means an emergency fund in which 10% of all Marketplace trading fees are placed in a segregated cold storage wallet to offer protection of the Assets of Marketplace User Account Holders in the event that Assets are stolen from the Custodian. |
| **Security Procedure** | means a security procedure that may be agreed upon between the Custodian and the Marketplace to verify Proper Instructions, including as specified in clause 5, as the same may be modified by written agreement between Custodian and the Marketplace; |
| **Storage System** | means the Custodian's storage and security system for the secure storage of the Assets; |
| **Virtual Currency** | means any virtual currency or digital asset that may be traded on the Marketplace from time to time; |
| **Virtual Currency Wallet** | means a means, through software application or other mechanism, for holding, storing, and transferring Virtual Currency. |

1.2. In this Agreement, unless the context otherwise requires:

 1.2.1. words importing the singular shall include the plural and vice versa and words importing the masculine gender shall include the feminine and the neuter and vice versa;

 1.2.2. references to persons shall include companies or associations or bodies of persons whether incorporated or unincorporated;

 1.2.3. references to clauses, schedules and appendices are to clauses, schedules and appendices of this Agreement;

 1.2.4. a reference to "including" means including without limiting the generality of any description preceding such term and any general statement followed by or referable to an enumeration of specific matters shall not be limited to matters similar to those specifically mentioned;

 1.2.5. references to any enactment shall be deemed to include references to such enactment as re-enacted, amended, supplemented, restated or extended from time to time; and

 1.2.6. where any expression is defined or the interpretation of it is set out herein, other parts of speech of such expressions hall have a corresponding meaning.

1.3. Clause headings are used for convenience only and shall not affect the construction or interpretation of this Agreement. The schedules form part of this Agreement and shall have the same force and effect as if they were expressly set out in the body of this Agreement and any reference to this Agreement shall include the schedules.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL               BHL-SEC-BUSD-0203508

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

2. **APPOINTMENT OF CUSTODIAN**

    2.1.    The Marketplace hereby appoints the Custodian to act as custodian of the Assets in any Custody Account with effect from the Effective Date according to the provisions of this Agreement, and the Custodian accepts its appointment and the obligations, duties, and responsibilities set forth in this Agreement.

    2.2.    The Custodian shall exercise reasonable care in carrying out its duties under this Agreement. In this Agreement, reasonable care shall mean the degree of care and diligence that could reasonably be expected of a professional custodian of assets operating in the United States.

    2.3.    In performing its obligations under this Agreement, the Custodian shall observe and comply, in all material respects, with (i) Applicable Law, (ii) market practice, (iii) Proper Instructions, and (iv) the terms of this Agreement.

    2.4.    The duty of the Custodian to hold the Assets held in any Custody Account shall extend only to Assets or documents or evidences of title actually received by the Custodian or placed under the Custodian's control.

    2.5.    The parties acknowledge and agree that the Custodian does not give legal, accounting, investment, or cash management advice and accordingly any advice or recommendation given by or on behalf of the Custodian in connection with the Assets will not be relied upon by the Marketplace, and the Marketplace will seek independent advice, as appropriate.

3. **DUTIES OF CUSTODIAN**

    3.1.    During the continuance of its appointment, the Custodian shall, on behalf of the Marketplace:

        3.1.1.    establish and maintain the Marketplace User Custody Accounts and the Marketplace Custody Account as instructed by the Marketplace;

        3.1.2.    hold in safe custody, the Assets in each Custody Account in accordance with the provisions of this Agreement and any Proper Instructions by, among other actions and without limitation, safekeeping all private keys, physical keys, access codes, access devices, combinations, and similar security codes, devices, and identifiers;

        3.1.3.    timely, accurately, and safely transfer Assets from any Custody Account in accordance with the provisions of this Agreement and any Proper Instructions;

        3.1.4.    establish, maintain, and periodically update the Storage System to ensure the security of the Assets in each Custody Account at all times;

        3.1.5.    maintain capital adequacy requirements to the extent required by Applicable Law and promptly notify the Marketplace of any failure to maintain such capital adequacy requirement;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL    BHL-SEC-BUSD-0203509

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

   3.1.6. engage an independent auditor to audit all data, materials and information, including records, books, accounts, memoranda, files and any other documents, reasonably related to the Custodian's Storage System protocols and internal controls ("**Internal Controls Audit**") and share any reports related to an Internal Controls Audit with the Marketplace;

   3.1.7. engage, together with the Marketplace, an independent auditor to perform Proof of Control Examinations on a periodic basis;

   3.1.8. provide the Marketplace with real-time access to Custody Account data; and

   3.1.9. on a daily basis, transfer 10% of the Marketplace's fees to the Marketplace's Secure Asset Fund for Users.

  3.2. Upon receipt of Proper Instruction from the Marketplace, the Custodian will transfer to the Marketplace Custody Account Assets from any Marketplace User Custody Account, as needed, to pay the Marketplace's fees in accordance with the Marketplace's Terms of Service, as in effect from time to time. The Marketplace shall be solely responsible for calculation of its fees.

  3.3. The Custodian shall adhere, at minimum, to industry standards and protocols, while accepting, holding, or transferring Assets. The Custodian shall promptly notify the Marketplace of any material changes to the Storage System that would reasonably be expected to affect its performance of its obligations hereunder.

  3.4. Unless otherwise agreed by the parties in writing, the only Assets the Custodian will accept for delivery into a Custody Account are Assets that the Custodian has received through the Marketplace from an Account Holder, or the Marketplace on behalf of a Marketplace User Account Holder, for delivery to a Custody Account.

  3.5. The Custodian shall only transfer Assets held in a Marketplace User Custody Account in the following circumstances: (i) if the Assets are to be transferred to the Marketplace Custody Account to pay the Marketplace's fee; or (ii) pursuant to Proper Instructions from the Marketplace or the Account Holder for such Marketplace User Custody Account. The Custodian shall only transfer Assets held in the Marketplace Custody Account pursuant to Proper Instructions from the Marketplace.

  3.6. The Custodian may refuse to accept instructions to transfer Assets into and out of any Custody Account, if in the reasonable opinion of the Custodian, such instructions are contrary to Applicable Law, or a credible threat to the security of the Assets or the Storage System until after it has consulted with the Marketplace, and the Custodian and the Marketplace agree in writing how to proceed with respect to such instructions. The Custodian and the Marketplace may, by written agreement, amend the procedures for transferring Assets into or out of any Custody Account or impose such additional procedures in relation to the transfer of Assets into or out of any Custody Account as the Custodian may from time to time consider necessary due to (i) a change in Applicable Law or the rules of a banking or regulatory agency governing the Custodian's or the Marketplace's operations or governing the storage of Virtual

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

Currencies, or (ii) any improvement in security, storage or transfer protocols, or systems relating to Virtual Currencies that the Custodian or the Marketplace believes would enhance the Custodian's ability to secure the Assets held pursuant to this Agreement. The Custodian will notify the Marketplace within a commercially reasonable amount of time before the Custodian amends these procedures or imposes additional procedures.

3.7. The Custodian shall keep and store the Assets in each Custody Account segregated from any other assets that it owns or holds for other clients. The Custodian shall maintain adequate records identifying the Assets as belonging to each Custody Account, as well as transfers of Assets to and from each Custody Account. The Custodian shall not pool the Assets with its own property. Nothing herein shall prevent the Custodian from hosting Virtual Currency assets on the same storage systems as the Custodian's own property and/or the property of third parties, including the Marketplace and its affiliates, provided that reasonably appropriate methods are utilized to segregate the Assets in each Custody Account from such other property.

3.8. The Custodian shall provide the Marketplace with the ability to monitor the amount and value of Assets held in custody via each Custody Account.

3.9. For each Business Day, the Custodian shall produce and transmit to the Marketplace by Electronic Message sufficient information to account for the Assets held in each Custody Account, including the end of Business Day balance of each Custody Account and the movement of Virtual Currency into and out of each Custody Account, identifying separately each transaction.

3.10. For each month, not later than five (5) calendar days following the end of each calendar month, the Custodian shall produce and transmit to the Administrator by Electronic Message monthly statements for each Custody Account, as of the last Business Day of each month, which list all property held in each Custody Account and details all transactions involving each Custody Account, including daily balances and all transfers to or from each Custody Account. Such reports shall also include any other information that the Marketplace may reasonably request and any other information required by the Marketplace in order to comply with Applicable Law.

3.11. Upon written request of the Marketplace, the Custodian shall share reports related to any Internal Controls Audit.

3.12. The Custodian shall demonstrate "proof of control" of the private keys of the Assets in each Custody Account via Proof of Control Examinations conducted by an independent auditor on a monthly basis.

3.13. The Custodian shall deliver annually to the Marketplace, and more frequently if requested, a certificate dated the date of delivery, certifying that the Custodian has, since the date of this Agreement or the date of the preceding such certificate, complied with the terms and conditions of this Agreement and that the Custodian's representations and warranties in clause 9 of this Agreement continue to be true and correct.

3.14. The Custodian shall notify the Marketplace immediately in writing if (i) the Custodian receives notice of any claim against the Assets other than a claim for payment of safe

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                    BHL-SEC-BUSD-0203511

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

custody or administration permitted by this Agreement; (ii) the Custodian shall otherwise fail to comply with any of the provisions of this Agreement; or (iii) any of the representations and warranties in clause 8 shall cease to be true and correct.

3.15. The Custodian shall not have any ownership interest in any Assets in any Custody Account. The Assets shall not be subject to any right, charge, security interest, lien or claim of any kind in favor of the Custodian or any creditor of any of them, except a claim of payment for the safe custody and administration of the Assets. The Custodian shall not loan, hypothecate, pledge, or otherwise encumber any Assets in any Custody Account absent the Marketplace's written instructions.

3.16. To the extent permitted by Applicable Law, if the Custodian receives any material third-party communication relating to any Assets, including notice of any rights exercisable in relation to any Assets, the Custodian will inform the Marketplace as soon as reasonably practicable thereafter but will take no other action in connection with such rights in the absence of Proper Instructions, unless the Custodian and the Marketplace agree in writing that such action is required by Applicable Law.

**4.      ESTABLISHMENT OF CUSTODY ACCOUNTS**

4.1. In order to establish a Marketplace User Custody Account with the Custodian, the Marketplace shall deliver to the Custodian (collectively, the "<u>Marketplace Data</u>"):

4.1.1. In accordance with the Marketplace's Terms of Service and through the user registration process, registration information of the relevant Marketplace User Account Holder necessary for the establishment of a Marketplace User Custody Account (including the dedicated Virtual Currency Wallets for such Marketplace User Account Holder); and

4.1.2. The name, title, and specimen signature of any person that may deliver Proper Instructions in respect of such Marketplace User Custody Account in the form specified by Schedule 1, if any. Unless otherwise specified or instructed by the Marketplace in writing, the Marketplace User Account Holder of a Marketplace User Custody Account shall have the right to deliver Proper Instructions in respect of such Marketplace User Custody Account through the Marketplace in accordance with the Marketplace's withdrawal procedures and Terms of Service.

4.2. In order to establish the Marketplace Custody Account with the Custodian, the Marketplace shall deliver to the Custodian:

4.2.1. A fully executed copy of this Agreement; and

4.2.2. The name, title and specimen signature of any person that may deliver Proper Instructions in respect of the Marketplace Custody Account in the form specified by Schedule 1.

**5.      PROPER INSTRUCTIONS**

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                                        BHL-SEC-BUSD-0203512

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

5.1. Subject to this clause 5 and clause 3, the Marketplace authorizes the Custodian, without making further inquiries, to accept, rely on, and act on any Proper Instructions received by it, in which the Custodian believes in good faith are provided by an Authorized Person. The Custodian and the Marketplace may agree on different or additional Security Procedures in writing signed by both parties.

5.2. An Authorized Person for the purposes of clause 5.1 is any individual who has been designated pursuant to clause 4.1.2 in respect of a particular Custody Account, or designated by written notice from the Marketplace in the form specified by Schedule 1, attached, to act on behalf of a particular Custody Account. The authority of each such person shall continue in force until the Custodian receives and has had reasonable time to act upon Proper Instructions of the cancellation of or a change to such authority.

5.3. Proper Instructions may be given as standing instructions (which shall continue in force until canceled by their terms or by further Proper Instructions) or individually.

5.4. Proper Instructions must be in writing and may be received by recognized commercial courier (e.g., DHL), United States mail, or Electronic Message. Proper Instructions must be in accordance with the applicable requirements set forth in Schedule 1 (or a replacement or supplement thereof received by Proper Instructions from the Marketplace). The Marketplace and the Custodian may from time to time agree upon security procedures to be followed on the giving and/or receipt of Proper Instructions (which may include the use of encryption or call backs, passwords, security codes or algorithms or other verification methods) and the Custodian is not otherwise required to acknowledge receipt of Proper Instructions. The Custodian and the Marketplace shall use reasonable safeguards to protect any such passwords and codes. Each party may record any of their telephone conversations.

5.5. The Custodian is not obliged to act on Proper Instructions only in the event that the Custodian reasonably considers that complying with the instructions involves breaching any Applicable Law or this Agreement.

5.6. The Custodian shall notify the Marketplace and the person giving the Proper Instruction as soon as reasonably practicable of any decision not to act on Proper Instructions and shall provide reasons for its decision and cooperate with any reasonable request of the Marketplace in respect to such Proper Instructions. In the event that the Custodian has not provided notice not to act on Proper Instructions within one Business Day after receipt of such Proper Instructions, the Custodian shall be deemed bound by such Proper Instructions.

## 6. OTHER MATTERS

6.1. Nothing in this Agreement shall prevent the Custodian or its affiliates from contracting or entering into any financial, banking, or other transaction with any trust or body, which holds, is interested in or any of whose securities form part of the Assets or from being interested in any such contract or transaction (without being liable to account for any resulting profit), so long as such contract or transaction is consistent with Applicable Law.

6.2. The Marketplace acknowledges and agrees that, so long as done consistent with Applicable Law, the Custodian and any principal, owner, member, manager, officer, employee,

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                    BHL-SEC-BUSD-0203513

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

agent or Affiliate thereof, may buy, sell, deal and/or operate an exchange that transacts in any of the types of property at any time comprising the Assets and become economically interested in any transaction in which any Account Holder or the Marketplace may be interested, and may contract and lend money to any Account Holder or the Marketplace and otherwise act as fully and freely as if it were not the Custodian under this Agreement. Nothing herein shall preclude the Custodian from acting in any other capacity for any entity.

## 7. REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE EXCHANGE

7.1. The Marketplace represents and warrants and covenants, without prejudice to any of its specific obligations under Applicable Law and this Agreement, that:

7.1.1. it is duly incorporated or established, existing and in good standing in its place of establishment, and it has full power and authority to carry on its activities as they are now being conducted, and to execute, sign, deliver and perform its obligations under this Agreement and Applicable Law and this Agreement constitutes the legal, valid, and binding obligations of it (except as such enforcement may be limited by any relevant bankruptcy, insolvency, administration, or similar laws affecting creditors' rights generally, limitation periods and/or principles of equity or customary law); and

7.1.2. the signing and delivery of this Agreement does not contravene or constitute a default under, or cause to be exceeded any limitation on it or the powers of its board of directors imposed by or contained in (i) any law by which it or any of its assets is bound or affected, (ii) its constitutive documents or (iii) any agreement to which it is a party or by which it or any of its assets is bound.

## 8. REPRESENTATIONS, WARRANTIES AND COVENANTS

8.1. The Custodian represents and warrants and covenants that:

8.1.1. it is duly formed, existing and in good standing under the laws of the [*], with full power and authority for it to own its assets, carry on its business as it is now being conducted, and execute, sign, deliver and perform its obligations under this Agreement and this Agreement constitutes the legal, valid and binding obligations of the Custodian (except as such enforcement may be limited by any relevant bankruptcy, insolvency, administration or similar laws affecting creditors' rights generally, limitation periods and/or principles of equity or customary law);

8.1.2. the signing and delivery of this Agreement does not contravene or constitute a default under, or cause to be exceeded any limitation on it or the powers of its board of managers imposed by or contained in (i) any law by which it or any of its assets is bound or affected, (ii) its constitutive documents or (iii) any agreement to which it is a party or by which it or any of its assets is bound;

8.1.3. it has a business continuity plan (including alternative premises and back-up systems) in place, and maintains a fidelity bond in an amount sufficient to meet its obligations under Applicable Law;

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                BHL-SEC-BUSD-0203514

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

8.1.4.     If Custodian stores, accesses, receives, transmits, or otherwise comes into contact with payment card data or information, then Custodian will at all times comply with and will have a program to assure Custodian's continued compliance with the Payment Card Industry Data Security Standards ("PCI DSS") published by the PCI Security Standards Council, as the PCI DSS may be amended, supplemented, or replaced from time to time. If subject to this clause 8.1.5, Custodian will report in writing to the Marketplace, at a minimum annually, proof of such compliance with the PCI DSS as determined by a Qualified Security Assessor ("QSA"). If Custodian becomes aware that it is not, or will not likely be, in compliance with PCI DSS for any reason, Custodian will promptly report in writing to the Marketplace the non-compliance or likely non-compliance.

8.2.     The Custodian shall promptly notify the Marketplace in the event that any of the statements set out in in clauses 8.1.1 through 8.1.4 ceases to be true.

## 9.  LIABILITIES

9.1.     The Custodian is a fiduciary with respect to the Assets of the Account Holders and the Marketplace. Custodian shall indemnify the Account Holders and the Marketplace against all costs and expenses, damages, liabilities, and losses ("Losses") which an Account Holder or the Marketplace may suffer or incur directly in connection with this Agreement as a result of the Custodian's Breach of Duty.

## 10.  CONFIDENTIALITY AND DISASTER RECOVERY

10.1.     Other than in accordance with this Agreement, the Custodian may not disclose any Marketplace Data or other information of any kind relating to the any Custody Account or the Marketplace unless (i) the Marketplace has given its prior written consent; (ii) the Custodian is required to do so by Applicable Law; or (iii) where such information is already in the public domain through no fault of the Custodian.

10.2.     The Custodian shall at all times throughout the life of this Agreement maintain a commercially reasonable system for (i) recovery, in case of disaster, of each Custody Account's records as the Custodian (or any person on whom it relies for storing them), keeps in computerized or other electronic form, and (ii) the continued provision of the Custodian's services under this Agreement in the event of any business disruption.

## 11.  INTELLECTUAL PROPERTY

11.1.     As between the Custodian and the Marketplace, the Custodian shall retain all right, title and interest (including all copyright, trademark, patent, trade secret and all other intellectual property rights) in the Storage System (the "Custodian Materials").

11.2.     The Custodian hereby grants to the Marketplace a non-exclusive, non-transferable (except as provided in Section 16.4 below), worldwide, irrevocable, royalty-free license during the term of this Agreement to use the Storage System and Custodian Materials in order to access and use the Storage System and otherwise in the furtherance of the activities contemplated by this Agreement and Proper Instructions.

10

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

11.3. As between the Custodian and the Marketplace, the Marketplace shall retain all right, title, and interest (including all copyright, trademark, patent, trade secret and all other intellectual property rights) in (x) any information or data delivered to the Custodian pursuant to clause 4 and (y) the information and data delivered to the Marketplace pursuant to clause 3.

11.4. The Custodian agrees that the Marketplace may use the Custodian's name in promotional literature or documents, advertisements, and other documents relating to the custody arrangements of the Marketplace.

## 12. DATA PROTECTION

12.1. The Marketplace hereby grants Custodian a worldwide, non-exclusive, royalty-free right to use, reproduce, distribute, perform, display, process, store and share, during the term of this Agreement, the Marketplace Data solely for purposes of performing its obligations under this Agreement ("Custodian Data Use Purpose").

12.2. Custodian will comply with (a) all Applicable Laws relating in any way to the privacy, confidentiality, or security of personal data, and (b) all provisions of its written information security policies, procedures, and guidelines which are applicable with respect to the subject matter of this Agreement. Without limiting the generality of the foregoing or clause 3.1, Custodian will at all times secure and protect the Marketplace Data and information relating to the Custody Accounts and Storage System from unauthorized use or access. Custodian will maintain a comprehensive written information security program that includes technical, physical, and administrative/organizational safeguards designed to (i) ensure the security and confidentiality of personal data, (ii) protect against any anticipated threats or hazards to the security and integrity of personal data, (iii) protect against any actual or suspected unauthorized processing, loss, or acquisition of any personal data, and (iv) ensure the proper disposal of personal data. In addition, such program will include regularly testing or otherwise monitoring the effectiveness of the safeguards.

12.3. In the event that Custodian becomes aware of any unauthorized access to or use of the Marketplace Data, or any actual breach in security that results in unauthorized intrusions into the Storage System or computer and other information systems that affects the Marketplace or any Marketplace Data (each, a "Data Breach"), Custodian will: (a) immediately notify the Marketplace of such Data Breach, but not more than seventy-two (72) hours after discovery, and (b) will work with the Marketplace security staff to contain and resolve the breach. Without limiting the foregoing, upon the occurrence of a Data Breach, Custodian will immediately take appropriate remedial action to mitigate the effects of such Data Breach. Such notice will describe when and where the Data Breach occurred, the effect on the Marketplace or Marketplace Data and, as applicable, Custodian's corrective action in response to the Data Breach.

## 13. FEES AND EXPENSES

13.1. The Custodian shall be entitled to receive a custody fee from the Marketplace at the rate and on the terms set forth in a separate fee letter between the Custodian and the Marketplace.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                                    BHL-SEC-BUSD-0203516

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

13.2. The Marketplace shall pay for the costs relating to the engagement of an independent auditor to perform monthly Proof of Control Examinations.

## 14. TERMINATION OF APPOINTMENT

14.1. Either the Custodian or the Marketplace may terminate this Agreement:

14.1.1. by immediate notice if required to do so by Applicable Law;

14.1.2. by immediate notice if this Agreement ceases to be in full force and effect; or

14.1.3. by immediate notice at any time if the other party shall commit any Breach of Duty and (if such breach shall be capable of remedy) shall fail to remedy the breach within sixty (60) days of receipt of a notice from the other party requiring it to do so.

14.2. The Marketplace may terminate this Agreement:

14.2.1. by giving not less than ninety (90) business days' prior notice;

14.2.2. by immediate notice if the Custodian ceases to offer the services contemplated by this Agreement;

14.2.3. by immediate notice if the Custodian fails to maintain adequate capital requirements in accordance with clause 3.1.5 of this Agreement;

14.2.4. by immediate notice if the Marketplace determines in its sole view that the Custodian is insolvent or faces impending insolvency;

14.2.5. by immediate notice if the Marketplace, in its sole discretion, determines to terminate its operations; or

14.2.6. if the Custodian is not the surviving entity following any merger, consolidation or conversion of the Custodian. The Marketplace may only elect to terminate this Agreement within the ninety (90) days following such merger, consolidation, or conversion.

14.3. The initial term of this Agreement shall be an initial period of two (2) years. The term shall automatically renew for successive periods of one (1) year each unless the Marketplace or the Custodian shall notify the other in writing of nonrenewal at least ninety (90) days prior to the otherwise applicable last day of the term.

14.4. Notwithstanding clauses 14.1, 14.2 and 14.3, to the extent same shall not be a violation of Applicable Law, the Custodian shall not retire or be removed unless and until the Marketplace has made redelivery arrangements or appointed a replacement custodian. The Marketplace shall make all payments required hereunder for the period of time prior to such redelivery, appointment, retirement, or removal as if the term of this Agreement shall include such period. The Marketplace shall use reasonable efforts to make redelivery arrangements or find a suitable replacement custodian as soon as practicable. If after six (6) months from the

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL

BHL-SEC-BUSD-0203517

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

termination date no new custodian has been appointed or no redelivery arrangements for the transfer of the Assets have been made, the Custodian may sell the Assets and account to each Account Holder and the Marketplace for the proceeds.

14.5.   Not less than sixty (60) days before the date of termination of this Agreement, if possible, the Marketplace will give the Custodian the details of the successor custodian or other person to whom the Assets are to be transferred.  Subject thereto and to the terms of this Agreement (including clause 14.8), the Custodian will transfer any Assets held by it (and any original documents relating to a Custody Account in its possession which are valid and in force at the date of termination) in accordance with Proper Instructions.

14.6.   Termination of this Agreement will not affect accrued rights or existing commitments under this Agreement and will be without prejudice to the completion of transactions already initiated.  Upon termination of this Agreement the Marketplace shall pay such fees and reimburse such expenses to the Custodian as may be due or reimbursable in respect of the period up to the date of termination.

14.7.   If the Custodian holds any Assets after the termination date, the terms of this Agreement including payment obligations will continue from day to day until the Assets are transferred in accordance with clause 14.4, save that no additional property may be deposited with the Custodian after the termination date.

14.8.   The Custodian shall be entitled to receive all fees, expensesm and other monies owed to the Custodian in accordance with this Agreement that have accrued up to the termination date and all reasonable out of pocket expenses and time charges at standard rates incurred by the Custodian in connection with the delivery or transfer of the Assets to the applicable Account Holder or any succeeding custodian or trustee, unless the termination was the result of the Custodian's Breach of Duty.

**15.   NOTICES**

15.1.   All notices given hereunder (other than Proper Instructions) shall be signed by or on behalf of the party giving them and given by sending the same by (i) prepaid recognized commercial courier (e.g., DHL), or (ii) an Electronic Message confirmed by a signed copy sent that same business day by prepaid first class post (e.g., United States mail) or by prepaid commercial courier.  Any notice sent by post or by prepaid commercial courier as provided in this clause 15.1 shall be deemed to have been given five (5) business days after being sent and any notice sent by email shall be deemed to have been given upon dispatching if confirmation of transmission is received.  Evidence that the notice was properly addressed, stamped and posted shall be presumptive evidence of posting.

15.2.   A notice received outside business hours (9:30 a.m. to 4:00 p.m. Pacific time on a Business Day) shall be considered received when business hours resume.

15.3.   All notices to the parties hereto shall be validly sent to the relevant address set out above.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                BHL-SEC-BUSD-0203518

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

15.4. Notices given hereunder (including Proper Instructions) may be given in such manner as the sender and the recipient may agree in writing from time to time.

## 16. MISCELLANEOUS

16.1. To the extent that the Custodian holds or has vested in it any Assets pursuant to the terms of this Agreement, its duties as trustee shall be as bare trustee only with no duty to preserve or enhance the value of the Assets, all other terms and conditions take effect not as trustee duties but as duties imposed by contract alone. In respect of all services it provides under this Agreement, the Custodian shall be subject solely to the duties set out in this Agreement or any separate agreement relating to such services.

16.2. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

16.3. Any amendment to this Agreement must be agreed in writing and be signed by all the parties. Unless otherwise agreed, an amendment will not affect any legal rights or obligations which may already have arisen.

16.4. This Agreement shall be binding upon and shall inure to the benefit of the Custodian and the Marketplace and each of their successors and assigns. Neither party may, or will have the power to, assign this Agreement without the prior written consent of the other, except that the Marketplace may assign its rights and obligations under this Agreement without the approval of the Custodian, to an entity that acquires all or substantially all of the assets of the Marketplace, to an Affiliate, or to a successor in a merger or acquisition of the Marketplace.

16.5. This Agreement, including all schedules attached hereto, constitutes the entire understanding and agreement of the parties hereto. If any provision herein shall be determined to be void or unenforceable in whole or in part for any reason whatsoever, such unenforceability or invalidity shall not affect the enforceability or validity of the remaining provisions or parts contained in this Agreement and such void or enforceable provisions shall be deemed to be severable from any other provisions or parts herein contained.

16.6. The validity, interpretation, construction, and performance of this Agreement shall be governed by the laws of the State of New York without regard to the choice of law principles thereof.

16.7. Any dispute, controversy or claim arising out of or relating to this Agreement or its subject matter (including a dispute regarding the existence, validity, formation, effect, interpretation, performance or termination of this Agreement) (each, a "Dispute") shall be finally settled by arbitration. The place of arbitration shall be Hong Kong, and the arbitration shall be administered by the Hong Kong International Arbitration Centre (the "Centre") in accordance with the Centre's Administered Arbitration Rules in force when the notice of arbitration is submitted (the "Rules"). The arbitration shall be decided by a tribunal of three arbitrators to be appointed in accordance with the Rules. Arbitration proceedings (including, but not limited to, any arbitral award rendered) shall be in English. The tribunal shall decide any dispute submitted by the parties strictly in accordance with the substantive law of the State of New York and shall not apply any other substantive law. Subject to the agreement of the tribunal, any Dispute(s)

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                    BHL-SEC-BUSD-0203519

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

which arise subsequent to the commencement of arbitration of any existing Dispute(s) shall be resolved by the tribunal already appointed to hear the existing Dispute(s). The award of the arbitration tribunal shall be final and conclusive and binding upon the parties as from the date rendered. Judgment upon any award may be entered and enforced in any court having jurisdiction over a party or any of its assets. For the purpose of enforcing this agreement to arbitrate, the parties irrevocably and unconditionally submit to the jurisdiction of the courts of Hong Kong and waive any defenses to such enforcement based on lack of personal jurisdiction or inconvenient forum. For the purpose of enforcement of an award, the parties hereto irrevocably and unconditionally waive any defense of inconvenient forum in any court of competent jurisdiction.

16.8.   No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                                    BHL-SEC-BUSD-0203520

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

## Schedule 1:

## Persons Authorized to Give Proper Instructions

## For A Specified Custody Account

**Custody Account:**

**Authorized Persons:**

| Name & Title | Telephone | Email | Specimen Signature |
|---|---|---|---|
| Catherine Coley<br>CEO | | coley@binance.uS | |

1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY BHL                                    BHL-SEC-BUSD-0203521

DocuSign Envelope ID: 773F0C36-1041-439C-8A69-452EAD5B52DB

**IN WITNESS WHEREOF**, each of the Parties has caused this Agreement to be executed by its duly authorized officer, in each case as of the Effective Date.

| BAM TRADING SERVICES INC. | BINANCE HOLDINGS LIMITED |
|---|---|
| *Catherine Coley* | *Changpeng Zhao* |
| —62D54DDC0A8942C... | —48787FC11D74433... |
| Signature | Signature |
| Catherine Coley | Changpeng Zhao |
| Name | Name |
| CEO                    1/7/2020 | CEO                    1/7/2020 |
| Title                       Date | Title                       Date |