# EXHIBIT A-72

March 31, 2021


Armanino LLP
50 W San Fernando Street
San Jose, California 95113

This representation letter is provided in connection with your audit of the financial statements of BAM Trading Services Inc. (the "Company"), which comprise the balance sheet as of December 31, 2020, and the related statements of operations, stockholder's equity, and cash flows for the year then ended, and the related notes to the financial statements, for the purpose of expressing an opinion as to whether the financial statements are presented fairly, in all material respects, in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP).

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement. An omission or misstatement that is monetarily small in amount could be considered material as a result of qualitative factors.

We confirm, to the best of our knowledge and belief, as of March 31, 2021, the following representations made to you during your audit.

**Financial Statements**

1. We have fulfilled our responsibilities, as set out in the terms of the audit engagement letter dated October 21, 2020, including our responsibility for the preparation and fair presentation of the financial statements.

2. The financial statements referred to above are fairly presented in conformity with U.S. GAAP.

3. We acknowledge our responsibility for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

4. We acknowledge our responsibility for the design, implementation, and maintenance of internal control to prevent and detect fraud.

5. Significant assumptions we used in making accounting estimates, including those measured at fair value, are reasonable.

6. Related party relationships and transactions have been appropriately accounted for and disclosed in accordance with the requirements of U.S. GAAP.

7. All events subsequent to the date of the financial statements and for which U.S. GAAP requires adjustment or disclosure have been adjusted or disclosed. We have disclosed to you all impacts on our business and operations of the current COVID-19 pandemic of which we are aware. Those impacts include the following:

   a   the Company has experienced minimal operational effects due to being a decentralized software platform in a decentralized market;

   b   due to the widespread uncertainty over the macroeconomic factors and sovereign monetary policies which could impact consumer demand for our services, the financial impact cannot be reasonably estimated at this time.

8. We acknowledge the projected material misstatement you identified from your testing related to chargeback expenses in the amount of $150,000 does not materially impact the financial statements taken as a whole.

9. The effects of all known actual or possible litigation, claims, and assessments have been accounted for and disclosed in accordance with U.S. GAAP.

10. Significant estimates and material concentrations have been properly disclosed in accordance with U.S. GAAP.

11. Guarantees, whether written or oral, under which the Company is contingently liable, have been properly recorded or disclosed in accordance with U.S. GAAP.

12. The Company believes the assumptions and estimates used to value the provision for transaction losses to be complete and accurate.

13. We acknowledge the customer funds payable recorded on the balance sheet as of December 31, 2020 is complete and accurate.

14. We acknowledge the token indemnity customer deposit recorded on the balance sheet as of December 31, 2020 is complete and accurate.

15. We acknowledge the related party Due to Parent recorded on the balance as of December 31, 2020 is complete and properly disclosed in accordance with U.S. GAAP.

16. We have provided to you all documents related to the Company's equity transactions. We confirm to the best of our knowledge and belief, that all transactions were properly recorded and disclosed in accordance with U.S. GAAP.

17. We agree all common stock outstanding as of December 31, 2020 is complete and accurate.

18. We acknowledge that prior to you performing the following nonattest services:

    a    Assistance with the preparation of the financial statements and related footnotes

        That we understood that in order for you to maintain your independence, we must assume all management responsibilities for the nonattest services. Including designating a qualified individual with suitable skill, knowledge, or experience, from our senior management to oversee the nonattest services, evaluate the adequacy and results of the nonattest services, and accept responsibility for them. Therefore, we assigned Josh Sroge, CFO, and Elaine Stone, Finance Manager, to oversee and evaluate the adequacy and results of the nonattest services and they have accepted responsibility for them.

19. We are in agreement with the adjusting journal entries you have proposed. All audit adjustments proposed by you have been posted to the Company's accounts.

**Information Provided**

20. We have provided you with:

    a   Access to all information, of which we are aware, that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters.

    b   Additional information that you have requested from us for the purpose of the audit.

    c   Unrestricted access to persons within the Company from whom you determined it necessary to obtain audit evidence.

21. All material transactions have been recorded in the accounting records and are reflected in the financial statements.

22. We have disclosed to you the results of our assessment of the risk that the financial statements may be materially misstated as a result of fraud.

23. We have no knowledge of any fraud or suspected fraud that affects the Company and involves:

    a   Management,

    b   Employees who have significant roles in internal control, or

    c   Others where the fraud could have a material effect on the financial statements.

24. We have no knowledge of any allegations of fraud or suspected fraud affecting the Company's financial statements communicated by employees, former employees, analysts, regulators, or others.

25. We have disclosed to you all known instances of noncompliance or suspected noncompliance with laws and regulations whose effects should be considered when preparing financial statements.

26. We have disclosed to you all known actual or possible litigation, claims, and assessments whose effects should be considered when preparing the financial statements.

27. We have disclosed to you the identity of the Company's related parties and all the related party relationships and transactions of which we are aware.

28. The Company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral, except as disclosed in the notes to the financial statements.

29. We believe the reports generated from our system used to support the digital asset balances and transactions are complete and accurate, including both market and cost basis.

30. We believe our accounting for digital assets and financial statement disclosures are complete and accurate.

31. We confirm, through our Wallet Custody Agreement with Binance Holdings Limited (BHL), the Company has right of ownership of all corporate digital assets and right of control over all custodial digital assets.

32. We are not aware of any security breach, corruption, destruction or loss of private keys that would prevent our custodian, BHL, from exerting control over any digital wallet holding either corporate or custodial digital assets held on our behalf.

33. The Company believes there are no contingent liabilities or grounds for compensation owed to any customers as it relates to non-supported forked assets and airdrops.

34. We do not have (a) asserted and unsettled income tax contingencies, or (b) unasserted income tax contingencies caused by uncertain tax positions taken in our income tax returns filed with the Internal Revenue Service and state, and local tax authorities that are probable of assertion by such tax authorities under the provisions of ASC 450. Furthermore, we have not received either written or oral tax opinions that are contrary to our assessment.

35. All transactions and balances not related to the Company have been properly identified and excluded from the financial statements.

36. We acknowledge the customer custodial cash deposits recorded on the balance sheet as of December 31, 2020 is complete and accurate.

37. The Company acknowledges that prior to listing a new digital asset, the Company evaluates the digital asset for viability of the digital asset's use-cases, protocol security, and compliance with all local laws and regulations.

38. We confirm that the cost sharing services and expenses incurred by the Parent on behalf of the Company have been appropriately charged, at a reasonable mark up, to the Company.

39. We confirm that expenses incurred or obligations due for services between the Company and BHL under any of its arrangements with BHL, including the Software License Agreement, Master Services Agreement, Trademark License Agreement and Wallet Custody Agreement are properly recorded and disclosed as of and for the year ended December 31, 2020.

40. Revenue from contracts with customers has been appropriately accounted for and disclosed in accordance with FASB Accounting Standards codification Topic 606, Revenue from Contracts with Customers. All revenue transactions represent valid transactions with our customers. All contracts with underlying revenue recognized in the financial statements have commercial substance and have been approved by appropriate parties, and we have considered side agreements, implied promises, and unstated business conventions in identifying performance obligations in the contracts.  We have sufficient and appropriate documentation supporting all estimates and judgments underlying the amount and timing of revenue recognized in the financial statements. We believe the revenue recognized during the year ended December 31, 2020 is complete and accurate.

41. The Company recorded and prepared transfer pricing documentation related to the intercompany transaction(s) between the U.S., foreign owners, affiliates and related parties following the requirements addressed in Internal Revenue Code Sections 482 and 6662, and associated regulations before the timely filing of the Company's 2020 federal income tax return. The Company will reflect the impact of any transfer pricing adjustment in its financial statements thereafter.  The Company will document the transfer pricing arrangement with its U.S. subsidiary(s) following the requirements addressed in Internal Revenue Code Sections 482 and 6662 and associated regulations. The Company will reflect the impact of any transfer pricing adjustment in the subsidiary's separate financial statement. Related to it's 2020 income tax return(s) the Company will:

   a   File consolidated U.S. corporation income tax return for the year ended December 31, 2020, on or before the extended due date of the return;

   b   The U.S. subsidiaries will authorize its parent corporation to include it in a consolidated return filing for the same period by signing Form 1122, Authorization and Consent of Subsidiary Corporation to be Included in a consolidated income tax return filing;

   c   Timely file 7004, Application for Automatic Extension of Time To File Certain Business Income Tax, to include all wholly-owned U.S. subsidiaries;

   d   Report any foreign (affiliate) monetary and nonmonetary transactions, including but not limited to intercompany transactions, payments and relevant nonmonetary transactions with its related parties on Forms 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business;

   e   Schedule UTP, Uncertain Tax Position Statement; and

42. We have adequately considered the impact of COVID-19 pandemic and determined that we are not aware of any specific event or circumstance that would require an update to our estimates or judgments or a revision of the carrying value of our assets or liabilities. We have disclosed to you all impact on our business and operations of the current COVID-19 pandemic of which we are aware.

43. We received a term note through the Paycheck Protection Program ("PPP Loan") under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). We repaid the loan with interest during the year ended December 31, 2020 and the terms of the proceeds and repayment have been properly presented in the financial statements.

44. Except as disclosed in the footnotes to the financial statements, no events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to, or disclosure in, the financial statements.

Catherine Coley (Apr 1, 2021 05:25 GMT+4)

Catherine Coley, CEO

Josh Sroge, CFO

March 31, 2021


Armanino LLP
50 W San Fernando Street
San Jose, California 95113

This representation letter is provided in connection with your audit of the consolidated financial statements of BAM Management US Holdings Inc. (the "Company"), which comprise the consolidated balance sheet as of December 31, 2020, and the related consolidated statements of operations, stockholders' equity, and cash flows for the year then ended, and the related notes to the financial statements, for the purpose of expressing an opinion as to whether the consolidated financial statements are presented fairly, in all material respects, in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP).

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement. An omission or misstatement that is monetarily small in amount could be considered material as a result of qualitative factors.

We confirm, to the best of our knowledge and belief, as of March 31, 2021, the following representations made to you during your audit.

**Financial Statements**

1. We have fulfilled our responsibilities, as set out in the terms of the audit engagement letter dated October 21, 2020, including our responsibility for the preparation and fair presentation of the consolidated financial statements.

2. The consolidated financial statements referred to above are fairly presented in conformity with U.S. GAAP.

3. We acknowledge our responsibility for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

4. We acknowledge our responsibility for the design, implementation, and maintenance of internal control to prevent and detect fraud.

5. Significant assumptions we used in making accounting estimates, including those measured at fair value, are reasonable.

6. Related party relationships and transactions have been appropriately accounted for and disclosed in accordance with the requirements of U.S. GAAP.

7. All events subsequent to the date of the consolidated financial statements and for which U.S. GAAP requires adjustment or disclosure have been adjusted or disclosed. We have disclosed to you all impacts on our business and operations of the current COVID-19 pandemic of which we are aware. Those impacts include the following:

    a   the Company has experienced minimal operational effects due to being a decentralized software platform in a decentralized market;

    b   due to the widespread uncertainty over the macroeconomic factors and sovereign monetary policies which could impact consumer demand for our services, the financial impact cannot be reasonably estimated at this time.

8. We acknowledge the projected material misstatement you identified from your testing related to chargeback expenses in the amount of $150,000 does not materially impact the financial statements taken as a whole.

9. The effects of all known actual or possible litigation, claims, and assessments have been accounted for and disclosed in accordance with U.S. GAAP.

10. Significant estimates and material concentrations have been properly disclosed in accordance with U.S. GAAP.

11. Guarantees, whether written or oral, under which the Company is contingently liable, have been properly recorded or disclosed in accordance with U.S. GAAP.

12. The Company believes the assumptions and estimates used to value the provision for transaction losses to be complete and accurate.

13. We acknowledge the customer funds payable recorded on the balance sheet as of December 31, 2020 is complete and accurate.

14. We acknowledge the token indemnity customer deposit recorded on the balance sheet as of December 31, 2020 is complete and accurate.

15. We acknowledge the related party note payable recorded on the balance as of December 31, 2020 is complete and properly disclosed in accordance with U.S. GAAP.

16. We have provided to you all documents related to the Company's equity transactions. We confirm to the best of our knowledge and belief, that all transactions were properly recorded and disclosed in accordance with U.S. GAAP.

17. We agree all common stock and preferred stock outstanding as of December 31, 2020 is complete and accurate.

18. We are in agreement with the adjusting journal entries you have proposed. All audit adjustments proposed by you have been posted to the Company's accounts.

19. We acknowledge that prior to you performing the following nonattest services:

    a   Assistance with the preparation of the consolidated financial statements and related footnotes

    That we understood that in order for you to maintain your independence, we must assume all management responsibilities for the nonattest services. Including designating a qualified individual with suitable skill, knowledge, or experience, from our senior management to oversee the nonattest services, evaluate the adequacy and results of the nonattest services, and accept responsibility for them. Therefore, we assigned Josh Sroge, CFO, and Elaine Stone, Finance Manager, to oversee and evaluate the adequacy and results of the nonattest services and they have accepted responsibility for them.

**Information Provided**

20. We have provided you with:

    a   Access to all information, of which we are aware, that is relevant to the preparation and fair presentation of the consolidated financial statements, such as records, documentation, and other matters.

    b   Additional information that you have requested from us for the purpose of the audit.

    c   Unrestricted access to persons within the Company from whom you determined it necessary to obtain audit evidence.

21. All material transactions have been recorded in the accounting records and are reflected in the consolidated financial statements.

22. We have disclosed to you the results of our assessment of the risk that the consolidated financial statements may be materially misstated as a result of fraud.

23. We have no knowledge of any fraud or suspected fraud that affects the Company and involves:

    a   Management,

    b   Employees who have significant roles in internal control, or

    c   Others where the fraud could have a material effect on the consolidated financial statements.

24. We have no knowledge of any allegations of fraud or suspected fraud affecting the Company's consolidated financial statements communicated by employees, former employees, analysts, regulators, or others.

25. We have disclosed to you all known instances of noncompliance or suspected noncompliance with laws and regulations whose effects should be considered when preparing consolidated financial statements.

26. We have disclosed to you all known actual or possible litigation, claims, and assessments whose effects should be considered when preparing the consolidated financial statements.

27. We have disclosed to you the identity of the Company's related parties and all the related party relationships and transactions of which we are aware.

28. The Company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral, except as disclosed in the notes to the consolidated financial statements.

29. We believe the reports generated from our system used to support the digital asset balances and transactions are complete and accurate, including both market and cost basis.

30. We believe our accounting for digital assets and financial statements disclosures are complete and accurate.

31. We confirm, through our Wallet Custody Agreement with Binance Holdings Limited (BHL), the Company has right of ownership of all corporate digital assets and right of control over all custodial digital assets.

32. We are not aware of any security breach, corruption, destruction or loss of private keys that would prevent our custodian, BHL, from exerting control over any digital wallet holding either corporate or custodial digital assets held on our behalf.

33. The Company believes there are no contingent liabilities or grounds for compensation owed to any customers as it relates to non-supported forked assets and airdrops.

34. We do not have (a) asserted and unsettled income tax contingencies, or (b) unasserted income tax contingencies caused by uncertain tax positions taken in our income tax returns filed with the Internal Revenue Service and state, and local tax authorities that are probable of assertion by such tax authorities under the provisions of ASC 450. Furthermore, we have not received either written or oral tax opinions that are contrary to our assessment.

35. We acknowledge the customer custodial cash deposits recorded on the consolidated balance sheet as of December 31, 2020 is complete and accurate.

36. The Company acknowledges that prior to listing a digital asset, the Company evaluates the digital assets for viability of the digital asset's use-cases, protocol security, and compliance with all local laws and regulations.

37. We confirm that expenses incurred or obligations due for services between the Company and BHL under any of its arrangements with BHL, including the Software License Agreement, Master Services Agreement, Trademark License Agreement and Wallet Custody Agreement are properly recorded and disclosed as of and for the year ended December 31, 2020.

38. Revenue from contracts with customers has been appropriately accounted for and disclosed in accordance with FASB Accounting Standards codification Topic 606, Revenue from Contracts with Customers. All revenue transactions represent valid transactions with our customers. All contracts with underlying revenue recognized in the financial statements have commercial substance and have been approved by appropriate parties, and we have considered side agreements, implied promises, and unstated business conventions in identifying performance obligations in the contracts. We have sufficient and appropriate documentation supporting all estimates and judgments underlying the amount and timing of revenue recognized in the financial statements. We believe the revenue recognized during the year ended December 31, 2020 is complete and accurate.

39. The Company recorded and prepared transfer pricing documentation related to the intercompany transaction(s) between the U.S., foreign owners, affiliates and related parties following the requirements addressed in Internal Revenue Code Sections 482 and 6662, and associated regulations before the timely filing of the Company's 2019 federal income tax return. The Company will reflect the impact of any transfer pricing adjustment in its financial statements thereafter. The Company will document the transfer pricing arrangement with its U.S. subsidiary(s) following the requirements addressed in Internal Revenue Code Sections 482 and 6662 and associated regulations. The Company will reflect the impact of any transfer pricing adjustment in the subsidiary's separate financial statement. Related to it's 2020 income tax return(s) the Company will:

   a   File consolidated U.S. corporation income tax return for the year ended December 31, 2020, on or before the extended due date of the return;

   b   The U.S. subsidiaries will authorize its parent corporation to include it in a consolidated return filing for the same period by signing Form 1122, Authorization and Consent of Subsidiary Corporation to be Included in a consolidated income tax return filing;

   c   Timely file 7004, Application for Automatic Extension of Time To File Certain Business Income Tax, to include all wholly-owned U.S. subsidiaries;

   d   Report any foreign (affiliate) monetary and nonmonetary transactions, including but not limited to intercompany transactions, payments and relevant nonmonetary transactions with its related parties on Forms 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business;

   e   Schedule UTP, Uncertain Tax Position Statement; and

40. We have adequately considered the impact of COVID-19 pandemic and determined that we are not aware of any specific event or circumstance that would require an update to our estimates or judgments or a revision of the carrying value of our assets or liabilities. We have disclosed to you all impact on our business and operations of the current COVID-19 pandemic of which we are aware.

41. We received a term note through the Paycheck Protection Program ("PPP Loan") under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). We repaid the loan with interest during the year ended December 31, 2020 and the terms of the proceeds and repayment have been properly presented in the consolidated financial statements.

42. Except as disclosed in the footnotes to the financial statements, no events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to, or disclosure in, the consolidated financial statements.

_____
Catherine Coley (Apr 1, 2021 05:25 GMT+4)

Catherine Coley, CEO

_____

Josh Sroge, CFO

# BAM Trading Services Inc. - Management Rep. Letter - Final 3.31.2021

Final Audit Report                                                                 2021-04-01

| | |
|---|---|
| Created: | 2021-03-31 |
| By: | Heather Moore (Heather.Moore@amllp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAo04j9eb2VxD_woyfMVyWGV4AAGxCjQc5 |

## "BAM Trading Services Inc. - Management Rep. Letter - Final 3.31.2021" History

- Document created by Heather Moore (Heather.Moore@amllp.com)
  2021-03-31 - 6:26:29 PM GMT- IP address: 38.111.205.16

- Document emailed to Catherine Coley (coley@binance.us) for signature
  2021-03-31 - 6:27:35 PM GMT

- Document emailed to Joshua Sroge (joshua.sroge@binance.us) for signature
  2021-03-31 - 6:27:35 PM GMT

- Email viewed by Catherine Coley (coley@binance.us)
  2021-03-31 - 6:27:38 PM GMT- IP address: 74.125.216.73

- Email viewed by Joshua Sroge (joshua.sroge@binance.us)
  2021-03-31 - 6:27:39 PM GMT- IP address: 74.125.212.71

- Document e-signed by Joshua Sroge (joshua.sroge@binance.us)
  Signature Date: 2021-03-31 - 6:29:32 PM GMT - Time Source: server- IP address: 76.25.83.251

- Document e-signed by Catherine Coley (coley@binance.us)
  Signature Date: 2021-04-01 - 1:25:11 AM GMT - Time Source: server- IP address: 94.200.232.118

- Agreement completed.
  2021-04-01 - 1:25:11 AM GMT

