# EXHIBIT A-78

GIBSON DUNN                                                              LATHAM & WATKINS LLP

CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED

June 4, 2023

VIA ELECTRONIC MAIL

Jorge Tenreiro
Jennifer Farer
U.S. Securities and Exchange Commission
Division of Enforcement
100 F Street NE
Washington, DC 20549

Re:   *In the Matter of Binance.US*, HO-13865

Dear Mr. Tenreiro and Ms. Farer:

We write on behalf of our clients, Binance Holdings Limited ("BHL") and Changpeng Zhao, to memorialize our discussions regarding the Staff's recently alleged concerns regarding the safety of customer assets on the Binance.US platform. The purported concerns provide no basis for the Commission to seek a temporary restraining order or preliminary injunction in this matter against the Binance.US platform, let alone BHL or Mr. Zhao. Further, the Staff's continued pursuit of emergency relief will likely achieve the harm it claims to fear—disruption for users whose assets rest on the Binance.US platform.

Let us be clear from the outset: you have provided no evidence that Binance.US user assets are unsafe. Both of the entities that operate the Binance.US platform—BAM Management Holdings US, Inc., and BAM Trading Services, Inc. ("BAM Trading" and, with BAM Management Holdings US, Inc., "BAM")—have submitted evidence and multiple letters to the Staff in recent days on the continued safety of these assets, and even offered to sign a proposed stipulation and consent order to address the Staff's alleged concerns. Moreover, the Staff has admitted recently that BAM assets are currently safe.

**Background**

BHL and Mr. Zhao have been engaging with the Staff on this matter (HO-13865, the "Binance.US Investigation") since the Staff issued Wells Notices to them out of the blue in late February 2023. In that time, the Staff posed numerous questions, all of which BHL endeavored to answer. ***Until five days ago***, however, the Staff never expressed concern to BHL or Mr. Zhao that user assets on the Binance.US platform might not be safe. That

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 2

concern—expressed for the first time in a letter to BHL on May 30, 2023—is not supported by the record and is belied by the Staff's interactions with BHL to date.

Prior to February 21, 2023, BHL had contact with the Staff in connection with the Binance.US Investigation in only two limited instances, neither of which involved the Staff expressing concerns about the safety or security of customer assets. First, in November 2021, BHL produced to the Staff certain mobile data for a BHL employee related to the employee's service as a director of a BAM-related entity. Second, in late 2021 and early 2022, BHL worked cooperatively with the Staff to address a potential issue relating to legal privileges held by BHL that might need to be asserted in the testimony of a BAM employee. BHL's last contact with the Staff related to either of the above topics was on or about January 13, 2022.

On February 21, 2023, despite having not engaged at all with BHL for over a year, the Binance.US Investigation Staff issued a Wells Notice to BHL without any prior warning. The Wells Notice articulated no concern that the safety and availability of user assets on Binance.US might be at risk. The Wells Notice gave BHL a mere 13 business days to respond, despite the fact that no related investigation of BHL had ever occurred and BHL had no factual record on which to respond. After BHL requested a modest extension of three weeks, the Staff responded by granting only three additional business days. BHL submitted a Wells response on March 15, 2023.

Similarly, on February 23, 2023, the Staff issued a Wells notice to Mr. Zhao, also without any prior warning or engagement. The Staff informed Mr. Zhao that it had concluded preliminarily to recommend a Commission proceeding against Mr. Zhao for control person liability under Section 20(a) of the Exchange Act arising out of BAM's alleged operation of Binance.US as an unregistered securities exchange. And, similar to BHL, the Staff did not state any concern that the safety and availability of Binance.US user assets might be at risk. The Wells Notice provided Mr. Zhao only two and a half weeks to respond, despite the lack of any existing factual record. When Mr. Zhao requested an extension, the Staff provided a mere four additional days. Mr. Zhao submitted a Wells response on March 17, 2023.

On March 23, 2023, the Staff followed up on BHL's Wells submission with a call in which it posed over 50 questions about BHL's involvement in the Binance.US platform. Again, at no time did the Staff suggest that it was concerned about the safety of customer assets. The Staff initially gave BHL only six business days to respond, before extending the deadline another ten business days, to April 14, 2023.

On April 14, 2023, BHL provided answers to the questions the Staff raised on March 23. These answers were met with a new round of 23 questions, but the Staff again did not articulate any concern that customer assets were at risk. As communications between the parties continued

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 3

into May, the Staff still never expressed concerns to BHL that there might be any risk to the safety of user assets on the Binance.US platform.

The Staff's position shifted on May 30, 2023, when the Staff—for the first time—suggested in a letter (the "May 30 Letter") that it had unspecified and unsupported "significant questions and concerns" about "the safety of customer assets and the unencumbered availability of funds at BAM Trading." No factual basis was provided for these concerns, other than baseless speculation about Mr. Zhao residing outside of the country.[1] The May 30 Letter included an appendix of 26 questions (several with additional subparts) and asked BHL to produce a witness to testify to the factual questions by June 1, 2023—a mere **two days'** time. The Staff sent an identical list of questions to BAM the same day. In a discussion among BHL, BAM, and the Staff on May 31, 2023, BAM and BHL made clear to the Staff that BAM would provide the requested information, with BHL supplementing those responses if needed. BAM followed up with written responses to many of the Staff's questions in the early morning hours of June 1, 2023, and sent a further response the following day. The Staff has not substantively engaged with BAM or BHL regarding the information provided, or provided BAM or BHL any further substantiation supporting the Staff's purported concerns relating to the safety of customer assets.

In the meantime, before even receiving BAM's remaining responses to its questions, the Staff requested a further discussion with BAM and BHL on June 2. During this discussion, the Staff demanded that BAM, BHL, and Mr. Zhao agree to stipulate to a preliminary injunction. The Staff also informed BAM, BHL, and Mr. Zhao that it intended to file suit against all three in the coming week alleging broad theories of liability.

On the evening of Friday, June 2, the Staff sent BAM, BHL, and Mr. Zhao a proposed Stipulation and Consent Order for Preliminary Injunction ("Stipulation"). The Staff required an executed Stipulation by 5:00 pm on Saturday, June 3; otherwise, the Staff would "seek all available preliminary relief before the court as necessary." The Stipulation would require BAM, BHL, and Mr. Zhao to take certain steps regarding the location and movement of Binance.US user assets—steps that, as discussed below, are not necessary to safeguard user assets, and in fact would create further risk to user assets. Notably, the Stipulation also would require BHL and Mr. Zhao to submit in advance to personal jurisdiction in the Commission enforcement action to be filed along with the Stipulation, thereby conveniently allowing the

---

[1] Six days earlier, on May 24, 2023, the Staff held a call with BHL concerning a news article that made allegations about financial practices at BHL. The Staff did not express at that time any specific concerns about assets on the Binance.US or Binance.com platform, and suggested that assurance from both BAM and BHL about the safety of their respective user assets would suffice—a far cry from what it started demanding six days later.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 4


Commission to clear, in advance, one of its significant legal hurdles to bringing a successful enforcement action in this matter. The Stipulation further contained broad, sweeping provisions (i) prohibiting any "dispos[al] of" any of BHL's or Mr. Zhao's "property" of any kind with no limitations or relevance to the Staff's purported concerns, (ii) requiring an accounting of all Binance.US user assets within five days, and (iii) providing only the Commission (not BHL or Mr. Zhao) with expedited and largely unlimited document and testimonial discovery on only a few days' notice while waiving standard protections afforded under the Federal Rules of Civil Procedure.

As discussed below, BAM, BHL, and Mr. Zhao responded to the Stipulation on Saturday, June 3 in a call with the Staff, with a proposal to further address the Staff's key expressed concern regarding Binance.US user assets (beyond all of the security measures already in place). The Staff rejected that proposal without articulating why the proposal did not address the Staff's concerns for customer assets or explaining why the other broad sweeping provisions of the Stipulation were necessary.

**There Are No Grounds for the Proposed Stipulation or Any Emergency Remedy**

Given the lack of any evidence of threats to the safety of Binance.US user assets and the assurances provided so far, the Staff's proposed Stipulation is unnecessary. Moreover, the Staff has made no showing to support all the extraordinary relief demanded in the Stipulation, such as document preservation, expedited discovery, and an accounting of assets.[2]

Finally, the suggestion that BHL and Mr. Zhao being outside the United States is a reason now for emergency relief lacks any basis. Both parties have been outside the United States throughout the Staff's investigation. The Staff has provided no basis for its conclusion that this somehow puts customer assets at risk. There simply is not an emergency requiring the drastic remedy of a preliminary injunction. Rather, BAM has provided sufficient assurances that customer assets are secure, and the jurisdictional questions presented in this matter should be appropriately litigated in the normal course.

---

[2] With respect to Section III ("Preservation of Documents and Information"), BHL and Mr. Zhao will continue to preserve relevant documents in this matter, despite the fact that, with respect to the Biannce.US Investigation, neither of them ever received a document request or subpoena in the first place, other than the Staff requesting from BHL the mobile data of a BAM director who was also a BHL employee.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 5

### The Commission's Threatened Action Is Pretextual and Could Cause Disruption for Users

To reiterate, BAM exercises control over the movement of user assets onto and off of the Binance.US platform, as well as between wallets on that platform.  To the extent that BHL or its personnel play any role in those processes, it is as a limited-scope service provider.  Further, there is no evidence—and we do not understand the Staff to suggest there is any evidence—that the security of those assets is at risk.  Indeed, the Staff acknowledged on the June 3 call **that BAM customer assets are safe today**.

Yet, without any actual evidence of misuse or mishandling of consumer assets, and without any apparent emergency, the Commission apparently intends to seek court action that could disrupt the crypto markets by making baseless accusations of non-existent problems for no good purpose.

It is plainly evident that any emergency Commission action against BHL, BAM, and Mr. Zhao would be pretextual.  Based on explicit statements made to counsel by the Staff, the Commission appears to be concerned that it failed to prevent the failure of FTX, and after being chastised by the public and Congress, the Commission appears determined to avoid any perception of a failure to take some kind of public action, even if it is unjustified and even if it will create problems where there are none and generate disruption for Binance.US users.  The planned emergency actions are factually unnecessary, legally inappropriate, and financially dangerous.

### The Staff's Refusal to Acknowledge Chairman Gensler's Conflict of Interest

Finally, we again raise our concerns—which the Staff has never addressed or even acknowledged—regarding Chairman Gensler's personal history with BHL and Mr. Zhao.  As noted in Mr. Zhao's February 27, 2023 Wells submission, now-Chairman Gensler had several discussions with Mr. Zhao and other BHL personnel shortly before the Chairman's return to government service.  In those conversations, Mr. Gensler acknowledged the regulatory uncertainty surrounding cryptocurrency and offered to serve as an advisor to BHL.  In March 2019, he also met Mr. Zhao for an in-person lunch meeting in Japan, during which they discussed the BNB token, the prospect of BHL establishing a U.S.-based exchange, and other topics.  Mr. Zhao and Mr. Gensler remained in touch after that meeting, and Mr. Zhao understood that the now-Chairman was comfortable serving as an informal advisor.  At Mr. Gensler's request, Mr. Zhao was interviewed for Mr. Gensler's cryptocurrency course at the Massachusetts Institute of Technology, and later in 2019, when Mr. Gensler was asked to appear before the House Financial Services Committee to testify on cryptocurrency matters, he sent Mr. Zhao his intended testimony a day before the scheduled hearing.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 6

As we conveyed nearly four months ago, Mr. Gensler should have been recused from any consideration in this matter based on this history and the prospect that Mr. Gensler may be a material fact witness.[3] To date, the Staff has never confirmed whether Mr. Gensler has recused himself, and if he has not, the Commission's explanation for why not. We remain deeply troubled by this history and the Staff's refusal to acknowledge it, which compounds our concern about the course of action threatened by the Staff in this matter.

\*     \*     \*

This letter contains confidential business information of BHL and Mr. Zhao (the "Parties"). On behalf of the Parties, we request that this letter, and all other information or documents that may be supplied by the Parties to the SEC, be accorded confidential treatment under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b).

The Parties request, under 17 C.F.R. § 200.83, that the SEC afford confidential treatment to, and not disclose, this transmission—as well as any other such information or documents that may be provided to the SEC in the future by the Parties—in response to any request under FOIA. The transmission referenced above contains confidential business information belonging to the Parties. A copy of this written request for confidential treatment will be mailed to the SEC Office of Freedom of Information and Privacy Act Operations at 100 F Street NE, Washington, DC 20549. Should the SEC receive a request under FOIA for disclosure of the information to which this request for confidential treatment relates, the Parties request immediate notification of the undersigned by telephone or electronic mail, so that we may provide any additional information necessary regarding this request for confidential treatment.

We request that the SEC use this letter only in furtherance of this investigation and not use it for unrelated purposes without first consulting with, and obtaining the prior written consent of, the Parties. The Parties also request that, upon completion of your investigation into this

---

[3] Shortly after Mr. Zhao's February 27, 2023 Wells submission, the Wall Street Journal reported on some of these prior interactions with BHL employees by Mr. Gensler. The odd timing of this story strongly suggests that the Commission itself leaked this information because of the arguments Mr. Zhao had raised in his submission.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 7

matter, all documents produced by the Parties promptly be returned and that no copies be retained.

\*   \*   \*

| GIBSON, DUNN & CRUTCHER LLP | LATHAM & WATKINS LLP |
|---|---|
| /s/ Stephanie L. Brooker | /s/ William Baker |
| Stephanie L. Brooker<br>M. Kendall Day<br>Richard W. Grime | William Baker<br>Benjamin Naftalis<br>Douglas K. Yatter |
| *Counsel for Binance Holdings Limited* | *Counsel for Changpeng Zhao* |