# EXHIBIT BH-1

6/11/23, 12:36 PM
Case 1:23-cv-01599-ABJ Document 53-1 Filed 06/12/23 Page 2 of 104
Who Is Guangying Chen, and Is Binance a "Chinese Company"? | Binance Blog

## Who Is Guangying Chen, and Is Binance a "Chinese Company"?

2022-09-01



One of the many strengths that our employees at Binance must possess is thick skin. After all, this industry is the subject of a lot of negative sentiment (much of it is unwarranted, but it's the reality right now). In recent months, our thick skin has been tested by a noticeable increase in attacks on our company's reputation. These come from both the media and behind closed doors in meetings with policymakers.

Just last week, a former Washington Post journalist sent a tweet to one of our executives during a run-of-the-mill disagreement over "media bias" on Twitter. Out of the blue they asked, "While I have you here, who's Guangying Chen?"

While that journalist possibly didn't understand it, that question is emblematic of the disdain that our employees face on a daily basis in both the East and West. This question originates from an old campaign that a competitor launched via an anonymous microsite. The goal? To erode trust in our brand as we were expanding and competing to attract new partners and investors.

If you look at companies like ours and FTX, Crypto.com, etc., you'll find our organizations have very similar employee profiles. However, over the past two years, as we expanded into Europe and the Middle East and recruited a more senior leadership team, Binance's executive team is now more heavily dominated by Europeans and Americans. Our broader employee base is even more globally

distributed. Despite these facts, some people insist on calling us a "Chinese company," and in doing so, they don't mean well.

These types of negative campaigns are far more common than people realize. We've even seen crypto exchanges and projects create their own "news" sites to bash competitors, and these sites are now frequently miscategorized as independent news sources by Google News. I would laugh too, if it wasn't so serious and disheartening how often I had to explain the differences between an organization like CoinGeek versus CoinDesk to people in positions of real power.

And these types of attacks are only becoming more sophisticated. Just recently, CryptoLeaks published a report alleging how one firm is using litigation to sow doubt about rival blockchain projects. And while it is tempting to launch counter-attacks on the industry's bad actors who engage in these activities, we will not debase ourselves nor abandon our values.
These types of campaigns erode trust in the entire industry. We are builders. We can compete in this space and still cheer on each other's successes.

# Our Responsibility

We are the largest crypto exchange and Web3 company on the planet. With that comes a great responsibility and an expectation of facing additional scrutiny. However, it's important to remember that our industry is still in its infancy.

When your company suddenly goes from start-up to Fortune 100 overnight, nobody shows up at your office the next day with 1,000 experienced executives, streamlined processes, and technologies to suddenly operate like a two-hundred-year-old, established financial institution.

Like every other crypto exchange, growing and upscaling our staff and maturing our systems to match the growth of the industry has been the greatest challenge of my career. This is something that I have embraced and invested heavily in thus far.

# Crypto Industry Blossoms in Asia

Before returning to my main point, let me provide a quick, oversimplified history of the crypto industry that surprisingly few people understand. Sometime around 2015 or 2016, the industry saw the first massive wave of crypto fever among Korean and Japanese millennials.

This was at a time when both societies were panicking over young males' increasing engagement in a culture that mostly existed online. This manifested into the notion that young men and women would

6/11/23, 12:36 PM
Case 1:23-cv-01599-ABJ Document 53-1 Filed 06/12/23 Page 4 of 104
Who is Guangying Chen and Is Binance a Chinese Company? | Binance Blog

simply waste their lives away online and a whole generation would be lost.

So you can only imagine how the rise of crypto fed into these issues. What resulted was a series of crypto crackdowns in both Korea and Japan. During this time, China quickly realized that embracing this nascent industry had the potential to reap sizable benefits for its economy.

While the Chinese government maintained a stern public position on crypto, it quietly, behind the scenes, helped bolster the fledgling industry and supported its growth within its borders. The best Web3-curious engineers and investors flocked to Shanghai and Hong Kong.

# Complex History With China

On August 6th 1989, my mother and I left China and emigrated thousands of miles away to Canada. For those who know Chinese history, this is 2 months after the events of June 4th 1989.

I was 12 years old.

My parents were teachers/professors. We lived on campus at the University of Science and Technology in Hefei at the time, one of the top four universities in China. While I didn't understand much of what was going on, I did hear snippets of conversations from older college kids and from what I pieced together, I was lucky to have been able to leave at that time.

It normally took four years to get a passport, and it would have taken another 2-3 years to get a Canadian visa if we were lucky. But due to the incident, the Canadian embassy opened up and gave us visas quickly. I remember the line outside the Canadian embassy was three days long. We had to take shifts at night to keep our position in the queue.

It changed my life forever and opened up endless possibilities for me.

I spent my best years as a teenager in Vancouver and then went to McGill in Montreal for college. After that, I worked in Tokyo and New York (Bloomberg) for a few years.

In 2005, the web tech industry started to explode in China, so I went to Shanghai to launch an IT start-up together with five other expats; two Americans, two Brits, one Japanese, and me, a Canadian. The company was designated as a "Wholly Owned Foreign Enterprise" (WOFE), as none of us were Chinese nationals.

This point was a considerable business hurdle to overcome. When I was financially stable enough to purchase a condo in Shanghai, I had to pay 25% more tax because I was a foreigner. Yes, the same

apartment I sold to buy bitcoin in 2014.

Without the fee, I could have 25% more bitcoin today.

Between 2005 and 2015, I tried to set up several different start-up projects before eventually dipping my toes into the crypto space. I was a serial entrepreneur looking to build a successful start-up before I understood my passion.

This is by far the most fundamental challenge for any young entrepreneur.

Two years before Binance, I started a company called Bijie Tech, providing exchange-as-a-service platforms to other exchanges. We got 30 clients on board, and business was good. They were mostly exchanges of art and items like stamps, baseball cards, etc.

Unfortunately, in March 2017, the Chinese government shut down all such exchanges. All of our clients went out of business. Later on, the idea of Binance would start to take shape. It was a simple notion that a more streamlined crypto exchange could provide a more frictionless user experience without sacrificing useful features.

# Leaving China

I took quite a few people from the Bijie team to Binance and together, we launched Binance on July 14th 2017.

However, a mere month and a half later, before Binance could even be properly established, we faced our first significant disruption.

On September 4th 2017, the Chinese government issued a memo stating that crypto exchanges were not allowed to operate in China.

They then blocked our platform behind the Great Firewall. At this point, most of our employees left China. Only a small number of customer service agents remained by late 2018.

The irony that I was once again forced to leave China – approximately thirty years after my parents fled with my sister and I – was not lost on me.

Our leadership team jointly decided that we would work remotely. Soon, COVID-19 spread across the globe, and the whole world moved to remote working. This allowed us to continue growing as a company and entice top talent, although we were still looking for a place to plant our roots.

Coinbase even famously listed on NASDAQ without an HQ named in its S-1 registration statement.

Our remote working model has since become normalized across the globe and we are active in pursuing top talent, no matter where they may hail from. As I mentioned, when we started Binance just five years ago, we were a ragtag group of crypto enthusiasts and engineers. We also had to deal with the challenge of launching a business at the height of the bear market set off by the clampdown in Korea and Japan.

On the plus side, it was a relatively good time to get into crypto because prices were low. This is why many major exchanges, such as FTX and Crypto.com, were set up in Hong Kong during this time.


# "While I Have You Here. Who Is Guangying Chen?"

So with that background, who IS Guangying Chen?

I first met Guangying (Heina) Chen when she was working at my friend's wine store in 2010. She later worked as a service manager at a large commercial bank where she also managed the back office (HR/finance/admin).

In 2015, when I started Bijie Tech, I asked Guangying to work for me. We asked her to manage the back office as the early team was mainly engineers. Because of restrictive laws in China surrounding foreigners (like me, a Canadian citizen), it's much easier to have a Chinese national as the listed legal representative.

Given that Guangying was both a Chinese national and was managing the back office for us, she agreed. This is a very common practice in China.

Because her name is listed on the early Bijie Tech documents, Binance's detractors have leaped at the opportunity to spread a conspiracy theory that Guangying was secretly the owner of Bijie Tech and possibly even Binance.

As a result, both she and her family have been targeted and harassed by the media and online trolls. Had I known how much of a negative impact this would have on her life, I never would have asked her to do what seemed like such an innocuous step at the time.

Like many early Binance employees, Guangying had to leave her family, her home, and her friends behind when most of us left China in 2017. It was a tremendous sacrifice and she is one of the very

6/11/23, 12:36 PM
Who is Guangying Chen and Is Binance a Chinese Company? | Binance Blog
Case 1:23-cv-01599-ABJ   Document 53   Filed 06/12/23   Page 7 of 104

few people who will ever truly understand the impact that this has had on all of us. She still carries this burden today as spurious Chinese media outlets continue to spread conspiracy theories about her.

Today, Heina Chen is a passport holder in a European country where she lives in relative peace with her family. I say "relative peace" because ever so often, tabloids dig up these old conspiracy theories, triggering another round of harassment for her and her loved ones.
As we have grown these past five years, many of the original employees and founders have taken on new roles in the organization. Guangying currently oversees the admin and clearing team for the organization.

So in conclusion, she does not own Binance and she is not some secret Chinese government agent.

# So Is Binance a Chinese Company?

No. Anyone with even a rudimentary knowledge of corporate law or how companies work will understand this: Binance was never incorporated in China. Nor do we operate like a Chinese company culturally. We have subsidiaries in many countries, including France, Spain, Italy, UAE, and Bahrain (to name a few). But we don't have any legal entities in China, and we do not have plans to. I believe it's critical today that we come forward with these facts.

The greatest challenge that Binance faces today is that we (and every other offshore exchange) have been designated a criminal entity in China. At the same time, our opposition in the West bends over backward to paint us as a "Chinese company."

The inference is that because we have ethnically Chinese employees, and perhaps because I am ethnically Chinese, we are secretly in the pocket of the Chinese government. We are an easy target for special interests, media, and even policymakers that hate our industry.

This is obviously not true.

My favorite are the news stories that go out of their way to note that I am a "*Chinese Canadian CEO*" or, even better, "*born in China, educated in Canada.*" I am a Canadian citizen, period.

Simply being of Chinese descent or having emigrated from China should not be a scarlet letter one has to wear for the rest of their life. Nor should it give people free rein to cast aspersions, lay false claims, or question one's loyalty to their country.

# EXHIBIT BH-2

6/11/23, 4:27 PM
Case 1:23-cv-01599-ABJ Document 53-1 Filed 06/12/23 Page 9 of 104
Meet Changpeng Zhao, the CEO of Binance and the richest man in crypto, who worked at a gas station before making his $30 billi…

web.archive.org /web/20221025065415/https://www.businessinsider.com/zhao-changpeng-binance-billionaire-crypto-mcdonalds-f…

# Meet Changpeng Zhao, the CEO of Binance and the richest man in crypto, who worked at a gas station before making his $30 billion fortune

Marielle Descalsota 2022-10-25T06:39:48Z18-23 minutes 10/24/2022

The Wayback Machine - https://web.archive.org/web/20221025065415/http://www.businessinsider.com/zhao-changpeng-binance-billionaire-crypto-mcdonalds-fast-food-wealth-lifestyle-2022-10

US Markets Loading... H M S

Binance CEO, Changpeng Zhao.
REUTERS/Darrin Zammit Lupi

- Changpeng Zhao, also known as CZ, is the wealthiest person in cryptocurrency.
- The Chinese-born Canadian mogul founded Binance in 2017.
- Zhao worked at McDonald's in his teens, and doesn't indulge in cars, yachts, or luxury watches.

**Changpeng Zhao is the founder and CEO of Binance, the world's largest cryptocurrency exchange. With a net worth of around $30 billion as of October 25, he's the 33rd-richest person in the world, according to the Bloomberg Billionaires Index.**

6/11/23, 4:27 PM
Meet Changpeng Zhao, CEO of Binance that notes LMarin06/biz/blocked Pages 10 of 104 making his $30 billi…

Case 1:23-cv-01599-ABJ Document 53-1 Filed 06/12/23 Page 10 of 104

Changpeng Zhao, CEO of Binance.
Antonio Masiello/Getty Images

Zhao — who's often known as CZ — is one of the most prominent people in cryptocurrency, as well as the wealthiest person in the industry.

Crypto winter has taken a toll across the industry, and Zhao is no exception. His real-time estimated net worth is a far cry from the peak of his personal wealth: His net worth peaked at $95.9 billion earlier this year, the Bloomberg Billionaires Index shows.

Zhao's interest in cryptocurrency began in 2013 when he first learned about Bitcoin, according to a 2018 Forbes report. His career in the up-and-coming digital currency industry started at Blockchain.info, where he served as the head of development.

Zhao founded Binance in 2017 and powered it to become the biggest cryptocurrency exchange by trading volume. The exchange handles some $76 billion in daily trading volume, according to Protocol. In 2021 alone, Binance generated over $20 billion in revenue, according to Bloomberg. Binance is bigger than its four largest competitors combined, per Bloomberg.

Zhao and Binance did not respond to Insider's requests for comment.

## Zhao was born in a rural village in Jiangsu province in China in 1977 to a family of teachers, per Fortune.

Nanjing, Suzhou, China.
Fang Daqing/VCG/Getty Images

Zhao, who is Chinese-Canadian, moved to Vancouver in the late 1980s with his family, according to Forbes.

Zhao's father, Shengkai, was a professor who was exiled to the countryside during the Cultural Revolution in China, according to the Maclean's report.

Zhao said in a September blog post that his family had to wait in line outside the Canadian embassy for three days to procure visas. He added that he was "lucky to have been able to leave at that time."

Shengkai immigrated to Canada to pursue a doctorate degree at the University of British Columbia, per Maclean's. After the Tiananmen Square protests in 1989, Zhao and his family followed his father and moved to Vancouver.

Zhao said he experienced food rationing growing up in rural China. "You get a ticket to buy meat," Zhao told Fortune in a March interview. Zhao told Maclean's that it wasn't until he moved to Canada that he ever drank fresh milk, because it was so rare to find it in China.

## When Zhao moved to Canada, he held a number of part-time jobs, including working as a cook at McDonald's, according to the Maclean's report.

McDonald's in Richmond, BC, Canada.

Cheng Feng Chiang/iStock/Getty Images

Zhao also worked at a Chevron gas station and as a referee for volleyball games in his teens to earn money, per Maclean's.

Zhao said in the blog post that moving to Canada "changed my life forever." He added that he spent his "best years as a teenager" growing up in Vancouver.

According to a 2018 Forbes report, Zhao is frugal: He doesn't own cars, yachts, or luxury watches, and his "only indulgence" were three mobile phones he owned at the time.

## Zhao studied computer science at McGill University in Montreal, the same school where his father worked as a visiting scholar, per Maclean's.

McGill University.

JHVEPhoto/iStock/Getty Images

Zhao's interest in technology was fueled by a $14,000 286 DOS computer that his father — "a math whiz and programmer" — bought when was Zhao was in his teens, per Maclean's. Before attending McGill, Zhao enrolled in programming classes in high school and started coding when he was just 16 years old, per Bloomberg.

After graduating from university, Zhao had a successful career working on the Tokyo Exchange and Bloomberg's Tradebook, per Forbes. Zhao, then only 27 years old, was promoted thrice in less than two years to manage teams in New Jersey, London and Tokyo.

In 2005, Zhao quit the corporate life and moved to Shanghai to become a partner at the trading system company Fusion Systems. According to Zhao's Linkedin page, he left the company in December 2013.

**The vast majority of Zhao's multibillion-dollar wealth comes from his controlling stake in Binance Holdings, per Bloomberg.**

Cryptocurrency exchange Binance founder and CEO Changpeng Zhao speaks at a Binance fifth anniversary event in Paris, France, July 8, 2022.
Staff/Reuters

While Bloomberg estimates Zhao is worth around $30.6 billion from his majority stake in the cryptocurrency platform, it's not a complete picture of his wealth. Bloomberg said it did not include cryptocurrency directly held by Zhao in his net worth, as the amount is not publicly available.

Zhao has personal cryptocurrency holdings in Bitcoin and Binance Coin, per a September report by Bloomberg. In 2021, Binance had over 90 million users, Bloomberg reported, citing an estimate from Zhao.

Zhao is said to have a considerable amount of wealth from Bitcoin, having bought $1 million worth of the digital currency when it was just $600 a unit, per Maclean's.

## But Zhao's journey at Binance has been far from smooth sailing — the company has been embroiled in several controversies.

Changpeng Zhao, CEO of Binance.
REUTERS/Darrin Zammit Lupi

In October, some $570 million worth of cryptocurrency traded on Binance was stolen in a blockchain hack, according to the New York Times. Zhao told CNBC in an October interview that no users had lost money in the attack, and that "software code is never bug free." The Binance hack is one of the biggest cryptocurrency hacks of all time.

Binance said in a blog post that in the event of a hack in the future, its validators will decide if the hacked funds will be frozen. The decision would be made through a series of "on-chain governance votes" — the system that manages and implements changes to the blockchain. Binance added they would also consider implementing a "bug bounty reward system," so users are incentivized to report bugs.

Binance has also been criticized for its ties to China. Binance only delisted Chinese yuan-based trading pairs on the exchange in 2021, and served customers in China for several years, according to September article by Protos. Chinese authorities banned all crypto-related transactions in September 2021.

Zhao responded to these allegations in a blog post published in September, where he clarified that Binance was never incorporated in China and said it does not "operate like a Chinese company culturally." He added that he is "a Canadian citizen, period."

Binance also garnered controversy for enabling Iran-based users to trade cryptocurrencies on the exchange despite US-imposed sanctions, according to a July report by Reuters. Binance informed traders in Iran to liquidate their accounts in November 2018, but seven traders continued until September 2021 to use the account even after the ban. Binance did not respond to Reuters' requests for comment at the time.

## Zhao is currently based in Dubai, according to a June report by Forbes. He was previously based in Singapore.

Marina Bay Sands in Singapore.
Marielle Descalsota/Insider

Zhao moved to Dubai in late 2021, where he leases an office to run what Bloomberg described as "a new phase" of Binance. Zhao also owns an apartment and a minivan in the city, the publication reported.

"I have always liked placed with diverse cultures," Zhao told the Gulf News in an August interview. He described the city as "very pro-crypto," according to a 2021 interview with Bloomberg.

Previously, Zhao lived in Singapore from 2019 to 2021. The city-state spent hundreds of millions of dollars investing in the sector amidst a crackdown on the industry in the US, UK, and China.

Read next



Thanks for signing up!

Access your favorite topics in a personalized feed while you're on the go.

Features Binance Cryptocurrenies

More...

# EXHIBIT BH-3

6/11/23, 1:07 PM
Case 1:23-cv-01599-ABJ Document 58-1 Filed 06/12/23 Page 21 of 184
Who is Binance founder Changpeng 'CZ' Zhao, the billionaire who wants to 'rebuild' crypto? | CNN Business - Reader View

# Who is Binance founder Changpeng 'CZ' Zhao, the billionaire who wants to 'rebuild' crypto?

Michelle Toh7-9 minutes 11/15/2022

Binance CEO: Regulation helps crypto credibility, but it's not 'a magical pill'

01:21 - Source: CNN Business

*Hong Kong CNN Business* —

Binance founder and CEO Changpeng Zhao is once again in the global spotlight, this time as the self-appointed white knight of crypto as the industry is embroiled in crisis.

The Canadian billionaire has made headlines this week for offering to come to the aid of entrepreneurs who are facing a cash crunch, in efforts to help "rebuild" the sector.

Zhao, who goes by his initials "CZ," made his pitch just days after rescinding an offer to help bail out one of the biggest firms in the space, FTX. The company went bankrupt two days later.

Zhao announced Monday that to mitigate any further damage from the collapse of FTX, his team would establish "an industry recovery fund, to help projects who are otherwise strong, but in a liquidity crisis."

Binance, the world's largest cryptocurrency exchange, would welcome other industry players who'd like to participate as cash investors, he said on Twitter.

"Crypto is not going away. We are still here," Zhao added. "Let's rebuild."

Zhao launched Binance in July 2017 in China, gradually building it into the world's largest crypto exchange.

In September of that year, according to a company blog, most of its employees left the country after the Chinese government issued a memo banning crypto exchanges. Zhao said it was "before Binance could even be properly established" or incorporated in the country.

Four years later, in September 2021, the Chinese authorities declared all cryptocurrency-related business activities illegal and vowed to clamp down on illicit activities involving digital currencies.

According to company blog posts, Zhao was born in China, lived in the central province of Anhui, and, at age 12, emigrated to Canada with his mother in 1989. He described waiting for three days outside the Canadian embassy for a visa, taking turns with his family at night to keep their place in line.

Zhao spent his teenage years in Vancouver and previously worked at McDonald's to help support his family.

After studying computer science at McGill University, he worked on trading software for the Tokyo Stock Exchange and Bloomberg.

"He then learned about bitcoin in 2013 during a game of poker, after which he decided to go all-in on crypto by dedicating his life to it," according to Binance. "He even sold his apartment to buy bitcoin."

The road to success hasn't been easy.

Like other exchanges, Binance has faced significant regulatory hurdles around the world in recent years, including a ban in the United Kingdom and other restrictions in countries including Canada.

The company is also on an investor alert list in Singapore, where the central bank has warned that it is not licensed or regulated locally.

Last week, Zhao addressed speculation about the company's status in the city, writing on Twitter that Binance was "not banned, just no license yet."

Zhao has spoken out about some of the company's challenges, saying that as a Chinese-born business leader he has faced undue suspicion.

"The inference is that because we have ethnically Chinese employees, and perhaps because I am ethnically Chinese, we are secretly in the pocket of the Chinese government. We are an easy target for special interests, media, and even policymakers that hate our industry," he wrote in a recent blog post.

"I am a Canadian citizen, period."

As of September, Binance had subsidiaries in countries including Spain, Italy, France, Bahrain, and the United Arab Emirates, Zhao added.

Zhao catapulted to mainstream attention earlier this year as he became one of the richest people on Earth.

In January, his estimated net worth reached at least $96 billion, putting him in the ranks of leaders such as Oracle (ORCL) founder Larry Ellison and surpassing that of Mukesh Ambani, the Indian tycoon.

His projected fortune has since fallen to $16.9 billion as the value of cryptocurrencies crashed, according to calculations from the Bloomberg Billionaires Index.

A Binance spokesperson previously told CNN Business that "CZ intends to give away most of his wealth, even 99% of his wealth, just like other entrepreneurs and founders."

Zhao has been under pressure to step in as one of the last few titans standing amid the industry's worst-ever turmoil.

The sector is currently in the midst of a so-called "crypto winter," which was sparked by the collapse of TerraUSD, an algorithmic stablecoin, which is a type of cryptocurrency that was supposed to be pegged one to one with the US dollar.

In May, TerraUSD lost its dollar peg, which led to the collapse of its sister token and eventually created a huge global liquidity crisis in the crypto industry.

Last week, he offered a lifeline to Sam Bankman-Fried, a 30-year-old rival who led FTX, one of the industry's top players.

The Binance chief said his firm had been asked to help as FTX grappled with liquidity issues. In response, Binance announced it would buy its smaller rival.

But in a dizzying sequence of events, Binance almost immediately pulled out, saying that after reviewing FTX's finances it had concluded that the company's problems were "beyond our control or ability to help."

The deal quickly fell apart, paving the way for FTX's bankruptcy filing and the resignation of Bankman-Fried.

The news marked a stunning fall from grace for one of the industry's most revered entrepreneurs, who himself had been billed as a savior of crypto after working to keep several industry players afloat in an array of similar deals this year.

Since the aborted purchase, Zhao has been candid about the sector's remaining challenges.

Speaking in Indonesia on Friday, he urged regulators to look beyond anti-money laundering and know-your-customer rules, to focus instead on the operations, business models, and reserves of exchanges like FTX.

He said that comparing the current crypto chaos to the 2008 global financial crisis was "probably an accurate analogy."

"It's devastating for the industry. A lot of consumer confidence is shaken," Zhao added. "We've been set back a few years."

In separate remarks in Indonesia on Monday, Zhao doubled down on his call for greater regulation.

There is a "lot of risk," he said. "We have seen in the past week things go crazy in the industry, so we do need some regulations, we do need to do this properly."

— *CNN's Matt Egan contributed to this report.*

# EXHIBIT BH-4

dailycoin.com /how-binances-changpeng-zhao-became-powerful-man-in-crypto/

# Changpeng Zhao: The Man Named "CZ"

Victor Fabusola 8-11 minutes 12/9/2022

- 

Published: December 10, 2022  |  4:00 AM GMT





In July 2017, no one knew who Changpeng Zhao was. The name would have only elicited blank stares if people were asked about it.

However, just eight months later, CZ became a billionaire and was running the world's largest cryptocurrency exchange by trading volume.

In just eight months he went from a nobody to one of the most important people building the future of the blockchain.

The question now is how did CZ become the most powerful man in crypto?

## It All Starts in China

The story of Changpeng Zhao, also known as CZ, starts in China. Zhao was born in China's Jiangsu province to Chinese teachers. He was born in 1977, so the overtly totalitarian communist rule in China was coming to an end as a result of Mao's death.

While the communist fundamentalist Mao Zedong had died, there was still some appetite for Soviet-era repression in China. For example, intellectuals were regarded as members of the bourgeoisie class and were routinely sent into exile.

That was a fate that CZ's father suffered shortly after his son's birth. For some reason, CZ's father was branded a "bourgeoisie senior intellectual" and was sent into exile. This kicked off a chain of events that resulted in the entire family leaving China and relocating elsewhere.

By the end of the 80s, CZ's family chose to move to Canada to start a new life. CZ at the time was just 12 years old and had to become acclimated to a new culture and a new language.

When CZ's family moved to Canada, they weren't rich. While they weren't living in penury, they didn't have the luxury that other immigrant families had. CZ had to immediately start working to support his family. As a teenager, he flipped burgers at a McDonald's and even took on all-night shifts at a gas station.

## The Ladder of Success

After completing high school, CZ decided to study Computer Science at McGill University in Montreal, Canada.

The fact that he was able to get into McGill University in the first place is a testament to how bright CZ proved himself to be. McGill University has one of the highest average entering grades of any University in Canada. High-schoolers who gain admission into the university almost always have a finishing grade above 90%.

### Tokyo

After college, CZ was selected for an internship in Tokyo. He took the opportunity with open arms and soon found himself working for a subcontractor of the Tokyo Stock exchange.

CZ didn't know it at the time, but his experience at the stock exchange would eventually mold his career and give him the financial knowledge needed to build Binance. His job at the time was simple, and it was actually right in his area of expertise. He was to develop matching software for trade orders.

### Bloomberg Tradebook

In time, CZ  got a job at Bloomberg Tradebook where he developed futures trading software.

He spent four years at Bloomberg Tradebook and experienced meteoric career growth. He was promoted three times in those four years and became responsible for managing multiple teams around the world.

### Shanghai

He wanted something more and decided that Shanghai was the place to find it. In 2005, he made his move to the city and founded Fusion Systems.

By this point in his career, CZ essentially had all the skills he needed to build a company like Binance. He was a guru at Computer Science and had spent years in finance and high-stakes trading. It was almost like he was being built for his role in cryptocurrency.

### Fusion Systems and Bitcoin

CZ spent eight years in Fusion Systems. His company was thriving, his profit margins weren't bad, and business was booming. But then, a friend introduced him to crypto in 2013, and he immediately knew that it was something he had interest in.

The friend who introduced CZ to crypto was an investment poker player named Bobby Lee. Lee told CZ that if he invested just 10% of his net worth into Bitcoin, the coin could be worth ten times its value, and CZ would be twice as rich. And if Bitcoin lost all of its value, CZ would have lost just 10% of its net worth. According to Lee, investing in Bitcoin was a no-brainer.

CZ saw the logic in this argument and believed his friend completely. To prove just how dedicated he was to Bitcoin, CZ immediately sold his apartment to buy Bitcoin and quit his job to switch to crypto.

CZ spent much of 2013 researching Bitcoin as quickly as he could and he even attended conferences. Because of his immense networking efforts, he soon got on the Blockchain.info team where he worked closely with Roger Ver and Ben Reeves, who were very important figures in the crypto space around 2023.

After just a year of working at Bitcoin.Info, CZ left to become the CTO at OKCoin. However, he didn't find success at OKCoin and he left a bit later.

## CZ Binance, Crypto King

Throughout his time at Bitcoin.info and OKCoin, CZ learned a lot about crypto.

In July 2017, he eventually put all this knowledge to work by creating Binance.That same month, he raised $15 million for the company through an ICO, and the company started growing almost exponentially. In eight months, Binance had surpassed Blockchain.com and became the largest exchange by trading volume.

And CZ was suddenly one of the most influential men in crypto. He was also worth $1.2 billion.

### The Troubles

However, Binance wasn't an instant success. Those eight months weren't rosy by any means. Just as the company was expanding, the Chinese government banned ICOs and eventually banned crypto exchanges.

China made this policy because it faced a weakening economy and wanted to block the flow of money out of the country illegally. This led to an investigation of crypto firms and their activities. It seems that the finding of this investigation informed the decision to ban ICOs.

Document 53-1 — The Man, CZ — Reader view

The People's Bank of China finalized the bans of ICOs in September 2014, and then went on to ban ICO platforms from issuing ICO tokens. While the crypto ecosystem was still reeling from the ban, Chinese regulators banned crypto exchanges in their entirety. All of this happened within the span of two weeks.

Fortunately for Binance, its IP address wasn't in China unlike that of its biggest competitors. Huobi and OKCoin were Binance's biggest competitors, but unfortunately, they were domiciled in China. That means they had to close down and they found it difficult to diversify their customer base outside China.

However, Binance had no problem with staying open, since its servers weren't affected by Chinese regulations. Hence, following the Chinese ban, Binance was able to get a huge chunk of their businesses.

Just eight months after Binance was founded, the company had grown exponentially and had 7 million users. But that was just the beginning.

## The Man, CZ

Today, CZ is still the head of Binance, and Binance is still the world's biggest exchange. The success of Binance has rewarded him handsomely too, as he is now worth $10 billion. Interestingly, almost all of his wealth is still in crypto and it doesn't seem like he will exchange them for fiat.

Despite being extraordinarily wealthy, CZ still wears cheap clothes. He doesn't have expensive cars, houses, or anything of the sort. He wears basic clothes and shoes and looks like your everyday guy. The only difference is that he's been on the cover of Forbes magazine, and he's one of the richest people on the planet.

He even says that he will probably give all his wealth away in the end.

## On the Flipside

- Sam Bankman-Fried (SBF) was also one of the most powerful men in crypto and had an impressive grass-to-grace story. However, he ended up being a corrupt and fraudulent founder who mismanaged user funds and ran a deeply dishonest business.
- Binance has only been around for six years. That's not enough time to judge just how sound the business is. In fact, recent events surrounding FTX suggest that we should be a bit more wary of large centralized exchanges like Binance.

## Why You Should Care

CZ is probably the third most influential person in crypto after Satoshi and Vitalik. His actions, for good or bad, will influence the future of crypto. That's why it's important to know who he is and what motivates him.

This article is for information purposes only and should not be considered trading or investment advice. Nothing herein shall be construed as financial, legal, or tax advice. Trading forex, cryptocurrencies, and CFDs pose a considerable risk of loss.

# EXHIBIT BH-5

startuptalky.com /changpeng-zhao-binance-founder/

# Changpeng Zhao - Success Story of the Binance Founder

Bharath7-8 minutes 1/11/2022

Changpeng Zhao is the founder of the **world's largest crypto exchange Binance**. He has turned out to be a true inspiration to many since the company's inception in 2017. In a span of a few months, Zhao turned the company into the largest exchange platform for the crypto trade. Changpeng Zhao, popularly known as CZ, was valued as the **11th richest person** in the world. Recent estimates revealed that his net worth is around $96 billion.

From selling his apartment to buy cryptocurrencies to turning out to be one of the richest people in the world, the life of CZ is something inspiring and exciting to learn about. Let us see where and how Changpeng Zhao's journey started, his early living and his life as the CEO of Binance.

## Changpeng Zhao - Biography

| Name | Changpeng Zhao |
| --- | --- |
| Born | 1977 |
| Birth Place | Jiangsu, China |
| Nationality | Canadian |
| Age | 44 (2021) |
| Education | Computer Science, McGill University |
| Position | Founder and CEO, Binance |
| Net Worth | $96 billion |

Changpeng Zhao - Personal Life
Changpeng Zhao - Initial Career
Changpeng Zhao - Professions in the Crypto World
Changpeng Zhao - Journey as Binance CEO
Changpeng Zhao - Challenges Faced
Conclusion
FAQs

Changpeng Zhao, Binance Founder

## Changpeng Zhao - Personal Life

Changpeng Zhao is a Chinese-Canadian business person who was **born in Jiangsu province of China on 10th September 1977**. Both of his parents were teachers. Zhao's father was working as a professor in a university and he was exiled after getting labeled as "pro-bourgeois intellect". As a result, the family moved to Vancouver, Canada by the late 1980s. During his teenage years in Canada, Zaho started working part-time to support his family's expenses. He used to work at McDonald's and a few gas stations after his school.

Case 1:23-cv-01599-ABJ   Document 53-1   Filed 06/12/23   Page 30 of 104

## Changpeng Zhao - Initial Career

Changpeng Zhao was a computer science graduate from McGill University, Montreal. After graduation, he started his career as an intern in Tokyo. He worked for a trader on Tokyo Stock Exchange, who asked Zhao to develop software for matching orders in the stock trade. After the initial experience, he joined the Bloomberg Tradebook LLC in 2001 and worked as the head of Futures Development sector for the next 4 years.

Later in 2005, Zhao co-founded a company called Fusion Systems. The company was involved in providing IT solutions and other business consultancy services. Changpeng Zhao remained as a partner in Fusion Systems until the end of 2013 and then entered the world of Crypto.

## Changpeng Zhao - Professions in the Crypto World



Changpeng Zhao - Binance Founder

By 2013, Changpeng Zhao joined as the head of the development team in Blockchain. Blockchain.com is a company that provides various cryptocurrency-related services. It created a cryptocurrency wallet that has dealt with almost 28% of the bitcoin transactions between 2011 and 2020. Zhao worked in this company for developing software related to crypto wallets.

After working in Blockchain for about a year, Zhao resigned from the company and joined as the Chief Technical Officer in a company named OKCoin. OKCoin, like Binance, was a Crypto Exchange company and is considered to be one of the largest in the world. But Zhao felt that the company doesn't suit his vision on crypto exchange and he decided to quit his position.

Coming out of OKCoin, CZ founded a company named Bijie Tech. This company provided crypto exchange services to people in Shanghai. It kept serving people for two years from 2015 to 2017, until one day, all the platforms and websites of Bijie tech went dead. There was no information given or clarified from the

management regarding the disappearance of the company. But with the death of Bijie Tech emerged a mighty company named Binance.

## Changpeng Zhao - Journey as Binance CEO



Binance Logo

Changpeng Zhao's interest in cryptocurrencies started as early as 2014 while he was playing a poker game with his friend. During that time he got to know about Bitcoin and started investing in it. He even sold his house to buy Bitcoins. Such was his interest in the crypto market. Zhao added experience to his interest by working in various companies.

Bijie Tech slowly disappeared only to bloom as Binance. All the top management and resources of the former company structured Binance. Changpeng Zhao has remained the CEO of the company since its formation in 2017. This cryptocurrency exchange platform is the **largest exchange in terms of** trading. Binance made Zhao a billionaire within just 180 days of its operation. He has grown to be the **11th richest person in the world** with his **net worth estimated at $96 billion.**

Binance Business Model | How does Binance makes money

Here's a deep insight into the business model of largest cryptocurrency exchange - Binance and all the ways it makes money.

StartupTalkyAbinaya Arangarajan

6/11/23, 1:16 PM
Changpeng Zhao - Success Story of the Binance Founder - Startuptalky
Case 1:23-cv-01599-ABJ   Document 53-1   Filed 06/12/23   Page 32 of 104



## Changpeng Zhao - Challenges Faced

Zhao faced myriad challenges during these 5 years in Binance. China's stringent policies on crypto forced him to shift the headquarters from the Chinese land to Caymen Islands. The United States Department of Justice has put Binance under investigation for money laundering offenses. Similarly, many other countries like Germany and UK have also raised legal actions or warnings against the company. In fact, in 2019, there was a huge theft of bitcoins from Binance whose value stood around $40 million. Zhao faced all these challenges explicitly including the bitcoin theft. He made sure that the company makes up for all the losses and never let his customers down.

## Conclusion

The story of Changpeng Zhao is truly inspiring. Everything we think as impossible was made possible by him. Cryptocurrencies and their market are just getting popular and most people are less knowledgeable or still unaware about it. In such a situation CZ created his own pathway and set a benchmark for aspiring leaders. Zhao created a belief that it is possible to start a business and make it the world's largest in 5 years. He showed that becoming one of the richest in the world would take just a couple of years. He also proved that despite any hardships from the superpower countries, it is possible to flourish a business in every part of the world. A lot to grasp from such a stimulating personality.

## FAQs

### Who is Changpeng Zhao?

Changpeng Zhao is the founder of the world's largest crypto exchange Binance.

### When and where was Chengpeng Zhao born?

Zhao was born on 10th September 1977 in Jiangsu province of China.

## What is the work of Binance?

Binance is the cryptocurrency exchange platform that helps people trade cryptos for assets.

## Which is the largest crypto exchange platform?

Binance is the largest crypto exchange platform in the world.

# EXHIBIT BH-6




# Binance Coin – Meet the team

Published: Apr 5, 2022 02:15 PM



**Key Executive**

Chanpeng Zhao - who is called CZ in the crypto community is the founder and CEO of Binance. CZ's interest in trading started right after college by working at a tech company involved in developing trading systems for Tokyo Stock Exchange. In 2005, he co-founded Fusion Systems Ltd, a company that specializes in ultra-low-latency trading systems for brokers. CZ left Fusion System to work full time in the blockchain industry in 2013. He has worked in trading and blockchain firms. Then, he founded a new venture OKCoin and led as CTO of the company. Later, he founded Bijie Tech, a company that provides cloud-based exchange systems to exchange operators. Since the launch of Binance ICO, CZ focussed completely on Binance.

**Team Behind the Project**

**Roger Wang** - He was the CTO of Binance. He was also with Bijie Tech, responsible for building up technical teams, designing the high-level architecture of the exchange, and clearing systems and running ops teams to ensure the security and stability of exchange systems.

**James Hofbauer** - Chief Architect of Binance, he was the co-founder and the Chief Architect of BijieTech. Before BijieTech, James was working with Palantir, a Silicon Valley company that focuses on big data analysis. James was also worked with Fusion Systems.

**Allan** - Product Director of Binance, he was one of the co-founders of BijieTech. He was also the Product Director of BijieTech. Allan has good experience in product design, user experience and trading.

**Sunny Li -** Operations Director of Binance. He was a co-founder and the operations director at BijieTech. Before Binance, he has led 20+ exchange systems projects and provided comprehensive consulting for strategy, operations, risk control and system development.

**Key Advisors & Investors**

Matthew Roszak - Bloq co-founder. Tally Capital Founding Partner

Roger Ver - Angel investors in many blockchain businesses. CEO of bitcoin.com

Ron Cao - MD of Sky9 Capital Institutional investor in BTCChina

Chandler Guo - Angel Investor in blockchain businesses in China

He Yi - CMO of Yixia Technology. Previously Co-founder at OKCoin

Yang Linke - Co-founder of BTCChina. ICOCoin Founder

Jun Du - Co-founder of Huobi. Angel investor

#Binance Coin(BNB)    #Meet the team    #binance coin (bnb)

Share the article on:    Facebook    Twitter    LinkedIn    WhatsApp

## More on the Project

- Binance Coin Checklist
- Binance Coin Timeline

## Top Projects

- Bitcoin (BTC)
- Ethereum (Ether)
- Binance Coin (BNB)
- Ripple (XRP)
- Cardano (ADA)
- Solana (SOL)
- Terra (LUNA)
- Avalanche (AVAX)
- Dogecoin (DOGE)
- Polkadot (DOT)
- Tether (USDT)
- USD Coin (USDC)
- Binance USD (BUSD)
- Shiba Inu (SHIB)
- TerraUSD (UST)
- Polygon (MATIC)
- Wrapped Bitcoin (WBTC)
- Cronos (CRO)
- Dai (DAI)
- Cosmos (ATOM)
- Litecoin (LTC)
- NEAR Protocol (NEAR)
- Chainlink (LINK)
- Uniswap (UNI)
- TRON (TRX)
- UNUS SED LEO (LEO)
- FTX Token (FTT)
- Bitcoin Cash (BCH)
- Algorand (ALGO)
- Stellar (XLM)
- Decentraland (MANA)
- Bitcoin BEP2 (BTCB)
- Hedera (HBAR)

# EXHIBIT BH-7

## ACTION OF INCORPORATOR

### of

### BAM Management US Holdings Inc.

### February 5, 2019

The undersigned, being the sole Incorporator of BAM Management US Holdings Inc., a Delaware corporation (the "**Company**"), hereby adopts the following resolutions pursuant to Section 108(a) of the Delaware General Corporation Law with respect to the initial organization of the corporation:

1.  **Adoption of Bylaws**

    **RESOLVED**:  That the Bylaws attached to this Action by Incorporator are hereby adopted as the Bylaws of the Company.

    **RESOLVED FURTHER**:  That the Secretary of the Company is hereby authorized and directed to execute a certificate of the adoption of the Bylaws and insert it in the Company's Minute Book and that the officers of the Company are ordered to maintain a copy of such Bylaws in the principal office of the Company for the transaction of its business open for inspection by the stockholders at all reasonable times during office hours.

2.  **Board of Directors**

    **RESOLVED**:  That the initial board of directors of the Company shall consist of 1 member.

    **RESOLVED FURTHER**:  That the following individual is hereby elected as the sole director of the Company, to serve as the sole director until the individual's successors are duly elected and qualified:

    - Changpeng Zhao

This Action of Incorporator shall be filed in the Minute Book of the Company and shall be effective as of the date first written above.

**INCORPORATOR**:

Harry Zhou

**BYLAWS**

**OF**

**BAM MANAGEMENT US HOLDINGS INC**.

# TABLE OF CONTENTS

**Page**

ARTICLE I CORPORATE OFFICES .................................................................................1

    1.1   Offices ................................................................................................................1

ARTICLE II MEETINGS OF STOCKHOLDERS ............................................................1

    2.1   Place Of Meetings .............................................................................................1
    2.2   Annual Meeting .................................................................................................1
    2.3   Special Meeting .................................................................................................1
    2.4   Notice Of Stockholders' Meetings ...................................................................2
    2.5   Manner Of Giving Notice; Affidavit Of Notice ..............................................2
    2.6   Quorum .............................................................................................................2
    2.7   Adjourned Meeting; Notice ..............................................................................2
    2.8   Organization; Conduct Of Business .................................................................3
    2.9   Voting ...............................................................................................................3
    2.10  Waiver Of Notice ..............................................................................................3
    2.11  Stockholder Action By Written Consent Without A Meeting ...........................4
    2.12  Record Date For Stockholder Notice; Voting; Giving Consents ......................4
    2.13  Proxies .............................................................................................................5

ARTICLE III DIRECTORS ................................................................................................5

    3.1   Powers ..............................................................................................................5
    3.2   Number Of Directors ........................................................................................6
    3.3   Election, Qualification And Term Of Office Of Directors ................................6
    3.4   Resignation And Vacancies ..............................................................................7
    3.5   Place Of Meetings; Meetings By Telephone ....................................................7
    3.6   Regular Meetings ..............................................................................................8
    3.7   Special Meetings; Notice ..................................................................................8
    3.8   Quorum .............................................................................................................8
    3.9   Waiver Of Notice ..............................................................................................8
    3.10  Board Action By Written Consent Without A Meeting .....................................9
    3.11  Fees And Compensation Of Directors ..............................................................9
    3.12  Approval Of Loans To Officers ........................................................................9
    3.13  Removal Of Directors .......................................................................................9
    3.14  Chairperson Of The Board Of Directors .........................................................10

ARTICLE IV COMMITTEES ..........................................................................................10

    4.1   Committees Of Directors .................................................................................10
    4.2   Committee Minutes .........................................................................................10
    4.3   Meetings And Actions Of Committees ...........................................................10

ARTICLE V OFFICERS ...................................................................................................11

    5.1   Officers ...........................................................................................................11
    5.2   Appointment Of Officers ................................................................................11
    5.3   Subordinate Officers .......................................................................................11
    5.4   Removal And Resignation Of Officers ...........................................................11
    5.5   Vacancies In Offices .......................................................................................12

# TABLE OF CONTENTS

**Page**

5.6 Chief Executive Officer ...........................................................................12
5.7 President .............................................................................................12
5.8 Vice Presidents .....................................................................................12
5.9 Secretary .............................................................................................12
5.10 Chief Financial Officer ..........................................................................13
5.11 Treasurer .............................................................................................13
5.12 Representation Of Shares Of Other Corporations ....................................14
5.13 Authority And Duties Of Officers ...........................................................14

ARTICLE VI INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES, AND
OTHER AGENTS ...............................................................................14

6.1 Indemnification Of Directors And Officers ..............................................14
6.2 Indemnification Of Others .....................................................................15
6.3 Payment Of Expenses In Advance ..........................................................15
6.4 Indemnity Not Exclusive .......................................................................15
6.5 Insurance ............................................................................................15
6.6 Conflicts .............................................................................................15

ARTICLE VII RECORDS AND REPORTS ...........................................................16

7.1 Maintenance And Inspection Of Records ................................................16
7.2 Inspection By Directors ........................................................................16

ARTICLE VIII GENERAL MATTERS ...................................................................17

8.1 Checks ................................................................................................17
8.2 Execution Of Corporate Contracts And Instruments ...............................17
8.3 Stock Certificates and Notices; Uncertificated Stock; Partly Paid Shares ...............17
8.4 Special Designation On Certificates and Notices of Issuance ...................18
8.5 Lost Certificates ..................................................................................18
8.6 Construction; Definitions ......................................................................18
8.7 Dividends ...........................................................................................18
8.8 Fiscal Year ..........................................................................................19
8.9 Transfer Of Stock ................................................................................19
8.10 Stock Transfer Agreements ..................................................................19
8.11 Stockholders Of Record .......................................................................19
8.12 Facsimile Or Electronic Signatures .......................................................19

ARTICLE IX AMENDMENTS ............................................................................20

# BYLAWS

## OF

## BAM MANAGEMENT US HOLDINGS INC.

## ARTICLE I

## CORPORATE OFFICES

1.1     **Offices**

In addition to the corporation's registered office set forth in the certificate of incorporation, the Board of Directors may at any time establish other offices at any place or places where the corporation is qualified to do business.

## ARTICLE II

## MEETINGS OF STOCKHOLDERS

2.1     **Place Of Meetings**

Meetings of stockholders shall be held at any place, within or outside the state of Delaware, designated by the Board of Directors.  The Board of Directors may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication as authorized by Section 211(a)(2) of the Delaware General Corporation Law.  In the absence of any such designation or determination, stockholders' meetings shall be held at the registered office of the corporation.

2.2     **Annual Meeting**

The annual meeting of stockholders shall be held on such date, time and place, either within or without the state of Delaware, as may be designated by resolution of the Board of Directors each year.  At the meeting, directors shall be elected and any other proper business may be transacted.

2.3     **Special Meeting**

A special meeting of the stockholders may be called at any time by the Board of Directors, the chairperson of the board, the chief executive officer, the president or by one or more stockholders holding shares in the aggregate entitled to cast not less than 10% of the votes at that meeting.

If a special meeting is called by any person or persons other than the Board of Directors, the chairperson of the board, the chief executive officer or the president, the request

shall be in writing, specifying the time of such meeting and the general nature of the business proposed to be transacted, and shall be delivered personally or sent by registered mail or by email, fax, telegraphic or other facsimile or electronic transmission to the chairperson of the board, the chief executive officer, the president or the secretary of the corporation.  No business may be transacted at such special meeting otherwise than specified in such notice.  The officer receiving the request shall cause notice to be promptly given to the stockholders entitled to vote, in accordance with the provisions of Sections 2.4 and 2.5 of this Article II, that a meeting will be held at the time requested by the person or persons calling the meeting, not less than 35 nor more than 60 days after the receipt of the request.  If the notice is not given within 20 days after the receipt of the request, the person or persons requesting the meeting may give the notice.  Nothing contained in this paragraph of this Section 2.3 shall be construed as limiting, fixing, or affecting the time when a meeting of stockholders called by action of the Board of Directors may be held.

2.4    **Notice Of Stockholders' Meetings**

All notices of meetings with stockholders shall be in writing and shall be sent or otherwise given in accordance with Section 2.5 of these bylaws not less than 10 nor more than 60 days before the date of the meeting to each stockholder entitled to vote at such meeting.  The notice shall specify the place (if any), date and hour of the meeting, and in the case of a special meeting, the purpose or purposes for which the meeting is called.

2.5    **Manner Of Giving Notice; Affidavit Of Notice**

Written notice of any meeting of stockholders, if mailed, is given when deposited in the United States mail, postage prepaid, directed to the stockholder at his address as it appears on the records of the corporation.  Without limiting the manner by which notice otherwise may be given effectively to stockholders, any notice to stockholders may be given by electronic mail or other electronic transmission, in the manner provided in Section 232 of the Delaware General Corporation Law.  An affidavit of the secretary or an assistant secretary or of the transfer agent of the corporation that the notice has been given shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

2.6    **Quorum**

The holders of a majority of the shares of stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute or by the certificate of incorporation.  If, however, such quorum is not present or represented at any meeting of the stockholders, then either (a) the chairperson of the meeting or (b) holders of a majority of the shares of stock entitled to vote who are present, in person or by proxy, shall have power to adjourn the meeting to another place (if any), date or time.

2.7    **Adjourned Meeting; Notice**

When a meeting is adjourned to another place (if any), date or time, unless these bylaws otherwise require, notice need not be given of the adjourned meeting if the time and place (if any), thereof and the means of remote communications (if any) by which stockholders and proxyholders may be deemed to be present and vote at such adjourned meeting, are

announced at the meeting at which the adjournment is taken.  At the adjourned meeting the corporation may transact any business that might have been transacted at the original meeting.  If the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the place (if any), date and time of the adjourned meeting and the means of remote communications (if any) by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.8   **Organization; Conduct Of Business**

Such person as the Board of Directors may have designated or, in the absence of such a person, the chief executive officer, or in his or her absence, the president or, in his or her absence, such person as may be chosen by the holders of a majority of the shares entitled to vote who are present, in person or by proxy, shall call to order any meeting of the stockholders and act as chairperson of the meeting.  In the absence of the secretary of the corporation, the secretary of the meeting shall be such person as the chairperson of the meeting appoints.

The chairperson of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including the manner of voting and the conduct of business.  The date and time of opening and closing of the polls for each matter upon which the stockholders will vote at the meeting shall be announced at the meeting.

2.9   **Voting**

The stockholders entitled to vote at any meeting of stockholders shall be determined in accordance with the provisions of Section 2.12 of these bylaws, subject to the provisions of Sections 217 and 218 of the Delaware General Corporation Law (relating to voting rights of fiduciaries, pledgors and joint owners of stock and to voting trusts and other voting agreements).

Except as may be otherwise provided in the certificate of incorporation, each stockholder shall be entitled to one vote for each share of capital stock held by such stockholder.  All elections shall be determined by a plurality of the votes cast, and except as otherwise required by law, all other matters shall be determined by a majority of the votes cast affirmatively or negatively.

2.10   **Waiver Of Notice**

Whenever notice is required to be given under any provision of the Delaware General Corporation Law or of the certificate of incorporation or these bylaws, a written waiver thereof, signed by the person entitled to notice, or waiver by electronic mail or other electronic transmission by such person, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice,

or any waiver of notice by electronic transmission, unless so required by the certificate of incorporation or these bylaws.

2.11   **Stockholder Action By Written Consent Without A Meeting**

Unless otherwise provided in the certificate of incorporation, any action required to be taken at any annual or special meeting of stockholders of the corporation, or any action that may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice, and without a vote if a consent in writing, setting forth the action so taken, is (a) signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted, and (b) delivered to the corporation in accordance with Section 228(a) of the Delaware General Corporation Law.

Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the corporation, a written consent or consents signed by a sufficient number of holders to take action are delivered to the corporation in the manner prescribed in this Section.  A telegram, cablegram, electronic mail or other electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder, or by a person or persons authorized to act for a stockholder or proxyholder, shall be deemed to be written, signed and dated for purposes of this Section to the extent permitted by law.  Any such consent shall be delivered in accordance with Section 228(d)(1) of the Delaware General Corporation Law.

Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used, provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing (including by electronic mail or other electronic transmission as permitted by law).  If the action which is consented to is such as would have required the filing of a certificate under any section of the Delaware General Corporation Law if such action had been voted on by stockholders at a meeting thereof, then the certificate filed under such section shall state, in lieu of any statement required by such section concerning any vote of stockholders, that written notice and written consent have been given as provided in Section 228 of the Delaware General Corporation Law.

2.12   **Record Date For Stockholder Notice; Voting; Giving Consents**

In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or entitled to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful

action, the Board of Directors may fix, in advance, a record date, which shall not be more than 60 nor less than 10 days before the date of such meeting, nor more than 60 days prior to any other action.

If the Board of Directors does not so fix a record date:

(a)     The record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

(b)     The record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent (including consent by electronic mail or other electronic transmission as permitted by law) is delivered to the corporation.

(c)     The record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting, if such adjournment is for 30 days or less; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

2.13     **Proxies**

Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by an instrument in writing or by an electronic transmission permitted by law filed with the secretary of the corporation, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period.  A proxy shall be deemed signed if the stockholder's name is placed on the proxy (whether by manual signature, typewriting, facsimile, electronic or telegraphic transmission or otherwise) by the stockholder or the stockholder's attorney-in-fact.  The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212(e) of the Delaware General Corporation Law.

**ARTICLE III**

**DIRECTORS**

3.1     **Powers**

Subject to the provisions of the Delaware General Corporation Law and any limitations in the certificate of incorporation or these bylaws relating to action required to be approved by the stockholders or by the outstanding shares, the business and affairs of the

corporation shall be managed and all corporate powers shall be exercised by or under the direction of the Board of Directors.

3.2     **Number Of Directors**

(a)     The total number of directors constituting the entire Board of Directors (the "Number of Authorized Directors") shall be fixed or changed in the manner provided in these bylaws, unless the certificate of incorporation fixes the Number of Authorized Directors, in which case the Number of Authorized Directors shall be changed only by amendment of the certificate of incorporation.

(b)     Subject to Section 3.4 of these bylaws, the Number of Authorized Directors may be fixed or changed:  (i) by a resolution of the Board of Directors or of the stockholders, or (ii) if applicable, by action of the incorporator(s) (which includes any person(s) acting, in accordance with the Delaware General Corporation Law, on behalf of any incorporator(s) not available to act) before the election of the initial Board of Directors. No reduction of the Number of Authorized Directors shall have the effect of removing any director before such director's term of office expires.

(c)     If the Number of Authorized Directors is already fixed (whether by the certificate of incorporation, resolution of the Board of Directors or of the stockholders, action of the incorporators(s) before the election of the initial Board of Directors, or otherwise in accordance with the Delaware General Corporation Law) at the time the adoption of these bylaws is effective (the "Effective Time"), then the Number of Authorized Directors, until changed in accordance with this Section 3.2, is such already fixed Number of Authorized Directors.

(d)     If the Number of Authorized Directors is not already fixed at the Effective Time, then:  (i) if there are directors in office at the Effective Time, the Number of Authorized Directors, until changed in accordance with this Section 3.2, is the total number of directors in office at the Effective Time, or (ii) if there are no directors in office at the Effective Time, the Number of Authorized Directors, until fixed or changed in accordance with this Section 3.2, is the total number of directors on the Board of Directors as first constituted following the Effective Time (whether such directors are elected by resolution of the stockholders, action of the incorporators(s) before the election of the initial Board of Directors, or otherwise in accordance with the Delaware General Corporation Law).

3.3     **Election, Qualification And Term Of Office Of Directors**

Except as provided in Section 3.4 of these bylaws, and unless otherwise provided in the certificate of incorporation, directors shall be elected at each annual meeting of stockholders to hold office until the next annual meeting.  Directors need not be stockholders unless so required by the certificate of incorporation or these bylaws, wherein other qualifications for directors may be prescribed.  Each director, including a director elected to fill a vacancy, shall hold office until his or her successor is elected and qualified or until his or her earlier resignation or removal.

Unless otherwise specified in the certificate of incorporation, elections of directors need not be by written ballot.

3.4   **Resignation And Vacancies**

Any director may resign at any time upon written notice to the attention of the Secretary of the corporation.  Notwithstanding the provisions of Section 223(a)(1) and 223(a)(2) of the Delaware General Corporation Law, any vacancy or newly created directorship may be filled by a majority of the directors then in office (including any directors that have tendered a resignation effective at a future date), though less than a quorum, or by a sole remaining director, and the directors so chosen shall hold office until the next annual election and until their successors are duly elected and shall qualify, unless sooner displaced; provided, however, that where such vacancy or newly created directorship occurs among the directors elected by the holders of a class or series of stock, the holders of shares of such class or series may override the Board of Directors' action to fill such vacancy or newly created directorship by (i) voting for their own designee to fill such vacancy or newly created directorship at a meeting of the corporation's stockholders or (ii) written consent, if the consenting stockholders hold a sufficient number of shares to elect their designee at a meeting of the stockholders.

If at any time, by reason of death or resignation or other cause, the corporation should have no directors in office, then any officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder, or other fiduciary entrusted with like responsibility for the person or estate of a stockholder, may call a special meeting of stockholders in accordance with the provisions of the certificate of incorporation or these bylaws, or may apply to the Court of Chancery for a decree summarily ordering an election as provided in Section 211 of the Delaware General Corporation Law.

If, at the time of filling any vacancy or any newly created directorship, the directors then in office constitute less than a majority of the whole board (as constituted immediately prior to any such increase), then the Court of Chancery may, upon application of any stockholder or stockholders holding at least 10% of the total number of the shares at the time outstanding having the right to vote for such directors, summarily order an election to be held to fill any such vacancies or newly created directorships, or to replace the directors chosen by the directors then in office as aforesaid, which election shall be governed by the provisions of Section 211 of the Delaware General Corporation Law as far as applicable.

3.5   **Place Of Meetings; Meetings By Telephone**

The Board of Directors of the corporation may hold meetings, both regular and special, either within or outside the state of Delaware.

Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or any committee, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

3.6     **Regular Meetings**

    Regular meetings of the Board of Directors may be held without notice at such time and at such place as shall from time to time be determined by the board.

3.7     **Special Meetings; Notice**

    Special meetings of the Board of Directors for any purpose or purposes may be called at any time by the chairperson of the board, the chief executive officer, the president, the secretary or any two directors.

    Notice of the time and place of special meetings shall be delivered personally or by telephone to each director or sent by first-class mail, facsimile, electronic transmission, or telegram, charges prepaid, addressed to each director at that director's address as it is shown on the records of the corporation.  If the notice is mailed, it shall be deposited in the United States mail at least 4 days before the time of the holding of the meeting.  If the notice is delivered personally or by facsimile, electronic transmission, telephone or telegram, it shall be delivered at least 24 hours before the time of the holding of the meeting.  Any oral notice given personally or by telephone may be communicated either to the director or to a person at the office of the director who the person giving the notice has reason to believe will promptly communicate it to the director.  The notice need not specify the purpose of the meeting.  The notice need not specify the place of the meeting, if the meeting is to be held at the principal executive office of the corporation. Unless otherwise indicated in the notice thereof, any and all business may be transacted at a special meeting.

3.8     **Quorum**

    At all meetings of the Board of Directors, a majority of the total number of directors then in office (but in no case less than 1/3 of the Number of Authorized Directors (as defined in Section 3.2 of these bylaws)) shall constitute a quorum for the transaction of business and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors, except as may be otherwise specifically provided by statute or by the certificate of incorporation.  If a quorum is not present at any meeting of the Board of Directors, then the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

    A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

3.9     **Waiver Of Notice**

    Whenever notice is required to be given under any provision of the Delaware General Corporation Law or of the certificate of incorporation or these bylaws, a written waiver thereof, signed by the person entitled to notice, or waiver by electronic mail or other electronic transmission by such person, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at

the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the directors, or members of a committee of directors, need be specified in any written waiver of notice unless so required by the certificate of incorporation or these bylaws.

### 3.10   **Board Action By Written Consent Without A Meeting**

Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof, may be taken without a meeting if all members of the board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used, provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

### 3.11   **Fees And Compensation Of Directors**

Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have the authority to fix the compensation of directors.  No such compensation shall preclude any director from serving the corporation in any other capacity and receiving compensation therefor.

### 3.12   **Approval Of Loans To Officers**

The corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the corporation or of its subsidiary, including any officer or employee who is a director of the corporation or its subsidiary, whenever, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation.  The loan, guaranty or other assistance may be with or without interest and may be unsecured, or secured in such manner as the Board of Directors shall approve, including, without limitation, a pledge of shares of stock of the corporation.  Nothing in this section shall be deemed to deny, limit or restrict the powers of guaranty or warranty of the corporation at common law or under any statute.

### 3.13   **Removal Of Directors**

Unless otherwise restricted by statute, by the certificate of incorporation or by these bylaws, any director or the entire Board of Directors may be removed, with or without cause, by, and only by, the affirmative vote of the holders of the shares of the class or series of stock entitled to elect such director or directors, given either at a special meeting of such stockholders duly called for that purpose or pursuant to a written consent of stockholders, and any vacancy thereby created may be filled by the holders of that class or series of stock

represented at the meeting or pursuant to written consent; provided, however, that if the stockholders of the corporation are entitled to cumulative voting, if less than the entire Board of Directors is to be removed, no director may be removed without cause if the votes cast against his removal would be sufficient to elect him if then cumulatively voted at an election of the entire Board of Directors.

No reduction of the Number of Authorized Directors (as defined in Section 3.2 of these bylaws) shall have the effect of removing any director before such director's term of office expires.

### 3.14   **Chairperson Of The Board Of Directors**

The corporation may also have, at the discretion of the Board of Directors, a chairperson of the Board of Directors who shall not be considered an officer of the corporation.

## ARTICLE IV

## COMMITTEES

### 4.1   **Committees Of Directors**

The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the corporation.  The Board may designate 1 or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Any such committee, to the extent provided in the resolution of the Board of Directors, or in these bylaws, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to the following matters:  (i) approving or adopting, or recommending to the stockholders, any action or matter expressly required by the General Corporate Law of Delaware to be submitted to stockholders for approval or (ii) adopting, amending or repealing any Bylaw of the corporation.

### 4.2   **Committee Minutes**

Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

### 4.3   **Meetings And Actions Of Committees**

Meetings and actions of committees shall be governed by, and held and taken in accordance with, the provisions of Section 3.5 (place of meetings and meetings by telephone), Section 3.6 (regular meetings), Section 3.7 (special meetings and notice), Section 3.8 (quorum), Section 3.9 (waiver of notice), and Section 3.10 (action without a meeting) of these bylaws, with

such changes in the context of such provisions as are necessary to substitute the committee and its members for the Board of Directors and its members; provided, however, that the time of regular meetings of committees may be determined either by resolution of the Board of Directors or by resolution of the committee, that special meetings of committees may also be called by resolution of the Board of Directors and that notice of special meetings of committees shall also be given to all alternate members, who shall have the right to attend all meetings of the committee.  The Board of Directors may adopt rules for the government of any committee not inconsistent with the provisions of these bylaws.

## ARTICLE V

## OFFICERS

### 5.1    **Officers**

The officers of the corporation shall be a president and a secretary.  The corporation may also have, at the discretion of the Board of Directors, a chief executive officer, a chief financial officer, a treasurer, one or more vice presidents, one or more assistant secretaries, one or more assistant treasurers, and any such other officers as may be appointed in accordance with the provisions of Section 5.3 of these bylaws.  Any number of offices may be held by the same person.

### 5.2    **Appointment Of Officers**

The officers of the corporation, except such officers as may be appointed in accordance with the provisions of Sections 5.3 or 5.5 of these bylaws, shall be appointed by the Board of Directors, subject to the rights (if any) of an officer under any contract of employment.

### 5.3    **Subordinate Officers**

The Board of Directors may appoint, or empower the chief executive officer or the president to appoint, such other officers and agents as the business of the corporation may require, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the Board of Directors may from time to time determine.

### 5.4    **Removal And Resignation Of Officers**

Subject to the rights (if any) of an officer under any contract of employment, any officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board of Directors at any regular or special meeting of the board or, except in the case of an officer chosen by the Board of Directors, by any officer upon whom the power of removal is conferred by the Board of Directors.

Any officer may resign at any time by giving written notice to the corporation.  Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the

resignation shall not be necessary to make it effective.  Any resignation is without prejudice to the rights (if any) of the corporation under any contract to which the officer is a party.

5.5    **Vacancies In Offices**

Any vacancy occurring in any office of the corporation shall be filled by the Board of Directors.

5.6    **Chief Executive Officer**

Subject to such supervisory powers (if any) as may be given by the Board of Directors to the chairperson of the board (if any), the chief executive officer of the corporation (if such an officer is appointed) shall, subject to the control of the Board of Directors, have general supervision, direction, and control of the business and the officers of the corporation and shall have the general powers and duties of management usually vested in the office of chief executive officer of a corporation and shall have such other powers and duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as chief executive officer shall also be the acting president of the corporation whenever no other person is then serving in such capacity.

5.7    **President**

Subject to such supervisory powers (if any) as may be given by the Board of Directors to the chairperson of the board (if any) or the chief executive officer, the president shall have general supervision, direction, and control of the business and other officers of the corporation.  He or she shall have the general powers and duties of management usually vested in the office of president of a corporation and such other powers and duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as president shall also be the acting chief executive officer, secretary or treasurer of the corporation, as applicable, whenever no other person is then serving in such capacity.

5.8    **Vice Presidents**

In the absence or disability of the chief executive officer and president, the vice presidents (if any) in order of their rank as fixed by the Board of Directors or, if not ranked, a vice president designated by the Board of Directors, shall perform all the duties of the president and when so acting shall have all the powers of, and be subject to all the restrictions upon, the president.  The vice presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the Board of Directors, these bylaws, the president or the chairperson of the board.

5.9    **Secretary**

The secretary shall keep or cause to be kept, at the principal executive office of the corporation or such other place as the Board of Directors may direct, a book of minutes of all

meetings and actions of directors, committees of directors, and stockholders.  The minutes shall show the time and place of each meeting, the names of those present at directors' meetings or committee meetings, the number of shares present or represented at stockholders' meetings, and the proceedings thereof.

The secretary shall keep, or cause to be kept, at the principal executive office of the corporation or at the office of the corporation's transfer agent or registrar, as determined by resolution of the Board of Directors, a share register, or a duplicate share register, showing the names of all stockholders and their addresses, the number and classes of shares held by each, the number and date of certificates (if any) evidencing such shares, and the number and date of cancellation of every certificate (if any) surrendered for cancellation.

The secretary shall give, or cause to be given, notice of all meetings of the stockholders and of the Board of Directors required to be given by law or by these bylaws.  He or she shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or by these bylaws.

### 5.10   **Chief Financial Officer**

The chief financial officer (if such an officer is appointed) shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, retained earnings and shares.  The books of account shall at all reasonable times be open to inspection by any member of the Board of Directors.

The chief financial officer shall render to the chief executive officer, the president, or the Board of Directors, upon request, an account of all his or her transactions as chief financial officer and of the financial condition of the corporation.  He or she shall have the general powers and duties usually vested in the office of chief financial officer of a corporation and shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as the chief financial officer shall also be the acting treasurer of the corporation whenever no other person is then serving in such capacity.  Subject to such supervisory powers (if any) as may be given by the Board of Directors to another officer of the corporation, the chief financial officer shall supervise and direct the responsibilities of the treasurer whenever someone other than the chief financial officer is serving as treasurer of the corporation.

### 5.11   **Treasurer**

The treasurer (if such an officer is appointed) shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records with respect to all bank accounts, deposit accounts, cash management accounts and other investment accounts of the corporation.  The books of account shall at all reasonable times be open to inspection by any member of the Board of Directors.

The treasurer shall deposit, or cause to be deposited, all moneys and other valuables in the name and to the credit of the corporation with such depositories as may be designated by the Board of Directors.  He or she shall disburse the funds of the corporation as may be ordered by the Board of Directors and shall render to the chief financial officer, the chief executive officer, the president or the Board of Directors, upon request, an account of all his or her transactions as treasurer.  He or she shall have the general powers and duties usually vested in the office of treasurer of a corporation and shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as the treasurer shall also be the acting chief financial officer of the corporation whenever no other person is then serving in such capacity.

5.12    **Representation Of Shares Of Other Corporations**

The chairperson of the board, the chief executive officer, the president, any vice president, the chief financial officer, the secretary or assistant secretary of this corporation, or any other person authorized by the Board of Directors or the chief executive officer or the president or a vice president, is authorized to vote, represent, and exercise on behalf of this corporation all rights incident to any and all shares of any other corporation or corporations standing in the name of this corporation.  The authority granted herein may be exercised either by such person directly or by any other person authorized to do so by proxy or power of attorney duly executed by the person having such authority.

5.13    **Authority And Duties Of Officers**

In addition to the foregoing authority and duties, all officers of the corporation shall respectively have such authority and perform such duties in the management of the business of the corporation as may be designated from time to time by the Board of Directors or the stockholders.

## ARTICLE VI

## INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES, AND OTHER AGENTS

6.1    **Indemnification Of Directors And Officers**

The corporation shall, to the maximum extent and in the manner permitted by the Delaware General Corporation Law, indemnify each of its directors and officers against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation.  For purposes of this Section 6.1, a "director" or "officer" of the corporation includes any person (a) who is or was a director or officer of the corporation, (b) who is or was serving at the request of the corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was a director or officer of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

6.2   **Indemnification Of Others**

The corporation shall have the power, to the maximum extent and in the manner permitted by the Delaware General Corporation Law, to indemnify each of its employees and agents (other than directors and officers) against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation. For purposes of this Section 6.2, an "employee" or "agent" of the corporation (other than a director or officer) includes any person (a) who is or was an employee or agent of the corporation, (b) who is or was serving at the request of the corporation as an employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was an employee or agent of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

6.3   **Payment Of Expenses In Advance**

Expenses incurred in defending any action or proceeding for which indemnification is required pursuant to Section 6.1 or for which indemnification is permitted pursuant to Section 6.2 following authorization thereof by the Board of Directors shall be paid by the corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnified party is not entitled to be indemnified as authorized in this Article VI.

6.4   **Indemnity Not Exclusive**

The indemnification provided by this Article VI shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any Bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in an official capacity and as to action in another capacity while holding such office, to the extent that such additional rights to indemnification are authorized in the certificate of incorporation.

6.5   **Insurance**

The corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the corporation would have the power to indemnify him or her against such liability under the provisions of the Delaware General Corporation Law.

6.6   **Conflicts**

No indemnification or advance shall be made under this Article VI, except where such indemnification or advance is mandated by law or the order, judgment or decree of any court of competent jurisdiction, in any circumstance where it appears:

(a)      That it would be inconsistent with a provision of the certificate of incorporation, these bylaws, a resolution of the stockholders or an agreement in effect at the time of the accrual of the alleged cause of the action asserted in the proceeding in which the expenses were incurred or other amounts were paid, which prohibits or otherwise limits indemnification; or

(b)      That it would be inconsistent with any condition expressly imposed by a court in approving a settlement.

## ARTICLE VII

## RECORDS AND REPORTS

### 7.1      Maintenance And Inspection Of Records

The corporation shall, either at its principal executive offices or at such place or places as designated by the Board of Directors, keep a record of its stockholders listing their names and addresses and the number and class of shares held by each stockholder, a copy of these bylaws as amended to date, accounting books, and other records.

Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records and to make copies or extracts therefrom.  A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder.  In every instance where an attorney or other agent is the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing that authorizes the attorney or other agent to so act on behalf of the stockholder.  The demand under oath shall be directed to the corporation at its registered office in Delaware or at its principal place of business.

A complete list of stockholders entitled to vote at any meeting of stockholders, arranged in alphabetical order for each class of stock and showing the address of each such stockholder and the number of shares registered in each such stockholder's name, shall be open to the examination of any such stockholder for a period of at least 10 days prior to the meeting in the manner provided by law.  The stock list shall also be open to the examination of any stockholder during the whole time of the meeting as provided by law.  This list shall presumptively determine the identity of the stockholders entitled to vote at the meeting and the number of shares held by each of them.

### 7.2      Inspection By Directors

Any director shall have the right to examine the corporation's stock ledger, a list of its stockholders, and its other books and records for a purpose reasonably related to his or her position as a director.  The Court of Chancery is hereby vested with the exclusive jurisdiction to determine whether a director is entitled to the inspection sought.  The Court may summarily order the corporation to permit the director to inspect any and all books and records, the stock ledger, and the stock list and to make copies or extracts therefrom.  The Court may, in its

discretion, prescribe any limitations or conditions with reference to the inspection, or award such other and further relief as the Court may deem just and proper.

**ARTICLE VIII**

**GENERAL MATTERS**

8.1     **Checks**

From time to time, the Board of Directors shall determine by resolution which person or persons may sign or endorse all checks, drafts, other orders for payment of money, notes or other evidences of indebtedness that are issued in the name of or payable to the corporation, and only the persons so authorized shall sign or endorse those instruments.

8.2     **Execution Of Corporate Contracts And Instruments**

The Board of Directors, except as otherwise provided in these bylaws, may authorize any officer or officers, or agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the corporation; such authority may be general or confined to specific instances.  Unless so authorized or ratified by the Board of Directors or within the agency power of an officer, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

8.3     **Stock Certificates and Notices; Uncertificated Stock; Partly Paid Shares**

The shares of the corporation may be certificated or uncertificated, as provided under Delaware law, and shall be entered in the books of the corporation and recorded as they are issued.  Any or all of the signatures on any certificate may be a facsimile or electronic signature.  In case any officer, transfer agent or registrar who has signed or whose facsimile or electronic signature has been placed upon a certificate has ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he or she were such officer, transfer agent or registrar at the date of issue.

Within a reasonable time after the issuance or transfer of uncertificated stock and upon the request of a stockholder, the corporation shall send to the record owner thereof a written notice that shall set forth the name of the corporation, that the corporation is organized under the laws of Delaware, the name of the stockholder, the number and class (and the designation of the series, if any) of the shares, and any restrictions on the transfer or registration of such shares of stock imposed by the corporation's certificate of incorporation, these bylaws, any agreement among stockholders or any agreement between stockholders and the corporation.

The corporation may issue the whole or any part of its shares as partly paid and subject to call for the remainder of the consideration to be paid therefor.  Upon the face or back of each stock certificate (if any) issued to represent any such partly paid shares, or upon the books and records of the corporation in the case of uncertificated partly paid shares, the total amount of the consideration to be paid therefor and the amount paid thereon shall be stated. Upon the declaration of any dividend on fully paid shares, the corporation shall declare a

-17-

dividend upon partly paid shares of the same class, but only upon the basis of the percentage of the consideration actually paid thereon.

8.4     **Special Designation On Certificates and Notices of Issuance**

If the corporation is authorized to issue more than one class of stock or more than one series of any class, then the powers, the designations, the preferences, and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights shall be set forth in full or summarized on the face or back of the certificate that the corporation shall issue to represent such class or series of stock or the notice of issuance to the record owner of uncertificated stock; provided, however, that, except as otherwise provided in Section 202 of the Delaware General Corporation Law, in lieu of the foregoing requirements there may be set forth on the face or back of the certificate that the corporation shall issue to represent such class or series of stock or the notice of issuance to the record owner of uncertificated stock, or the purchase agreement for such stock a statement that the corporation will furnish without charge to each stockholder who so requests the powers, the designations, the preferences, and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

8.5     **Lost Certificates**

Except as provided in this Section 8.5, no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the corporation and cancelled at the same time.  The corporation may issue a new certificate of stock or notice of uncertificated stock in the place of any certificate previously issued by it, alleged to have been lost, stolen or destroyed, and the corporation may require the owner of the lost, stolen or destroyed certificate, or the owner's legal representative, to give the corporation a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate or uncertificated shares.

8.6     **Construction; Definitions**

Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the Delaware General Corporation Law shall govern the construction of these bylaws.  Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

8.7     **Dividends**

The directors of the corporation, subject to any restrictions contained in (a) the Delaware General Corporation Law or (b) the certificate of incorporation, may declare and pay dividends upon the shares of its capital stock.  Dividends may be paid in cash, in property, or in shares of the corporation's capital stock.

The directors of the corporation may set apart out of any of the funds of the corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.  Such purposes shall include but not be limited to equalizing dividends, repairing or maintaining any property of the corporation, and meeting contingencies.

8.8 **Fiscal Year**

The fiscal year of the corporation shall be fixed by resolution of the Board of Directors and may be changed by the Board of Directors.

8.9 **Transfer Of Stock**

Upon receipt by the corporation or the transfer agent of the corporation of proper transfer instructions from the record holder of uncertificated shares or upon surrender to the corporation or the transfer agent of the corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignation or authority to transfer, it shall be the duty of the corporation to issue a new certificate or, in the case of uncertificated securities and upon request, a notice of issuance of shares, to the person entitled thereto, cancel the old certificate (if any) and record the transaction in its books.

8.10 **Stock Transfer Agreements**

The corporation shall have power to enter into and perform any agreement with any number of stockholders of any one or more classes of stock of the corporation to restrict the transfer of shares of stock of the corporation of any one or more classes owned by such stockholders in any manner not prohibited by the Delaware General Corporation Law.

8.11 **Stockholders Of Record**

The corporation shall be entitled to recognize the exclusive right of a person recorded on its books as the owner of shares to receive dividends and to vote as such owner, shall be entitled to hold liable for calls and assessments the person recorded on its books as the owner of shares, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of another person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

8.12 **Facsimile Or Electronic Signatures**

In addition to the provisions for use of facsimile or electronic signatures elsewhere specifically authorized in these bylaws, facsimile or electronic signatures of any stockholder, director or officer of the corporation may be used whenever and as authorized by the Board of Directors or a committee thereof.

## ARTICLE IX

## AMENDMENTS

The Bylaws of the corporation may be adopted, amended or repealed by the stockholders entitled to vote; provided, however, that the corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal Bylaws upon the directors.  The fact that such power has been so conferred upon the directors shall not divest the stockholders of the power, nor limit their power to adopt, amend or repeal Bylaws.

# CERTIFICATE OF ADOPTION OF BYLAWS

## OF

## BAM MANAGEMENT US HOLDINGS INC.

### <u>ADOPTION BY INCORPORATOR</u>

The undersigned person appointed in the certificate of incorporation to act as the Incorporator of BAM Management US Holdings Inc., a Delaware corporation, hereby adopts the foregoing Bylaws as the Bylaws of the corporation.

Executed on February 5, 2019.

**INCORPORATOR:**

_____

# EXHIBIT BH-8

State of Delaware
Secretary of State
Division of Corporations
Delivered 03:58 PM 02/04/2019
FILED 03:58 PM 02/04/2019
SR 20190713905 - File Number 7266675

# CERTIFICATE OF INCORPORATION

## OF

## BAM TRADING SERVICES INC.

### ARTICLE I

The name of the corporation is **BAM TRADING SERVICES INC.** (the "**Corporation**").

### ARTICLE II

The Corporation's registered office in the State of Delaware is 16192 Coastal Highway, in the City of Lewes, County of Sussex, State of Delaware 19958. The registered agent in charge thereof is Harvard Business Services, Inc.

### ARTICLE III

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law.

### ARTICLE IV

The aggregate number of shares which the Corporation shall have authority to issue is **10,000,000** shares of capital stock all of which shall be designated "Common Stock" and have a par value of **$0.00001** per share.

### ARTICLE V

The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. Elections of directors need not be by written ballot unless otherwise provided in the Bylaws of the Corporation. In furtherance of and not in limitation of the powers conferred by the laws of the State of Delaware, the Board of Directors of the Corporation is expressly authorized to make, amend or repeal Bylaws of the Corporation.

### ARTICLE VI

(A)    To the fullest extent permitted by the Delaware General Corporation Law, as the same exists or as may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

(B)    The Corporation shall indemnify to the fullest extent permitted by law any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he, his testator or intestate is or was a director or officer of the Corporation or any predecessor of the Corporation, or serves or served at any other enterprise as a director or officer at the request of the Corporation or any predecessor to the Corporation.

(C)     Neither any amendment nor repeal of this Article VI, nor the adoption of any provision of the Corporation's Certificate of Incorporation inconsistent with this Article VI, shall eliminate or reduce the effect of this Article VI in respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this Article VI, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

ARTICLE VII

Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (A) any derivative action or proceeding brought on behalf of the Corporation, (B) any action or proceeding asserting a claim of breach of a fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (C) any action or proceeding asserting a claim against the Corporation arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's Certificate of Incorporation or Bylaws, or (D) any action or proceeding asserting a claim governed by the internal affairs doctrine, in each case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein.

ARTICLE VIII

The name and mailing address of the incorporator are as follows:

Harry Zhou
1633 Old Bayshore Hwy, Suite 280
Burlingame, CA 94010

Executed on January 31, 2019.

Harry Zhou, as Incorporator

# EXHIBIT BH-9

# ACTION OF INCORPORATOR

## of

## BAM TRADING SERVICES INC.

### February 5, 2019

The undersigned, being the sole Incorporator of BAM Trading Services Inc., a Delaware corporation (the "**Company**"), hereby adopts the following resolutions pursuant to Section 108(a) of the Delaware General Corporation Law with respect to the initial organization of the corporation:

**1.  Adoption of Bylaws**

**RESOLVED**:  That the Bylaws attached to this Action by Incorporator are hereby adopted as the Bylaws of the Company.

**RESOLVED FURTHER**:  That the Secretary of the Company is hereby authorized and directed to execute a certificate of the adoption of the Bylaws and insert it in the Company's Minute Book and that the officers of the Company are ordered to maintain a copy of such Bylaws in the principal office of the Company for the transaction of its business open for inspection by the stockholders at all reasonable times during office hours.

**2.  Board of Directors**

**RESOLVED**:  That the initial board of directors of the Company shall consist of 1 member.

**RESOLVED FURTHER**:  That the following individual is hereby elected as the sole director of the Company, to serve as the sole director until the individual's successors are duly elected and qualified:

· Changpeng Zhao

This Action of Incorporator shall be filed in the Minute Book of the Company and shall be effective as of the date first written above.

**INCORPORATOR**:

Harry Zhou

**BYLAWS**

**OF**

**BAM TRADING SERVICES INC**.

# TABLE OF CONTENTS

**Page**

ARTICLE I CORPORATE OFFICES ......................................................................................1

    1.1    Offices ........................................................................................................1

ARTICLE II MEETINGS OF STOCKHOLDERS ...............................................................1

    2.1    Place Of Meetings ......................................................................................1
    2.2    Annual Meeting .........................................................................................1
    2.3    Special Meeting .........................................................................................1
    2.4    Notice Of Stockholders' Meetings ............................................................2
    2.5    Manner Of Giving Notice; Affidavit Of Notice ........................................2
    2.6    Quorum ......................................................................................................2
    2.7    Adjourned Meeting; Notice ........................................................................2
    2.8    Organization; Conduct Of Business ...........................................................3
    2.9    Voting ........................................................................................................3
    2.10  Waiver Of Notice ......................................................................................3
    2.11  Stockholder Action By Written Consent Without A Meeting ....................4
    2.12  Record Date For Stockholder Notice; Voting; Giving Consents ...............4
    2.13  Proxies ......................................................................................................5

ARTICLE III DIRECTORS .................................................................................................5

    3.1    Powers .......................................................................................................5
    3.2    Number Of Directors .................................................................................6
    3.3    Election, Qualification And Term Of Office Of Directors .........................6
    3.4    Resignation And Vacancies .......................................................................7
    3.5    Place Of Meetings; Meetings By Telephone .............................................7
    3.6    Regular Meetings ......................................................................................8
    3.7    Special Meetings; Notice ...........................................................................8
    3.8    Quorum ......................................................................................................8
    3.9    Waiver Of Notice ......................................................................................8
    3.10  Board Action By Written Consent Without A Meeting ..............................9
    3.11  Fees And Compensation Of Directors .......................................................9
    3.12  Approval Of Loans To Officers .................................................................9
    3.13  Removal Of Directors ................................................................................9
    3.14  Chairperson Of The Board Of Directors ..................................................10

ARTICLE IV COMMITTEES ...........................................................................................10

    4.1    Committees Of Directors .........................................................................10
    4.2    Committee Minutes ..................................................................................10
    4.3    Meetings And Actions Of Committees .....................................................10

ARTICLE V OFFICERS ...................................................................................................11

    5.1    Officers ....................................................................................................11
    5.2    Appointment Of Officers ........................................................................11
    5.3    Subordinate Officers ...............................................................................11
    5.4    Removal And Resignation Of Officers .....................................................11
    5.5    Vacancies In Offices ................................................................................12

# TABLE OF CONTENTS

**Page**

5.6  Chief Executive Officer ...................................................................................12
5.7  President ...........................................................................................................12
5.8  Vice Presidents .................................................................................................12
5.9  Secretary ...........................................................................................................12
5.10 Chief Financial Officer ....................................................................................13
5.11 Treasurer ...........................................................................................................13
5.12 Representation Of Shares Of Other Corporations ...........................................14
5.13 Authority And Duties Of Officers ...................................................................14

ARTICLE VI INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES, AND
          OTHER AGENTS ...............................................................................14

6.1  Indemnification Of Directors And Officers .....................................................14
6.2  Indemnification Of Others ...............................................................................15
6.3  Payment Of Expenses In Advance ...................................................................15
6.4  Indemnity Not Exclusive .................................................................................15
6.5  Insurance ...........................................................................................................15
6.6  Conflicts ............................................................................................................15

ARTICLE VII RECORDS AND REPORTS ...............................................................16

7.1  Maintenance And Inspection Of Records .........................................................16
7.2  Inspection By Directors ....................................................................................16

ARTICLE VIII GENERAL MATTERS ......................................................................17

8.1  Checks ...............................................................................................................17
8.2  Execution Of Corporate Contracts And Instruments .......................................17
8.3  Stock Certificates and Notices; Uncertificated Stock; Partly Paid Shares ......17
8.4  Special Designation On Certificates and Notices of Issuance ..........................18
8.5  Lost Certificates ...............................................................................................18
8.6  Construction; Definitions ..................................................................................18
8.7  Dividends ..........................................................................................................18
8.8  Fiscal Year ........................................................................................................19
8.9  Transfer Of Stock .............................................................................................19
8.10 Stock Transfer Agreements ..............................................................................19
8.11 Stockholders Of Record ...................................................................................19
8.12 Facsimile Or Electronic Signatures .................................................................19

ARTICLE IX AMENDMENTS ...................................................................................20

# BYLAWS

## OF

## BAM TRADING SERVICES INC.

## ARTICLE I

## CORPORATE OFFICES

1.1   **Offices**

In addition to the corporation's registered office set forth in the certificate of incorporation, the Board of Directors may at any time establish other offices at any place or places where the corporation is qualified to do business.

## ARTICLE II

## MEETINGS OF STOCKHOLDERS

2.1   **Place Of Meetings**

Meetings of stockholders shall be held at any place, within or outside the state of Delaware, designated by the Board of Directors.  The Board of Directors may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication as authorized by Section 211(a)(2) of the Delaware General Corporation Law.  In the absence of any such designation or determination, stockholders' meetings shall be held at the registered office of the corporation.

2.2   **Annual Meeting**

The annual meeting of stockholders shall be held on such date, time and place, either within or without the state of Delaware, as may be designated by resolution of the Board of Directors each year.  At the meeting, directors shall be elected and any other proper business may be transacted.

2.3   **Special Meeting**

A special meeting of the stockholders may be called at any time by the Board of Directors, the chairperson of the board, the chief executive officer, the president or by one or more stockholders holding shares in the aggregate entitled to cast not less than 10% of the votes at that meeting.

If a special meeting is called by any person or persons other than the Board of Directors, the chairperson of the board, the chief executive officer or the president, the request

shall be in writing, specifying the time of such meeting and the general nature of the business proposed to be transacted, and shall be delivered personally or sent by registered mail or by email, fax, telegraphic or other facsimile or electronic transmission to the chairperson of the board, the chief executive officer, the president or the secretary of the corporation.  No business may be transacted at such special meeting otherwise than specified in such notice.  The officer receiving the request shall cause notice to be promptly given to the stockholders entitled to vote, in accordance with the provisions of Sections 2.4 and 2.5 of this Article II, that a meeting will be held at the time requested by the person or persons calling the meeting, not less than 35 nor more than 60 days after the receipt of the request.  If the notice is not given within 20 days after the receipt of the request, the person or persons requesting the meeting may give the notice.  Nothing contained in this paragraph of this Section 2.3 shall be construed as limiting, fixing, or affecting the time when a meeting of stockholders called by action of the Board of Directors may be held.

2.4   **Notice Of Stockholders' Meetings**

All notices of meetings with stockholders shall be in writing and shall be sent or otherwise given in accordance with Section 2.5 of these bylaws not less than 10 nor more than 60 days before the date of the meeting to each stockholder entitled to vote at such meeting.  The notice shall specify the place (if any), date and hour of the meeting, and in the case of a special meeting, the purpose or purposes for which the meeting is called.

2.5   **Manner Of Giving Notice; Affidavit Of Notice**

Written notice of any meeting of stockholders, if mailed, is given when deposited in the United States mail, postage prepaid, directed to the stockholder at his address as it appears on the records of the corporation.  Without limiting the manner by which notice otherwise may be given effectively to stockholders, any notice to stockholders may be given by electronic mail or other electronic transmission, in the manner provided in Section 232 of the Delaware General Corporation Law.  An affidavit of the secretary or an assistant secretary or of the transfer agent of the corporation that the notice has been given shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

2.6   **Quorum**

The holders of a majority of the shares of stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute or by the certificate of incorporation.  If, however, such quorum is not present or represented at any meeting of the stockholders, then either (a) the chairperson of the meeting or (b) holders of a majority of the shares of stock entitled to vote who are present, in person or by proxy, shall have power to adjourn the meeting to another place (if any), date or time.

2.7   **Adjourned Meeting; Notice**

When a meeting is adjourned to another place (if any), date or time, unless these bylaws otherwise require, notice need not be given of the adjourned meeting if the time and place (if any), thereof and the means of remote communications (if any) by which stockholders and proxyholders may be deemed to be present and vote at such adjourned meeting, are

announced at the meeting at which the adjournment is taken.  At the adjourned meeting the corporation may transact any business that might have been transacted at the original meeting.  If the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the place (if any), date and time of the adjourned meeting and the means of remote communications (if any) by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.8   **Organization; Conduct Of Business**

Such person as the Board of Directors may have designated or, in the absence of such a person, the chief executive officer, or in his or her absence, the president or, in his or her absence, such person as may be chosen by the holders of a majority of the shares entitled to vote who are present, in person or by proxy, shall call to order any meeting of the stockholders and act as chairperson of the meeting.  In the absence of the secretary of the corporation, the secretary of the meeting shall be such person as the chairperson of the meeting appoints.

The chairperson of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including the manner of voting and the conduct of business.  The date and time of opening and closing of the polls for each matter upon which the stockholders will vote at the meeting shall be announced at the meeting.

2.9   **Voting**

The stockholders entitled to vote at any meeting of stockholders shall be determined in accordance with the provisions of Section 2.12 of these bylaws, subject to the provisions of Sections 217 and 218 of the Delaware General Corporation Law (relating to voting rights of fiduciaries, pledgors and joint owners of stock and to voting trusts and other voting agreements).

Except as may be otherwise provided in the certificate of incorporation, each stockholder shall be entitled to one vote for each share of capital stock held by such stockholder.  All elections shall be determined by a plurality of the votes cast, and except as otherwise required by law, all other matters shall be determined by a majority of the votes cast affirmatively or negatively.

2.10   **Waiver Of Notice**

Whenever notice is required to be given under any provision of the Delaware General Corporation Law or of the certificate of incorporation or these bylaws, a written waiver thereof, signed by the person entitled to notice, or waiver by electronic mail or other electronic transmission by such person, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice,

or any waiver of notice by electronic transmission, unless so required by the certificate of incorporation or these bylaws.

### 2.11    Stockholder Action By Written Consent Without A Meeting

Unless otherwise provided in the certificate of incorporation, any action required to be taken at any annual or special meeting of stockholders of the corporation, or any action that may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice, and without a vote if a consent in writing, setting forth the action so taken, is (a) signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted, and (b) delivered to the corporation in accordance with Section 228(a) of the Delaware General Corporation Law.

Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the corporation, a written consent or consents signed by a sufficient number of holders to take action are delivered to the corporation in the manner prescribed in this Section.  A telegram, cablegram, electronic mail or other electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder, or by a person or persons authorized to act for a stockholder or proxyholder, shall be deemed to be written, signed and dated for purposes of this Section to the extent permitted by law.  Any such consent shall be delivered in accordance with Section 228(d)(1) of the Delaware General Corporation Law.

Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used, provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing (including by electronic mail or other electronic transmission as permitted by law).  If the action which is consented to is such as would have required the filing of a certificate under any section of the Delaware General Corporation Law if such action had been voted on by stockholders at a meeting thereof, then the certificate filed under such section shall state, in lieu of any statement required by such section concerning any vote of stockholders, that written notice and written consent have been given as provided in Section 228 of the Delaware General Corporation Law.

### 2.12    Record Date For Stockholder Notice; Voting; Giving Consents

In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or entitled to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful

action, the Board of Directors may fix, in advance, a record date, which shall not be more than 60 nor less than 10 days before the date of such meeting, nor more than 60 days prior to any other action.

If the Board of Directors does not so fix a record date:

(a)     The record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

(b)     The record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent (including consent by electronic mail or other electronic transmission as permitted by law) is delivered to the corporation.

(c)     The record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting, if such adjournment is for 30 days or less; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

2.13    **Proxies**

Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by an instrument in writing or by an electronic transmission permitted by law filed with the secretary of the corporation, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period.  A proxy shall be deemed signed if the stockholder's name is placed on the proxy (whether by manual signature, typewriting, facsimile, electronic or telegraphic transmission or otherwise) by the stockholder or the stockholder's attorney-in-fact.  The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212(e) of the Delaware General Corporation Law.

## ARTICLE III

## DIRECTORS

3.1    **Powers**

Subject to the provisions of the Delaware General Corporation Law and any limitations in the certificate of incorporation or these bylaws relating to action required to be approved by the stockholders or by the outstanding shares, the business and affairs of the

corporation shall be managed and all corporate powers shall be exercised by or under the direction of the Board of Directors.

3.2   **Number Of Directors**

(a)   The total number of directors constituting the entire Board of Directors (the "Number of Authorized Directors") shall be fixed or changed in the manner provided in these bylaws, unless the certificate of incorporation fixes the Number of Authorized Directors, in which case the Number of Authorized Directors shall be changed only by amendment of the certificate of incorporation.

(b)   Subject to Section 3.4 of these bylaws, the Number of Authorized Directors may be fixed or changed:  (i) by a resolution of the Board of Directors or of the stockholders, or (ii) if applicable, by action of the incorporator(s) (which includes any person(s) acting, in accordance with the Delaware General Corporation Law, on behalf of any incorporator(s) not available to act) before the election of the initial Board of Directors. No reduction of the Number of Authorized Directors shall have the effect of removing any director before such director's term of office expires.

(c)   If the Number of Authorized Directors is already fixed (whether by the certificate of incorporation, resolution of the Board of Directors or of the stockholders, action of the incorporators(s) before the election of the initial Board of Directors, or otherwise in accordance with the Delaware General Corporation Law) at the time the adoption of these bylaws is effective (the "Effective Time"), then the Number of Authorized Directors, until changed in accordance with this Section 3.2, is such already fixed Number of Authorized Directors.

(d)   If the Number of Authorized Directors is not already fixed at the Effective Time, then:  (i) if there are directors in office at the Effective Time, the Number of Authorized Directors, until changed in accordance with this Section 3.2, is the total number of directors in office at the Effective Time, or (ii) if there are no directors in office at the Effective Time, the Number of Authorized Directors, until fixed or changed in accordance with this Section 3.2, is the total number of directors on the Board of Directors as first constituted following the Effective Time (whether such directors are elected by resolution of the stockholders, action of the incorporators(s) before the election of the initial Board of Directors, or otherwise in accordance with the Delaware General Corporation Law).

3.3   **Election, Qualification And Term Of Office Of Directors**

Except as provided in Section 3.4 of these bylaws, and unless otherwise provided in the certificate of incorporation, directors shall be elected at each annual meeting of stockholders to hold office until the next annual meeting.  Directors need not be stockholders unless so required by the certificate of incorporation or these bylaws, wherein other qualifications for directors may be prescribed.  Each director, including a director elected to fill a vacancy, shall hold office until his or her successor is elected and qualified or until his or her earlier resignation or removal.

Unless otherwise specified in the certificate of incorporation, elections of directors need not be by written ballot.

3.4   **Resignation And Vacancies**

Any director may resign at any time upon written notice to the attention of the Secretary of the corporation.  Notwithstanding the provisions of Section 223(a)(1) and 223(a)(2) of the Delaware General Corporation Law, any vacancy or newly created directorship may be filled by a majority of the directors then in office (including any directors that have tendered a resignation effective at a future date), though less than a quorum, or by a sole remaining director, and the directors so chosen shall hold office until the next annual election and until their successors are duly elected and shall qualify, unless sooner displaced; provided, however, that where such vacancy or newly created directorship occurs among the directors elected by the holders of a class or series of stock, the holders of shares of such class or series may override the Board of Directors' action to fill such vacancy or newly created directorship by (i) voting for their own designee to fill such vacancy or newly created directorship at a meeting of the corporation's stockholders or (ii) written consent, if the consenting stockholders hold a sufficient number of shares to elect their designee at a meeting of the stockholders.

If at any time, by reason of death or resignation or other cause, the corporation should have no directors in office, then any officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder, or other fiduciary entrusted with like responsibility for the person or estate of a stockholder, may call a special meeting of stockholders in accordance with the provisions of the certificate of incorporation or these bylaws, or may apply to the Court of Chancery for a decree summarily ordering an election as provided in Section 211 of the Delaware General Corporation Law.

If, at the time of filling any vacancy or any newly created directorship, the directors then in office constitute less than a majority of the whole board (as constituted immediately prior to any such increase), then the Court of Chancery may, upon application of any stockholder or stockholders holding at least 10% of the total number of the shares at the time outstanding having the right to vote for such directors, summarily order an election to be held to fill any such vacancies or newly created directorships, or to replace the directors chosen by the directors then in office as aforesaid, which election shall be governed by the provisions of Section 211 of the Delaware General Corporation Law as far as applicable.

3.5   **Place Of Meetings; Meetings By Telephone**

The Board of Directors of the corporation may hold meetings, both regular and special, either within or outside the state of Delaware.

Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or any committee, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

3.6     **Regular Meetings**

Regular meetings of the Board of Directors may be held without notice at such time and at such place as shall from time to time be determined by the board.

3.7     **Special Meetings; Notice**

Special meetings of the Board of Directors for any purpose or purposes may be called at any time by the chairperson of the board, the chief executive officer, the president, the secretary or any two directors.

Notice of the time and place of special meetings shall be delivered personally or by telephone to each director or sent by first-class mail, facsimile, electronic transmission, or telegram, charges prepaid, addressed to each director at that director's address as it is shown on the records of the corporation.  If the notice is mailed, it shall be deposited in the United States mail at least 4 days before the time of the holding of the meeting.  If the notice is delivered personally or by facsimile, electronic transmission, telephone or telegram, it shall be delivered at least 24 hours before the time of the holding of the meeting.  Any oral notice given personally or by telephone may be communicated either to the director or to a person at the office of the director who the person giving the notice has reason to believe will promptly communicate it to the director.  The notice need not specify the purpose of the meeting.  The notice need not specify the place of the meeting, if the meeting is to be held at the principal executive office of the corporation. Unless otherwise indicated in the notice thereof, any and all business may be transacted at a special meeting.

3.8     **Quorum**

At all meetings of the Board of Directors, a majority of the total number of directors then in office (but in no case less than 1/3 of the Number of Authorized Directors (as defined in Section 3.2 of these bylaws)) shall constitute a quorum for the transaction of business and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors, except as may be otherwise specifically provided by statute or by the certificate of incorporation.  If a quorum is not present at any meeting of the Board of Directors, then the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

3.9     **Waiver Of Notice**

Whenever notice is required to be given under any provision of the Delaware General Corporation Law or of the certificate of incorporation or these bylaws, a written waiver thereof, signed by the person entitled to notice, or waiver by electronic mail or other electronic transmission by such person, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at

the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the directors, or members of a committee of directors, need be specified in any written waiver of notice unless so required by the certificate of incorporation or these bylaws.

### 3.10   Board Action By Written Consent Without A Meeting

Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof, may be taken without a meeting if all members of the board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used, provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

### 3.11   Fees And Compensation Of Directors

Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have the authority to fix the compensation of directors.  No such compensation shall preclude any director from serving the corporation in any other capacity and receiving compensation therefor.

### 3.12   Approval Of Loans To Officers

The corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the corporation or of its subsidiary, including any officer or employee who is a director of the corporation or its subsidiary, whenever, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation.  The loan, guaranty or other assistance may be with or without interest and may be unsecured, or secured in such manner as the Board of Directors shall approve, including, without limitation, a pledge of shares of stock of the corporation.  Nothing in this section shall be deemed to deny, limit or restrict the powers of guaranty or warranty of the corporation at common law or under any statute.

### 3.13   Removal Of Directors

Unless otherwise restricted by statute, by the certificate of incorporation or by these bylaws, any director or the entire Board of Directors may be removed, with or without cause, by, and only by, the affirmative vote of the holders of the shares of the class or series of stock entitled to elect such director or directors, given either at a special meeting of such stockholders duly called for that purpose or pursuant to a written consent of stockholders, and any vacancy thereby created may be filled by the holders of that class or series of stock

represented at the meeting or pursuant to written consent; provided, however, that if the stockholders of the corporation are entitled to cumulative voting, if less than the entire Board of Directors is to be removed, no director may be removed without cause if the votes cast against his removal would be sufficient to elect him if then cumulatively voted at an election of the entire Board of Directors.

No reduction of the Number of Authorized Directors (as defined in Section 3.2 of these bylaws) shall have the effect of removing any director before such director's term of office expires.

### 3.14   **Chairperson Of The Board Of Directors**

The corporation may also have, at the discretion of the Board of Directors, a chairperson of the Board of Directors who shall not be considered an officer of the corporation.

## ARTICLE IV

## COMMITTEES

### 4.1   **Committees Of Directors**

The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the corporation.  The Board may designate 1 or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Any such committee, to the extent provided in the resolution of the Board of Directors, or in these bylaws, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to the following matters:  (i) approving or adopting, or recommending to the stockholders, any action or matter expressly required by the General Corporate Law of Delaware to be submitted to stockholders for approval or (ii) adopting, amending or repealing any Bylaw of the corporation.

### 4.2   **Committee Minutes**

Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

### 4.3   **Meetings And Actions Of Committees**

Meetings and actions of committees shall be governed by, and held and taken in accordance with, the provisions of Section 3.5 (place of meetings and meetings by telephone), Section 3.6 (regular meetings), Section 3.7 (special meetings and notice), Section 3.8 (quorum), Section 3.9 (waiver of notice), and Section 3.10 (action without a meeting) of these bylaws, with

such changes in the context of such provisions as are necessary to substitute the committee and its members for the Board of Directors and its members; provided, however, that the time of regular meetings of committees may be determined either by resolution of the Board of Directors or by resolution of the committee, that special meetings of committees may also be called by resolution of the Board of Directors and that notice of special meetings of committees shall also be given to all alternate members, who shall have the right to attend all meetings of the committee.  The Board of Directors may adopt rules for the government of any committee not inconsistent with the provisions of these bylaws.

## ARTICLE V

## OFFICERS

### 5.1     **Officers**

The officers of the corporation shall be a president and a secretary.  The corporation may also have, at the discretion of the Board of Directors, a chief executive officer, a chief financial officer, a treasurer, one or more vice presidents, one or more assistant secretaries, one or more assistant treasurers, and any such other officers as may be appointed in accordance with the provisions of Section 5.3 of these bylaws.  Any number of offices may be held by the same person.

### 5.2     **Appointment Of Officers**

The officers of the corporation, except such officers as may be appointed in accordance with the provisions of Sections 5.3 or 5.5 of these bylaws, shall be appointed by the Board of Directors, subject to the rights (if any) of an officer under any contract of employment.

### 5.3     **Subordinate Officers**

The Board of Directors may appoint, or empower the chief executive officer or the president to appoint, such other officers and agents as the business of the corporation may require, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the Board of Directors may from time to time determine.

### 5.4     **Removal And Resignation Of Officers**

Subject to the rights (if any) of an officer under any contract of employment, any officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board of Directors at any regular or special meeting of the board or, except in the case of an officer chosen by the Board of Directors, by any officer upon whom the power of removal is conferred by the Board of Directors.

Any officer may resign at any time by giving written notice to the corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the

resignation shall not be necessary to make it effective.  Any resignation is without prejudice to the rights (if any) of the corporation under any contract to which the officer is a party.

5.5     **Vacancies In Offices**

Any vacancy occurring in any office of the corporation shall be filled by the Board of Directors.

5.6     **Chief Executive Officer**

Subject to such supervisory powers (if any) as may be given by the Board of Directors to the chairperson of the board (if any), the chief executive officer of the corporation (if such an officer is appointed) shall, subject to the control of the Board of Directors, have general supervision, direction, and control of the business and the officers of the corporation and shall have the general powers and duties of management usually vested in the office of chief executive officer of a corporation and shall have such other powers and duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as chief executive officer shall also be the acting president of the corporation whenever no other person is then serving in such capacity.

5.7     **President**

Subject to such supervisory powers (if any) as may be given by the Board of Directors to the chairperson of the board (if any) or the chief executive officer, the president shall have general supervision, direction, and control of the business and other officers of the corporation.  He or she shall have the general powers and duties of management usually vested in the office of president of a corporation and such other powers and duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as president shall also be the acting chief executive officer, secretary or treasurer of the corporation, as applicable, whenever no other person is then serving in such capacity.

5.8     **Vice Presidents**

In the absence or disability of the chief executive officer and president, the vice presidents (if any) in order of their rank as fixed by the Board of Directors or, if not ranked, a vice president designated by the Board of Directors, shall perform all the duties of the president and when so acting shall have all the powers of, and be subject to all the restrictions upon, the president.  The vice presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the Board of Directors, these bylaws, the president or the chairperson of the board.

5.9     **Secretary**

The secretary shall keep or cause to be kept, at the principal executive office of the corporation or such other place as the Board of Directors may direct, a book of minutes of all

meetings and actions of directors, committees of directors, and stockholders.  The minutes shall show the time and place of each meeting, the names of those present at directors' meetings or committee meetings, the number of shares present or represented at stockholders' meetings, and the proceedings thereof.

The secretary shall keep, or cause to be kept, at the principal executive office of the corporation or at the office of the corporation's transfer agent or registrar, as determined by resolution of the Board of Directors, a share register, or a duplicate share register, showing the names of all stockholders and their addresses, the number and classes of shares held by each, the number and date of certificates (if any) evidencing such shares, and the number and date of cancellation of every certificate (if any) surrendered for cancellation.

The secretary shall give, or cause to be given, notice of all meetings of the stockholders and of the Board of Directors required to be given by law or by these bylaws.  He or she shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or by these bylaws.

### 5.10   **Chief Financial Officer**

The chief financial officer (if such an officer is appointed) shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, retained earnings and shares. The books of account shall at all reasonable times be open to inspection by any member of the Board of Directors.

The chief financial officer shall render to the chief executive officer, the president, or the Board of Directors, upon request, an account of all his or her transactions as chief financial officer and of the financial condition of the corporation.  He or she shall have the general powers and duties usually vested in the office of chief financial officer of a corporation and shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as the chief financial officer shall also be the acting treasurer of the corporation whenever no other person is then serving in such capacity.  Subject to such supervisory powers (if any) as may be given by the Board of Directors to another officer of the corporation, the chief financial officer shall supervise and direct the responsibilities of the treasurer whenever someone other than the chief financial officer is serving as treasurer of the corporation.

### 5.11   **Treasurer**

The treasurer (if such an officer is appointed) shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records with respect to all bank accounts, deposit accounts, cash management accounts and other investment accounts of the corporation.  The books of account shall at all reasonable times be open to inspection by any member of the Board of Directors.

The treasurer shall deposit, or cause to be deposited, all moneys and other valuables in the name and to the credit of the corporation with such depositories as may be designated by the Board of Directors.  He or she shall disburse the funds of the corporation as may be ordered by the Board of Directors and shall render to the chief financial officer, the chief executive officer, the president or the Board of Directors, upon request, an account of all his or her transactions as treasurer.  He or she shall have the general powers and duties usually vested in the office of treasurer of a corporation and shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or these bylaws.

The person serving as the treasurer shall also be the acting chief financial officer of the corporation whenever no other person is then serving in such capacity.

### 5.12   **Representation Of Shares Of Other Corporations**

The chairperson of the board, the chief executive officer, the president, any vice president, the chief financial officer, the secretary or assistant secretary of this corporation, or any other person authorized by the Board of Directors or the chief executive officer or the president or a vice president, is authorized to vote, represent, and exercise on behalf of this corporation all rights incident to any and all shares of any other corporation or corporations standing in the name of this corporation.  The authority granted herein may be exercised either by such person directly or by any other person authorized to do so by proxy or power of attorney duly executed by the person having such authority.

### 5.13   **Authority And Duties Of Officers**

In addition to the foregoing authority and duties, all officers of the corporation shall respectively have such authority and perform such duties in the management of the business of the corporation as may be designated from time to time by the Board of Directors or the stockholders.

## ARTICLE VI

## INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES, AND OTHER AGENTS

### 6.1   **Indemnification Of Directors And Officers**

The corporation shall, to the maximum extent and in the manner permitted by the Delaware General Corporation Law, indemnify each of its directors and officers against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation.  For purposes of this Section 6.1, a "director" or "officer" of the corporation includes any person (a) who is or was a director or officer of the corporation, (b) who is or was serving at the request of the corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was a director or officer of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

-14-

6.2     **Indemnification Of Others**

The corporation shall have the power, to the maximum extent and in the manner permitted by the Delaware General Corporation Law, to indemnify each of its employees and agents (other than directors and officers) against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation. For purposes of this Section 6.2, an "employee" or "agent" of the corporation (other than a director or officer) includes any person (a) who is or was an employee or agent of the corporation, (b) who is or was serving at the request of the corporation as an employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was an employee or agent of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

6.3     **Payment Of Expenses In Advance**

Expenses incurred in defending any action or proceeding for which indemnification is required pursuant to Section 6.1 or for which indemnification is permitted pursuant to Section 6.2 following authorization thereof by the Board of Directors shall be paid by the corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnified party is not entitled to be indemnified as authorized in this Article VI.

6.4     **Indemnity Not Exclusive**

The indemnification provided by this Article VI shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any Bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in an official capacity and as to action in another capacity while holding such office, to the extent that such additional rights to indemnification are authorized in the certificate of incorporation.

6.5     **Insurance**

The corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the corporation would have the power to indemnify him or her against such liability under the provisions of the Delaware General Corporation Law.

6.6     **Conflicts**

No indemnification or advance shall be made under this Article VI, except where such indemnification or advance is mandated by law or the order, judgment or decree of any court of competent jurisdiction, in any circumstance where it appears:

(a)      That it would be inconsistent with a provision of the certificate of incorporation, these bylaws, a resolution of the stockholders or an agreement in effect at the time of the accrual of the alleged cause of the action asserted in the proceeding in which the expenses were incurred or other amounts were paid, which prohibits or otherwise limits indemnification; or

(b)      That it would be inconsistent with any condition expressly imposed by a court in approving a settlement.

**ARTICLE VII**

**RECORDS AND REPORTS**

7.1      **Maintenance And Inspection Of Records**

The corporation shall, either at its principal executive offices or at such place or places as designated by the Board of Directors, keep a record of its stockholders listing their names and addresses and the number and class of shares held by each stockholder, a copy of these bylaws as amended to date, accounting books, and other records.

Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. In every instance where an attorney or other agent is the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing that authorizes the attorney or other agent to so act on behalf of the stockholder. The demand under oath shall be directed to the corporation at its registered office in Delaware or at its principal place of business.

A complete list of stockholders entitled to vote at any meeting of stockholders, arranged in alphabetical order for each class of stock and showing the address of each such stockholder and the number of shares registered in each such stockholder's name, shall be open to the examination of any such stockholder for a period of at least 10 days prior to the meeting in the manner provided by law. The stock list shall also be open to the examination of any stockholder during the whole time of the meeting as provided by law. This list shall presumptively determine the identity of the stockholders entitled to vote at the meeting and the number of shares held by each of them.

7.2      **Inspection By Directors**

Any director shall have the right to examine the corporation's stock ledger, a list of its stockholders, and its other books and records for a purpose reasonably related to his or her position as a director. The Court of Chancery is hereby vested with the exclusive jurisdiction to determine whether a director is entitled to the inspection sought. The Court may summarily order the corporation to permit the director to inspect any and all books and records, the stock ledger, and the stock list and to make copies or extracts therefrom. The Court may, in its

discretion, prescribe any limitations or conditions with reference to the inspection, or award such other and further relief as the Court may deem just and proper.

**ARTICLE VIII**

**GENERAL MATTERS**

8.1      **Checks**

From time to time, the Board of Directors shall determine by resolution which person or persons may sign or endorse all checks, drafts, other orders for payment of money, notes or other evidences of indebtedness that are issued in the name of or payable to the corporation, and only the persons so authorized shall sign or endorse those instruments.

8.2      **Execution Of Corporate Contracts And Instruments**

The Board of Directors, except as otherwise provided in these bylaws, may authorize any officer or officers, or agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the corporation; such authority may be general or confined to specific instances.  Unless so authorized or ratified by the Board of Directors or within the agency power of an officer, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

8.3      **Stock Certificates and Notices; Uncertificated Stock; Partly Paid Shares**

The shares of the corporation may be certificated or uncertificated, as provided under Delaware law, and shall be entered in the books of the corporation and recorded as they are issued.  Any or all of the signatures on any certificate may be a facsimile or electronic signature.  In case any officer, transfer agent or registrar who has signed or whose facsimile or electronic signature has been placed upon a certificate has ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if he or she were such officer, transfer agent or registrar at the date of issue.

Within a reasonable time after the issuance or transfer of uncertificated stock and upon the request of a stockholder, the corporation shall send to the record owner thereof a written notice that shall set forth the name of the corporation, that the corporation is organized under the laws of Delaware, the name of the stockholder, the number and class (and the designation of the series, if any) of the shares, and any restrictions on the transfer or registration of such shares of stock imposed by the corporation's certificate of incorporation, these bylaws, any agreement among stockholders or any agreement between stockholders and the corporation.

The corporation may issue the whole or any part of its shares as partly paid and subject to call for the remainder of the consideration to be paid therefor.  Upon the face or back of each stock certificate (if any) issued to represent any such partly paid shares, or upon the books and records of the corporation in the case of uncertificated partly paid shares, the total amount of the consideration to be paid therefor and the amount paid thereon shall be stated. Upon the declaration of any dividend on fully paid shares, the corporation shall declare a

-17-

dividend upon partly paid shares of the same class, but only upon the basis of the percentage of the consideration actually paid thereon.

8.4 **Special Designation On Certificates and Notices of Issuance**

If the corporation is authorized to issue more than one class of stock or more than one series of any class, then the powers, the designations, the preferences, and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights shall be set forth in full or summarized on the face or back of the certificate that the corporation shall issue to represent such class or series of stock or the notice of issuance to the record owner of uncertificated stock; provided, however, that, except as otherwise provided in Section 202 of the Delaware General Corporation Law, in lieu of the foregoing requirements there may be set forth on the face or back of the certificate that the corporation shall issue to represent such class or series of stock or the notice of issuance to the record owner of uncertificated stock, or the purchase agreement for such stock a statement that the corporation will furnish without charge to each stockholder who so requests the powers, the designations, the preferences, and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

8.5 **Lost Certificates**

Except as provided in this Section 8.5, no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the corporation and cancelled at the same time.  The corporation may issue a new certificate of stock or notice of uncertificated stock in the place of any certificate previously issued by it, alleged to have been lost, stolen or destroyed, and the corporation may require the owner of the lost, stolen or destroyed certificate, or the owner's legal representative, to give the corporation a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate or uncertificated shares.

8.6 **Construction; Definitions**

Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the Delaware General Corporation Law shall govern the construction of these bylaws.  Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

8.7 **Dividends**

The directors of the corporation, subject to any restrictions contained in (a) the Delaware General Corporation Law or (b) the certificate of incorporation, may declare and pay dividends upon the shares of its capital stock.  Dividends may be paid in cash, in property, or in shares of the corporation's capital stock.

The directors of the corporation may set apart out of any of the funds of the corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.  Such purposes shall include but not be limited to equalizing dividends, repairing or maintaining any property of the corporation, and meeting contingencies.

8.8     **Fiscal Year**

The fiscal year of the corporation shall be fixed by resolution of the Board of Directors and may be changed by the Board of Directors.

8.9     **Transfer Of Stock**

Upon receipt by the corporation or the transfer agent of the corporation of proper transfer instructions from the record holder of uncertificated shares or upon surrender to the corporation or the transfer agent of the corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignation or authority to transfer, it shall be the duty of the corporation to issue a new certificate or, in the case of uncertificated securities and upon request, a notice of issuance of shares, to the person entitled thereto, cancel the old certificate (if any) and record the transaction in its books.

8.10    **Stock Transfer Agreements**

The corporation shall have power to enter into and perform any agreement with any number of stockholders of any one or more classes of stock of the corporation to restrict the transfer of shares of stock of the corporation of any one or more classes owned by such stockholders in any manner not prohibited by the Delaware General Corporation Law.

8.11    **Stockholders Of Record**

The corporation shall be entitled to recognize the exclusive right of a person recorded on its books as the owner of shares to receive dividends and to vote as such owner, shall be entitled to hold liable for calls and assessments the person recorded on its books as the owner of shares, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of another person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

8.12    **Facsimile Or Electronic Signatures**

In addition to the provisions for use of facsimile or electronic signatures elsewhere specifically authorized in these bylaws, facsimile or electronic signatures of any stockholder, director or officer of the corporation may be used whenever and as authorized by the Board of Directors or a committee thereof.

# ARTICLE IX

## AMENDMENTS

The Bylaws of the corporation may be adopted, amended or repealed by the stockholders entitled to vote; provided, however, that the corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal Bylaws upon the directors.  The fact that such power has been so conferred upon the directors shall not divest the stockholders of the power, nor limit their power to adopt, amend or repeal Bylaws.

# CERTIFICATE OF ADOPTION OF BYLAWS

## OF

## BAM TRADING SERVICES INC.

### <u>ADOPTION BY INCORPORATOR</u>

The undersigned person appointed in the certificate of incorporation to act as the Incorporator of BAM Trading Services Inc., a Delaware corporation, hereby adopts the foregoing Bylaws as the Bylaws of the corporation.

Executed on February 5, 2019.

**INCORPORATOR:**

_____

# EXHIBIT BH-10

◆ BINANCE.US     Markets   Buy Crypto   Spot Trade   Staking        Log In   Get Started

🔍 **How can we help you?**

Binance.US > Legal > Licenses

Articles in this section

**Licenses**

# Licenses

1 day ago · Updated                      Follow

BAM Trading Services, Inc. ("BAM Trading") is a digital asset exchange that is regulated at both the state and federal level. On the federal level, Binance.US is registered as a Money Services Business with FinCEN. BAM Trading Services Inc. (NMLS ID # 1906829) is licensed in the following US jurisdictions:

| Jurisdiction | License Number | Type of License/Statute | Licensed By | Regulator Contact |
|---|---|---|---|---|
| Alabama | SC 814 | Money Transmission License | Alabama Securities Commission | Alabama Securities Commission<br>P O Box 304700<br>Montgomery AL 36130-4700<br>Bene' Kyles<br>334-242-2372<br>bene.kyles@asc.alabama.gov<br>ASC@ASC.Alabama.gov |
| Alaska | AKMT-012960 | Money Transmission/Alaska Uniform Money Services Act | Alaska Department of Commerce, Community and Economic Development Division of Banking and Securities | Alaska DCCED Division of Banking & Securities<br>PO Box 110807<br>Juneau AK 99811<br>Tracy Reno<br>907-269-8112<br>tracy.reno@alaska.gov<br>E-Mail: dbsc@alaska.gov |

**For Alaska Residents Only:**

If your issue is unresolved by BAM Trading Services Inc. 1 (844) 900-1450, please submit formal complaints with the State of Alaska, Division of Banking & Securities.

Please download the form here: https://www.commerce.alaska.gov/web/portals/3/pub/DBSGeneralComplaintFormupdated.pdf

Submit formal complaint form with supporting documents:

Division of Banking & Securities PO Box 110807 Juneau, AK 99811-0807

If you are an Alaska resident with questions regarding formal complaints, please email us at dbs.licensing@alaska.gov or call Nine Zero Seven Four Six Five Two Five Two One

| Arizona | 1009212 | Money Transmitter License | Arizona Department of Financial Institutions | Arizona Department of Insurance and Financial Institutions<br>100 N 15th Ave Ste 261<br>Phoenix AZ 85007<br>Tammy Seto<br>602-771-2804<br>Tammy.Seto@difi.az.gov |

💬 Help

**Arizona**

If you have a complaint, please contact BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may complete an Online Complaint Form as stated on the File a Complaint against a Financial Institution or Enterprise page

AZ e-Licensing Portal for filing a complaint

AZDFI Consumer Complaint Portal: https://elicense.az.gov/ARDC_FileComplaint

| | | | | |
|---|---|---|---|---|
| **Arkansas** | 119231 | Money Transmitter License | Arkansas Securities Department | Arkansas Securities Department<br><br>1 Commerce Way<br><br>Suite 402<br><br>Little Rock AR 72202<br><br>Karyn Tierney<br><br>501-324-8671<br><br>karyn.tierney@arkansas.gov<br><br>OR<br><br>Jay Drake<br><br>501-324-8688<br><br>Jay.drake@arkansas.gov<br><br>ASDinfo@arkansas.gov |

**Arkansas**

If you have a complaint, please contact BAM Trading Services Inc.

Address:

252 NW 29th Street,

9th Floor, Suite 905,

Miami, FL 33127.

Phone: 1 (844) 900-1450

Email: legal@binance.us.

If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may contact the Arkansas Securities Department by filing the completed complaint form by e-mailing to ASDInfo@securities.arkansas.gov or by mailing at:

1 Commerce Way, Suite 402

Little Rock, Arkansas 72202

Telephone: (501) 324-9260

Facsimile: (501) 324-9268

For additional information please refer to the How To File A Complaint page for the Arkansas Security Department.

Important Notice from AR Securities Department about Consumer Complaint

http://www.securities.arkansas.gov/!userfiles/Complaint%20Important%20Notice%20May%202020(2).pdf

[... Initial complaints should be made in writing directly to the entity or individual with whom you have experienced the problem. It is a good idea to indicate on your complaint letter that you are sending a copy to the Arkansas Securities Department. If your problem is not resolved timely by the entity or individual, you are encouraged to complete a Complaint Form and send it to the Department ...]

| | | | | |
|---|---|---|---|---|
| **Connecticut** | MT-1906829 | Money Transmission License | Connecticut Department of Banking | Connecticut Department of Banking<br><br>260 Constitution Plaza<br><br>Hartford CT 06103-1800<br><br>Anne Cappelli |



| State | License # | Type | Agency | Contact |
|---|---|---|---|---|
| | | | | 860-240-8206 |
| | | | | anne.cappelli@ct.gov |
| | | | | Department.Banking@ct.gov |
| **Delaware** | 30095 | Sale of Checks & Transmission of Money | Office of the State Bank Commissioner | Delaware Office of the State Bank Commissioner |
| | | | | 1110 Forest Ave |
| | | | | Dover DE 19904 |
| | | | | Christopher L. Hall |
| | | | | 302-739-4235 |
| | | | | christopherL.hall@delaware.gov |
| | | | | bankcommissioner@delaware.gov |
| **District of Columbia** | MTR1906829 | Money Transmission License | District of Columbia Department of Financial Insurance, Securities, and Banking | District of Columbia |
| | | | | Department of Insurance, Securities and Banking |
| | | | | 1050 1st St NE, Ste 801 |
| | | | | Washington, DC 20002 |
| | | | | Trey Irwin |
| | | | | 202-442-7850 |
| | | | | Trey.irwin@dc.gov |
| | | | | disb@dc.gov |

**District of Columbia**

If you have a complaint, please contact BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file it by contacting the Department at:

District of Columbia Department of Insurance, Securities and Banking

1050 First St., NE, Suite 801

Washington, DC 20002

Phone: (202) 727-8000

Fax: (202) 354-1085

E-mail: disbcomplaints@dc.gov

Consumer Complaint Form Mail-in Version

| State | License # | Type | Agency | Contact |
|---|---|---|---|---|
| **Florida** | FT230000290 | Money Transmission License | Florida Office of Financial Regulation | Florida Office of Financial Regulation, Division of Consumer Finance |
| | | | | 200 E Gaines Street |
| | | | | Tallahassee, FL 32399-0373 |
| | | | | Consumer Assistance Group |
| | | | | 850-410-9805 or 850- |

**Florida**

Florida Office of Financial Regulation

If you have a complaint, please contact BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file it by contacting the Florida Office of Financial Regulation at:

Online: https://flofr.gov/sitePages/FileAComplaint.htm; and

By mail: Florida Office of Financial Regulation - Consumer Finance

200 E. Gaines Street

Tallahassee, FL 32399-0376

Phone: 850-487-9687



BY GRANTING BAM TRADING SERVICES INC. A LICENSE, THE FLORIDA OFFICE OF FINANCIAL REGULATION IS NOT ENDORSING THE USE OF DIGITAL OR VIRTUAL CURRENCIES.

– U.S. currency is legal tender backed by the U.S. government.

– Digital and virtual currencies are not issued or backed by the U.S. government, or related in any way to U.S. currency, and have fewer regulatory protections.

– The value of digital and virtual currencies is derived from supply and demand in the global marketplace which can rise or fall independently of any fiat (government) currency.

– Holding digital and virtual currencies carries exchange rate and other types of risk.

POTENTIAL USERS OF DIGITAL OR VIRTUAL CURRENCIES, INCLUDING BUT NOT LIMITED TO BITCOIN, SHOULD BE FOREWARNED OF A POSSIBLE FINANCIAL LOSS AT THE TIME THAT SUCH CURRENCIES ARE EXCHANGED FOR FIAT CURRENCY DUE TO AN UNFAVORABLE EXCHANGE RATE. A FAVORABLE EXCHANGE RATE AT THE TIME OF EXCHANGE CAN RESULT IN A TAX LIABILITY. PLEASE CONSULT YOUR TAX ADVISOR REGARDING ANY TAX CONSEQUENCES ASSOCIATED WITH YOUR HOLDING OR USE OF DIGITAL OR VIRTUAL CURRENCIES.

| Georgia | 72019 | Seller of Payment Instruments License | Georgia Department of Banking and Finance | Georgia Department of Banking and Finance<br><br>2990 Brandywine Rd Ste 200<br><br>Atlanta GA 30341-5565<br><br>Shay Adams<br><br>770-986-1625<br><br>sadams@dbf.state.ga.us<br><br>OR<br><br>Fernando Ornelas<br><br>770-986-1313<br><br>fornelas@dbf.state.ga.us<br><br>https://georgia.gov/message |

**Georgia**

Licensed by The Georgia Department of Banking and Finance. (Lic. #72019/ NMLS#1906829).

If you have a complaint, please contact BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may contact the Georgia Department of Banking and Finance - Consumer Resources at (770) 986-1633. We do not intervene in disputes between consumers and financial service providers, but we do use complaint information in the regulatory process. For more information please refer to https://dbf.georgia.gov/i-have-question-or-complaint-about-seller-issuer-payment-instruments-or-money-transmitter.

To file a complaint with the regulators, you may securely do so with the Consumer Financial Protection Bureau, an agency of the federal government, at http://www.consumerfinance.gov/complaint/ or by telephone at (855) 411-2372.

| Guam | SRL NO 2316097 | Foreign Exchange & Money Transmittal License | Guam Department of Revenue and Taxation | Dept. of Revenue & Taxation<br><br>Taxpayer Services Division<br><br>P.O. Box 23607<br><br>Barrigada, Guam 96921<br><br>671-635-1809<br><br>businesslicense@revtax.guam.gov<br><br>https://www.guamtax.com/app/contactus.do<br><br> Alice.Cruz@revtax.guam.gov;<br>Michele.Rabago@revtax.guam.gov;<br>Nemencio.Briones@revtax.guam.gov |

**Guam**

Guam Department of Revenue & Taxation

If you have a complaint, please contact BAM Trading Services Inc. Phone Number: 1 (844) 900-1450. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file it by contacting the Guam Department of Revenue & Taxation at:
Online: https://www.guamtax.com/about/regulatory.html
Telephone number: 671-635-1845/1846

| Idaho | MTL - 306 | Money Transmitters License | Idaho Department | Idaho Department of Finance |



| State | License | Type | Regulator | Contact |
|---|---|---|---|---|
| | | | of Finance | 800 Park Blvd Ste 200 PO Box 83720<br>Boise ID 83720-0031<br>Norman Real<br>208-332-8082<br>Norman.Real@finance.Idaho.gov<br>OR<br>Jennifer Biretz<br>208-332-8081<br>Jennifer.Biretz@finance.idaho.gov<br>https://www.finance.idaho.gov/about/contact/ |
| **Illinois** | MT.0000392 | Transmitter of Money License | Illinois Department of Financial and Professional Regulation | Illinois Department of Financial and Professional Regulation, Division of Financial Institutions<br>100 West Randolph 9th Floor<br>Chicago, IL 60601<br>Spenser Staton<br>312-793-5657<br>Spenser.Staton@illinois.gov<br>IL.Banks@illinois.gov<br>FPR.ConsumerCredit@illinois.gov |

**Illinois Division of Banking**

If you have a complaint, please contact BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file it online with the Illinois Department of Financial Institutions, Consumer Credit Section at https://www.idfpr.com/admin/DFI/DFIcomplaint.asp Division of Financial Institutions with the Fill In and Print Complaint Form for Currency Exchange and title Insurance https://www.idfpr.com/admin/DFI/F1717DFICHI.pdf , via telephone at (888) 473-4858 (toll-free), or at the following address:

Illinois Division of Financial Institutions

320 West Washington Street, 3rd Floor

Springfield, IL 62786

| State | License | Type | Regulator | Contact |
|---|---|---|---|---|
| **Iowa** | 2020-0087 | Money Services License | State of Iowa Division of Banking | Iowa Division of Banking<br>200 East Grand Ave Ste 300<br>Des Moines IA 50309-1827<br>Craig Christensen<br>515-242-0272<br>craig.christensen@idob.state.ia.us<br>https://gsecuremail.iowa.gov<br>"<br>FPR.ConsumerCredit@illinois.gov |
| **Kansas** | MT.0000182 | Money Transmitter License | Kansas Office of the State Bank Commissioner | Kansas Office of the State Bank Commissioner<br>700 SW Jackson Ste 300<br>Topeka KS 66603<br>Jim Payne<br>785-379-3826<br>Jim.Payne@osbckansas.org<br>https://www.osbckansas.org/contact-us/ |
| **Kansas** | | | | |

If you have a complaint, please contact BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file it by contacting the Office of the State Bank Commissioner.

1. Complete consumer assistance PDF form

English: https://www.osbckansas.org/consumer_files/complaintform.pdf

Spanish: https://www.osbckansas.org/wp-content/uploads/spanish_complaintform.pdf

1. Mail or fax the completed consumer assistance form and attachments to:

Kansas Office of the State Bank Commissioner

Attn: Consumer Affairs

700 SW Jackson St, Suite 300

Topeka, KS 66603

Fax: (785) 371-1229

Email: complaints@osbckansas.org

If submitting electronically, submit your complaint here: https://www.osbckansas.org/consumers/file-a-complaint/.

KS e-Licensing Portal for filing a complaint

KS State Bank Commissioner of Kansas Complaint Portal: https://www.osbckansas.org/consumers/file-a-complaint/.

| Kentucky | SC723443 | Money Transmitter License | Kentucky Department of Financial Institutions | "Kentucky Department of Financial Institutions<br><br>500 Mero Street 2SW19<br><br>Frankfort KY 40601<br><br>Rebecca Arthur<br><br>502-545-2747<br><br>rebeccac.arthur@ky.gov<br><br>kfi@ky.gov" |
|---|---|---|---|---|

| Kentucky |
|---|
| BAM Trading Services Inc. is licensed by the Kentucky Department of Financial Institutions as a money transmitter, but such license does not cover virtual currency (bitcoin) activity |

| Louisiana | N/A | Sale of Checks and Money Transmitters | Louisiana Office of Financial Institutions | "Louisiana Office of Financial Institutions<br><br>8660 United Plaza Blvd 2nd Fl<br><br>Baton Rouge LA 70809<br><br>Michelle Jeansonne<br><br>225-922-2596<br><br>mjeansonne@ofi.la.gov" |
|---|---|---|---|---|

| Louisiana |
|---|
| Please note the license issued to BAM Trading by the Louisiana Office of Financial Institutions does not cover the exchange or transmission of virtual currency. The Nationwide Multistate Licensing System & Registry (NMLS) number is 1906829. |

| Maine | NMT2053153 | Money Transmitter License | Maine Department of Professional and Financial Institutions Bureau of Consumer Credit Protection | Maine Department of Professional and Financial Regulation, Bureau of Consumer Credit Protection<br><br>35 State House Station<br><br>Augusta ME 04333<br><br>Mark E. Susi<br><br>207-624-8534<br><br>Mark.E.Susi@maine.gov |
|---|---|---|---|---|



| State | License # | License Type | Regulator | Contact |
|---|---|---|---|---|
| **Maryland** | 12-1906829 | Money Transmission License | Maryland Department of Labor, Licensing & Regulation | Office of the Commissioner of Financial Regulation Maryland Department of Labor<br><br>1100 North Eutaw Street Ste 611<br><br>Baltimore, MD 21201<br><br>Sabrina Brown<br><br>410-230-6091<br><br>sabrina.brown@maryland.gov |

**Maryland**

The Maryland Department of Labor, Licensing and Regulation does not currently regulate virtual currency (bitcoin) activity as money transmission (or otherwise). If you have a complaint, please contact BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file it by contacting the Maryland Department of Labor.

The Commissioner of Financial Regulation for the State of Maryland will accept all questions or complaints from Maryland residents regarding BAM Trading Services Inc. & License No.: 1906829 and NMLS ID No.: 1906829) by contacting the Commissioner's office at: Maryland Department of Labor, 1100 N. Eutaw Street, Room 611
Baltimore, MD 21201, or (888) 784-0136. Verification of the licensing status and additional information about BAM Trading Services Inc. may be obtained at www.nmlsconsumeraccess.org.

| State | License # | License Type | Regulator | Contact |
|---|---|---|---|---|
| **Michigan** | MT0022936 | Money Transmitter License | Michigan Department of Insurance and Financial Institutions | Michigan Department of Insurance and Financial Services<br><br>Stevens T. Mason Building<br><br>530 W Allegan St 7th Floor<br><br>Lansing, MI 48933-1521<br><br>Arnaud Diomande<br><br>877-999-6442<br><br>diomandea@michigan.gov |
| **Minnesota** | MT-1906829 | Money Transmitter License | Minnesota Department of Commerce and Financial Institutions | Minnesota Department of Commerce 85 7th Place East Ste 280<br><br>St Paul MN 55101-2198<br><br>Mark Hastie<br><br>651-539-1720<br><br>mark.hastie@state.mn.us |

**Minnesota**

Please note the license issued to BAM Trading by the Minnesota Department of Commerce does not currently cover the exchange or transmission of virtual currency.

To make a complaint, please make a call contacting the following:

Minnesota Department of Commerce

85 8th Place East, Suite 208

Saint Paul, MN 55101

(Local) 651-539-1500

(Complaints) 651-539-1600

| State | License # | License Type | Regulator | Contact |
|---|---|---|---|---|
| **Mississippi** | MT1906829 | Money Transmitter License | Mississippi Department of Banking and Consumer Finance | Mississippi Department of Banking and Consumer Finance<br><br>PO Box 12129<br><br>Jackson MS 39236 Rosie Grayer 601-321-6916<br><br>Rosie.grayer@dbcf.ms.gov |

**Mississippi**



The Mississippi Department of Banking & Consumer Finance recommends that you attempt to resolve your complaint with the financial institution first by contacting BAM Trading Services Inc. at 1 (844) 900-1450 or legal@binance.us to allow the opportunity to resolve the issue(s). If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file you complain online at https://dbcf.ms.gov/complaint-form/.

MS e-Licensing Portal for filing a complaint:

MS Banking & Consumer Finance complaint page: https://dbcf.ms.gov/complaint-form/.

| State | License # | License Type | Regulator | Regulator Contact |
|---|---|---|---|---|
| **Missouri** | MT1906829 | Sales of Checks and Money Transmitter | Missouri Division of Finance | Missouri Division of Finance<br>PO Box 716<br>Jefferson City MO 65102<br>Joe Crider<br>573-751-3242<br>Joe.crider@dof.mo.gov |
| **Nebraska** | 1906829 | Money Transmitter License | Nebraska Department of Banking & Finance | Nebraska Department of Banking and Finance<br>1526 K Street Suite 300<br>Lincoln NE 68508-2732<br>Scott Peter<br>402-471-2171<br>Scott.peter@nebraska.gov |
| **Nevada** | MT11161 | Money Transmitter License | Nevada Financial Institutions Division | Nevada Financial Institutions Division<br>3300 W Sahara Ave Ste 250<br>Las Vegas NV 89102<br>Julie Hanevold 702-486-4120<br>FIDMaster@fid.state.nv.us |
| **New Hampshire** | 23528-MT | Money Transmitter License | New Hampshire Banking Department | New Hampshire Banking Department<br>53 Regional Dr Ste 200<br>Concord NH 03301<br>Michael A. Poulios<br>603-271-3561 michael.a.poulios@banking.nh.gov |
| **New Jersey** | L072139 | Money Transmitter License | New Jersey Department of Banking and Insurance | New Jersey Department of Banking & Insurance Office of Consumer Finance, Division of Banking<br>20 West State St. 7th Floor<br>PO Box 040<br>Trenton NJ 08625-0040<br>Howard Wegener<br>609-940-7460<br>howard.wegener@dobi.nj.gov<br>https://www.nj.gov/nj/feedback.html |
| **New Mexico** | N/A | Money Transmitter License | New Mexico Regulation & Licensing Department Financial Institutions Division | New Mexico Financial Institutions Division<br>P O Box 25101<br>Santa Fe NM 87504<br>Juan Trevizo<br>505-476-4519<br>juan.trevizo@state.nm.us |



| | | | | |
|---|---|---|---|---|
| | | | | https://www.rld.nm.gov/help-center/ |
| **North Carolina** | 190690 | Money Transmitter License | North Carolina Commissioner of Banks | North Carolina Office of the Commissioner of Banks<br>4309 Mail Service Center<br>Raleigh NC 27699-4309 Stephanie White 919-733-9662<br>sryals@nccob.gov<br>nccob.nc.gov |
| **North Dakota** | MT103722 | Money Transmitter License | North Dakota Department of Financial Institutions | North Dakota Department of Financial Institutions<br>1200 Memorial Highway<br>Bismarck ND 58504<br>Chris Ludwig<br>701-328-9933<br>cludwig@nd.gov<br>dfi@nd.gov |
| **Ohio** | OHMT199 | Money Transmitter License | Ohio Department of Commerce Division of Financial Institutions | Ohio Division of Financial Institutions<br>77 S High St 21st Fl<br>Columbus OH 43215-6120<br>Craig Kaiser<br>614-644-9517 Craig.Kaiser@com.state.oh.us<br>https://com.ohio.gov/about-us/contact-us |
| **Oklahoma** | OK-DOB-001 | Money Transmitter License | Oklahoma State Banking Department | Oklahoma State Banking Department<br>2900 North Lincoln Boulevard<br>Oklahoma City OK 73105<br>Dudley Gilbert<br>405-522-2830<br>dudley.gilbert@banking.ok.gov<br>https://oklahoma.gov/banking/about/contact.html |
| **Oregon** | 1906829 | Money Transmission License | Oregon Department of Consumer and Business Services Division of Finance and Corporate Securities | Oregon Department of Consumer and Business Services<br>350 Winter St NE Rm 410<br>Salem OR 97301-3881<br>Haven Garber<br>503-983-4656<br>Haven.garber@dcbs.oregon.gov<br>dcbs.info@dcbs.oregon.gov |
| **Pennsylvania** | 80252 | Money Transmitter License | Pennsylvania Department of Banking and Securities | Pennsylvania Department of Banking and Securities<br>17 North Second St 13th Fl<br>Harrisburg PA 17101<br>Ryan Walsh<br>717-214-4768<br>rywalsh@pa.gov<br>https://www.dobs.pa.gov/Consumers/Pages/Contact.aspx |
| **Puerto Rico** | TM-137 | Money Transmitter License | Puerto Rico Office of the Commissioner of Financial Institutions | Puerto Rico Oficina del Comisionado de Instituciones Financieras PO Box 11855<br>Fernandez Juntos Station |



| | | | | Regulation and Licensing Division | San Juan, PR 00910-3855<br><br>Iris Jimenez Baez<br><br>787-723-3131 x2214 irisj@ocif.pr.gov<br><br>edufin@ocif.pr.gov |
|---|---|---|---|---|---|
| **Rhode Island** | 20224384CT | Currency Transmitter License | State of Rhode Island Department of Business Regulation Division of Banking | | |
| **South Carolina** | 1906829 | Money Transmitter License | Office of the Attorney General | | South Carolina Office of the Attorney General<br><br>P O Box 11549<br><br>Columbia SC 29211-1549<br><br>Pamela Kirkland<br><br>803-734-4072<br><br>Pkirkland@scag.gov<br><br>https://www.scag.gov/about-the-office/contact-us/ |
| **South Dakota** | MT.2199 | Money Transmitter License | South Dakota Department of Labor and Regulation Division of Banking | | South Dakota Division of Banking<br><br>1601 N Harrison Ave Ste 1<br><br>Pierre SD 57501<br><br>Paul Giovanetti<br><br>605-773-3008<br><br>DLR.BankingLicensing@state.sd.us |
| **Tennessee** | 1906829 | Money Transmitter License | Tennessee Department of Financial Institutions | | Tennessee Department of Financial Institutions<br><br>Tennessee Tower 26th Floor<br><br>312 Rosa L. Parks Avenue<br><br>Nashville, TN 37243<br><br>Mandy Jones Heady<br><br>615-806-9237<br><br>mandy.jones@tn.gov<br><br>TDFI.Contact@tn.gov |

**Tennessee**

Please note that this license and the required surety bond do not cover the transmission of virtual currency. BAM Trading Services Inc. is licensed by the Tennessee Department of Financial Institutions as a money transmitter. The Tennessee Department of Financial Institutions does not regulate virtual currency.

| | | | | | |
|---|---|---|---|---|---|
| **Utah** | 222 | Money Transmitter License | Utah Department of Financial Institutions | | Utah Department of Financial Institutions P.O. Box 146800 Salt Lake City, Utah 84114-6800<br><br>Paul Cline<br><br>801-538-8842<br><br>pcline@utah.gov<br><br>dfi@utah.gov |

**Utah**

Virtual Currency Disclosure

BAM Trading Services Inc. is licensed by the Utah Department of Financial Institutions as a money transmitter. At this time, the Utah Department of Financial Institutions does not license or regulate services related to virtual currency.

| State | License # | License Type | Regulator | Contact |
|---|---|---|---|---|
| Virginia | MO-403 | Money Order Seller & Money Transmitter License | Virginia State Corporation Commission Bureau of Financial Institutions | Virginia Bureau of Financial Institutions<br>1300 East Main St Ste 800<br>PO Box 640<br>Richmond VA 23218-0640<br>Robert Mednikov<br>804-371-9692<br>robert.mednikov@scc.virginia.gov<br>bfiquestions@scc.virginia.gov |

**Virginia**

Virtual Currency Disclosure

BAM Trading Services Inc. is licensed by the Virginia State Corporation Commission as a money transmitter, but such license does not cover the transmission of virtual currency (Bitcoin).

| State | License # | License Type | Regulator | Contact |
|---|---|---|---|---|
| Washington | 550-MT-125281 | Money Transmitter License | State of Washington – Department of Financial Institutions | Washington Department of Financial Institutions<br>PO Box 41200<br>Olympia WA 98504-1200<br>Adam Johnson<br>360-725-9660<br>ajohnson@dfi.wa.gov<br>dfi@dfi.wa.gov |

**Washington**

Washington Division of Consumer Services

If you have a complaint, please contact BAM Trading Services Inc. (NMLS ID 1906829) at 1 (844) 900-1450, legal@binance.us, or at https://support.binance.us/hc/en-us/requests/new. If you still have an unresolved complaint regarding BAM Trading Services Inc. money transmission activity, you may file it online with the Washington DFI at:

**If filing online:**

File a complaint by filling our online complaint form at: https://dfi.wa.gov/consumers/money-services-complaint.

**If filing via mail:**

Fill out this form and mail to the following:

DEPARTMENT OF FINANCIAL INSTITUTIONS

DIVISION OF CONSUMER SERVICES

P.O. Box 41200, Olympia, Washington 98504-1200

**If filing via fax:**

Fill out this form and fax to the following:

FAX (360) 596-3868

**To contact the Washington Department of Financial Institutions:**

Phone: (360) 902-8703

Toll-free: 1-877-RING DFI (1-877-746-4334)

Email: CSEnforceComplaints@dfi.wa.gov

WA e-Licensing Portal for filing a complaint:

Washington Department of Financial Institutions Complaint Portal: https://dfi.wa.gov/consumers/money-services-complaint

If you have a question or complaints, please contact Customer Support.

Virtual currency licensees—Disclosures.

Prior to initiating a Transaction, you should carefully review the Terms of Use and Schedule of Fees, which include a description of the Services, BAM Trading's liability, and the applicability of Federal Deposit Insurance Corporation protections to any U.S. dollar deposits associated with your Account(s). As described in the Terms of Use, the nature of Digital Assets may lead to an increased risk of fraud or cyberattack, and Transactions in Digital Assets may be irreversible. Accordingly, losses due to fraudulent or accidental Transactions may not be recoverable.

| State | License # | License Type | Regulator | Contact |
|---|---|---|---|---|
| Wyoming | 7292 | Money Transmitter License | Wyoming Department | Wyoming Division of Banking |



|  |  |  | of Audit Division of Banking | Hathaway Bldg, 2nd Fl |
|  |  |  |  | 2300 Capital Ave |
|  |  |  |  | Cheyenne WY 82002 |
|  |  |  |  | Ryan Seals |
|  |  |  |  | 307-777-6601 |
|  |  |  |  | ryan.seals@wyo.gov |
|  |  |  |  | wyomingbankingdivision@wyo.gov |



📎 Arizona Money Transmitter License Update 2023-03-10.pdf
50 KB · Download

📎 Georgia Money Transmitter LicenseCertificate Exp 12-31-2023.pdf
100 KB · Download

📎 Minnesota Money Transmitter License Exp 12-31-2023.pdf
200 KB · Download

📎 Louisiana Money Transmitter Sale of Checks Exp 12-31-2023.PDF
400 KB · Download

📎 Missouri Sale of Checks Law Money Transmitter License Exp 04-15-2024.pdf
400 KB · Download

📎 Nevada Money Transmission License Exp 12-31-2023.PDF
400 KB · Download

📎 New Jersey Money Transmitter License.pdf
300 KB · Download

📎 Guam Foreign Exchange License_exp_8.31.2023.pdf
200 KB · Download

📎 Florida Money Services Business License.pdf
100 KB · Download

Was this article helpful?

[ Yes ]  [ No ]

0 out of 1 found this helpful

Have more questions? Chat with us!

**Recently viewed articles**

List of Unsupported States

List of Supported Assets

We're officially live in Louisiana!

**Related articles**

List of Unsupported States

Binance.US Welcomes You

Binance.US Opens BEP2 Deposits and Withdrawals for BUSD, USDT and ETH

Binance.US Joins the Blockchain Association

Binance.US to Provide XRP Balance Snapshots in Advance of Flare Distribution



© 2023 BAM Trading Services Inc. d.b.a. Binance.US - All rights reserved.

NMLS ID: 1906829

