# EXHIBIT BH-11

https://www.binance.com/agreement.html    Go

200 captures
10 Sep 2017 – 12 Nov 2020

APR    JUN    SEP
◀ 14 ▶
2018  2019  2020   ▾ About this capture

**☰ BINANCE**    ⠿ Marché          Carrières    Service Client    Actualités        Connexion ou S'inscrire    🌐 Fra

# Binance Terms of Use

**[Last revised: 14 June 2019]**

This agreement is between you (referenced herein as "you" or with "your") and Binance. By accessing, using or clicking "I agree" to any of the services made available by Binance or one of its affiliates through the website (https://www.binance.com), the API (https://api.binance.com), our mobile applications, or any other related services provided by Binance or its affiliates as further described in Section 4 below (collectively, the "Services") you agree that you have read, understood and accepted all of the terms and conditions contained in this Terms of Use agreement (the or these "Terms"), as well as our Privacy Policy found at https://www.binance.com/statement.html. Additionally, when using certain features of the Services, you may be subject to additional terms and conditions applicable to such features.

PLEASE READ THESE TERMS CAREFULLY AS THEY GOVERN YOUR USE OF THE SERVICES. THESE TERMS CONTAINS IMPORTANT PROVISIONS INCLUDING AN ARBITRATION PROVISION THAT REQUIRES ALL CLAIMS TO BE RESOLVED BY WAY OF BINDING ARBITRATION. THE TERMS OF THE ARBITRATION PROVISION ARE SET FORTH IN SECTION 14 BELOW ENTITLED "RESOLVING DISPUTES: FORUM, ARBITRATION, CLASS ACTION WAIVER, GOVERNING LAW." AS WITH ANY ASSET, THE VALUE OF DIGITAL CURRENCIES CAN GO UP OR DOWN AND THERE CAN BE A SUBSTANTIAL RISK THAT YOU WILL LOSE MONEY BUYING, SELLING, HOLDING, OR INVESTING IN DIGITAL CURRENCIES. BY USING THE SERVICES YOU ACKNOWLEDGE AND AGREE THAT (1) YOU ARE AWARE OF THE RISKS ASSOCIATED WITH TRANSACTING IN DIGITAL CURRENCIES (2) THAT YOU ASSUME ALL RISKS WITH RESPECT TO YOUR USE OF THE SERVICES AND TRADING IN DIGITAL CURRENCIES AND (3) BINANCE IS NOT RESPONSIBLE OR LIABLE FOR ANY SUCH RISKS OR ADVERSE OUTCOMES.

BY ACCESSING, USING OR ATTEMPTING TO USE THE SERVICES IN ANY CAPACITY, YOU ACKNOWLEDGE THAT YOU ACCEPT AND AGREE TO BE BOUND BY THESE TERMS. IF YOU DO NOT AGREE, DO NOT ACCESS OR USE THE SERVICES.

**1. Agreement Conditions**

Binance reserves the right to modify or change the Terms at any time and at its sole discretion. Binance will provide notice of these changes by updating the revised Terms on the webpage (https://support.binance.com/hc/en-us/articles/115000421672-Terms-of-Use) and changing the "[Last revised: ]" date on this page. Any and all modifications or changes to these Terms will be effective immediately upon being announced on the website or released to users. As such, your continued use of Binance's services acts as acceptance of the amended agreement and rules. If you do not agree to any modification to these Terms, you must stop using the Services. Binance encourages you to frequently review the Terms to ensure you understand the terms and conditions that apply to your access to, and use of, the Services.

**2. Eligibility**

By registering to use a Binance Account (as defined in Section 5 below), you represent and warrant that you (a) are at least 18 years old or of legal age to form a binding contract under applicable law, (b) are an individual, legal person or other organization with full legal capacity and authority to enter into these Terms, (c) have not previously been suspended or removed from using our Services and (d) you do not currently have an existing Binance Account. If you are entering into these Terms on behalf of a legal entity of which you are an employee or agent, you represent and warrant that you have all necessary rights and authority to bind such legal entity.

**3. Prohibition of use**

By accessing and using the Services, you represent and warrant that you are not on any trade or economic sanctions lists, such as the UN Security Council Sanctions list, designated as a "Specially Designated National" by OFAC (Office of Foreign Assets Control of the U.S. Treasury Department) or placed on the U.S. Commerce Department's "Denied Persons List". Binance is unable to provide services to any U.S. person. Binance maintains the right to select its markets and jurisdictions to operate and may restrict or deny the Services in certain countries at its discretion.

**4. Description of services**

Binance provides an online digital asset trading platform (crypto to crypto) for products commonly known as cryptographic tokens, digital tokens or cryptographic currency (collectively, "Digital Currency"). Binance does not provide fiat trading capabilities on as part of the Services. Binance functions as a trading platform provider and not as a buyer or seller in trades made between traders. Binance is also not a market maker. Users must register and open an account with Binance

https://www.binance.com/agreement.html    Go    APR  JUN  SEP    

200 captures
10 Sep 2017 – 12 Nov 2020

14

2018  2019  2020    About this capture

Binance strives to maintain the accuracy of information posted on the Services however it cannot and does not guarantee the accuracy, suitability, reliability, completeness, performance or fitness for any purpose of the content made available through the Services, and will not be liable for any loss or damage that may arise directly or indirectly from your use of such content. Information on the Services can be subjected to change without notice and is provided for the primary purpose of facilitating users to arrive at independent decisions. Binance does not provide investment or advisory advice and will have no liability for the use or interpretation of information as stated on the Services or other communication mediums. All users of the Services must understand that there are risks involved in trading in Digital Currencies. Binance encourages all users to exercise prudence and trade responsibly within their own means.

**5. Binance Account Registration & Requirements**

**a. Registration**

All users of the Services (each, a "User") must register at ( https://www.binance.com/register.html ) for a Binance account (an "Account") before using the Services. To register for an Account, you must provide your real name, email address and password, as well as accept the Terms of Use, Privacy Policy and Consent Form. Binance may, in its sole discretion, refuse to open an account for you. You agree to provide complete and accurate information when opening an Account and agree to promptly update any information you provide to Binance so that such information is complete and accurate at all times. Each registration is for a single user only and each User (including with respect to any User that is a business or legal entity) may only maintain one active Account with Binance.

**b. User Identity Verification**

With registration of an account on Binance, you agree to share personal information requested for the purposes of identity verification. This information is used specifically for the detection of money laundering, terrorist financing, fraud and other financial crimes on the Binance platform. We will collect, use and share this information in accordance with our posted Privacy Policy. In addition to providing this information, to facilitate compliance with global industry standards for data retention, you agree to permit us to keep a record of such information for the lifetime of your account plus 5 years beyond account closing. You also authorise us to make inquiries, either directly or through third parties, that are deemed necessary to verify your identity or to protect you and/or us against financial crimes such as fraud.

The identity verification information we request may include, but is not limited to, your: Name, Email Address, Contact Information, Telephone Number, Username, Government Issued ID, Date of Birth and other information collected at the time of account registration. In providing this required information, you confirm that it is accurate and authentic. Post-registration, you must guarantee that the information is truthful, complete and updated in a timely manner with any changes. If there is any reasonable doubt that any information provided by you is wrong, untruthful, outdated or incomplete, Binance shall have the right to send you a notice to demand corrections, remove relevant information directly and, as the case may be, terminate all or part of the Services to you. You shall be solely and fully responsible for any loss or expenses incurred during the use of Binance Service if you cannot be reached through the contact information provided. You hereby acknowledge and agree that you have the obligation to keep all information provided up to date if there are any changes.

BY SIGNING UP FOR ACCOUNT YOU HEREBY AUTHORIZE BINANCE TO MAKE INQUIRIES, WHETHER DIRECTLY OR THROUGH THIRD PARTIES, THAT BINANCE CONSIDERS NECESSARY TO VERIFY YOUR IDENTITY OR PROTECT YOU AND/OR BINANCE AGAINST FRAUD OR OTHER FINANCIAL CRIMES, AND TO TAKE ACTION BINANCE REASONABLY DEEMS NECESSARY BASED ON THE RESULTS OF SUCH INQUIRIES. YOU ALSO ACKNOWLEDGE AND AGREE THAT YOUR PERSONAL INFORMATION MAY BE DISCLOSED TO CREDIT REFERENCE AND FRAUD PREVENTION OR FINANCIAL CRIME AGENCIES AND THAT THESE AGENCIES MAY RESPOND TO OUR INQUIRIES IN FULL.

**c. Account Usage Requirements**

Accounts can only be used by the person whose name they are registered under. Binance reserves the right to suspend, freeze or cancel accounts that are used by persons other than the persons whose names they are registered under. You shall immediately notify Binance if you suspect or become aware of unauthorized use of your user name and password. Binance will not be liable for any loss or damage arising from any use of your Account by you or by any third party (whether or not authorized by you).

**d. Account Security**

Binance strives to maintain the safety of those user funds entrusted to us and has implemented industry standard protections for the Services. However, there are risks that are created by individual User actions. You agree to consider your access credentials such as user name and password as confidential information and not to disclose such information to any third party. You also agree that you alone are responsible for taking necessary safety precautions to protect your own account and personal information.

You shall be solely responsible for the safekeeping of your Binance account and password on your own, and you shall be responsible for all activities under Account and Binance will not be responsible for any loss or consequences of authorized or unauthorized use of your Account credentials including but not limited to information disclosure, information posting, consent to or submission of various rules and agreements by clicking on the website, online renewal of agreement, etc.

https://www.binance.com/agreement.html                    Go

200 captures
10 Sep 2017 – 12 Nov 2020

APR   JUN   SEP
◄  14  ►
2018  2019  2020

About this capture

(ii) you will strictly observe the security, authentication, dealing, charging, withdrawal mechanism or procedures of the website/service; and

(iii) you will log out from the website by taking proper steps at the end of every visit.

**6. Guidelines for Usage of the Services**

**a. License**

Subject to your continued compliance with the express terms and conditions of these Terms, Binance provides to you a revocable, limited, royalty-free, non-exclusive, non-transferable, and non-sublicensable license to access and use the Services on your computer or other internet compatible device for your personal, internal use only. You are not permitted to use the Services for any resale or commercial use including to place trades on behalf of another person or entity. All such use is expressly prohibited and shall constitute a material violation of these Terms. The content layout, formatting, and features of and access privileges for the Services shall be as specified by Binance in its sole discretion. All rights not expressly granted under these Terms are hereby reserved. Accordingly, you are hereby prohibited from using the Services in any manner that is not expressly and unambiguously authorized by these Terms.

These Terms provide only a limited license to access and use the Services. Accordingly, you hereby agree that Binance transfers no ownership or intellectual property interest or title in and to the Services or any Binance intellectual property to you or anyone else in connection with your use of the Services. All text, graphics, user interfaces, visual interfaces, photographs, sounds, artwork, computer code (including html code), programs, software, products, information, and documentation as well as the design, structure, selection, coordination, expression, "look and feel," and arrangement of any content contained on or available through the Services are exclusively owned, controlled, and/or licensed by Binance or its members, parent(s), licensors, or affiliates.

Binance will own any feedback, suggestions, ideas, or other information or materials regarding Binance or the Services that you provide, whether by email, through the Services or otherwise ("Feedback"). You hereby assign to Binance all right, title and interest to Feedback together with all associated intellectual property rights. You will not be entitled to, and hereby waive any claim for, acknowledgment or compensation based on any Feedback or any modifications made based on any Feedback.

**b. Restrictions**

When you use the Services you agree and covenant to observe the following:

   i. All the activities that you carry out during the use of the Services will be in compliance with the requirements of applicable laws, regulations, as well as the various guidelines of Binance.

   ii. Your use of the Services will not be in violation of public interests, public ethics or other's legitimate interests including taking any action that would interfere with, disrupt, negatively affect, or inhibit other Users from using the Services;

   iii. You agree not to use the services for engaging in market manipulation (such as pump and dump schemes, wash trading, self-trading, front running, quote stuffing, and spoofing or layering regardless of whether prohibited by law);

   iv. The following commercial uses of Binance data is prohibited unless written consent from Binance is granted:
     1) Exchange services that use quotes or order book information from Binance.
     2) Data feed or data stream services that make use of any market data from Binance.
     3) Any other websites/apps/services that charge for, or otherwise commercially monetize (including through advertising or referral fees), market data obtained from Binance.

   v. You may not modify, reproduce, duplicate, copy, download, store, further transmit, disseminate, transfer, disassemble, broadcast, publish, remove or alter any proprietary notices or labels, license, sublicense, sell, mirror, frame, rent, lease, private label, grant a security interest in, create derivative works of, or otherwise exploit the Properties, or any portion of the Properties without Binance's prior written consent.

   vi. You may not (i) use any "deep link," "page scrape," "robot," "spider," or other automatic device, program, script, algorithm, or methodology, or any similar or equivalent manual process, to access, acquire, copy, or monitor any portion of the Properties or in any way reproduce or circumvent the navigational structure or presentation of the Services to obtain or attempt to obtain any materials, documents, or information through any means not purposely made available through the Services, (ii) attempt to gain unauthorized access to any portion or feature of the Properties or any other systems or networks connected to the Services or to any Binance server or to any of the services offered on or through the Services, by hacking, password "mining," or any other illegitimate or prohibited means, (iii) probe, scan, or test the vulnerability of the Services or any network connected to the Properties, nor breach the security or authentication measures on the Services or any network connected to the Services, (iv) reverse look-up, trace, or seek to trace any information on any other user of or visitor to the Services, (v) take any action that imposes an unreasonable or disproportionately large load on the infrastructure of the Services or Binance's systems or networks or any systems or networks connected to the Services, (v) use any device, software, or routine to interfere with the proper working of the Services or any transaction conducted on the Services, or with any other person's use of the Services,

https://www.binance.com/agreement.html    Go    APR **JUN** SEP
200 captures    ◀ **14** ▶
10 Sep 2017 – 12 Nov 2020    2018 **2019** 2020  ▾ About this capture


By accessing the Service, you agree that Binance shall have the right to investigate any violation of these Terms, unilaterally determine whether you have violated these Terms, and take actions to apply relevant rules without receiving your consent or giving prior notice to you. Examples of such actions include, but are not limited to:

- block and close order requests
- freezing your account
- reporting the incident to authorities
- publishing the alleged violations and actions that have been taken
- deleting any information you published that is in violation

**7. Orders and Service Fees**

**a. Orders**

Upon placing an instruction to effect a trade using the Services (an "Order"), your Account will be updated to reflect the open Order and your Order will be included in Binance's order book for matching with Orders from other Users. If all or a portion of your Order is matched with another User, the Services will execute an exchange (a "Trade"). Upon execution of a Trade, your Account will be updated to reflect that the Order has either been closed due to having been fully executed, or updated to reflect any partial fulfillment of the Order. Orders will remain open until fully executed or cancelled in accordance with subsection (b) below. For purposes of effectuating a Trade, you authorize Binance to take temporary control of the Digital Currency that you are disposing of in the Trade.

**b. Cancellations**

You may only cancel an order initiated via the Services if such cancellation occurs before your Order has been matched with an Order from another user. Once your Order has been matched with an Order from another user, you may not change, withdraw, or cancel your authorization for Binance to complete such Order. If any order has been partially matched, you may cancel the unmatched portion of the Order unless and until the unmatched portion has been matched. Binance reserves the right to refuse any cancellation request associated with an Order after you have submitted such Order. If you have an insufficient amount of Digital Currency in your Account to fulfill an Order, Binance may cancel the entire Order or may fulfill a partial Order that can be covered by the Digital Currency in your Account (in each case after deducting any fees payable to Binance in connection with the Trade as described in subsection (c) below).

**c. Fees**

You agree to pay Binance the fees set forth at https://www.binance.com/en/fee/schedule which may be updated from time to time in Binance's sole discretion. Any such updated fees will apply prospectively to any trades or other transactions that take place following the effective date of such updated fees. You authorize Binance to remove any amounts from your Account for any applicable fees owed by you under these Terms.

**8. Liability**

**a. Disclaimer of Warranties**

TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, THE SERVICES, THE BINANCE MATERIALS AND ANY PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BINANCE ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS AND BINANCE EXPRESSLY DISCLAIMS, AND YOU WAIVE, ANY AND ALL OTHER WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT OR WARRANTIES ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE IN TRADE. WITHOUT LIMITING THE FOREGOING, BINANCE DOES NOT REPRESENT OR WARRANT THAT THE SITE, THE SERVICES OR BINANCE MATERIALS ARE ACCURATE, COMPLETE, RELIABLE, CURRENT, ERROR-FREE, OR FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. BINANCE DOES NOT GUARANTEE THAT ANY ORDER WILL BE EXECUTED, ACCEPTED, RECORDED OR REMAIN OPEN. EXCEPT FOR THE EXPRESS STATEMENTS SET FORTH IN THIS AGREEMENT, YOU HEREBY ACKNOWLEDGE AND AGREE THAT YOU HAVE NOT RELIED UPON ANY OTHER STATEMENT OR UNDERSTANDING, WHETHER WRITTEN OR ORAL, WITH RESPECT TO YOUR USE AND ACCESS OF THE SERVICES. WITHOUT LIMITING THE FOREGOING, YOU HEREBY UNDERSTAND AND AGREE THAT BINANCE WILL NOT BE LIABLE FOR ANY LOSSES OR DAMAGES ARISING OUT OF OR RELATING TO: (A) ANY INACCURACY, DEFECT OR OMISSION OF DIGITAL CURRENCY PRICE DATA, (B) ANY ERROR OR DELAY IN THE TRANSMISSION OF SUCH DATA, (C) INTERRUPTION IN ANY SUCH DATA AND (D) ANY DAMAGES INCURRED BY ANOTHER USER'S ACTIONS, OMISSIONS OR VIOLATION OF THIS AGREEMENT.

THE DISCLAIMER OF IMPLIED WARRANTIES CONTAINED HEREIN MAY NOT APPLY IF AND TO THE EXTENT IT IS PROHIBITED BY APPLICABLE LAW OF THE JURISDICTION IN WHICH YOU RESIDE.

**b. Disclaimer of Damages and Limitation of Liability**



(INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF DATA, INFORMATION, REVENUE, PROFITS OR OTHER BUSINESS OR FINANCIAL BENEFIT) ARISING OUT OF OR IN CONNECTION WITH THE SERVICES, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BINANCE AND ITS AFFILIATES, WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY EVEN IF BINANCE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES EXCEPT TO THE EXTENT OF A FINAL JUDICIAL DETERMINATION THAT SUCH DAMAGES WERE A RESULT OF BINANCE'S GROSS NEGLIGENCE, FRAUD, WILLFUL MISCONDUCT OR INTENTIONAL VIOLATION OF LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

NOTWITHSTANDING THE FOREGOING, IN NO EVENT WILL THE LIABILITY OF BINANCE, ITS AFFILIATES AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, AGENTS, REPRESENTATIVES, SUPPLIERS OR CONTRACTORS ARISING OUT OF OR IN CONNECTION THE SERVICES, ANY PERFORMANCE OR NON-PERFORMANCE OF THE SERVICES, OR ANY OTHER PRODUCT, SERVICE OR OTHER ITEM PROVIDED BY OR ON BEHALF OF BINANCE OR ITS AFFILIATES WHETHER UNDER CONTRACT, STATUTE, STRICT LIABILITY OR OTHER THEORY, EXCEED THE AMOUNT OF THE FEES PAID BY YOU TO BINANCE UNDER THIS AGREEMENT IN THE TWELVE-MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM FOR LIABILITY.

**c. Indemnification**

You agree to indemnify and hold harmless Binance, its affiliates, contractors, licensors, and their respective directors, officers, employees and agents from and against any claims, actions, proceedings, investigations, demands, suits, costs, expenses and damages (including attorneys' fees, fines or penalties imposed by any regulatory authority) arising out of or related to (i) your use of, or conduct in connection with, the Services, (ii) your breach or our enforcement of these Terms, or (iii) your violation of any applicable law, regulation, or rights of any third party during your use of the Service. If you are obligated to indemnify Binance, its affiliates, contractors, licensors, and their respective directors, officers, employees or agents pursuant to this clause, Binance will have the right, in its sole discretion, to control any action or proceeding and to determine whether Binance wishes to settle, and if so, on what terms.

**9. Announcements**

Please be aware that all official announcements, news, promotions, competitions and airdrops will be listed on https://support.binance.com/hc/en-us/categories/115000056351-Announcements where we urge all users to refer to regularly. Binance will not be held liable or responsible in any manner of compensation should users incur personal losses arising from ignorance or negligence of the announcements.

**10. Termination of Agreement**

You agree that Binance shall have the right to immediately suspend your account (and any accounts beneficially owned by related entities or affiliates), freeze or lock the funds in all such accounts, and suspend your access to Binance for any reason including if it suspects any such accounts to be in violation of these Terms, our Privacy Policy, or any applicable laws and regulations. You agree that Binance shall not be liable to you for any permanent or temporary modification, suspension or termination of your Account or access to all or any portion of the Services. Binance shall have the right to keep and use the transaction data or other information related to such accounts. The above account controls may also be applied in the following cases:

- The account is subject to a governmental proceeding, criminal investigation or other pending litigation;
- We detect unusual activity in the account;
- We detect unauthorized access to the account;
- We are required to do so by a court order or command by a regulatory/government authority

In case of any of the following events, Binance shall have the right to directly terminate this agreement by cancelling your Account, and shall have the right to permanently freeze (cancel) the authorizations of your account on Binance and withdraw the corresponding Binance Account thereof:

- after Binance terminates services to you;
- you allegedly register or register in any other person's name as Binance user again, directly or indirectly;
- the information that you have provided is untruthful, inaccurate, outdated or incomplete;
- when these Terms are amended, you expressly state and notify Binance of your unwillingness to accept the amended Terms;
- you request that the Services be terminated; and
- any other circumstances where Binance deems it should terminate the services.

Should your Account be terminated, the Account and transactional information required for meeting data retention standards will be securely stored for 5 years. In addition, if a transaction is unfinished during the Account termination process, Binance shall have the right to notify your counterparty of the situation at that time. You acknowledge that a user initiated account exit (right to erasure under GDPR or other equivalent regulations) will also be subjected to the termination protocol stated above.

If Binance receives notice that any funds held in your Account are alleged to have been stolen or otherwise are not lawfully possessed by you, Binance may, but has no obligation to, place an administrative hold on the affected funds and your Account. If Binance does place an administrative hold on some or all of your

https://www.binance.com/agreement.html                                    Go      APR   JUN   SEP

200 captures                                                                           14
10 Sep 2017 – 12 Nov 2020                                                     2018  2019  2020   About this capture

**a. Remaining funds after Account termination**

Except as set forth in subsection (b) below, once the Account is closed/withdrawn, all remaining balance (which includes charges and liabilities owed to Binance) on the account will be payable immediately to Binance. Upon payment of all outstanding charges to Binance (if any), the User will have 5 business days to withdraw all funds from the Account.

**b. Remaining funds after Account termination due to fraud, violation of law, or violation of these terms)**

Binance maintains full custody of the funds and User data/information which may be turned over to governmental authorities in the event of Account suspension/closure arising from fraud investigations, violation of law investigations or violation of these Terms.

**11. No Financial Advice**

Binance is not your broker, intermediary, agent, or advisor and has no fiduciary relationship or obligation to you in connection with any trades or other decisions or activities effected by you using the Services. No communication or information provided to you by Binance is intended as, or shall be considered or construed as, investment advice, financial advice, trading advice, or any other sort of advice. All trades are executed automatically, based on the parameters of your order instructions and in accordance with posted trade execution procedures, and you are solely responsible for determining whether any investment, investment strategy or related transaction is appropriate for you based on your personal investment objectives, financial circumstances and risk tolerance. You should consult your legal or tax professional regarding your specific situation. Binance does not recommend that any Digital Currency should be bought, earned, sold, or held by you. Before making the decision to buy, sell or hold any Digital Currency, you should conduct your own due diligence and consult your financial advisors before making any investment decision. Binance will not be held responsible for the decisions you make to buy, sell, or hold Digital Currency based on the information provided by Binance.

**12. Compliance with Local Laws**

It is the responsibility of the User to abide by local laws in relation to the legal usage of Binance in their local jurisdiction. Users must also factor, to the extent of their local law all aspects of taxation, the withholding, collection, reporting and remittance to their appropriate tax authorities. All Users of Binance and any of its services acknowledge and declare that the source of their funds come from a legitimate manner and are not derived from illegal activities. Binance maintains a stance of cooperation with law enforcement authorities globally and will not hesitate to seize, freeze, terminate the account and funds of Users which are flagged out or investigated by legal mandate.

**13. Privacy Policy**

Access to the Services will require the submission of certain personally identifiable information. Please review Binance's Privacy Policy found at https://www.binance.com/statement.html for a summary of Binance's practices related to the collection and use of personally identifiable information.

**14. RESOLVING DISPUTES: FORUM, ARBITRATION, CLASS ACTION WAIVER, GOVERNING LAW**

PLEASE READ THIS SECTION CAREFULLY, AS IT INVOLVES A WAIVER OF CERTAIN RIGHTS TO BRING LEGAL PROCEEDINGS, INCLUDING AS A CLASS ACTION FOR RESIDENTS OF THE U.S.

**a. Notification of Dispute.** Please contact Binance first! Binance wants to address your concerns without resorting to formal legal proceedings. Before filing a claim, you agree to try to resolve the dispute informally by contacting Binance first through https://support.binance.com/hc/en-us/requests/new.

**b. Agreement to Arbitrate.** You and Binance agree to resolve any claims relating to this Agreement (including any question regarding its existence, validity, termination, or any services or products provided and any representations made by us) through final and binding arbitration, except as set forth under Exceptions to Agreement to Arbitrate below. You agree to first give us an opportunity to resolve any claims by contacting us as set forth in subsection (a) above. If we are not able to resolve your claims within 60 days of receiving the notice, you may seek relief through arbitration or in the Small Claims Tribunals of Singapore ("SCT"), as set forth below.

**c. Arbitration Procedure.** Either you or Binance may submit a dispute (after having made good faith efforts to resolve such dispute in accordance with subsections (a) and (b) above) for final, binding resolution by arbitration under the arbitration rules of the Singapore International Arbitration Centre ("SIAC"), which are deemed to be incorporated by reference. The arbitration tribunal shall consist of a sole arbitrator to be appointed by the President of SIAC. The language of the arbitration hearings shall be English and the seat, or legal place, of arbitration shall be Singapore. **Judgment on any arbitral award may be entered in any court having jurisdiction over the party (or the assets of the party) due and owing such award.**

https://www.binance.com/agreement.html    Go    APR JUN SEP

200 captures    14
10 Sep 2017 – 12 Nov 2020    2018 2019 2020    About this capture

**e. Notice.** To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claims to Binance Europe Services Limited, Melita Court, Level 3, Triq Giuseppe Cali, Ta'Xbiex XBX 1420, Malta. If we request arbitration against you, we will give you notice at the email address or street address you have provided. SIAC Rules and filing instructions are available at http://www.siac.org.sg/our-rules or by calling +65 6713 9777.

**f. Controlling Law.** This Agreement is governed by the law of Singapore except for its conflicts of laws principles, unless otherwise required by a mandatory law of any other jurisdiction.

**15. Miscellaneous**

**a. Independent Parties.** Binance is an independent contractor and not an agent of you in the performance of these Terms. These Terms not to be interpreted as evidence of an association, joint venture, partnership, or franchise between the parties.

**b. Entire Agreement.** These Terms constitute the entire agreement between the parties regarding use of the Services and will supersede all prior agreements between the parties whether, written or oral. No usage of trade or other regular practice or method of dealing between the parties will be used to modify, interpret, supplement, or alter the terms of these Terms.

**c. Force Majeure.** Binance will not be liable for any delay or failure to perform as required by these Terms because of any cause or condition beyond Binance's reasonable control.

**d. Severability.** If any portion of these Terms are held invalid or unenforceable, such invalidity or enforceability will not affect the other provisions of these Terms, which will remain in full force and effect, and the invalid or unenforceable portion will be given effect to the greatest extent possible.

**e. Assignment.** You may not assign or transfer any right to use the Services or any of your rights or obligations under these Terms without prior written consent from us, including by operation of law or in connection with any change of control. Binance may assign or transfer any or all of its rights or obligations under these Terms, in whole or in part, without notice or obtaining your consent or approval.

**f. Waiver.** The failure of a party to require performance of any provision will not affect that party's right to require performance at any time thereafter, nor will a waiver of any breach or default of these Terms or any provision of these Terms constitute a waiver of any subsequent breach or default or a waiver of the provision itself.

**g. Third-Party Website Disclaimer.** Any links to third-party websites from the Services does not imply endorsement by Binance of any products, services or information presented therein, nor does Binance guarantee the accuracy of the information contained on them. In addition, since Binance has no control over the terms of use or privacy practices of third-party websites, you should read and understand those policies carefully.

**h. Contact Information.** For more information on Binance, you can refer to the company and license information found on the website. If you have questions regarding this agreement, please feel free to contact Binance for clarification via our Customer Support team at https://support.binance.com/hc/en-us/requests/new.

A propos    Conditions    Vie privée    Frais    Contact    API    Apply to List    Télécharger    BNB    Blog

© 2017 - 2020 Binance.com. All rights reserved

# EXHIBIT BH-12



☰

BINANCE.US  >  Announcements  >  New Listings

🔍 Search

**Articles in this section** ⌄

# Binance.US Opens Trading For BTC, ETH, XRP, BCH, LTC, BNB and USDT



Binance.US
1 month ago · Updated

Binance.US is open for trading as of September 24, 2019 9:00am EST / 6:00am PST for the following trading pairs:

**USD Pairs:** BTC/USD, ETH/USD, XRP/USD, BCH/USD, LTC/USD, BNB/USD and USDT/USD.

**USDT Pairs:** BTC/USDT, ETH/USDT, XRP/USDT, BCH/USDT, LTC/USDT and BNB/USDT.

Binance.US will offer zero (0) fees until November 1, 2019. Create an account on Binance.US and start trading today!

In addition, each new account that completes Fiat Verification will receive a $15 sign-up and referral bonus once they reach $100 in trading volume (buy and/or sell, any trading pairs). You can also receive an additional $15 for every new sign-up you refer to Binance.US.

"Binance.US is tailor-made for Americans at every step of its development. We are thrilled to establish Binance.US as a distinctive marketplace with roots in America, as we aim to educate and foster the American community to adopt crypto with purpose," said Catherine Coley, CEO of Binance.US.

"In our partnership with Binance, we will together work to increase the freedom of money worldwide while bringing their unmatched trading technology platform to the U.S. and supporting the expansion of a globally recognized brand in a key market. We look forward to providing more security and accessibility to digital currencies and the blockchain projects behind them for the American Binance community."

The Binance.US marketplace licenses cutting-edge trading and wallet technology from Binance, while existing as an independent entity with unique features and functions. As Binance.US grows, it will serve as an innovative, affordable and approachable venue for users to buy, sell and hold digital assets within the U.S., including an easy-to-use fiat on-ramp.

*Risk warning: Buying, selling, and holding cryptocurrencies are activities that are subject to high market risk. The volatile and unpredictable nature of the price of cryptocurrencies may result in significant loss. Binance.US is not responsible for any loss that you may incur from price fluctuations when you buy, sell, or hold cryptocurrencies.*

Thanks for your support!
Binance.US Team
09/24/2019


**Find us on:**
Community Telegram: https://t.me/Binance_USA
Twitter: https://twitter.com/BinanceAmerica
Facebook: https://www.facebook.com/BinanceUS
LinkedIn: https://www.linkedin.com/company/binance-us

 

---

Was this article helpful?

 

0 out of 0 found this helpful

---

Have more questions? Submit a request

---

Return to top ⬆

---

## Related articles

Binance.US Will Add BTC Quote Pairs

Binance.US Opens Deposits for ADA, BAT, ETC, XLM and ZRX

Going through Fiat Account Verification

Binance.US Trading Begins in 24 Hours For BTC, ETH, XRP, BCH, LTC, BNB and USDT

What are the supported States & Jurisdictions

---

## Comments

0 comments

---

Article is closed for comments.

---

BINANCE.US

Powered by Zendesk

# EXHIBIT BH-13

## *Intentionally Omitted*

# EXHIBIT BH-14



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

May 30, 2023

**VIA EMAIL**

Richard Grime, Esq., Gibson, Dunn & Crutcher, LLP

Re:   *In the Matter of Binance.US (HO-13865)*

Dear Counsel:

We write regarding Binance Holdings Limited's ("Binance Holdings") custody and control of fiat currency and crypto assets that are deposited, held, traded, or accrued by customers on the Binance.US trading platform ("Binance.US Platform") or are otherwise held for the benefit of BAM Trading Services, Inc. ("BAM Trading") customers (hereinafter referred to as "customer fiat currency" or "customer crypto assets" and, collectively, "customer assets").

Prior communications with you and counsel for BAM Trading and BAM Management US Holdings, Inc. ("BAM Management," and, together with BAM Trading, "BAM"), including the enclosed May 26, 2023 letter from counsel for BAM ("Letter"), raise significant questions and concerns about, *inter alia*, the safety of customer assets and the unencumbered availability of funds at BAM Trading. Given our continuing questions as to the custody and control of customer assets, the large amount of customer assets at issue, their apparent control by Binance Holdings and other entities and individuals who explicitly view themselves as not subject to the jurisdiction of the United States, we ask that you produce a witness to testify under oath as to these factual matters by no later than June 1, 2023 at 10:00 a.m. EST, including specifically the factual matters set forth in Attachment A. The requests for information set forth in Attachment A are identical to those submitted to counsel for BAM. We believe Binance Holdings has information relevant to these issues within its possession, custody, and control, in addition to information, more broadly, about custody and control of customer assets that have been the subject of prior communications.

As you know, since at least February 2023, we have had multiple communications with you concerning the custody and control of BAM customer assets by Binance Holdings Limited ("Binance Holdings") and/or its ultimate beneficial owner, Changpeng Zhao ("Zhao"). A number of the questions we have raised repeatedly to you and counsel for BAM remain unanswered, particularly those relating to Binance Holdings' or Zhao's custody or control of customer fiat currency and customer crypto assets. Accordingly, we remain concerned about the custody and control of customer assets and whether they are secure, segregated, unencumbered, and will remain available to them, including available for immediate withdrawal. Because the back and forth on these issues has not fully answered the Commission Staff's questions in this regard, we seek the

May 30, 2023
Attachment A

testimony of an individual with knowledge about these matters in an attempt to reach finality as to these issues.

Please also provide the relevant documentation or produce the relevant witness to testify as to (1) policies, procedures, and agreements, formal or informal, that govern or relate to the possession or exercise of control and authority over keys or key shards for BAM customer crypto assets, the exercise of shard authorization, and any liability for misuse or faithless transactions, and (2) written policies, procedures, and controls relating to segregation of customer fiat currency and customer crypto assets, the crypto asset ledger accounting, and verification of customer crypto assets.

Finally, please note that the questions set forth herein do not necessarily represent all of the Staff's questions and concerns. In the interest of time and given the urgency of our requests, we are limiting our requests to information necessary to ensure the safety of BAM customer assets. We reserve all rights, including up to and including seeking emergency relief from a court of competent jurisdiction.

We appreciate your immediate and prompt attention to this urgent matter. Feel free to contact us with any questions or concerns.

Respectfully,

/s/ Jennifer Farer
Senior Trial Counsel
Division of Enforcement

Enclsoure

cc:    William R. McLucas, Esq., Wilmer Cutler Pickering Hale and Dorr LLP
        Douglas Yatter, Esq., Latham & Watkins LLP

2

May 30, 2023
Attachment A

## ATTACHMENT A

## REQUESTS FOR INFORMATION

A.     **FIAT**

1.  We calculate $350,567,770 when we total the values of accounts holding customer funds set forth in BTS00833830.  But your Letter states, as of May 24, 2023, BAM Trading held custody of $377,908,434 customer fiat.

    a.  Explain the $27 million discrepancy between these two amounts.

    b.  Identify the account(s) in which the additional funds are held, the individuals who have any control over these funds, and the individuals with any authority to transfer and/or withdraw funds.

    c.  Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, or any Zhao-owned or –controlled entity has authority, formally or informally, directly or indirectly, to control, transfer, or withdraw these funds

2.  List the institutions and account information to which the $9,830,818.40 of customer funds that are currently held at Prime Trust are to be transferred, as referenced in your Letter.

    a.  Explain why these assets are being transferred.

    b.  Explain who will have control over those funds and/or authority to transfer or withdraw funds from the account(s).

    c.  Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, any Zhao-owned or –controlled entity has or will have authority, formally or informally, directly or indirectly, to control, transfer, or withdraw these funds.

    d.  Confirm those funds will be segregated, unencumbered, and subject to immediate withdrawal by customers.

3.  What is the role of the "payment processors" Nuvei, Orum, and BitGO referenced in response to Request 5?

    a.  Explain all agreements governing the relationships with these entities, including those that explain why they have accounts holding BAM customer fiat and the terms governing their custody or control of BAM customer fiat.

May 30, 2023
Attachment A

      b.  Describe BAM Trading's, BAM Management's, Binance Holdings', and Zhao's access to and control over these accounts and customer funds held in these accounts, either directly or indirectly.

4.  Provide account information for those accounts at Cross River Bank, Customers Bank, Fresno First Bank, and Silicon Valley Bank referenced in BTS00833830 that are holding customer fiat currency, including account number, account holder, identity of signatory and/or anyone with control and/or authority to transfer or withdraw funds, and all terms relating to the authorization to transfer or withdraw funds.

5.  What is B.US Securities and its role for Binance.US or Binance.com trading or other services provided to customers?

      a.  Does the B.US Securities account hold any BAM customer assets?

      b.  Identify the company(ies) with whom Sara Andres and David Martin have any employment or other agreement and their respective roles with those company(ies).

      c.  Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, BAM Trading, BAM Management, or any Zhao-owned or controlled entity has authority to control, transfer, or withdraw assets from B.US Securities accounts.

6.  Explain why Paxos Trust Company transferred $183M to BAM Trading in January 2023.

7.  Provide account information for all accounts holding any funds identified in the "Restricted Cash" section of the Financial Statements and Independent Auditor's Report ("FGMK Report") at BTS00833810.

**B.    <u>CRYPTO ASSETS</u>**

8.  Provide documentation as to and otherwise explain the referenced December 2022 termination of the Wallet Custody agreement.

9.  Provide customer deposit wallet addresses for Zhao and any Binance or BAM-affiliated entity, including, but not limited to, Merit Peak, and Sigma Chain.

10. Explain what it means to be "associated with BHL" in your Letter's response to Request 4 & 7, stating, "The AWS account holding these wallets is associated with BHL."

11. Provide the name, contact information, employment history, and any agreement with Zhao, BAM Trading, BAM Management, Binance Holdings, or any Zhao-owned or – controlled entity for all individuals who have possession and/or any access, authority, or control over BAM Trading and BAM Management accounts, crypto asset wallets, and/or any customer fiat or customer crypto assets. This response should include the date when

May 30, 2023
Attachment A

any key or key shard holder who was a former Binance Holdings employee ended employment with Binance Holdings and started employment with BAM Trading or BAM Management.

12. Explain the policies or procedures, formal or informal, that govern or relate to the control of key shards for BAM customer assets, including but not limited policies for contingencies in the event any key or key shard is lost or stolen.

13. Explain the insurance or other protections in place if a key or key shard holder violates his or her duties or responsibilities with respect to customer crypto assets.

14. Identify all communication channels associated with all wallets governed a TSS protocol.

15. Identify all preapproved wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred and whether any of these wallets are held or controlled by Binance Holdings, Zhao, or any Zhao-owned or affiliated entity, or any other individual.

16. Provide records of all votes or authorization by shard holders for white listing, approving, or decommissioning wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred.

17. Define "staking operation" on page 4 of your Letter for which two key shards are required to authorize, including whether two shards can authorize transfers or withdrawals from staking wallets.

18. For all unstaked assets:

    a. Identify the Amazon Web Services account holder(s) for BAM unstaked crypto assets.

    b. Identify all key shard holders, both past and present.

    c. Identify all key shard holder keys, addresses, and attribution for each key shard.

    d. Identify how the key shards are held.

    e. Explain why Binance Holdings holds key shards for purposes of "disaster recovery."

    f. Identify any agreement and/or relationship between each key shard holder and Binance Holdings, Zhao, or any Zhao-owned or controlled entity.

    g. Identify all threshold consensus or approval requirements, whether formal or informal, direct or indirect.  For example, you have stated that 4 out of 7 shards are required to approve transfers from the cold wallet, but we want to know

whether there are other requirements to authorize a transfer (including informal requirements), such as a Binance Holdings shard holder must be one of the 4, a Binance Holdings shard holder must sign first to indicate approval of a transfer, or Zhao or any individual with an agreement or other relationships with Binance Holdings, Zhao, or Zhao-owned or –controlled entity directs (or can direct) shard holders to transfer assets.

h.  Provide records of all key shard holder authorizations for transfers of crypto assets made in the last two years, including, but not limited to, the time windows when requests for authorization are made.

i.  Confirm no individual holds multiple key shards.

19. For the wallet addresses you provided with your recent submission, identify all assets held in each wallet and the volume and value of each asset held in each wallet.

20. Identify all wallet addresses that were shared, co-hosted, or used to transfer assets between Binance Holdings, BAM Trading, BAM Management, Zhao, and any Zhao or Binance-affiliated individual or entity, including Merit Peak and Sigma Chain. The response to this request should include external wallets that are not accounts on either trading platform, deposit addresses, and transfers directly between storage wallets.

21. Explain why wallet 0xf60c2Ea62EDBfE808163751DD0d8693DCb30019c has direct transactions with Binance.com wallets.

22. Explain why almost all of the BUSD transferred to wallet 0xf60c2Ea62EDBfE808163751DD0d8693DCb30019c from the wallet you provided 0x34ea4138580435b5a521e460035edb19df1938c1, in early 2023.

## C.  **GENERAL**

23. Identify the number of BAM Trading or BAM Management employees located outside of the United States and the city and country where they are located, including those BAM employees located in Singapore.

24. Identify the names, job titles, and time period of employment for all BAM Trading or BAM Management employees who were formally Binance Holdings employees.

25. The FGMK Report indicates BAM Trading's lease expires at the end of May 2023. *See* BTS00833819. Provide information on BAM's place(s) of business from the date of lease termination.

26. Explain why certain fiat and crypto assets are identified as "off-balance" in the FGMK Report. *See* BTS00833817-18.

# EXHIBIT BH-15

**GIBSON DUNN**                                    **LATHAM&WATKINS**LLP

CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED

June 4, 2023

VIA ELECTRONIC MAIL

Jorge Tenreiro
Jennifer Farer
U.S. Securities and Exchange Commission
Division of Enforcement
100 F Street NE
Washington, DC 20549

Re:      *In the Matter of Binance.US*, HO-13865

Dear Mr. Tenreiro and Ms. Farer:

We write on behalf of our clients, Binance Holdings Limited ("BHL") and Changpeng Zhao,
to memorialize our discussions regarding the Staff's recently alleged concerns regarding the
safety of customer assets on the Binance.US platform.  The purported concerns provide no
basis for the Commission to seek a temporary restraining order or preliminary injunction in
this matter against the Binance.US platform, let alone BHL or Mr. Zhao.  Further, the Staff's
continued pursuit of emergency relief will likely achieve the harm it claims to fear—disruption
for users whose assets rest on the Binance.US platform.

Let us be clear from the outset: you have provided no evidence that Binance.US user assets
are unsafe.  Both of the entities that operate the Binance.US platform—BAM Management
Holdings US, Inc., and BAM Trading Services, Inc. ("BAM Trading" and, with BAM
Management Holdings US, Inc., "BAM")—have submitted evidence and multiple letters to
the Staff in recent days on the continued safety of these assets, and even offered to sign a
proposed stipulation and consent order to address the Staff's alleged concerns.  Moreover, the
Staff has admitted recently that BAM assets are currently safe.

**Background**

BHL and Mr. Zhao have been engaging with the Staff on this matter (HO-13865, the
"Binance.US Investigation") since the Staff issued Wells Notices to them out of the blue in
late February 2023.  In that time, the Staff posed numerous questions, all of which BHL
endeavored to answer.  ***Until five days ago***, however, the Staff never expressed concern to
BHL or Mr. Zhao that user assets on the Binance.US platform might not be safe.  That

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 2

concern—expressed for the first time in a letter to BHL on May 30, 2023—is not supported by the record and is belied by the Staff's interactions with BHL to date.

Prior to February 21, 2023, BHL had contact with the Staff in connection with the Binance.US Investigation in only two limited instances, neither of which involved the Staff expressing concerns about the safety or security of customer assets. First, in November 2021, BHL produced to the Staff certain mobile data for a BHL employee related to the employee's service as a director of a BAM-related entity. Second, in late 2021 and early 2022, BHL worked cooperatively with the Staff to address a potential issue relating to legal privileges held by BHL that might need to be asserted in the testimony of a BAM employee. BHL's last contact with the Staff related to either of the above topics was on or about January 13, 2022.

On February 21, 2023, despite having not engaged at all with BHL for over a year, the Binance.US Investigation Staff issued a Wells Notice to BHL without any prior warning. The Wells Notice articulated no concern that the safety and availability of user assets on Binance.US might be at risk. The Wells Notice gave BHL a mere 13 business days to respond, despite the fact that no related investigation of BHL had ever occurred and BHL had no factual record on which to respond. After BHL requested a modest extension of three weeks, the Staff responded by granting only three additional business days. BHL submitted a Wells response on March 15, 2023.

Similarly, on February 23, 2023, the Staff issued a Wells notice to Mr. Zhao, also without any prior warning or engagement. The Staff informed Mr. Zhao that it had concluded preliminarily to recommend a Commission proceeding against Mr. Zhao for control person liability under Section 20(a) of the Exchange Act arising out of BAM's alleged operation of Binance.US as an unregistered securities exchange. And, similar to BHL, the Staff did not state any concern that the safety and availability of Binance.US user assets might be at risk. The Wells Notice provided Mr. Zhao only two and a half weeks to respond, despite the lack of any existing factual record. When Mr. Zhao requested an extension, the Staff provided a mere four additional days. Mr. Zhao submitted a Wells response on March 17, 2023.

On March 23, 2023, the Staff followed up on BHL's Wells submission with a call in which it posed over 50 questions about BHL's involvement in the Binance.US platform. Again, at no time did the Staff suggest that it was concerned about the safety of customer assets. The Staff initially gave BHL only six business days to respond, before extending the deadline another ten business days, to April 14, 2023.

On April 14, 2023, BHL provided answers to the questions the Staff raised on March 23. These answers were met with a new round of 23 questions, but the Staff again did not articulate any concern that customer assets were at risk. As communications between the parties continued

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 3

into May, the Staff still never expressed concerns to BHL that there might be any risk to the safety of user assets on the Binance.US platform.

The Staff's position shifted on May 30, 2023, when the Staff—for the first time—suggested in a letter (the "May 30 Letter") that it had unspecified and unsupported "significant questions and concerns" about "the safety of customer assets and the unencumbered availability of funds at BAM Trading." No factual basis was provided for these concerns, other than baseless speculation about Mr. Zhao residing outside of the country.[1] The May 30 Letter included an appendix of 26 questions (several with additional subparts) and asked BHL to produce a witness to testify to the factual questions by June 1, 2023—a mere **two days'** time. The Staff sent an identical list of questions to BAM the same day. In a discussion among BHL, BAM, and the Staff on May 31, 2023, BAM and BHL made clear to the Staff that BAM would provide the requested information, with BHL supplementing those responses if needed. BAM followed up with written responses to many of the Staff's questions in the early morning hours of June 1, 2023, and sent a further response the following day. The Staff has not substantively engaged with BAM or BHL regarding the information provided, or provided BAM or BHL any further substantiation supporting the Staff's purported concerns relating to the safety of customer assets.

In the meantime, before even receiving BAM's remaining responses to its questions, the Staff requested a further discussion with BAM and BHL on June 2. During this discussion, the Staff demanded that BAM, BHL, and Mr. Zhao agree to stipulate to a preliminary injunction. The Staff also informed BAM, BHL, and Mr. Zhao that it intended to file suit against all three in the coming week alleging broad theories of liability.

On the evening of Friday, June 2, the Staff sent BAM, BHL, and Mr. Zhao a proposed Stipulation and Consent Order for Preliminary Injunction ("Stipulation"). The Staff required an executed Stipulation by 5:00 pm on Saturday, June 3; otherwise, the Staff would "seek all available preliminary relief before the court as necessary." The Stipulation would require BAM, BHL, and Mr. Zhao to take certain steps regarding the location and movement of Binance.US user assets—steps that, as discussed below, are not necessary to safeguard user assets, and in fact would create further risk to user assets. Notably, the Stipulation also would require BHL and Mr. Zhao to submit in advance to personal jurisdiction in the Commission enforcement action to be filed along with the Stipulation, thereby conveniently allowing the

---

[1]    Six days earlier, on May 24, 2023, the Staff held a call with BHL concerning a news article that made allegations about financial practices at BHL. The Staff did not express at that time any specific concerns about customer assets on the Binance.US or Binance.com platform, and suggested that assurance from both BAM and BHL about the safety of their respective user assets would suffice—a far cry from what it started demanding six days later.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 4

Commission to clear, in advance, one of its significant legal hurdles to bringing a successful enforcement action in this matter.  The Stipulation further contained broad, sweeping provisions (i) prohibiting any "dispos[al] of" any of BHL's or Mr. Zhao's "property" of any kind with no limitations or relevance to the Staff's purported concerns, (ii) requiring an accounting of all Binance.US user assets within five days, and (iii) providing only the Commission (not BHL or Mr. Zhao) with expedited and largely unlimited document and testimonial discovery on only a few days' notice while waiving standard protections afforded under the Federal Rules of Civil Procedure.

As discussed below, BAM, BHL, and Mr. Zhao responded to the Stipulation on Saturday, June 3 in a call with the Staff, with a proposal to further address the Staff's key expressed concern regarding Binance.US user assets (beyond all of the security measures already in place).  The Staff rejected that proposal without articulating why the proposal did not address the Staff's concerns for customer assets or explaining why the other broad sweeping provisions of the Stipulation were necessary.

**There Are No Grounds for the Proposed Stipulation or Any Emergency Remedy**

Given the lack of any evidence of threats to the safety of Binance.US user assets and the assurances provided so far, the Staff's proposed Stipulation is unnecessary.  Moreover, the Staff has made no showing to support all the extraordinary relief demanded in the Stipulation, such as document preservation, expedited discovery, and an accounting of assets.[2]

Finally, the suggestion that BHL and Mr. Zhao being outside the United States is a reason now for emergency relief lacks any basis.  Both parties have been outside the United States throughout the Staff's investigation.  The Staff has provided no basis for its conclusion that this somehow puts customer assets at risk.  There simply is not an emergency requiring the drastic remedy of a preliminary injunction.  Rather, BAM has provided sufficient assurances that customer assets are secure, and the jurisdictional questions presented in this matter should be appropriately litigated in the normal course.

---

[2]     With respect to Section III ("Preservation of Documents and Information"), BHL and Mr. Zhao will continue to preserve relevant documents in this matter, despite the fact that, with respect to the Biannce.US Investigation, neither of them ever received a document request or subpoena in the first place, other than the Staff requesting from BHL the mobile data of a BAM director who was also a BHL employee.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 5

**The Commission's Threatened Action Is Pretextual and Could Cause Disruption for Users**

To reiterate, BAM exercises control over the movement of user assets onto and off of the Binance.US platform, as well as between wallets on that platform.  To the extent that BHL or its personnel play any role in those processes, it is as a limited-scope service provider.  Further, there is no evidence—and we do not understand the Staff to suggest there is any evidence—that the security of those assets is at risk.  Indeed, the Staff acknowledged on the June 3 call **that BAM customer assets are safe today**.

Yet, without any actual evidence of misuse or mishandling of consumer assets, and without any apparent emergency, the Commission apparently intends to seek court action that could disrupt the crypto markets by making baseless accusations of non-existent problems for no good purpose.

It is plainly evident that any emergency Commission action against BHL, BAM, and Mr. Zhao would be pretextual.  Based on explicit statements made to counsel by the Staff, the Commission appears to be concerned that it failed to prevent the failure of FTX, and after being chastised by the public and Congress, the Commission appears determined to avoid any perception of a failure to take some kind of public action, even if it is unjustified and even if it will create problems where there are none and generate disruption for Binance.US users.  The planned emergency actions are factually unnecessary, legally inappropriate, and financially dangerous.

**The Staff's Refusal to Acknowledge Chairman Gensler's Conflict of Interest**

Finally, we again raise our concerns—which the Staff has never addressed or even acknowledged—regarding Chairman Gensler's personal history with BHL and Mr. Zhao.  As noted in Mr. Zhao's February 27, 2023 Wells submission, now-Chairman Gensler had several discussions with Mr. Zhao and other BHL personnel shortly before the Chairman's return to government service.  In those conversations, Mr. Gensler acknowledged the regulatory uncertainty surrounding cryptocurrency and offered to serve as an advisor to BHL.  In March 2019, he also met Mr. Zhao for an in-person lunch meeting in Japan, during which they discussed the BNB token, the prospect of BHL establishing a U.S.-based exchange, and other topics.  Mr. Zhao and Mr. Gensler remained in touch after that meeting, and Mr. Zhao understood that the now-Chairman was comfortable serving as an informal advisor.  At Mr. Gensler's request, Mr. Zhao was interviewed for Mr. Gensler's cryptocurrency course at the Massachusetts Institute of Technology, and later in 2019, when Mr. Gensler was asked to appear before the House Financial Services Committee to testify on cryptocurrency matters, he sent Mr. Zhao his intended testimony a day before the scheduled hearing.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 6

As we conveyed nearly four months ago, Mr. Gensler should have been recused from any consideration in this matter based on this history and the prospect that Mr. Gensler may be a material fact witness.[3]  To date, the Staff has never confirmed whether Mr. Gensler has recused himself, and if he has not, the Commission's explanation for why not.  We remain deeply troubled by this history and the Staff's refusal to acknowledge it, which compounds our concern about the course of action threatened by the Staff in this matter.

                              *      *      *

This letter contains confidential business information of BHL and Mr. Zhao (the "Parties").  On behalf of the Parties, we request that this letter, and all other information or documents that may be supplied by the Parties to the SEC, be accorded confidential treatment under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b).

The Parties request, under 17 C.F.R. § 200.83, that the SEC afford confidential treatment to, and not disclose, this transmission—as well as any other such information or documents that may be provided to the SEC in the future by the Parties—in response to any request under FOIA.  The transmission referenced above contains confidential business information belonging to the Parties.  A copy of this written request for confidential treatment will be mailed to the SEC Office of Freedom of Information and Privacy Act Operations at 100 F Street NE, Washington, DC 20549.  Should the SEC receive a request under FOIA for disclosure of the information to which this request for confidential treatment relates, the Parties request immediate notification of the undersigned by telephone or electronic mail, so that we may provide any additional information necessary regarding this request for confidential treatment.

We request that the SEC use this letter only in furtherance of this investigation and not use it for unrelated purposes without first consulting with, and obtaining the prior written consent of, the Parties.  The Parties also request that, upon completion of your investigation into this

---

[3]   Shortly after Mr. Zhao's February 27, 2023 Wells submission, the Wall Street Journal reported on some of these prior interactions with BHL employees by Mr. Gensler.  The odd timing of this story strongly suggests that the Commission itself leaked this information because of the arguments Mr. Zhao had raised in his submission.

Jorge Tenreiro
Jennifer Farer
June 4, 2023
Page 7

matter, all documents produced by the Parties promptly be returned and that no copies be retained.

\*　　\*　　\*

GIBSON, DUNN & CRUTCHER LLP　　　LATHAM & WATKINS LLP


___/s/ Stephanie L. Brooker_____　　　_____/s/ William Baker_____

Stephanie L. Brooker　　　　　　William Baker
M. Kendall Day　　　　　　　　Benjamin Naftalis
Richard W. Grime　　　　　　　Douglas K. Yatter

*Counsel for Binance Holdings Limited*　　　*Counsel for Changpeng Zhao*

# EXHIBIT BH-16



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

May 30, 2023

**VIA EMAIL**

William R. McLucas, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP

Re:     *In the Matter of Binance.US (HO-13865)*

Dear Counsel:

We write to follow up on our prior communications and your May 26, 2023 letter ("Letter") regarding fiat currency and crypto assets that are deposited, held, traded, or accrued by customers on the Binance.US trading platform ("Binance.US Platform") or are otherwise held for the benefit of BAM Trading Services, Inc. ("BAM Trading") customers (hereinafter referred to as "customer fiat currency" or "customer crypto assets" and, collectively, "customer assets").

Your Letter and prior communications raise significant questions and concerns about, *inter alia*, the safety of customer assets and the unencumbered availability of funds at BAM Trading. Given our continuing questions as to the custody and control of customer assets, the large amount of customer assets at issue, their apparent control by entities and individuals who explicitly view themselves as not subject to the jurisdiction of the United States, we ask that you produce a witness to testify under oath as to these factual matters by no later than June 1, 2023 at 10:00 a.m. EST, including specifically the factual matters set forth in Attachment A.

As you know, since at least December 2022, we have been engaged with you and other counsel for BAM Trading and BAM Management US Holdings, Inc. ("BAM Management" and, together with BAM Trading, "BAM") concerning the custody and control of BAM customer assets by Binance Holdings Limited ("Binance Holdings") and/or its ultimate beneficial owner, Changpeng Zhao ("Zhao"). A number of the questions we have raised repeatedly to you and counsel for Binance Holdings remain unanswered, particularly those relating to Binance Holdings' or Zhao's custody or control of customer fiat currency and customer crypto assets. Accordingly, we remain concerned about the custody and control of customer assets and whether they are secure, segregated, unencumbered, and will remain available to them, including available for immediate withdrawal. Because the back and forth on these issues has not fully answered the Commission Staff's questions in this regard, we seek the testimony of an individual with knowledge about these matters in an attempt to reach finality as to these issues.

May 30, 2023

    Please also provide the relevant documentation or produce the relevant witness to testify as to (1) policies, procedures, and agreements, formal or informal, that govern or relate to the possession or exercise of control and authority over keys or key shards for BAM customer crypto assets, the exercise of shard authorization, and any liability for misuse or faithless transactions, and (2) written policies, procedures, and controls relating to segregation of customer fiat currency and customer crypto assets, the crypto asset ledger accounting, and verification of customer crypto assets.

    Finally, please note that the questions set forth herein do not necessarily represent all of the questions and concerns raised by your Letter.  In particular, your Letter raises a number of questions and concerns about the staked crypto assets.  In the interest of time and given the urgency of our requests, we are limiting our requests to information necessary to ensure the safety of BAM customer assets.  We reserve all rights, including up to and including seeking emergency relief from a court of competent jurisdiction.

    We appreciate your immediate and prompt attention to this urgent matter.  Feel free to contact us with any questions or concerns.


                                        Respectfully,


                                        /s/ Jennifer Farer
                                        Senior Trial Counsel
                                        Division of Enforcement


cc:    Richard Grime, Esq., Gibson, Dunn & Crutcher, LLP
       Douglas Yatter, Esq., Latham & Watkins LLP

2

## ATTACHMENT A

## REQUESTS FOR INFORMATION

**A.**   **FIAT**

1.  We calculate $350,567,770 when we total the values of accounts holding customer funds set forth in BTS00833830.  But your Letter states, as of May 24, 2023, BAM Trading held custody of $377,908,434 customer fiat.

    a.  Explain the $27 million discrepancy between these two amounts.

    b.  Identify the account(s) in which the additional funds are held, the individuals who have any control over these funds, and the individuals with any authority to transfer and/or withdraw funds.

    c.  Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, or any Zhao-owned or –controlled entity has authority, formally or informally, directly or indirectly, to control, transfer, or withdraw these funds

2.  List the institutions and account information to which the $9,830,818.40 of customer funds that are currently held at Prime Trust are to be transferred, as referenced in your Letter.

    a.  Explain why these assets are being transferred.

    b.  Explain who will have control over those funds and/or authority to transfer or withdraw funds from the account(s).

    c.  Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, any Zhao-owned or –controlled entity has or will have authority, formally or informally, directly or indirectly, to control, transfer, or withdraw these funds.

    d.  Confirm those funds will be segregated, unencumbered, and subject to immediate withdrawal by customers.

3.  What is the role of the "payment processors" Nuvei, Orum, and BitGO referenced in response to Request 5?

    a.  Explain all agreements governing the relationships with these entities, including those that explain why they have accounts holding BAM customer fiat and the terms governing their custody or control of BAM customer fiat.

    b.   Describe BAM Trading's, BAM Management's, Binance Holdings', and Zhao's access to and control over these accounts and customer funds held in these accounts, either directly or indirectly.

4.   Provide account information for those accounts at Cross River Bank, Customers Bank, Fresno First Bank, and Silicon Valley Bank referenced in BTS00833830 that are holding customer fiat currency, including account number, account holder, identity of signatory and/or anyone with control and/or authority to transfer or withdraw funds, and all terms relating to the authorization to transfer or withdraw funds.

5.   What is B.US Securities and its role for Binance.US or Binance.com trading or other services provided to customers?

    a.   Does the B.US Securities account hold any BAM customer assets?

    b.   Identify the company(ies) with whom Sara Andres and David Martin have any employment or other agreement and their respective roles with those company(ies).

    c.   Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, BAM Trading, BAM Management, or any Zhao-owned or controlled entity has authority to control, transfer, or withdraw assets from B.US Securities accounts.

6.   Explain why Paxos Trust Company transferred $183M to BAM Trading in January 2023.

7.   Provide account information for all accounts holding any funds identified in the "Restricted Cash" section of the Financial Statements and Independent Auditor's Report ("FGMK Report") at BTS00833810.

## B.   <u>CRYPTO ASSETS</u>

8.   Provide documentation as to and otherwise explain the referenced December 2022 termination of the Wallet Custody agreement.

9.   Provide customer deposit wallet addresses for Zhao and any Binance or BAM-affiliated entity, including, but not limited to, Merit Peak, and Sigma Chain.

10.   Explain what it means to be "associated with BHL" in your Letter's response to Request 4 & 7, stating, "The AWS account holding these wallets is associated with BHL."

11.   Provide the name, contact information, employment history, and any agreement with Zhao, BAM Trading, BAM Management, Binance Holdings, or any Zhao-owned or – controlled entity for all individuals who have possession and/or any access, authority, or control over BAM Trading and BAM Management accounts, crypto asset wallets, and/or any customer fiat or customer crypto assets.  This response should include the date when

any key or key shard holder who was a former Binance Holdings employee ended employment with Binance Holdings and started employment with BAM Trading or BAM Management.

12. Explain the policies or procedures, formal or informal, that govern or relate to the control of key shards for BAM customer assets, including but not limited policies for contingencies in the event any key or key shard is lost or stolen.

13. Explain the insurance or other protections in place if a key or key shard holder violates his or her duties or responsibilities with respect to customer crypto assets.

14. Identify all communication channels associated with all wallets governed a TSS protocol.

15. Identify all preapproved wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred and whether any of these wallets are held or controlled by Binance Holdings, Zhao, or any Zhao-owned or affiliated entity, or any other individual.

16. Provide records of all votes or authorization by shard holders for white listing, approving, or decommissioning wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred.

17. Define "staking operation" on page 4 of your Letter for which two key shards are required to authorize, including whether two shards can authorize transfers or withdrawals from staking wallets.

18. For all unstaked assets:

    a. Identify the Amazon Web Services account holder(s) for BAM unstaked crypto assets.

    b. Identify all key shard holders, both past and present.

    c. Identify all key shard holder keys, addresses, and attribution for each key shard.

    d. Identify how the key shards are held.

    e. Explain why Binance Holdings holds key shards for purposes of "disaster recovery."

    f. Identify any agreement and/or relationship between each key shard holder and Binance Holdings, Zhao, or any Zhao-owned or controlled entity.

    g. Identify all threshold consensus or approval requirements, whether formal or informal, direct or indirect.  For example, you have stated that 4 out of 7 shards are required to approve transfers from the cold wallet, but we want to know

whether there are other requirements to authorize a transfer (including informal requirements), such as a Binance Holdings shard holder must be one of the 4, a Binance Holdings shard holder must sign first to indicate approval of a transfer, or Zhao or any individual with an agreement or other relationships with Binance Holdings, Zhao, or Zhao-owned or –controlled entity directs (or can direct) shard holders to transfer assets.

h. Provide records of all key shard holder authorizations for transfers of crypto assets made in the last two years, including, but not limited to, the time windows when requests for authorization are made.

i. Confirm no individual holds multiple key shards.

19. For the wallet addresses you provided with your recent submission, identify all assets held in each wallet and the volume and value of each asset held in each wallet.

20. Identify all wallet addresses that were shared, co-hosted, or used to transfer assets between Binance Holdings, BAM Trading, BAM Management, Zhao, and any Zhao or Binance-affiliated individual or entity, including Merit Peak and Sigma Chain. The response to this request should include external wallets that are not accounts on either trading platform, deposit addresses, and transfers directly between storage wallets.

21. Explain why wallet 0xf60c2Ea62EDBfE808163751DD0d8693DCb30019c has direct transactions with Binance.com wallets.

22. Explain why almost all of the BUSD transferred to wallet 0xf60c2Ea62EDBfE808163751DD0d8693DCb30019c from the wallet you provided 0x34ea4138580435b5a521e460035edb19df1938c1, in early 2023.

## C. <u>GENERAL</u>

23. Identify the number of BAM Trading or BAM Management employees located outside of the United States and the city and country where they are located, including those BAM employees located in Singapore.

24. Identify the names, job titles, and time period of employment for all BAM Trading or BAM Management employees who were formally Binance Holdings employees.

25. The FGMK Report indicates BAM Trading's lease expires at the end of May 2023. *See* BTS00833819. Provide information on BAM's place(s) of business from the date of lease termination.

26. Explain why certain fiat and crypto assets are identified as "off-balance" in the FGMK Report. *See* BTS00833817-18.

# EXHIBIT BH-17

## WILMERHALE

William R. McLucas

+1 202 663 6622 (t)
+1 202 663 6363 (f)
william.mclucas@wilmerhale.com

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY
BAM TRADING SERVICES INC. PURSUANT TO
17 C.F.R. § 200.83 AND 5 U.S.C. § 552**

June 1, 2023

**By Email**

Jennifer Farer, Esq.
Senior Trial Counsel
Division of Enforcement
U.S. Securities and Exchange Commission
100 F St NE
Washington, DC 20549

Re:      **In the Matter of Binance.US (HO-13865)**

Dear Ms. Farer:

We write on behalf of BAM Trading Services Inc. ("BAM Trading" or the "Company") in response to your May 30, 2023 letter request seeking additional information regarding the fiat currency and digital (crypto) assets BAM Trading holds on behalf of its customers. We reiterate, based on our discussions with the Company that, as set forth below, customers' assets are secure, appropriately segregated, and available for immediate withdrawal, subject to transaction limits imposed by the Company's banking partners and, for staked assets, any applicable unbonding periods.

We believe that we had addressed any concerns raised by the Staff in a conference call on Wednesday, May 24th, a follow-up writing confirming that conversation on Thursday, May 25th, and an additional submission on Friday, May 26th. Based on these representations and on our cooperation, we were both surprised and disappointed to receive the May 30th letter calling for the production of a witness and responses to 26 separate questions in less than 48 hours. Given that the Staff has already sought and obtained authority for an enforcement action against BAM Trading, such a demand is extraordinary under any circumstances. Nonetheless we have committed to making every effort to respond to the Staff's concerns as expeditiously as possible. To be clear, it is the Company's top priority to protect customers and to avoid anything that might cause unwarranted panic in the already volatile crypto market.

Today we are responding to Items 2, 3, 5, 6, 7, 8, 9, 18(i), 23, 25, and 26 of your request. We understand that these responses are a high priority for the Staff and are working expeditiously to respond to the remaining items from your letter as soon as possible. We are making every effort to ensure that our responses are complete and accurate notwithstanding the extremely short

**WILMERHALE**

Jennifer Farer, Esq.
June 1, 2023

deadlines allotted to provide this information.  We will supplement our responses to the extent that we identify any additional responsive information.  The Company remains ready to provide additional information the Staff may need to understand how the Company maintains custody of its clients' assets and to assure you that those assets are safe, secure, and immediately available to satisfy customers' requests to withdraw or transfer assets.

**Request Item 2(a), (b) & (c)**:  *List the institutions and account information to which the $9,830,818.40 of customer funds that are currently held at Prime Trust are to be transferred, as referenced in your Letter* [*and*] [*e*]*xplain why these assets are being transferred; who will have control over those funds and/or authority to transfer or withdraw funds from the account(s)* [*and*] *the extent to which Zhao or any individual with any agreement Holdings, Zhao, any Zhao-owned or –controlled entity has or will have authority, formally or informally, directly or indirectly, to control, transfer, or withdraw these funds, or other relationship with Binance; and* [*c*]*onfirm those funds will be segregated, unencumbered, and subject to immediate withdrawal by customers.*

Prime Trust is one of the Company's payment processors.  One of its banking partners is Cross River Bank, where funds on behalf of BAM Trading's customers were previously maintained.  We understand from Prime Trust, that Cross River Bank would no longer hold assets on behalf of BAM Trading and potentially other clients due to the stresses faced by regional banks and the ongoing regulatory environment.  As a result, BAM Trading stopped transacting through Prime Trust on April 28, 2023 and has migrated its accounts away from Prime Trust to new payment processors, including Nuvei US LLC ("Nuvei") and Orum Money Movement ("Orum").

As of May 25, 2023, $9,830,818.40 of the Company's customer fiat was maintained with Prime Trust's banking partner, Cross River Bank in account 2299836995.  On May 31, 2023, the full balance of $9,830,818.40 was transferred to Wyre Payments Inc. ("Wyre"), a new payment processor through which BAM Trading customers can process wire transfers.  The customer funds are unencumbered and available for immediate withdrawal by customers, subject to any periodic withdrawal limits imposed by Wyre's banking partner.

Only BAM Trading personnel[1] and Wyre employees have access to and control of accounts holding customer funds.  Neither Mr. Zhao nor anyone at BHL or other entities controlled by Mr. Zhao can withdraw or transfer funds from Wyre or other accounts used to hold fiat currency on behalf of BAM Trading's customers.[2]

---

[1]        BAM Trading personnel are employed by BAM Management US Holdings Inc. ("BAM Management").

[2]        As you are aware, Mr. Zhao owns, directly or indirectly, a controlling interest in the Company and BAM Management.  However, for purposes of this response and other items seeking similar information, we assume that you are asking about Mr. Zhao or other entities that he controls, and not whether BAM Trading personnel have control over the Company's accounts.  To the extent than an entity owned or controlled by Mr. Zhao maintains an account on the platform, it of course retains the ability to transfer or withdraw its own funds to the same extent as any other customer.

*Confidential Treatment Requested by BAM Trading Services Inc.*                    BAM-WH-CORR-039

**WILMERHALE**

Jennifer Farer, Esq.
June 1, 2023

**Request Item 3(a)**: *What is the role of the "payment processors" Nuvei, Orum, and BitGO referenced in response to Request 5? Explain all agreements governing the relationships with these entities, including those that explain why they have accounts holding BAM customer fiat and the terms governing their custody or control of BAM customer fiat.*

Payment processors such as Nuvei, Orum Wyre, and BitGo Trust Company ("BitGo") provide the infrastructure and technology to facilitate financial transactions between BAM Trading and customers across various channels, such as ACH, debit card and wire deposits and withdrawals.  Payment processors have relationships with various bank partners.  The bank partners maintain bank accounts for the payment processors, and the assets of the payment processor's customers are maintained in these accounts (*i.e.*, the assets BAM or its customer sends to a payment processor are deposited with a banking partner).  These types of arrangements are commonly referred to as "bank-fintech" partnerships.

The BitGo agreement is a Custodial Services Agreement between BAM Trading and BitGo.  BitGo is a Trust Company organized and chartered in South Dakota.  The agreement enables BAM Trading to create a custody account controlled and secured by BitGo for the purposes of storing digital assets and fiat.  As relevant here, BAM Trading uses BitGo to hold certain fiat currency deposited by customers that have not had any account activity over the prior 12 months.  BitGo currently holds $4 million in fiat currency for those inactive customers.

The Orum agreement enables BAM Trading to use Orum's proprietary platform to enable BAM Trading customers to transfer funds between existing U.S. bank accounts by way of ACH and wire payment methods.

The Nuvei agreements enable BAM Trading to process debit card, ACH, and RTP transactions for the loading and unloading of customer wallets.

The Wyre agreement enables BAM Trading customers to initiate ACH, wire, and debit card payments for the loading and unloading of customer wallets.

**Request Item 3(b)**: *Describe BAM Trading's, BAM Management's, Binance Holdings', and Zhao's access to and control over these accounts and customer funds held in these accounts, either directly or indirectly.*

Movements between BAM Trading's BitGo, Nuvei, Orum, and Wyre accounts are directed by BAM Trading customers or by a list of designated BAM Trading personnel.  We understand that BitGo, Nuvei, Orum, and Wyre also have designated signatories for the underlying bank accounts used to facilitate their services.  We will provide more detail regarding these arrangements in response to Item 1(b).

**WILMERHALE**

Jennifer Farer, Esq.
June 1, 2023

**Request Item 5 & 5(a)**:  *What is B.US Securities and its role for Binance.US or Binance.com trading or other services provided to customers;* [*and*] [*d*]*oes B.US Securities account hold any BAM customer assets?*

B.US Securities, Inc. ("B.US Securities") is a subsidiary of BAM Management.  It was established with a goal of providing appropriately approved Binance.US customers access to equity securities.  The entity currently has a broker-dealer application pending with FINRA.  It is not currently operational and does not have any clients or custody of client funds.  As reflected in BTS00833830, B.US Securities has established a bank account at Axos Bank.  This account is exclusively used to hold B.US Securities' corporate funds as it works to stand-up its operations.

BHL, Binance.com, and Mr. Zhao (other than his ultimate ownership of BAM Management) do not have any involvement in B.US Securities.

**Request Item 5(b) & (c)**: *Identify the company(ies) with whom Sara Andres and David Martin have any employment or other agreement and their respective roles with those company(ies); and* [*e*]*xplain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, BAM Trading, BAM Management, or any Zhao-owned or controlled entity has authority to control, transfer, or withdraw assets from B.US Securities accounts.*

David Martin is the Founder and Chief Executive Officer and Sara Andres is a Senior Consultant at Compliers Consulting Services LLC ("Compliers Consulting"), a consulting firm specializing in compliance services for broker-dealer firms.  B.US Securities engaged Mr. Martin and Ms. Andres to, respectively, act as B.US Securities' President and Chief Compliance Officer.  As the licensed principals of B.US Securities, only Ms. Andres and Mr. Martin have the ability to conduct the operations of and have control over B.US Securities.

As noted above, neither Mr. Zhao, or any individual with any agreement or other relationship with Binance Holdings, Mr. Zhao, BAM Trading, BAM Management, or any other Mr. Zhao-controlled entity has any authority to control, transfer or withdraw assets from the B.US Securities account.  Only Mr. David Martin and Ms. Sara Andres, as FINRA licensed principals, have the ability and authority to control, transfer or withdraw assets from the B.US Securities account, which only holds proprietary funds.

**Request Item 6**: *Explain why Paxos Trust Company transferred $183M to BAM Trading in January 2023.*

BAM Management US Holdings, Inc. issued a $250 million convertible note to Mr. Zhao in December 2022.  Mr. Zhao funded the purchase of this note with BUSD, $183 million of which was sent to Paxos Trust Company, as issuer of BUSD, to convert the BUSD into USD.  These funds were then transferred to BAM Trading in January 2023.

Jennifer Farer, Esq.
June 1, 2023

WilmerHale

**Request Item 7**:  *Provide account information for all accounts holding any funds identified in the "Restricted Cash" section of the Financial Statements and Independent Auditor's Report ("FGMK Report") at BTS00833810.*

A table reflecting the funds identified as "Restricted Cash" in BAM Trading's 2022 audited financial statements is provided below:

| Institution | Account No. | Account Name | Balance |
|---|---|---|---|
| Signature Bank | 1504917211 | BAM TRADING SERVICES INC ACH COLLATERAL | $6,004,309 |
| Silvergate Capital Corp. | 5090031377 | BAM TRADING SERVICES INC. DBA BINANCE.US | $6,750,000 |
| Acquiom Clearinghouse LLC (escrow agent)/HSBC Bank | 981026796 (HSBC) | Voyager Digital BAM Escrow[3] | $10,000,000 |
| **Total**: | | | $22,754,309 |

**Request Item 8**:  *Provide documentation as to and otherwise explain the referenced December 2022 termination of the Wallet Custody agreement.*

As we explained on March 6, 2023 and March 9, 2023, we understand that the Wallet Custody Agreement was never operationalized.  However, as a formality, the respective parties terminated the agreement on December 30, 2022.  A copy of the termination is enclosed at BTS00833831.

**Request Item 18(i)**:  *Confirm no individual holds multiple key shards.*

Confirmed, all seven TSS key shards for Binance.US' TSS enabled cold wallets are held by seven separate individual key shardholders.

---

[3]     This was a deposit for the proposed Asset Purchase Agreement of certain Voyager assets.  The transaction was terminated and BAM Trading will seek a return of the deposit.

*Confidential Treatment Requested by BAM Trading Services Inc.*          BAM-WH-CORR-042

WILMERHALE

Jennifer Farer, Esq.
June 1, 2023

**Request Item 23**:  *Identify the number of BAM Trading or BAM Management employees located outside of the United States and the city and country where they are located, including those BAM employees located in Singapore.*

The following chart identifies the number of BAM Trading and BAM Management employees and contractors that are located outside of the United States:

| Country | City | Contractors | Employees (FTE, PTE & Interns) | Total |
|---|---|---|---|---|
| Argentina | Banfield | 1 | 0 | 1 |
| Canada | Brampton | 0 | 1 | 1 |
| | Burnaby | 0 | 16 | 16 |
| | Coquitlam | 0 | 2 | 2 |
| | Delta | 0 | 1 | 1 |
| | Langley | 0 | 3 | 3 |
| | London | 0 | 1 | 1 |
| | Markham | 0 | 3 | 3 |
| | Mississauga | 0 | 1 | 1 |
| | New Westminster | 1 | 0 | 1 |
| | North Vancouver | 0 | 1 | 1 |
| | North York | 0 | 1 | 1 |
| | Port Moody | 0 | 1 | 1 |
| | Richmond | 0 | 11 | 11 |
| | Surrey | 0 | 2 | 2 |
| | Toronto | 0 | 5 | 5 |
| | Vancouver | 0 | 40 | 40 |
| | Wasaga Beach | 0 | 1 | 1 |
| | West Vancouver | 0 | 2 | 2 |
| China | Beijing | 1 | 0 | 1 |
| | Minhang | 1 | 0 | 1 |
| | NanChang | 1 | 0 | 1 |
| | Qingpu | 1 | 0 | 1 |
| | Shanghai | 110 | 0 | 110 |
| | Songjiang | 1 | 0 | 1 |
| | Wuxi | 1 | 0 | 1 |
| | Zhejiang | 1 | 0 | 1 |
| Costa Rica | Alajuela | 4 | 0 | 4 |
| | Heredia | 4 | 0 | 4 |
| | San José | 2 | 0 | 2 |
| | San Pablo de Barva | 1 | 0 | 1 |
| Cyprus | Limassol | 1 | 0 | 1 |

*Confidential Treatment Requested by BAM Trading Services Inc.*          BAM-WH-CORR-043

Jennifer Farer, Esq.
June 1, 2023

**WilmerHale**

| Country | City | Contractors | Employees (FTE, PTE & Interns) | Total |
|---------|------|-------------|-------------------------------|-------|
| France | Saint-Etienne | 1 | 0 | 1 |
| Indonesia | Bekasi | 1 | 0 | 1 |
| Mexico | Mexico City | 1 | 0 | 1 |
| Philippines | Antipolo City | 1 | 0 | 1 |
| Singapore | Singapore | 1 | 0 | 1 |
| United Arab Emirates | Al Reem Island | 1 | 0 | 1 |
| | Dubai | 14 | 0 | 14 |
| **Total** | | 151 | 92 | 243 |

**Request Item 25**: *The FGMK Report indicates BAM Trading's lease expires at the end of May 2023. See BTS00833819. Provide information on BAM's place(s) of business from the date of lease termination.*

BAM Trading recently relocated its headquarters from Palo Alto, California, to Miami, Florida. Its Palo Alto lease expires at the end of May 2023. The Company's new headquarters is located at 252 NW 29th Street, Suite 904, Miami, FL 33127.

**Request Item 26**: *Explain why certain fiat and crypto assets are identified as "off-balance" in the FGMK Report. See BTS00833817-18.*

For accounting purposes, BAM Trading treats all fiat and digital assets held on behalf of its customers as off-balance sheet assets. We understand that this has historically been the accepted method of accounting for custodial assets held on behalf of third-party customers. As of December 31, 2022 BAM Trading disclosed customer fiat assets of $278,790,229 and customer crypto assets of $1,778,308,784 as off-balance sheet. This treatment is reflected in Notes 1 and 5 of its 2022 audited financial statements.

As reflected in the Company's 2022 audited financial statements, the Company is aware that Staff Accounting Bulletin No. 121 ("SAB 121") requires public companies that hold custodial digital assets on behalf of customers to recognize a liability reflecting their obligation to safeguard their customers' assets and a corresponding safeguarding asset, both of which must be accounted for at fair value. BAM Trading is not a public entity and is not required to adopt the approach suggested by SAB 121. The Company is evaluating whether to adopt this approach going forward.

\*　　\*　　\*

BAM Trading requests that this letter and all information contained therein (the "Confidential Material") be maintained in confidence by the SEC and its staff and be used solely for the purposes of this inquiry. Accordingly, the Confidential Material has been marked

WILMERHALE

Jennifer Farer, Esq.
June 1, 2023

"Confidential Treatment Requested by BAM Trading Services Inc." for reasons of personal privacy and business confidentiality.

The Confidential Material concerns or may concern customarily non-public, confidential and privileged business, financial, commercial, and personal information concerning BAM Trading and/or its personnel.  The Confidential Material is exempt from mandatory disclosure under various provisions of the Freedom of Information Act ("FOIA"), including 5 U.S.C. § 552(b)(7) (which protects certain "records or information compiled for law enforcement purposes"),[4] 5 U.S.C. § 552(b)(4) (which protects trade secrets as well as confidential commercial or financial information obtained from a person), 5 U.S.C. § 552(b)(6) (which protects files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"),[5] and 5 U.S.C. § 552(b)(7) (which protects records or information compiled for law enforcement purposes).  Because the Confidential Material relates to the activities of BAM Trading and not the activities of any federal agency, we believe it is exempt from disclosure under FOIA.[6]  The Commission treats records falling within the FOIA exemption categories to be "nonpublic" and "will generally not publish or make available to any person" such records.  17 C.F.R. § 200.80(b).  Moreover, disclosure of this Confidential Material may be prohibited under 18 U.S.C. § 1905, and further protections may be available under the Privacy Act of 1974, 5 U.S.C. § 552a.  Finally, the Confidential Material being produced voluntarily is protected from disclosure because it would not customarily be released to the public by BAM Trading.[7]

In accordance with 17 C.F.R. § 200.83 and other applicable laws and regulations, the Confidential Material is submitted to the SEC with BAM Trading's request, through the undersigned, that it be kept in a non-public file and that only SEC staff have access to it.  If any person not a member of the SEC staff (including without limitation any governmental employee) should request an opportunity to inspect or copy the Confidential Material, pursuant to FOIA or otherwise, or if you or any member of the SEC staff contemplates disclosure of the Confidential Material to any other person, we request that the undersigned immediately be notified of such request, be furnished a copy of all written materials pertaining to such request (including but not limited to the request itself), and be given advance notice of any intended release so that we may, if deemed necessary or appropriate, pursue any remedies available.  *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).  We expect to be given the opportunity to object to such disclosure. We request that you telephone the undersigned rather than rely upon the U.S. mail for such notice.

---

[4]     *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

[5]     *See, e.g.*, *U.S. Dep't of Def. v. Federal Labor Relations Authority*, 510 U.S. 487 (1994).

[6]     5 U.S.C. §§ 552(b)(6) and (b)(7)(C); *U.S. Dep't of Def.*, *supra*; *see, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 449 (1989).

[7]     *See, e.g.*, *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993).

**WILMERHALE**

Jennifer Farer, Esq.
June 1, 2023

Should the SEC be inclined to grant any FOIA request for the Confidential Material, BAM Trading expects that the procedures set forth in 17 C.F.R. § 200.83 and Executive Order 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), will be followed.  In that case, BAM Trading will further substantiate its request for confidential treatment, and will request a hearing on the claim of exemption.

The requests set forth in the preceding paragraphs also apply to any form of communication of any sort, including, but not limited to any tapes, memoranda, notes, transcripts, electronic documents, or communications containing extracts, summaries, or quotes,  or other writings of any sort whatsoever that are made by, or at the request of, any employee of the SEC (or any other governmental agency) and which (1) incorporate, include or relate to any of the Confidential Material; or (2) refer to any conference, meeting, or telephone conversation between BAM Trading, its current or former employees, representatives, agents, auditors, or counsel on the one hand and employees of the SEC (or any other government agency) on the other, relating to the Confidential Material.

The Confidential Material remains the property of BAM Trading.  If the SEC staff determines to transfer any of the Confidential Material to another federal agency, we request that you forward a copy of this letter to any such agency with the Confidential Material.  We request that you indicate to any such agency that BAM Trading has requested the return of this material to the undersigned at the completion of the agency's efforts in this matter and has requested that this material be accorded confidential treatment.

Provision of the Confidential Material is not intended to, and does not, waive any applicable privilege or other legal basis under which information may not be subject to production. If it were found that production of the Confidential Material constitutes disclosure of otherwise privileged matters, such disclosure would be inadvertent.  By the productions of such documents, BAM Trading does not intend to and has not waived the attorney-client privilege or any other protections.

*       *       *

Please feel free to contact me if you have any questions about these matters.


Sincerely,


/s/ William R. McLucas
William R. McLucas

# EXHIBIT BH-18

## WILMERHALE

William R. McLucas

+1 202 663 6622 (t)
+1 202 663 6363 (f)
william.mclucas@wilmerhale.com

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY
BAM TRADING SERVICES INC. PURSUANT TO
17 C.F.R. § 200.83 AND 5 U.S.C. § 552**

June 2, 2023

**By Email**

Jennifer Farer, Esq.
Senior Trial Counsel
Division of Enforcement
U.S. Securities and Exchange Commission
100 F St NE
Washington, DC 20549

Re:      **In the Matter of Binance.US (HO-13865)**

Dear Ms. Farer:

We write on behalf of BAM Trading Services Inc. ("BAM Trading" or the "Company") in further response to your May 30, 2023 request seeking additional information regarding the fiat currency and digital (crypto) assets BAM Trading holds on behalf of its customers. It is the Company's top priority to protect customers and to avoid anything that might cause unwarranted panic in the already volatile crypto market. We reiterate, based on our discussions with the Company that, as set forth below, customers' assets are secure, appropriately segregated, and available for immediate withdrawal, subject to transaction limits imposed by the Company's banking partners and, for staked assets, any applicable unbonding periods.

Today we are responding to Items 1, 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 (excluding 18(i), which was provided in our June 1 letter), 19, 20, 21, 22, 24 of your request. We are making every effort to ensure that our responses are complete and accurate notwithstanding the extremely short deadlines allotted to provide this information. We will supplement our responses to the extent that we identify any additional responsive information. The Company remains ready to provide additional information the Staff may need to understand how the Company maintains custody of its clients' assets and to assure you that those assets are safe, secure, and immediately available to satisfy customers' requests to withdraw or transfer assets.

**Request Item 1(a):**   *We calculate $350,567,770 when we total the values of accounts holding customer funds set forth in BTS00833830. But your Letter states, as of May 24, 2023,*

Jennifer Farer, Esq.
June 2, 2023

WILMERHALE

*BAM Trading held custody of $377,908,434 customer fiat.  Explain the $27 million discrepancy
between these two amounts.*

The $377,908,434 figure provided in our May 26, 2023 letter and the $350,567,770 figure
in the account extracts provided at BTS00833830 provide snapshots of the Company's custodial
fiat balances as of two different points in time.  The $377,908,434 figure provided in our May 26,
2023 letter was taken from the Company's internal reporting tool, which provides end-of-day
balances on a T+2 basis.  As relevant here, that figure reflects the Company's end-of-day custodial
fiat balances as of May 23, 2023.  The $350,567,770 total reflected in BTS00833830 reflected the
balances in each relevant bank account at a point in time on May 25, 2023.

The difference between the two figures represents a normal timing difference that arises
from U.S. banking functions, including previous day carryover, chargebacks, and rollback
deposits.

**Request Items 1(b) & 4**: *Identify the account(s) in which the additional funds are held,
the individuals who have any control over these funds, and the individuals with any authority to
transfer and/or withdraw funds; and account information for those accounts at Cross River Bank,
Customers Bank, Fresno First Bank, and Silicon Valley Bank referenced in BTS00833830 that are
holding customer fiat currency, including account number, account holder, identity of signatory
and/or anyone with control and/or authority to transfer or withdraw funds, and all terms relating
to the authorization to transfer or withdraw funds.*

As noted above, the $27 million figure does not represent an additional source of funds.
The table below reflects each of the bank or payment processor accounts currently used to hold
fiat on behalf of BAM Trading's customers.  For each processor account, we are providing the
entity BAM Trading has the relationship with, the account I.D. with the entity, and the BAM
Trading personnel[1] authorized to transfer and/or withdraw funds from the accounts.

As reflected below, BAM Trading maintains customer fiat directly at Axos Bank.  It also
has relationships with certain third-party payment processors (i.e., fintech bank partners), who
provide various money transmissions services and access to banking services for BAM Trading's
customers.  Currently, these institutions are BitGo Trust Company Inc. ("BitGo"), Nuvei US LLC
("Nuvei"), Orum Money Movement ("Orum"), Wyre Payments Inc. ("Wyre"), and, until very
recently, Prime Trust, LLC ("Prime Trust").   BAM Trading maintains accounts and relationships
with each of these payment processors, which in turn have custodial relationships with various
bank partners.  Under these arrangements, BAM Trading or a BAM Trading customer transfers
funds to the payment processor, which then transfers the funds into the payment processor's bank
account held for the benefit of the payment processor's customers.  Designated personnel at the
respective payment processors serve as direct signatories on the bank accounts held in the
processor's name.  However, BAM Trading personnel are the only individuals with authority to

---

[1]       BAM Trading personnel are employed by BAM Management US Holdings Inc. ("BAM Management").

**WILMERHALE**

Jennifer Farer, Esq.
June 2, 2023

initiate transfers of funds held at those accounts on behalf of its customers by the payment processor.  BAM Trading does not have a direct relationship with the payment processors' banks.

| Relationship Entity | Account I.D. | Transfer Authority |
|---|---|---|
| Axos Bank | 890000113989 | Authorized Account Signatories:<br>• Brian Shroder<br>• Jasmine Lee |
| | 890000113963 | Authorized Account Signatories:<br>• Brian Shroder<br>• Jasmine Lee |
| | 890000113971 | Authorized Account Signatories:<br>• Brian Shroder<br>• Jasmine Lee |
| Prime Trust[2] (partners with Cross River Bank) | | Authorized Account Owners:<br>• Brian Schroder<br>• Jasmine Lee<br><br>Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman<br>• Tyrell Long |
| BitGo (partners with Customers Bank) | 6425f2a62268fa000700c7744eac224e | Authorized Account Owners:<br>• Katrina Fava<br>• Jason Perman |

---

[2]     As noted below in response to Item 1(c), Changpeng Zhao is not a signatory on the Prime Trust account. Since our May 26, 2023 letter, the Company contacted Prime Trust to determine the exact scope of Mr. Zhao's legacy authority on the account.  Through that exercise, BAM Trading determined that Mr. Zhao is not a signatory on the Prime Trust account and does not have the ability to move or withdraw funds from the account.

Jennifer Farer, Esq.
June 2, 2023

**WILMERHALE**

| Relationship Entity | Account I.D. | Transfer Authority |
|---|---|---|
| Orum (partners with Silicon Valley Bank) | 8b7c0fbc-f6c5-4bfe-866c-f9a59cfebad0 | Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman<br>• Tyrell Long<br>• Brian Shroder<br>• Jasmine Lee |
| Nuvei (partners with Fresno First Bank) | 136490 | Authorized Account Owners:<br>• Brian Shroder<br>• Jasmine Lee<br><br>Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman |
| Wyre | AC_T79ATPN7PPL | Authorized Account Managers:<br>• Sara Sisenwein<br>• Katrina Fava<br>• Jason Perman<br>• Tyrell Long<br>• Brian Shroder<br>• Jasmine Lee |

**Request Item 1(c)**: *Explain the extent to which Zhao or any individual with any agreement or other relationship with Binance Holdings, Zhao, or any Zhao-owned or –controlled entity has authority, formally or informally, directly or indirectly, to control, transfer, or withdraw these funds.*

Neither Mr. Zhao nor anyone acting on his behalf or on behalf of any entity that he controls has the ability to directly or indirectly control, transfer, or withdraw fiat assets held on behalf of BAM Trading's customers.[3]  In our May 26 letter, we indicated that Mr. Zhao is a signatory on the Prime Trust account but this is not the case.  Following last week's submission, the Company

---

[3]     As you are aware, Mr. Zhao directly or indirectly owns the Company and BAM Management.  However, for purposes of this response and other items seeking similar information, we assume that you are asking about Mr. Zhao or other entities that he owns or controls, and not whether BAM Trading personnel have control over the Company's accounts.

WilmerHale

Jennifer Farer, Esq.
June 2, 2023

contacted Prime Trust to determine the exact scope of Mr. Zhao's authority for the account.
Through that exercise, Prime Trust confirmed that Mr. Zhao is not a signatory on the account. The
Prime Trust account is now closed and more broadly Mr. Zhao is not currently a signatory and
does not have authority to directly or indirectly transfer or withdraw funds from any of the
Company's accounts that hold fiat currency on behalf of customers.

**Request Item 9**:   *Provide customer deposit wallet addresses for Zhao and any Binance
or BAM-affiliated entity, including, but not limited to, Merit Peak, and Sigma Chain.*

We are providing a spreadsheet reflecting the deposit wallets associated with Merit Peak
and Sigma Chain on the BAM Trading platform at BTS00833832 to BTS00833835. The Company
is not aware of any other deposit wallets associated with Mr. Zhao, BHL, or other entities
controlled by Mr. Zhao.

**Request Item 10**:   *Explain what it means to be "associated with BHL" in your Letter's
response to Request 4 & 7, stating, "The AWS account holding these wallets is associated with
BHL."*

As previously described to the Staff and reiterated in our May 26 letter, BAM Trading
maintains all unstaked customer and proprietary digital assets in wallets maintained in an Amazon
Web Services ("AWS") datacenter in Northern Virginia using software licensed from BHL. An
instance of the BHL wallet custody software runs in a dedicated AWS environment that we
understand is solely used to maintain custody of digital assets for BAM Trading. The Company
understands that BHL established this AWS environment on behalf of BAM Trading pursuant to
the Software License Agreement.

BHL does not have access to or control over the digital assets maintained in that AWS
environment. As we have described, BAM Trading has ultimate control over the digital assets
maintained in its dedicated instance of the BHL wallet custody software. The wallet custody
software automatically transfers funds from deposit wallets to hot wallets, and hot wallets to cold
wallets based on predefined thresholds within the exclusive control of BAM Trading personnel.
While the private keys used to perform these automatic transfers are maintained within the AWS
environment established by BHL, those private keys are controlled by BAM Trading's PNK
database, which runs in a parallel AWS environment opened in its name.

No BHL personnel can currently initiate or approve transfers from BAM Trading's PNK
system. Further, as we have described, transfers of assets from cold wallets to hot wallets must be
approved by at least one designated BAM Trading shard holder. Designated BAM Trading
personnel must also personally approve external transfers of larger than $1 million (or the
customer-specific limit) through PNK.

Access to the AWS environment does not provide BHL any access to the underlying assets,
BAM Trading's PNK system, or give it the ability to modify how BAM Trading has configured
its instance of the wallet custody software. Because BHL personnel were involved in initially

*Confidential Treatment Requested by BAM Trading Services Inc.*          BAM-WH-CORR-051

**WILMERHALE**

Jennifer Farer, Esq.
June 2, 2023

setting up BAM Trading's AWS environment in 2019, a senior BHL developer has access to the root account for this AWS environment. This account is not used to operate or maintain the AWS environment but instead is used to establish accounts for other users, which are in turn used to manage the environment. BAM Trading has controls that generate alerts whenever the root account is accessed. The root account does not provide access to PNK or otherwise provide the root account holder access to any funds held by BAM Trading on behalf of its customers.

**Request Item 11**: *Provide the name, contact information, employment history, and any agreement with Zhao, BAM Trading, BAM Management, Binance Holdings, or any Zhao-owned or –controlled entity for all individuals who have possession and/or any access, authority, or control over BAM Trading and BAM Management accounts, crypto asset wallets, and/or any customer fiat or customer crypto assets. This response should include the date when any key or key shard holder who was a former Binance Holdings employee ended employment with Binance Holdings and started employment with BAM Trading or BAM Management.*

We identified the BAM Trading personnel that have access to or control over fiat currency held on behalf of the Company's customers in response to Items 1(c) and 4. These individuals are all employed by BAM Management and act on behalf of BAM Trading. None of these individuals is currently or formerly associated with BHL and none of these individuals have any agreements with Mr. Zhao or other entities he controls.

As noted above in response to Item 10, transfers of customer assets from BAM Trading's TSS-enabled cold wallets to hot wallets requires the approval of at least four of the seven TSS key shards. We will provide a table identifying the current BAM Trading key shard holders in response to Item 18. As we described in our May 26, 2023 letter, two of these individuals were previously employed by BHL. We understand that the three key shards held by BHL are held by current BHL employees.

Transfers of digital assets from BAM Trading's hot wallets to external wallets are controlled by the PNK system. Transfers of digital assets valued less than $1 million (or the customer specific limit) are automatically approved by the PNK system, without real-time human intervention. As set forth in Section 5.2 of the Binance.US Digital Asset & Custody Operations Policy, transfers of digital assets valued at more than $1 million (or the customer specific limit) must be manually approved by designated members of the BAM Trading Clearing team. The Clearing team, which reports to the Company's Treasurer, has six members, only one of which was formerly employed by BHL. That individual has worked for the Company since June 2021.

**Request Item 12**: *Explain the policies or procedures, formal or informal, that govern or relate to the control of key shards for BAM customer assets, including but not limited policies for contingencies in the event any key or key shard is lost or stolen.*

BAM Trading has adopted the Binance.US Digital Asset & Custody Operations Policy to govern its process for managing customers' digital assets. This policy defines the types of wallets

WilmerHale

Jennifer Farer, Esq.
June 2, 2023

used to maintain customers' digital assets, the methodology for moving assets between those wallets, and the personnel responsible for performing those actions. A copy is enclosed at BTS00833836 to BTS00833853.

At the highest level, BAM Trading ensures the integrity of the TSS encryption protocol by segregating the process for initiating a transfer and the process for approving it. Currently, transfers from BAM Trading's cold wallets to its hot wallets must be initiated via a request by an authorized member of the BAM Trading Clearing team. This request is sent by an authorized member of the BAM Trading Clearing team to authorized members of BHL's security team. The designated BHL personnel then issue the TSS request to the key shard holders, via an application on a dedicated mobile device. Four of the seven key shard holders, including at least one BAM Trading shard, must then approve the proposed transaction. Two of BAM Trading's key shard holders are members of the Clearing team and would immediately identify any unauthorized TSS requests.[4]

To further increase the security of the system, BAM Trading keeps the identities of each key shard holder hidden from both the Clearing team and the other shard holders. This ensures that a single individual, on their own, does not have the authority to both initiate and approve a transfer and that no single individual knows the identities of other persons with sufficient authority to collectively perform those actions. Further, if a key shard device is lost or stolen, the corresponding key shard is locked and deactivated and a new key shard device will be activated and distributed to the key shard holder.

**Request Item 13**: *Explain the insurance or other protections in place if a key or key shard holder violates his or her duties or responsibilities with respect to customer crypto assets.*

As we have explained, a key shard holder can either approve, deny, or take no action when a request for a transfer comes to the key shard device. The system is intentionally designed such that no single individual can undertake actions that result in the unauthorized movement of assets either within or from BAM Trading's system. These controls are further bolstered by the fact that the movement of digital assets from cold to hot wallets occur on the blockchain, where actions are publicly visible and any unauthorized transactions would generate immediate alerts and investigations by the Company's Investigations, Information Security, and Risk teams.

We are not aware of any instances in which a shard holder has attempted to take unauthorized actions with respect to the Company's digital assets. If such an action occurred, or if a shard holder regularly failed to approve authorized transactions, the Company would take action to recover or disable the individual's shard.

---

[4]     As we have previously described, even if an authorized request was processed, the effect would be limited: assets can only move from cold wallets to BAM Trading's whitelisted hot wallets or staking wallets, which are exclusively controlled by the Company. Accordingly, even if an unauthorized request occurred, there would be no way to transfer the affected assets off the platform.

*Confidential Treatment Requested by BAM Trading Services Inc.*          BAM-WH-CORR-053

**WILMERHALE**

Jennifer Farer, Esq.
June 2, 2023

**Request Item 14**: *Identify all communication channels associated with all wallets governed a TSS protocol.*

We understand you to be asking for information regarding how the key shard holders can communicate with each other. As described in response to Item 12, BAM Trading's system is designed to keep the identities of the key shard holders anonymous. However, the dedicated mobile device that contains the key shard application also contains a proprietary secure messaging application that allows the shard holders to communicate pseudonymously.

**Request Item 15**: *Identify all preapproved wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred and whether any of these wallets are held or controlled by Binance Holdings, Zhao, or any Zhao-owned or affiliated entity, or any other individual.*

Enclosed at BTS00833854 to BTS00833857 is the list of all whitelisted addresses for each respective digital (crypto) asset network. As the chart reflects, the only whitelisted wallets for the Company's cold wallets are the Company's hot wallets and the Company's staking wallets. The only whitelisted wallets for the staking wallets are the Company's cold wallets and certain proprietary wallets used to hold the Company's portion of the rewards generated through the staking process.

None of the whitelisted wallets for either the Company's cold wallets or cold wallets are held or controlled by Mr. Zhao, BHL, or other entities controlled by Mr. Zhao.

**Request Items 16 & 18(h)**: *Provide records of all votes or authorization by shard holders for white listing, approving, or decommissioning wallets to which assets from the cold wallets and TSS-enabled staking wallets may be transferred; [and] of all key shard holder authorizations for transfers of crypto assets made in the last two years, including, but not limited to, the time windows when requests for authorization are made.*

Enclosed at BTS00833858 is a chart reflecting the participation rate of each key shard in approving proposed transactions from BAM Trading's cold wallets or TSS-enabled staking wallets between March 2023 and June 2, 2023, when the Company implemented its current seven-shard TSS structure. This includes of votes to add or remove whitelisted wallets.

**Request Item 17**: *Define "staking operation" on page 4 of your Letter for which two key shards are required to authorize, including whether two shards can authorize transfers or withdrawals from staking wallets.*

To authorize a staking operation means to either delegate the governance rights for the tokens in the relevant wallet to a staking node, or to unstake those assets from the relevant node and transfer them to a whitelisted wallet. As noted above, the only whitelisted destinations from the Company's staking wallets are its associated cold wallets or the "fee wallets" used to hold the Company's portion of the staking rewards. Any of these actions requires the approval of two of

**WILMERHALE**

Jennifer Farer, Esq.
June 2, 2023

the four key shards associated with the staking wallet. All four key shards would be needed to whitelist an additional wallet and transfer asset outside of BAM Trading's platform.

**Request Item 18(a)**: *For all unstaked assets: [i]dentify the Amazon Web Services account holder(s) for BAM unstaked crypto assets.*

As noted above, BHL has established a dedicated AWS account to operate the BHL wallet custody software pursuant to the Software License Agreement between BHL and BAM Trading.

**Request Items 18(c) & 18(d)**: *Identify all key shard holder keys, addresses, and attribution for each key shard; [and] how the key shards are held.*

As noted above, the key shard is effectively an application that runs on a dedicated mobile device. When a transaction is initiated, the PNK system issues shards of a multi-signature encryption key all seven shard holders. These keys are dynamic and are re-generated for each proposed transaction. The PNK system maintains records of which key shards vote to approve each transaction.

**Request Item 18(e)**: *Explain why Binance Holdings holds key shards for purposes of "disaster recovery."*

As previously described, the Company's TSS protocol is currently configured to rely on seven "key shards." Four shards are held by BAM Trading personnel; and the Company understands that the remaining three shards are held by BHL personnel for disaster recovery purposes. Specifically, in the event that one or more of BAM Trading's key shards is lost or comprised, the three BHL key shards can be used, along with at least one surviving BAM Trading key shard, to reconstitute the lost or comprised shards; this process can also be used to decommission a comprised shard. This ensures that even in the unlikely event that three of BAM Trading's key shards are simultaneously impaired, the Company can continue operating and moving assets to and from its cold wallets.

**Request Item 18(g)**: *Identify all threshold consensus or approval requirements, whether formal or informal, direct or indirect. For example, you have stated that 4 out of 7 shards are required to approve transfers from the cold wallet, but we want to know whether there are other requirements to authorize a transfer (including informal requirements), such as a Binance Holdings shard holder must be one of the 4, a Binance Holdings shard holder must sign first to indicate approval of a transfer, or Zhao or any individual with an agreement or other relationships with Binance Holdings, Zhao, or Zhao-owned or –controlled entity directs (or can direct) shard holders to transfer assets.*

As we noted above, as of today, all transfers from BAM Trading's cold wallets must be initiated in PNK by a duly authorized member of BAM Trading's Clearing team, which consists solely of BAM Trading personnel. After this request is issued, at least four of the seven shards must approve the transfer request. As a result, no transfers may be approved without the

*Confidential Treatment Requested by BAM Trading Services Inc.*          BAM-WH-CORR-055

**WILMERHALE**

Jennifer Farer, Esq.
June 2, 2023

involvement of at least one BAM Trading shard holder.  As noted above, only  BAM Trading Clearing personnel are authorized to initiate transfers from BAM Trading's hot wallets and at least one BAM Trading shard holder must also approve those transfers.

**Request Item 19**:  *For the wallet addresses you provided with your recent submission, identify all assets held in each wallet and the volume and value of each asset held in each wallet.*

We previously produced copies of BAM Trading's omnibus hot wallets and omnibus cold wallets at BTS00833824 to BTS00833829.  These addresses can be used to obtain the real-time balance information for each wallet using the respective networks block explorers.  For example, https://etherscan.io/ allows anyone to generate the real-time balance of any wallet maintained on the Ether blockchain.

We are happy to provide information regarding the historic balances in BAM Trading's wallets at any point in time.  However, because these wallets are actively used, any balance snapshots would become immediately stale.  Accordingly, we thought it was more productive to provide the Staff with the tools to obtain real-time and ongoing information regarding the balances in the Company's digital asset wallets, given the timing constraints on this response and the burden required to generate that information.  As noted, we are happy to provide balance information for any point in time in a future production.

**Request Item 20**:  *Identify all wallet addresses that were shared, co-hosted, or used to transfer assets between Binance Holdings, BAM Trading, BAM Management, Zhao, and any Zhao or Binance-affiliated individual or entity, including Merit Peak and Sigma Chain.  The response to this request should include external wallets that are not accounts on either trading platform, deposit addresses, and transfers directly between storage wallets.*

All of BAM Trading's digital asset wallets are maintained on either the BAM Trading platform or, for certain staked assets, BitGo or Aegis Custody.  We previously produced copies of BAM Trading's omnibus hot wallets and omnibus cold wallets at BTS00833824 to BTS00833829.  These omnibus hot wallets would have been used to receive any assets transferred between BAM Trading and Mr. Zhao, BHL, or any other entity controlled by Mr. Zhao.

**Request Item 21**:  *Explain why wallet 0xf60c2Ea62EDBfE808163751D-D0d8693DCb30019c has direct transactions with Binance.com wallets.*

The above-referenced wallet address is a Binance.US hot wallet. When BAM Trading customers withdraw their funds from BAM Trading's platform, they may be sent from a wallet such as the one identified in this request.  In the instance where customers withdraw assets off of BAM Trading's platform to Binance.com, the transactions may appear on the blockchain as direct transactions between this wallet and a Binance.com wallet.

Jennifer Farer, Esq.
June 2, 2023

**Request Item 22**:  *Explain why almost all of the BUSD transferred to wallet 0xf60c2Ea62EDBfE808163751DD0d8693DCb30019c from the wallet you provided 0x34ea4138580435b5a521e460035edb19df1938c1, in early 2023.*

This transaction reflects a transfer of BUSD from BAM Trading's TSS-enabled cold wallet to its operational hot wallet as part of a normal course "top up" of the hot wallet's inventory. BUSD wallet x34ea4138580435b5a521e460035edb19df1938c1 serves as BAM Trading's BUSD TSS-enabled cold wallet; BUSD wallet 0xf60c2Ea62EDBfE808163751DD0d8693DCb30019c serves as BAM Trading's BUSD hot wallet.

**Request Item 24**:  *Identify the names, job titles, and time period of employment for all BAM Trading or BAM Management employees who were formally Binance Holdings employees.*

The Company is currently in the process of collecting information responsive to this request.

*     *     *

BAM Trading requests that this letter and all information contained therein (the "Confidential Material") be maintained in confidence by the SEC and its staff and be used solely for the purposes of this inquiry.  Accordingly, the Confidential Material has been marked "Confidential Treatment Requested by BAM Trading Services Inc." for reasons of personal privacy and business confidentiality.

The Confidential Material concerns or may concern customarily non-public, confidential and privileged business, financial, commercial, and personal information concerning BAM Trading and/or its personnel.  The Confidential Material is exempt from mandatory disclosure under various provisions of the Freedom of Information Act ("FOIA"), including 5 U.S.C. § 552(b)(7) (which protects certain "records or information compiled for law enforcement purposes"),[5] 5 U.S.C. § 552(b)(4) (which protects trade secrets as well as confidential commercial or financial information obtained from a person), 5 U.S.C. § 552(b)(6) (which protects files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"),[6] and 5 U.S.C. § 552(b)(7) (which protects records or information compiled for law enforcement purposes).  Because the Confidential Material relates to the activities of BAM Trading and not the activities of any federal agency, we believe it is exempt from disclosure under FOIA.[7]  The Commission treats records falling within the FOIA exemption categories to be "nonpublic" and "will generally not publish or make available to any person" such records.  17 C.F.R. § 200.80(b). Moreover, disclosure of this Confidential Material may be prohibited under 18 U.S.C. § 1905, and

---

[5]     *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

[6]     *See, e.g.*, *U.S. Dep't of Def. v. Federal Labor Relations Authority*, 510 U.S. 487 (1994).

[7]     5 U.S.C. §§ 552(b)(6) and (b)(7)(C); *U.S. Dep't of Def.*, *supra*; *see, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 449 (1989).

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023

further protections may be available under the Privacy Act of 1974, 5 U.S.C. § 552a.  Finally, the Confidential Material being produced voluntarily is protected from disclosure because it would not customarily be released to the public by BAM Trading.[8]

In accordance with 17 C.F.R. § 200.83 and other applicable laws and regulations, the Confidential Material is submitted to the SEC with BAM Trading's request, through the undersigned, that it be kept in a non-public file and that only SEC staff have access to it.  If any person not a member of the SEC staff (including without limitation any governmental employee) should request an opportunity to inspect or copy the Confidential Material, pursuant to FOIA or otherwise, or if you or any member of the SEC staff contemplates disclosure of the Confidential Material to any other person, we request that the undersigned immediately be notified of such request, be furnished a copy of all written materials pertaining to such request (including but not limited to the request itself), and be given advance notice of any intended release so that we may, if deemed necessary or appropriate, pursue any remedies available.  *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).  We expect to be given the opportunity to object to such disclosure. We request that you telephone the undersigned rather than rely upon the U.S. mail for such notice.

Should the SEC be inclined to grant any FOIA request for the Confidential Material, BAM Trading expects that the procedures set forth in 17 C.F.R. § 200.83 and Executive Order 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), will be followed.  In that case, BAM Trading will further substantiate its request for confidential treatment, and will request a hearing on the claim of exemption.

The requests set forth in the preceding paragraphs also apply to any form of communication of any sort, including, but not limited to any tapes, memoranda, notes, transcripts, electronic documents, or communications containing extracts, summaries, or quotes,  or other writings of any sort whatsoever that are made by, or at the request of, any employee of the SEC (or any other governmental agency) and which (1) incorporate, include or relate to any of the Confidential Material; or (2) refer to any conference, meeting, or telephone conversation between BAM Trading, its current or former employees, representatives, agents, auditors, or counsel on the one hand and employees of the SEC (or any other government agency) on the other, relating to the Confidential Material.

The Confidential Material remains the property of BAM Trading.  If the SEC staff determines to transfer any of the Confidential Material to another federal agency, we request that you forward a copy of this letter to any such agency with the Confidential Material.  We request that you indicate to any such agency that BAM Trading has requested the return of this material to the undersigned at the completion of the agency's efforts in this matter and has requested that this material be accorded confidential treatment.

---

[8]        *See, e.g.*, *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993).

WILMERHALE

Jennifer Farer, Esq.
June 2, 2023


Provision of the Confidential Material is not intended to, and does not, waive any applicable privilege or other legal basis under which information may not be subject to production. If it were found that production of the Confidential Material constitutes disclosure of otherwise privileged matters, such disclosure would be inadvertent.  By the productions of such documents, BAM Trading does not intend to and has not waived the attorney-client privilege or any other protections.

*      *      *

Please feel free to contact me if you have any questions about these matters.


Sincerely,


/s/ William R. McLucas
William R. McLucas

# EXHIBIT BH-19

| | |
|---|---|
| **From:** | Tenreiro, Jorge |
| **To:** | Beville, Matthew; Farer, Jennifer; Grime, Richard W. |
| **Cc:** | Hirsch, David L; Kim, Paul E.; Hitchins, Kathleen M; Scarlato, Matthew; Smith, Tiffany; Martens, Matthew T.; gcanellos@milbank.com; Murphy, J. Emmett; Nasse, David; Tarasevich, Deborah; douglas.yatter@lw.com; Zerwitz, Martin; McLucas, William; William.Baker@LW.com; McGee, Jacob A. |
| **Subject:** | RE: Binance |
| **Date:** | Monday, June 5, 2023 12:30:49 PM |
| **Attachments:** | SEC v. Binance - SEC Version of Proposed Stip - 2023.06.05 - 12.28 pm DRAFT.docx |
| | Stipulation Redline.docx |

**[WARNING: External Email]**

Counsel—

Thank you for your respective letters regarding this matter received earlier this morning.

We cannot accept your proposals as drafted.  In the interest of resolving this matter expeditiously, we will not respond to all the points raised in your more recent letters.  Suffice it to say that we do not agree with your characterization of the tenor, tone, and substance of our conversations with respect to this issue.

In the continued interest of reaching a compromise, we propose this best and final version of the proposed stipulation.  We have accepted many of your edits but, as you can see, we cannot agree to have the as-defined "Binance Entities" be able to withdraw funds from the platform, at least until an accounting establishes the proper ownership of assets and the security of sufficient assets to honor all withdrawals.  The parties retain the right to seek relief from the order, and we have made that explicit.  Nor can we agree to enter a stipulation that does not explicitly bind all parties.  To the extent you wish to continue to contest the jurisdiction of the court over certain parties as to the merits of the case, we are amenable to permitting you to contest jurisdiction beyond the confines of the proposed standstill order, as the attached draft reflects.  Finally, we will not agree to file this under seal.

Please return executed stipulations no later than **4 p.m. ET** today.  We intend to seek emergency relief from the Court after that time and, as previously noted, we reserve the right to seek all appropriate relief, including relief beyond the confines of the proposed compromise.

Thank you

Jorge

---

**From:** Beville, Matthew <Matthew.Beville@wilmerhale.com>
**Sent:** Monday, June 5, 2023 12:14 AM
**To:** Farer, Jennifer <FarerJ@SEC.GOV>; Grime, Richard W. <RGrime@gibsondunn.com>; Tenreiro, Jorge <tenreiroj@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>;

gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David
<nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; douglas.yatter@lw.com;
Zerwitz, Martin <ZerwitzM@SEC.GOV>; McLucas, William <William.McLucas@wilmerhale.com>;
William.Baker@LW.com; McGee, Jacob A. <JMcGee@gibsondunn.com>
**Subject:** RE: Binance

> **CAUTION:** This email originated from outside of the organization. Do not click links or open
> attachments unless you recognize the sender and know the content is safe.

**Confidential Treatment Requested**

All,

Attached please find our proposed revisions to the draft Consent Order, along with a short
transmittal letter explaining certain of our proposed changes.  The Word version of the Consent
Order is clean; the PDF reflects our edits to the version you sent on Friday.

We apologize for the late response but we have been working all day to craft a proposal that
addresses the issue you have identified and the appropriate relief.  We are prepared to discuss the
proposal at your convenience. Again, we are sorry for the late hour at which we are sending this.

Best,
Matt

**Matthew Beville | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6255 (t)
+1 202 663 6363 (f)
matthew.beville@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be
privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to
postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Farer, Jennifer <FarerJ@SEC.GOV>
**Sent:** Saturday, June 3, 2023 8:24 PM
**To:** Grime, Richard W. <RGrime@gibsondunn.com>; Tenreiro, Jorge <tenreiroj@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M
<hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany
<Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>;
gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David
<nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; douglas.yatter@lw.com;

Beville, Matthew <Matthew.Beville@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>; McLucas, William <William.McLucas@wilmerhale.com>; William.Baker@LW.com>; McGee, Jacob A. <JMcGee@gibsondunn.com>
**Subject:** RE: Binance

EXTERNAL SENDER

Counsel,

Following up on our earlier call, the SEC team discussed the issue you raised concerning the process and timing of moving the crypto assets to new wallets as presented in our proposed stipulation and consent order.  We maintain that is the appropriate process to give us sufficient comfort as to the security of assets, including further addressing some of our concerns relating to custody and control by Binance Holdings and Mr. Zhao.  We understood from the discussion that you are willing to engage in that process, but that it would take more time than what was outlined in our initial proposal.  Accordingly, in the interest of expediency and reaching a prompt resolution, we propose the following revision to paragraph II.2. in the proposed stipulation and consent order that we believe strikes an appropriate balance in addressing the parties' respective considerations.  We also propose a new term below as a mechanism for the parties to raise any potential future issues relating to the consent order.

**IT IS FURTHER ORDERED** that within **5 days** of entry of the Consent Order, Defendants will transfer all private and administrative keys, and any portion or copy thereof (including the devices and/or software managing such keys), for all wallets holding Customer Crypto Assets to BAM Trading officers and employees who are located in the United States.  These private and administrative keys, and any portion or copy thereof (including the devices and/or software managing such keys), will remain in the sole possession, custody, and control of BAM Trading officers and employees located in the United States and will not be provided to or in any way shared with the Binance Entities.  None of the Binance Entities will have any of the private or administrative keys, or any portion or copy thereof (including the devices and/or software managing such keys), for wallets holding Customer Crypto Assets.

**IT IS FURTHER ORDERED** that within **14 days** of entry of the Consent Order, Defendants will begin the process of transferring all Customer Crypto Assets to new wallets with new private and administrative keys, which process will be completed **within 6 months**.  The private and administrative keys, and any portion or copy thereof (including the devices and/or software managing such keys), will be in the sole possession, custody, and control of BAM Trading officers and employees who are located in the United States, and these private and administrative keys, and any portion or copy thereof (including the devices and/or software managing such keys), will not be provided to or in any way shared with the Binance Entities.  None of the Binance Entities will have administrative capabilities, any of the private or administrative keys, or any portion or copy thereof (including the devices and/or software managing such keys), for wallets holding Customer Crypto Assets.  **Within 3 days** of the establishment of each new wallet, BAM Trading will provide counsel of record for the SEC with the addresses for all new wallets holding Customer Assets, both hot and cold, and will identify the specific crypto asset(s) held within each wallet.

**IT IS FURTHER ORDERED** that, upon notice to the other parties, any party may seek from the Court relief from the terms of the Consent Order or additional relief.

We believe an agreement on these various issues will sufficiently address the parties' respective concerns at this stage.  However, as noted, time is of the essence, and we will need an executed

agreement by <u>noon tomorrow</u> that includes oversight and a mechanism for enforcement by the court. As previously discussed, if we are not able to enter into an agreement, we will seek all available preliminary relief before the court as necessary.

We look forward to your response and are available, as needed, before noon tomorrow to discuss.

Thank you.

Jennifer

**Jennifer L. Farer**
U.S. Securities and Exchange Commission
100 F Street N.E. | Washington, D.C. 20549

---

**From:** Grime, Richard W. <RGrime@gibsondunn.com>
**Sent:** Saturday, June 3, 2023 2:50 PM
**To:** Tenreiro, Jorge <tenreiroj@SEC.GOV>; Farer, Jennifer <FarerJ@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; douglas.yatter@lw.com; Beville, Matthew <Matthew.Beville@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>; McLucas, William <William.McLucas@wilmerhale.com>; William.Baker@LW.com; McGee, Jacob A. <JMcGee@gibsondunn.com>
**Subject:** RE: Binance

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Great; will send a zoom.  I'll send to you and Jennifer and then please pass to anyone else on your side.

**Richard W. Grime**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, D.C. 20036-5306
DD.+1 202 955 8219 • Mobile +1 202 374 3783

---

**From:** Tenreiro, Jorge <tenreiroj@SEC.GOV>
**Sent:** Saturday, June 3, 2023 2:48 PM
**To:** Grime, Richard W. <RGrime@gibsondunn.com>; Farer, Jennifer <FarerJ@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; douglas.yatter@lw.com;

Beville, Matthew <Matthew.Beville@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>;
McLucas, William <William.McLucas@wilmerhale.com>; William.Baker@LW.com>; McGee, Jacob A.
<JMcGee@gibsondunn.com>
**Subject:** Re: Binance

**[WARNING: External Email]**

Fine

---

**From:** Grime, Richard W. <RGrime@gibsondunn.com>
**Sent:** Saturday, June 3, 2023 2:38:32 PM
**To:** Farer, Jennifer <FarerJ@SEC.GOV>; Tenreiro, Jorge <tenreiroj@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M
<hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany
<Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>;
gcanellos@milbank.com <gcanellos@milbank.com>; Murphy, J. Emmett <MurphyJoh@SEC.GOV>;
Nasse, David <nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>;
douglas.yatter@lw.com <douglas.yatter@lw.com>; Beville, Matthew
<Matthew.Beville@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>; McLucas, William
<William.McLucas@wilmerhale.com>; William.Baker@LW.com <William.Baker@LW.com>; McGee,
Jacob A. <JMcGee@gibsondunn.com>; gcanellos@milbank.com <gcanellos@milbank.com>
**Subject:** RE: Binance

> **CAUTION:** This email originated from outside of the organization. Do not click links or open
> attachments unless you recognize the sender and know the content is safe.

Jennifer/Jorge,

We would like to schedule a call today to discuss the proposed stipulation and consent order.  Are
you available at 4:00 pm today?  If not, please let us know a convenient time.

Thanks.

**Richard W. Grime**

GIBSON DUNN
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, D.C. 20036-5306
DD.+1 202 955 8219 • Mobile +1 202 374 3783

---

**From:** Farer, Jennifer <FarerJ@SEC.GOV>
**Sent:** Friday, June 2, 2023 5:13 PM
**To:** Tenreiro, Jorge <tenreiroj@SEC.GOV>; Beville, Matthew <Matthew.Beville@wilmerhale.com>;
McLucas, William <William.McLucas@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M
<hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany
<Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>;
gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David
<nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; Grime, Richard W.

<RGrime@gibsondunn.com>; douglas.yatter@lw.com
**Subject:** RE: Binance[WARNING : MESSAGE ENCRYPTED]

**[WARNING: External Email]**

Apologies – please use the attached version, which removes the inadvertent header.  This document is not covered by, and sending does not constitute a waiver of, any privilege or other protection.

Thank you.

**Jennifer L. Farer**
U.S. Securities and Exchange Commission
100 F Street N.E. | Washington, D.C. 20549

**From:** Farer, Jennifer
**Sent:** Friday, June 2, 2023 5:07 PM
**To:** Tenreiro, Jorge <tenreiroj@SEC.GOV>; Beville, Matthew <Matthew.Beville@wilmerhale.com>; McLucas, William <William.McLucas@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; rgrime@gibsondunn.com; douglas.yatter@lw.com
**Subject:** RE: Binance[WARNING : MESSAGE ENCRYPTED]

Counsel,

As discussed during this afternoon's call, attached please find a proposed stipulation and consent order, which we believe strikes an appropriate balance to address the parties' concerns in the near term in connection with the issues we have raised about the segregation, security, and availability of investor assets.

We will need an executed agreement by 5:00 p.m. tomorrow, so please let us know in advance of that time if you have any questions or items to discuss, including proposed alternative solutions, to ensure there is sufficient time to consider any issues.  If we are not able to enter into an agreement to give us sufficient comfort as to customer assets, we will seek all available preliminary relief before the court as necessary.

Thank you.

Jennifer

**Jennifer L. Farer**
U.S. Securities and Exchange Commission
100 F Street N.E. | Washington, D.C. 20549

**From:** Tenreiro, Jorge <tenreiroj@SEC.GOV>
**Sent:** Friday, June 2, 2023 1:19 PM
**To:** Beville, Matthew <Matthew.Beville@wilmerhale.com>; Farer, Jennifer <FarerJ@SEC.GOV>;
McLucas, William <William.McLucas@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M
<hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany
<Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>;
gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David
<nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; rgrime@gibsondunn.com;
douglas.yatter@lw.com
**Subject:** RE: Binance[WARNING : MESSAGE ENCRYPTED]

Hi Matt:
Thanks for the letter.  We understand based on our call from yesterday, we understand that at some
point today you may be sending us additional information in response to our questions.  Do you
have an update on the timing for that?
Separate from that response, we would like to get on the phone as soon as you are able to propose
a way out of this particular problem with respect to ultimate control of BAM customer assets.
Please indicate your earliest availability, and we will make ourselves immediately available to try to
reach an agreement.
Thank you,
Jorge

**From:** Beville, Matthew <Matthew.Beville@wilmerhale.com>
**Sent:** Friday, June 2, 2023 1:15 AM
**To:** Farer, Jennifer <FarerJ@SEC.GOV>; Tenreiro, Jorge <tenreiroj@SEC.GOV>; McLucas, William
<William.McLucas@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M
<hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany
<Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>;
gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David
<nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; rgrime@gibsondunn.com;
douglas.yatter@lw.com
**Subject:** RE: Binance[WARNING : MESSAGE ENCRYPTED]

**CAUTION:** This email originated from outside of the organization. Do not click links or open
attachments unless you recognize the sender and know the content is safe.

**Confidential Treatment Requested**

All,

Attached please find our initial response to your May 30 letter, along with a copy of the formal
termination of the Wallet Custody Agreement.  We will provide further responses to your requests

tomorrow.

Best,
Matt

**Matthew Beville | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6255 (t)
+1 202 663 6363 (f)
matthew.beville@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Farer, Jennifer <FarerJ@SEC.GOV>
**Sent:** Tuesday, May 30, 2023 4:38 PM
**To:** Beville, Matthew <Matthew.Beville@wilmerhale.com>; Tenreiro, Jorge <tenreiroj@SEC.GOV>;
McLucas, William <William.McLucas@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M
<hitchinsk@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany
<Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>;
gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David
<nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; rgrime@gibsondunn.com;
douglas.yatter@lw.com
**Subject:** RE: Binance[WARNING : MESSAGE ENCRYPTED]

**EXTERNAL SENDER**

Counsel,

Please see the attached letter in furtherance of our communications concerning custody and control of fiat currency and crypto assets.

Thank you.

Jennifer

**Jennifer L. Farer**
U.S. Securities and Exchange Commission
100 F Street N.E. | Washington, D.C. 20549

**From:** Beville, Matthew <Matthew.Beville@wilmerhale.com>
**Sent:** Friday, May 26, 2023 9:22 PM
**To:** Tenreiro, Jorge <tenreiroj@SEC.GOV>; McLucas, William <William.McLucas@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Farer, Jennifer <FarerJ@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>
**Subject:** RE: Binance[WARNING : MESSAGE ENCRYPTED]

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Confidential Treatment Requested**

All,

Attached please find a letter providing further information in response to your questions regarding the custody of fiat currency and digital assets held on behalf of BAM Trading's customers.  Please note the accompanying documents are password protected.  I will send the password under separate cover.

Thanks,
Matt

**Matthew Beville | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6255 (t)
+1 202 663 6363 (f)
matthew.beville@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Beville, Matthew <Matthew.Beville@wilmerhale.com>
**Sent:** Thursday, May 25, 2023 11:15 PM
**To:** Tenreiro, Jorge <tenreiroj@SEC.GOV>; McLucas, William <William.McLucas@wilmerhale.com>;

Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Farer, Jennifer <FarerJ@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>
**Subject:** RE: Binance

Hi all,

Attached please find a letter memorializing our conversation from yesterday afternoon regarding the custody of fiat currency and digital assets held on behalf of BAM Trading's customers.  We will follow-up with a supplemental submission addressing your specific questions tomorrow afternoon.

Best,
Matt

**Matthew Beville | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6255 (t)
+1 202 663 6363 (f)
matthew.beville@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Tenreiro, Jorge <tenreiroj@SEC.GOV>
**Sent:** Wednesday, May 24, 2023 8:58 PM
**To:** McLucas, William <William.McLucas@wilmerhale.com>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Farer, Jennifer <FarerJ@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Beville, Matthew <Matthew.Beville@wilmerhale.com>; gcanellos@milbank.com; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>
**Subject:** RE: Binance

**EXTERNAL SENDER**

Hi Bill and welcome George:

Thanks for the below email and again for talking to us earlier today.  However, we remain awaiting written confirmation from you regarding the safeguarding of client assets at BAM Trading Services Inc.—specifically, confirming that all U.S. customer assets (fiat and crypto) are segregated, secured, unencumbered, and available for immediate withdrawal by Binance.US customers.  As part of that memorialization, please include the following information:

- The total amounts of Binance.US customer assets (both crypto and fiat) held and/or controlled by BAM Trading, Changpeng Zhao, Binance Holdings Limited, Prime Trust LLC, or any other entity or individual.
- Whether the 2022 audits for BAM Trading and BAM Management US Holdings Inc. have been completed and please provide copies if they have.
- The public blockchain addresses for all wallets currently holding Binance.US customers' crypto assets.
- The custody and control arrangements for all crypto assets and private keys (including, but not limited to, protocol information for the control and authorization of transfer of crypto assets; identification and location of key shard holders and whether they are currently or were formerly employed by Binance Holdings (or other Binance entity); location of any hardware wallets; and Zhao's and Binance Holdings' respective roles and authority over crypto assets held and/or controlled on behalf of Binance.US customers and BAM Trading, including any authority – whether formal or informal – to transfer crypto assets).
- Details of accounts (bank account numbers and amounts) where segregated (or non-segregated, if any) client fiat assets are held.
- Custody and control arrangements over customer fiat (including information sufficient to prevent dissipation of assets, identification of individuals with authorization to transfer assets).
- Details on how Binance.US customer assets (both crypto and fiat) are segregated from BAM Trading's, BAM Management's, or any affiliated entity's or individual's assets.

Note that we will not consider information provided above to be subject to FRE 408.

Thank you,

Jorge

---

**From:** McLucas, William <William.McLucas@wilmerhale.com>
**Sent:** Wednesday, May 24, 2023 8:14 PM
**To:** Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Cc:** Tenreiro, Jorge <tenreiroj@SEC.GOV>; Hirsch, David L <hirschd@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Farer, Jennifer <FarerJ@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>; Martens, Matthew T. <Matthew.Martens@wilmerhale.com>; Beville, Matthew <Matthew.Beville@wilmerhale.com>; gcanellos@milbank.com

**Subject:** Binance

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Martin,

We are working through the Consent language as quickly and as carefully as we can but given the complexity of the proposed terms and our concerns about certain of the provisions, we are not yet prepared to go through the proposal with the staff.

More important, the inclusion of a charge and proposed consent to an injunction under Section 17(a) of the Securities Act is a demand to which BAM Trading will not agree. For the reasons we have discussed previously, as well as the collateral consequences on individuals, if that provision remains in the proposed settlement BAM Trading will not settle.

Otherwise, we are prepared to work through and offer our position on the additional terms of the Consent as quickly as possible.

Bill McLucas

---

**From:** Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Sent:** Wednesday, May 24, 2023 3:16 PM
**To:** Grime, Richard W. <RGrime@gibsondunn.com>; Brooker, Stephanie <SBrooker@gibsondunn.com>; Day, M. Kendall <KDay@gibsondunn.com>; Plack, Laura J. <LPlack@gibsondunn.com>; Kim, Thomas J. <TKim@gibsondunn.com>; benjamin.naftalis@lw.com; Douglas.Yatter@lw.com; natalie.rao@lw.com; McGee, Jacob A. <JMcGee@gibsondunn.com>; McLucas, William <William.McLucas@wilmerhale.com>; Beville, Matthew <Matthew.Beville@wilmerhale.com>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Tenreiro, Jorge <tenreiroj@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; Norman, Donna K. <NormanD@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Steele, Colby A <steelec@SEC.GOV>; Rosenfield, Ann L. <ROSENFIELDA@SEC.GOV>; Farer, Jennifer <FarerJ@SEC.GOV>; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Augustini, Hope Hall <AugustiniH@SEC.GOV>; Baker, Michael <BakerMic@SEC.GOV>
**Subject:** RE: Binance

> **EXTERNAL SENDER**

Counsel,
Please let us know promptly when you are available for a call to discuss the draft consents we sent yesterday.

**Martin L. Zerwitz**
U.S. Securities & Exchange Commission
Division of Enforcement, Crypto Assets and Cyber Unit
100 F Street, N.E., Washington, D.C. 20549
(202) 551-4566
ZerwitzM@sec.gov

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. Please do not disseminate without prior consent. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

**From:** Zerwitz, Martin
**Sent:** Tuesday, May 23, 2023 2:44 PM
**To:** Grime, Richard W. <RGrime@gibsondunn.com>; Brooker, Stephanie <SBrooker@gibsondunn.com>; Day, M. Kendall <KDay@gibsondunn.com>; Plack, Laura J. <LPlack@gibsondunn.com>; Kim, Thomas J. <TKim@gibsondunn.com>; benjamin.naftalis@lw.com; Douglas.Yatter@lw.com; Natalie.Rao@lw.com; McGee, Jacob A. <JMcGee@gibsondunn.com>; william.mclucas@wilmerhale.com; Beville, Matthew <Matthew.Beville@wilmerhale.com>; Smith, Tiffany <Tiffany.Smith@wilmerhale.com>
**Cc:** Hirsch, David L <hirschd@SEC.GOV>; Tenreiro, Jorge <tenreiroj@SEC.GOV>; Tarasevich, Deborah <TarasevichD@SEC.GOV>; Norman, Donna K. <NormanD@SEC.GOV>; Kim, Paul E. <KimPa@sec.gov>; Hitchins, Kathleen M <hitchinsk@SEC.GOV>; Steele, Colby A <steelec@SEC.GOV>; Rosenfield, Ann L. <ROSENFIELDA@SEC.GOV>; Farer, Jennifer <FarerJ@SEC.GOV>; Murphy, J. Emmett <MurphyJoh@SEC.GOV>; Scarlato, Matthew <scarlatom@SEC.GOV>; Nasse, David <nassed@SEC.GOV>; Augustini, Hope Hall <AugustiniH@SEC.GOV>; Baker, Michael <BakerMic@SEC.GOV>; Zerwitz, Martin <ZerwitzM@SEC.GOV>
**Subject:** Binance

CONFIDENTIAL SETTLEMENT COMMUNICATION
PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE

Counsel,

Attached please find drafts of proposed consents of Binance Holdings Limited, BAM Trading Services, Inc., BAM Management US Holdings, Inc., and Changpeng Zhao. These drafts should be considered preliminary and still subject to revision and approval based on further internal review and Commission authorization. Moreover, to the extent these consents contain certain standard settlement language applicable in all SEC federal district court consents, our ability to modify those provisions is extremely limited, if not non-existent.

Should you have questions about any of the provisions in the consents, we can be available for a call tomorrow to answer any such questions. We would like to receive your substantive response to these proposed consents no later than COB Friday, so that we may continue to move our discussions

forward.

Martin

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# EXHIBIT BH-20

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES, INC., BAM MANAGEMENT US HOLDINGS, INC., and CHANGPENG ZHAO, | ) ) ) ) |
| | ) |
| Defendants. | ) |

Civil Action No. _____

**PROPOSED STIPULATION AND CONSENT ORDER**

Pursuant to Section 21(d) of the Securities Exchange Act of 1934 and Section 20(b) of the Securities Act, and in order to preserve the status quo, Plaintiff Securities and Exchange Commission ("Commission" or "SEC") and Defendants Binance Holdings Limited ("Binance"), BAM Trading Services, Inc. ("BAM Trading"), Changpeng Zhao ("Zhao"), and BAM Management US Holdings, Inc. ("BAM Management," together with Binance, BAM Trading, Zhao, the "Stipulating Defendants," and together with the SEC the "Stipulating Parties"), hereby stipulate and consent, without a hearing, to the Court's entry of this Stipulation and Consent Order ("Consent Order") as set forth below pending the Court's final adjudication of this matter or until further order of the Court.

The Stipulating Parties agree and the Court finds that the Court has jurisdiction over the subject matter of this action, and that venue properly lies in this District.

Accordingly, based on the agreement of the Stipulating Parties and for good cause shown, it is hereby

1

**ORDERED**:

## I.

On or before the date the Court issues this Consent Order, the Stipulating Defendants shall repatriate to the United States and confirm that BAM Trading maintains possession, custody and control in the United States of all fiat currency and crypto assets that are deposited, held, traded, or accrued by customers, including affiliated and non-affiliated liquidity providers (hereinafter referred to as "Customers") on the crypto trading platform commonly known as "Binance.US" or otherwise held for the benefit of BAM Customers, including, but not limited to, private and administrative keys, and any portion or copy thereof (including the devices and/or software managing such keys) and any hardware crypto asset wallets (hereinafter referred to as "Customer Fiat Assets" or "Customer Crypto Assets" and, collectively, "Customer Assets"), except as otherwise specified in this Consent Order.  For the avoidance of doubt, U.S.-based personnel for BAM Trading and BAM Management, not to include Zhao, will have complete control over Customer Fiat Assets and Customer Crypto Assets, including all private and administrative keys, and any portion or copy thereof (including the devices and/or software managing such keys) that control any wallets, staking operations, and/or any movement of assets, except as otherwise specified in this Consent Order.  Nothing in this paragraph will prevent BAM Trading from relying on non-affiliated third-party custodians to provide custody and related services.

## II.

**IT IS FURTHER ORDERED** that on or before the date the Court issues this Consent Order, Stipulating Defendants will, through their officers and employees or a non-affiliated third party custodian, ensure that BAM Trading and BAM Management obtain and maintain sole

2

possession, custody, and control of all Customer Assets, and all transfers and withdrawals of Customer Assets will solely be under the direction and control of BAM Trading and BAM Management, through officers and employees located in the United States, or under the control of a non-affiliated third party custodian;

1.     **IT IS FURTHER ORDERED** that BAM Trading and BAM Management will not provide possession, custody, or control over Customer Assets to any individual or entity, including Binance, Zhao, and any individual or entity with any affiliation, agreement, or other relationship with Binance, Zhao, or any Zhao- owned or -controlled entity, with the exception of BAM Trading and BAM Management (collectively, "Binance Entities").  BAM Trading and BAM Management will not designate any such individual or entity as an account holder or signatory of any account holding Customer Assets, without first obtaining leave of the Court. This paragraph does not limit BAM Trading's ability to provide customers other than the Binance Entities with possession, custody, or control over their own Customer Assets or rely on non-affiliated third-party custodians to provide custody and related services for Customer Assets.

2.     **IT IS FURTHER ORDERED** that within 14 days of entry of the Consent Order, Stipulating Defendants will begin to transfer all Customer Crypto Assets to new wallets with new private keys. These private keys, and any portion or copy thereof, will be in the sole possession, custody, and control of BAM Trading officers and employees who are located in the United States, and these private keys, and any portion or copy thereof, will not be provided to or in any way shared with the Binance Entities. BAM Trading shall confer with counsel of record for the SEC regarding a reasonable timeline for completing this work and will provide them with the addresses for all new wallets holding Customer Assets, both hot and cold, and

will identify the specific crypto asset(s) held within each wallet.

3.      **IT IS FURTHER ORDERED** that BAM Trading and BAM Management may continue to make payments for the purchase of goods and services, salaries for BAM Trading and BAM Management personnel, including preexisting benefits, professional fees, and other similar ordinary-course expenditures for the operation of their businesses, provided, however, that BAM Trading and BAM Management may not in any circumstance make payments, or transfer any assets, to or for the benefit of any Binance Entity or any individual or entity acting on behalf of any such Binance Entity without further order of the Court.

4.      **IT IS FURTHER ORDERED** that within **14 days** of entry of the Consent Order, Stipulating Defendants will ensure that private keys, and any portion or copy thereof, will be in the sole possession, custody, and control of BAM Trading officers and employees who are located in the United States, or by non-affiliated third-party custodians.  These private keys, and any portion or copy thereof, will not be provided to or in any way shared with the Binance Entities.  BAM Trading will keep current its list of hot and cold wallets and make that list available to counsel of record for the SEC upon request.

5.      **IT IS FURTHER ORDERED** that BAM Trading may continue to transfer Customer Assets to support redemptions of Customer Crypto Assets by the relevant customer, excluding the Binance Entities, and otherwise subject to the prohibition above that BAM Trading may not in any circumstance transfer Customer Assets to or for the benefit of any of the Binance Entities.

6.      **IT IS FURTHER ORDERED** that BAM Trading may transfer custody of Customer Crypto Assets deposited, held, staked, or accrued through BAM Trading's staking-as-a-service program ("Staking Assets") to custodians BitGO or Aegis provided the following

4

criteria are met:

    a.  the control of assets in these wallets is maintained and directed solely by BAM Trading officers and employees located in the United States or by BitGO and Aegis;

    b.  if BAM Trading holds the private keys for these wallets, or any portion or copy thereof, custody and control of these keys is held in the United States by BAM Trading personnel; and

    c.  all transfers require the approval of both BAM Trading and, as necessary, BitGO and Aegis.

    d.  The Binance Entities shall not have possession, custody, or control of these Staking Assets, including, but not limited to, any authority, formally or informally, directly or indirectly, to control, transfer, or withdraw, these Staking Assets.

## III.

**IT IS FURTHER ORDERED** that Stipulating Defendants, their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, be and they hereby are restrained and enjoined from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to Stipulating Defendants, wherever located and in whatever form, electronic or otherwise, until further Order of this Court.

**IV.**

**IT IS FURTHER ORDERED** that, on or before **20 days** from the date the Court enters this Consent Order, the Stipulating Defendants, to the best of their knowledge and ability, provide counsel for the SEC with a preliminary list of:

1. accounts and wallets holding Customer Fiat, Customer Crypto Assets, and funds or assets of either BAM entity; and

2. customers of the Binance.US trading platforms and related services, and the balance of Customer Assets associated with each customer's Binance.US account.

**IT IS FURTHER ORDERED** that, on or before **20 days** from the date the Court enters this Consent Order, Binance will provide counsel for the SEC with details about the users on the Binance.com platform previously reflected in the aggregate U.S. KYC and potential U.S. non-KYC trading datasets produced to the SEC on December 6, 2021 and August 18, 2022 reflecting U.S. KYC users who engaged in transactions on Binance.com beginning on June 1, 2019 and ending in September 2021 and potential U.S. non-KYC users who engaged in transactions on Binance.com beginning on June 1, 2019 and ending on January 19, 2022. To the extent such users remain on the Binance.com platform, Binance will provide counsel for the SEC with details of their restricted account balances.

**IT IS FURTHER ORDERED** that, on or before **45 days** from the date the Court issues this Consent Order, the Stipulating Defendants shall serve upon the Commission a verified written accounting, which the Stipulating Defendants must sign under penalty of perjury, providing the following information;

1. Each account or wallet holding Customer Assets or assets of either BAM entity, or maintained in any BAM entity's name, held by any BAM entity or for any BAM entity's

direct or indirect beneficial interest, or over which any BAM entity exercised any direct or indirect control from January 1, 2023, through the date of the accounting, including the name of the financial institution, exchange, or other entity holding such account or wallet, name and last four digits of the account number, and the wallet address; and

2.      All assets, funds, crypto assets, securities, or other property, real or personal, within each BAM entity's possession, custody, or control, that is valued greater than $1,000, that was transferred to or for the benefit of any Defendant or any Binance Entity from January 1, 2023, to the date of the accounting, including a description of each transferred asset, the name of the recipient, the date of the transfer, and the reason for the transfer;

**V.**

**IT IS FURTHER ORDERED THAT**, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure, discovery shall proceed as follows:

1.      For the next 90 days, the SEC may conduct expedited discovery of the Stipulating Defendants, provided that such expedited discovery shall not commence against Binance and Zhao for 45 days, concerning the possession, custody, control, transfer or movement of Customer Assets and their security, segregation, availability, and any encumbrances or limitations that would make them unavailable for transfer or withdrawal by customers, including, but not limited to type, identity, location, value, custody, control, restrictions, and whether there are sufficient assets to satisfy customer liabilities or meet customer claims for Customer Assets held on their behalf. This limited expedited discovery pertaining to the Customer Assets shall not be counted against any discovery limits imposed under the Federal Rules of Civil Procedure;

2.      Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, the SEC may take depositions of BAM Trading or BAM Management personnel or Binance personnel involved in asset custody or related software development tasks regarding the possession, custody, control, transfer or movement of Customer Assets upon oral examination on 10 calendar days' notice of any such deposition. As to such personnel, the SEC may depose such witnesses after serving a deposition notice by email, hand, or overnight courier upon such individuals, and without serving a subpoena on such witness. If the Parties agree to conduct any depositions virtually, and the oath of the deponent may be administered remotely by the court reporter, through audio-video means, and this oath shall have the same effect as if given in the physical presence of the deponent. Depositions that have not been signed by the witness may be used for purposes of any hearing relating to this preliminary injunction.  Absent good cause, depositions of persons located outside the United States shall be conducted remotely;

3.      Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure the Stipulating Defendants shall answer any interrogatories served by the SEC regarding the possession, custody, control, transfer or movement of Customer Assets within 20 calendar days of service of such interrogatories;

4.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, the Stipulating Defendants shall produce all documents requested by the SEC regarding the possession, custody, control, transfer or movement of Customer Assets within 10 calendar days of service of such request, with production of the documents made to counsel of record for the SEC or such other person or place as counsel for the SEC may direct in writing; and

5.      All written responses to the SEC's requests for discovery under the Federal Rules of Civil Procedure shall be delivered electronically, or such other place and person as counsel

for the SEC may direct in writing.

**IT IS FURTHER ORDERED THAT** nothing in this Consent Order shall otherwise alter the rights, obligations, or duties of the Stipulating Defendants.

## VI.

**IT IS FURTHER ORDERED THAT** for purposes of this action only Stipulating Defendants have agreed to waive service of the Summons and Complaint pursuant to Federal Rule of Civil Procedure 4(d) and to accept service through counsel of record of any further filing or other process in this case.

**IT IS FURTHER ORDERED THAT** nothing in this Consent Order shall otherwise alter the rights, obligations, or duties of the Stipulating Defendants.

## VII.

**IT IS FURTHER ORDERED THAT** this Court shall retain jurisdiction over the Stipulating Defendants in order to implement and carry out the terms of this Consent Order.

## VIII.

The parties retain the right to seek additional relief, or relief from this Consent Order, as available under the Federal Rules of Civil Procedure and applicable law, including but not limited to Binance's and Zhao's ability to contest jurisdiction other than jurisdiction to impose and enforce this Consent Order.


**SO AGREED** this _____ day of June, 2023

| | |
|---|---|
| s/Matthew Scarlato_____ | _____ |
| Matthew Scarlato | Counsel for BAM Trading Services, Inc. |
| Jennifer L. Farer | |
| J. Emmett Murphy | |
| U.S.   SECURITIES   AND | |
|        EXCHANGE COMMISSION | _____ |
| 100 F Street N.E. | Counsel for BAM Management US Holdings, |
| Washington, | Inc. |
| D.C. | |
| Phone: (202) 551-3746 (Scarlato) | |
|        (202) 551-5072 (Farer) | |
|        (212) 336-0078 (Murphy) | _____ |
| Emails:    scarlatom@sec.gov | Counsel for Binance Holdings Limited Inc. |
|           farerj@sec.gov | |
|           murphyJoh@sec.gov | |
|           v | _____ |
| | Counsel for Changpeng Zhao |
| *Counsel for Plaintiff* | |

**SO ORDERED** this ____ day of June, 2023.

_____

UNITED STATES DISTRICT JUDGE