# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

BINANCE HOLDINGS LIMITED,
BAM TRADING SERVICES INC.,
BAM MANAGEMENT US HOLDINGS INC.,
AND CHANGPENG ZHAO,

Defendants.

**No. 1:23-cv-01599 (ABJ)**

## DEFENDANTS BAM TRADING SERVICES INC. AND BAM MANAGEMENT US HOLDINGS INC.'S MOTION FOR A PROTECTIVE ORDER

Defendants BAM Trading Services Inc. and BAM Management US Holdings Inc. (together, "BAM") respectfully request that the Court enter the proposed order attached hereto. The grounds for this motion are further set forth in the supporting memorandum, dated August 14, 2023. Counsel for BAM have conferred with counsel for Plaintiff Securities and Exchange Commission and understands that they oppose this motion.

Dated:  August 14, 2023

/s/ Matthew T. Martens
William R. McLucas (*pro hac vice*)
Matthew T. Martens (D.C. Bar #1019099)
Matthew Beville (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
William.McLucas@wilmerhale.com
Matthew.Beville@wilmerhale.com
Matthew.Martens@wilmerhale.com

Tiffany J. Smith (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tiffany.Smith@wilmerhale.com

*Attorneys for Defendants BAM Trading
Services Inc. and BAM Management
Holdings US Inc.*

Respectfully submitted,

/s/ George S. Canellos
George S. Canellos (*pro hac vice*)
Matthew J. Laroche (*pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
GCanellos@milbank.com
MLaroche@milbank.com

*Attorneys for Defendants BAM Trading Services
Inc. and BAM Management Holdings US Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>           v.<br><br>BINANCE HOLDINGS LIMITED,<br>BAM TRADING SERVICES INC.,<br>BAM MANAGEMENT US HOLDINGS INC.,<br>AND CHANGPENG ZHAO,<br><br>                  Defendants. | **No. 1:23-cv-01599 (ABJ)** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BAM TRADING
SERVICES INC. AND BAM MANAGEMENT US HOLDINGS INC.'S
<u>MOTION FOR A PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................2

     A.    BAM Worked in Good Faith to Respond to the SEC's Expedited Discovery
Requests ...................................................................................................................2

     B.    BAM Has Provided the SEC with an Immense Amount of Information
About Customer Assets .............................................................................................5

     C.    The SEC Continues to Seek Discovery Far Beyond the Scope of the Consent
Order .........................................................................................................................9

ARGUMENT .......................................................................................................................11

I.     THE COURT SHOULD GRANT BAM'S MOTION FOR A PROTECTIVE
ORDER ........................................................................................................................11

     A.    The SEC's Requests for All Communications from Noticed Deponents
Goes Far Beyond the Scope of the Consent Order .................................................11

     B.    The SEC Should Not Be Permitted to Depose BAM's CEO and CFO ................14

         1.    BAM's CEO and CFO Do Not Have Unique Firsthand Knowledge
that is Relevant to this Action .................................................................16

         2.    Less Intrusive Discovery is Readily Available, including
Documentary Evidence and Testimony From Persons Who are
Directly Responsible for the Custody, Security, and Transfer of
Customer Assets ......................................................................................17

     C.    The SEC's Discovery Demands are an Inappropriate Fishing Expedition ...........19

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. Apple, Inc.*,
  2011 WL 1753982 (N.D. Cal. May 9, 2011) ........................................... 15, 18, 19

*In re Application for an Ord. Pursuant to 28 U.S.C. § 1782*,
  473 F. App'x 2 (D.C. Cir. 2012) ............................................................ 13

*Alexander v. Fed. Bureau of Investigation*,
  1998 WL 1048978 (D.D.C. Mar. 2, 1998) ............................................. 15

*Am. Fed. of State, Cnty. and Mun. Emps., AFL-CIO v. Project Veritas Action Fund*,
  2022 WL 3655277 (D.D.C. Aug. 25, 2022) ........................................... 11

*\*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
  2007 WL 205067 (N.D. Cal. Jan. 25, 2007) .......................................... 15, 16

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................ 12

*Darjee v. Betlach*,
  2018 WL 11352595 (D. Ariz. Feb. 14, 2018) ....................................... 14

*\*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*,
  339 F.R.D. 334 (D.D.C. 2021) .............................................................. 10, 20

*Gen. Star Indem. Co. v. Platinum Indem. Ltd.*,
  210 F.R.D. 80 (S.D.N.Y. 2002) ............................................................ 18

*Hallmark Licensing LLC v. Dickens Inc.*,
  2018 WL 6573435 (E.D.N.Y. Dec. 13 2018) ....................................... 18

*Hardrick v. Legal Servs. Corp.*,
  96 F.R.D. 617 (D.D.C. 1983) ................................................................ 19

*Menashe v. Covington & Burling LLP*,
  552 F. Supp. 3d 35 (D.D.C. 2021) ........................................................ 12, 13

*Nike, Inc. v. Wu*,
  2020 WL 257475 (S.D.N.Y. Jan. 17, 2020) ......................................... 14

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
  2023 WL 2467738 (D.D.C. Mar. 7, 2023) ............................................ 12

*Pederson v. Preston,*
  250 F.R.D. 61 (D.D.C. 2008) ............................................................................. 19

\*Pietrangelo v. Refresh Club, Inc.,
  2022 WL 4245486 (D.D.C. Sept. 15, 2022) ........................................... 10, 11, 14

*Regail Brand All., Inc. v. Factory Mut. Ins. Co.,*
  2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) ....................................................... 18

*Reif v. CNA,*
  248 F.R.D. 448 (E.D. Pa. 2008) ........................................................................ 15

*Rodriguez v. SLM Corp.,*
  2010 WL 1286989 (D. Conn. Mar. 26, 2010) ................................................... 19

*In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria,*
  2006 WL 1328259 (S.D.N.Y. May 16, 2006) ................................................... 15

*Treppel v. Biovail Corp.,*
  2006 WL 468314 (S.D.N.Y. Feb. 28, 2006) ..................................................... 18

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.,*
  202 F. Supp. 3d 1 (D.D.C. 2016) ...................................................................... 12

*United States v. Newman,*
  531 F. Supp. 3d 181 (D.D.C. 2021) .................................................................. 15

*Wall v. Reliance Standard Life Ins. Co.,*
  341 F.R.D. 1 (D.D.C. 2022) ........................................................................ 11, 14

*Wilson v. DNC Servs. Corp.,*
  831 F. App'x 513 (D.C. Cir. 2020) ................................................................... 14

**Other Authorities**

Fed. R. Civ. P. 26(b)(1). ........................................................................................ 10

Fed. R. Civ. P. 26(b)(2)(C)(i). ............................................................................... 14

Fed. R. Civ. P. 26(c)(1) .......................................................................................... 10

## PRELIMINARY STATEMENT

Defendants BAM Trading Services Inc. ("BAM Trading") and BAM Management US Holdings Inc. ("BAM Management," collectively with BAM Trading, "BAM"), respectfully submit this memorandum in support of BAM's motion for a protective order concerning deposition notices and discovery requests made by Plaintiff Securities and Exchange Commission ("SEC") in connection with the "limited expedited discovery" authorized by the Consent Order.  Dkt. 71. Specifically, the SEC is demanding that BAM (i) produce "all communications" concerning dozens of topics—many of which have nothing to do with customer assets—from at least six employees and executives dating back to November 2022; and (ii) make at least six of its employees and officers available for depositions (including its CEO and CFO).  BAM has offered four witnesses for depositions, including the two best positioned to address questions about the custody and security of customer assets, and is willing to conduct targeted searches for communications on relevant issues on the condition that the SEC identify specific issues that it believes merit discovery of electronic communications.

The SEC has declined BAM's proposals or to meaningfully limit its requests.  The SEC's position is unreasonable and part of a broader pattern of the SEC abusing the discovery provision of the Consent Order.  The Consent Order authorized "limited expedited discovery" on a narrow set of topics—namely, the custody, security, and availability of BAM customer assets.  Instead of seeking "limited" discovery, the SEC has spent the past 45 days serving incredibly overbroad and unreasonable discovery requests that seek, on their face, every single document in BAM's possession related to customer assets.  BAM has worked in good faith, but the SEC has been steadfast in its belief that the Consent Order gives it carte blanche to investigate every aspect of BAM's asset custody practices without any discernible limitation whatsoever.  Now, the SEC is also demanding depositions of BAM's most senior executives despite that they do not have unique

firsthand knowledge about the facts surrounding the security, custody, and transfer of customer assets, and the employees who do have been offered for depositions.

At bottom, the SEC is conducting a fishing expedition instead of seeking the narrow and "limited" discovery authorized by the Consent Order to ensure customer assets are presently secure and available.  The SEC's approach is especially troubling and inappropriate given that: (i) BAM's asset custody practices have nothing to do with the underlying claims in this case; (ii) BAM has taken numerous steps pursuant to the Consent Order to further ensure that customer assets are secure; (iii) BAM has already produced an immense amount of information about customer assets to the SEC; and (iv) the SEC still has not identified the slightest evidence that BAM customer assets have been misused or mishandled in any way.

For these reasons, as further outlined below, the Court should issue a protective order limiting the SEC to four depositions of BAM employees, precluding the SEC from questioning witnesses during depositions on matters outside the scope of the Consent Order, precluding depositions of BAM's CEO and CFO, and precluding requests for all communications about various topics.

## **BACKGROUND**

### A.    **BAM Worked in Good Faith to Respond to the SEC's Expedited Discovery Requests**

On June 17, 2023, the Court entered a Consent Order that required BAM to take numerous actions, such as repatriating all customer assets to the United States and providing a substantial amount of information to the SEC concerning customer assets, including a verified accounting. Dkt. 71.  The Consent Order also permitted the SEC to conduct "limited expedited discovery" for a period of 90 days on a narrow set of topics—namely, the possession, custody, and control of BAM customer assets, including whether BAM can meet customer claims and liabilities.  *Id.* at 8-

10.  Shortly after the Consent Order was entered, the Court entered a separate scheduling order providing, among other things, that in light of the expedited discovery provision of the Consent Order and anticipated dispositive motion practice, the Court was "declin[ing] to establish a schedule for merits discovery . . . until the [dispositive] motions have been resolved." Dkt. 88.

The Consent Order was agreed to by the parties in the wake of the SEC's motion for a temporary restraining order seeking to freeze all of BAM's assets without any exceptions.  BAM strongly disagreed that there was any basis for such draconian relief because, among many other reasons, the SEC lacked any evidence (after years of investigation) suggesting that BAM customer assets were not secure, appropriately segregated, or available to customers.  Dkt. 40 ("BAM Opp. Br.") at 3, 11-15.  Indeed, during the TRO hearing, the SEC acknowledged that it had ***no evidence*** that BAM customer assets have been dissipated, commingled, or misused in any way.  Dkt. 74-2 (June 13, 2023 Hearing Tr.) 33:1-6; 44:22-45:9.  The SEC made this admission despite that it had conducted a years-long investigation during which BAM produced hundreds of thousands of documents and provided substantial information concerning virtually every aspect of BAM's business.  BAM Opp. Br. at 7-9.

After the Consent Order was entered, BAM proposed that the SEC either interview or depose Sara Sisenwein, BAM's Senior Director of Treasury Operations, and/or Erik Kellogg, BAM's Chief Information Security Officer.  Ms. Sisenwein and Mr. Kellogg submitted detailed declarations related to the custody and security of customer assets in support of BAM's opposition to the TRO (Dkt. 42 and 44) and have extensive firsthand knowledge of those issues.  BAM

explained that meeting with those individuals might assuage the SEC's concerns or otherwise help to narrow the SEC's discovery requests.  Laroche Decl. ¶ 4.[1]

Instead of taking advantage of those interviews, on June 23, 2023, the SEC served 39 requests for production ("RFPs") and 24 interrogatories ("Interrogatories") that sought, in essence, every document and communication concerning customer assets, among many other topics, in BAM's possession dating back to November 2022.  *Id.* ¶ 5; Exs. 1 and 3.  The SEC's discovery requests are plainly inappropriate.  Twenty-seven of the RFPs sought "All Documents and Communications Concerning" various topics and many other requests contained similarly overbroad language such as seeking "a complete record of the BAM Entities' financial statements and transactions."  For example, (i) RFP No. 2 sought "All Documents and Communications Concerning the deposit, custody, control, storage, transfer, movement, withdrawal, security, segregation, and availability of Customer Assets," which on its face sought virtually any conceivable document related to customer assets; and (ii) RFP No. 26 sought "All Documents and Communications Concerning any internal or external audits," which encompasses topics far beyond the security and custody of customer assets.

As BAM explained to the SEC during meet and confers, in letters, and in its responses and objections to the RFPs and Interrogatories, the SEC's requests sought information far beyond the scope of the Consent Order and what was necessary to assess the custody and security of Customer Assets.  *Id.* ¶¶ 3, 7; Ex. 5 and 8.  Responding to those requests would have been extremely burdensome and virtually impossible on a typical discovery timeframe, let alone the timeframes

---

[1]      "Laroche Decl." refers to the Declaration of Matthew Laroche submitted in further support of BAM's motion, and "Ex." refers to the exhibits thereto.

set forth in the Consent Order.  Moreover, many of the RFPs and Interrogatories are duplicative in that they seek the same information and/or information that was already produced to the SEC.

Regardless, BAM worked in good faith to respond to the SEC's requests.  On July 5, 2023, BAM sent the SEC a letter proposing a detailed discovery plan to address what BAM understood to be the SEC's primary concern—ensuring that Customer Assets are presently secure, in BAM's control, and available to meet customer claims and liabilities.  Ex. 5.  Since that time, BAM has diligently collected documents and information, made numerous productions, submitted a sworn accounting, offered four witnesses for depositions, and provided a substantial amount of additional information through letters, interrogatory responses, and declarations.  *See* Background, Part B.

BAM also repeatedly met with the SEC to discuss its discovery plan and to address follow-up requests.  *Id.* ¶ 3.  When the SEC raised specific issues during meet and confers, BAM worked diligently to address them.  For example, during a meet and confer on July 24, 2023, the SEC made numerous requests on various issues, which BAM responded to in a detailed letter, dated July 31, 2023, and accompanying productions.  Ex. 8.  However, when BAM requested that the SEC consider limiting its requests, the SEC declined to do so and continued to take the position that BAM is required to produce "All Documents and Communications Concerning" various topics.  *Id.* Exs. 7 and 8.  The SEC appears to maintain that position to this day.  Ex. 9.

### B.      BAM Has Provided the SEC with an Immense Amount of Information About Customer Assets

BAM has already provided the SEC with documents and information that is more than sufficient to assess the custody and security of customer assets.  As of this filing, BAM has made almost a dozen productions encompassing over 200 documents totaling over 5,000 pages, provided narrative responses to Interrogatories, and submitted several letters with detailed information concerning customer assets.  Laroche Decl. ¶ 13; Ex. 8.  BAM provided these documents and

information pursuant to the Consent Order, in response to the RFPs and Interrogatories, and in response to numerous follow-up requests by the SEC. *Id.* These responses supplemented the extensive information that BAM had previously provided on these topics in the days and weeks preceding the filing of this action.

To summarize, during expedited discovery, BAM has provided documents and information on a variety of topics, including but not limited to:

- <u>Policies and Procedures Related to BAM Customer Assets</u>:  BAM produced numerous policies concerning customer assets and provided narrative responses to the SEC's follow-up questions concerning those policies.  BAM also provided updates to the Sisenwein and Kellogg Declarations as necessary to reflect changes to BAM's asset custody practices following the Consent Order.

- <u>Customer Accounts</u>:  BAM produced documents reflecting all accounts and wallets holding customer assets and assets of BAM, as well as the value of those assets. This included documents reflecting (i) a preliminary list of hot and cold omnibus wallets holding customer and BAM digital assets supported by BAM's platform, as well as the amount of digital assets in each wallet as of June 30, 2023 and the value of those assets in USD; (ii) a preliminary list of digital assets for which BAM maintains deposit wallets holding customer digital assets, the number of deposit wallets for each type of digital asset, and the aggregate amount of each type of digital asset in the deposit wallets as of June 30, 2023; (iii) the amount of customer and BAM digital assets in staking wallets custodied by BAM or its U.S.-based third-party custody providers as of June 30, 2023; and (iv) BAM's fiat bank accounts that hold BAM and customer fiat currency as well as their balances in USD as of June 30, 2023.

- <u>Customer Account Balances</u>: BAM produced extensive data from BAM's internal ledger system ("PNK"), including documents reflecting: (i) the amount of fiat and digital assets held by BAM customers in their respective accounts and/or wallets as of June 30, 2023 as well as the USD value for each of the digital assets; and (ii) the amount of fiat and digital assets held by BAM on its trading platform as of June 20, 2023 as well as the USD value for each of the digital assets.

- <u>PNK Lookback</u>:  In response to follow-up requests by the SEC, BAM produced historical information from PNK, including the aggregate amount of assets within each digital asset on a weekly basis since January 2023.  BAM provided this information so the SEC could assess whether BAM maintained sufficient assets to meet customer claims and liabilities since the beginning of 2023 (which it did).

- <u>Bank and Payment Processors</u>:  BAM produced documents related to BAM's banking partners and payment processors, including account opening documents and bank statements.  BAM also searched for and produced any communications with its bank and payment processors reflecting any encumbrances or limitations put on BAM customer accounts in light of this action.

- <u>Personnel with Roles Concerning Customer Assets</u>:  BAM identified personnel who presently have a role or responsibility concerning the possession, custody, or control of Customer Assets, as well as their current job title, whether they have been employed by the Binance Entities or Mr. Zhao, their current country of residence, and whether they have a role under BAM's Digital Asset & Custody Operations Policy.

- <u>Personnel Generally</u>:  BAM separately identified all of its officers, employees, and contractors as of the date of the complaint, their job title, whether they have been employed by the Binance Entities or Mr. Zhao, and the BAM Division within which they work.

- <u>Private and Administrative Keys</u>:  BAM identified employees who previously had custody of the Private and Administrative Keys, as well as the individuals who have custody of the New Private and Administrative Keys, their current BAM job title, whether they have been employed by the Binance Entities or Mr. Zhao, and their current country of residence.

- <u>Whitelisted Wallets</u>:  BAM identified all whitelisted digital asset wallets and described the whitelisting process.

- <u>Ordinary Course Business Expenses</u>:  BAM produced a summary of its Ordinary Course Business Expenses including the total amount spent, a breakdown of the amounts in each category and subcategory enumerated, and any amounts aggregating in excess of $150,000 to foreign payees.

- <u>Verified Accounting</u>:  BAM produced an accounting, verified by BAM's Chief Legal Officer, reflecting the assets currently held by or on behalf of BAM and a list of all transfers of any assets by BAM to the Binance Entities valued at greater than $1,000 since December 2022.  This included: (i) a verified list of hot and cold omnibus wallets holding customer and BAM digital assets supported by BAM's trading platform, as well as the amount of digital assets in each wallet as of June 30, 2023 and the value of those assets in USD; (ii) a final list of digital assets for which BAM maintains deposit wallets holding customer digital assets, the number of deposit wallets for each type of digital asset, and the aggregate amount of each type of digital asset in the deposit wallets as of June 30, 2023; (iii) a final spreadsheet prepared by BAM that provides the balances of customer and BAM digital assets available for staking via BAM's staking service; (iv) a final list of BAM's fiat bank accounts that hold BAM and customer fiat currency as well as their balances in USD as of June 30, 2023; (v) final spreadsheets prepared by BAM

that provide the amount of fiat and digital assets held by BAM customers in their
respective accounts and/or wallets as of June 30, 2023 as well as the USD value for
each of the digital assets; and (vi) a spreadsheet prepared by BAM of all "assets,
funds, crypto assets, securities, or other property, real or personal" valued greater
than $1,000 that was transferred to, or for the benefit of, any Defendant or any
Binance Entity from December 1, 2022 to the present.

- <u>Ceffu and Third-Party Custodians</u>:  BAM produced numerous documents related
to Ceffu and other third-party custodians and/or software providers.  This included
(i) System and Organization Controls ("SOC") reports, which examines how
companies secure and store digital assets; (ii) Information Security Management
("ISO") System certifications, which certifies a management system or service
meets requirements for standardization and quality assurance; and (iii) security
questionnaires, which BAM used to conduct diligence on third-party custodians
and software providers.

Laroche Decl. ¶¶ 13(a)-(l).

Pursuant to the Consent Order, BAM also agreed to take (and has taken) several other steps
to ensure the security of customer assets.  This includes: (i) repatriating to the United States all fiat
currency and crypto customer assets and related hardware, such as Private and Administrative
Keys (Consent Order at 1-2); (ii) confirming that BAM would maintain custody and control of
Customer Assets during the pendency of this case and not transfer any assets to any Binance
Entities (*id.* at 2-4); and (iii) ensuring that all Private and Administrative Keys are in the possession
of BAM employees in the United States (*id.* at 5).

Moreover, by the time the Complaint was filed in this matter, the SEC already had an
enormous amount of documents and information concerning BAM's asset custody practices.
BAM made significant efforts over more than three years to cooperate with the SEC's investigation
in this matter.  During that time, BAM produced more than 700,000 individual communications,
including approximately 11,391 emails, 8,196 email attachments, and 652,817 other messages.
BAM also prepared bespoke data (including years' worth of revenue data) and dozens of pages of
narrative and interrogatory responses to the SEC's requests and follow-up questions, detailing

virtually every aspect of its business.  In the months before the Complaint was filed, the SEC began

to focus on the custody of BAM's assets, and BAM continued to cooperate in good faith, working

around the clock to address the SEC's questions.  In addition to numerous telephone conversations,

BAM provided the SEC with detailed written responses to the SEC's questions about BAM's

customer assets in letters dated May 25, 2023, May 26, 2023, June 1, 2023, and June 2, 2023.

Despite possessing all this information, to this day, the SEC does not purport to possess

any evidence that BAM has misused customer assets in any way.  Nor has the SEC raised any

questions concerning the verified accounting or any other data reflecting the custody or security

of customer assets.  Indeed, beyond generalized "concerns" and unsubstantiated fears that persons

outside the United States could potentially exert influence over BAM personnel, the SEC has been

unable to articulate the basis for believing that BAM's assets are even theoretically at risk.

### C.     The SEC Continues to Seek Discovery Far Beyond the Scope of the Consent Order

The SEC's position is that the foregoing productions and information are insufficient to

confirm that customer assets are secure and available to customers.  Two issues are the subject of

this motion:

*First*, the SEC believes that BAM must produce "all communications" involving at least

six witnesses concerning numerous topics.  Laroche Decl. Ex. 9.  As noted above, BAM's position

is that requests for "All Documents and Communications" are inappropriate, unduly burdensome,

and well beyond the scope of the Federal Rules and Consent Order.  BAM has repeatedly asked

the SEC to narrow its requests.  The SEC has refused to do so other than to state that BAM may

limit its "all communications" productions to the witnesses noticed for depositions or otherwise

propose how to narrow the SEC's requests.  *Id.*

*Second*, on August 2, 2023, the SEC sent BAM deposition notices for 14 BAM employees and officers.  BAM responded that the SEC's request violates the Federal Rules, which limits the SEC to 10 depositions absent court order, and is beyond the scope of the Consent Order.  Ex. 9.  BAM proposed that the SEC take the depositions of Mr. Kellogg and Ms. Sisenwein, the BAM employees best positioned to answer the SEC's questions about customer assets; the head of BAM's Asset Clearance Team; and one holder of a New Private and Administrative Key.  The SEC's current position is that BAM must, at a minimum, make at least six witnesses available for depositions, including BAM's CEO and CFO.  *Id.*

## APPLICABLE LAW

"All discovery must be 'relevant to any party's claim or defense and proportional to the needs of the case.'"  *Pietrangelo v. Refresh Club, Inc.*, 2022 WL 4245486, at *2 (D.D.C. Sept. 15, 2022) (quoting Fed. R. Civ. P. 26(b)(1)).  Although "'relevance' for discovery purposes is broadly construed," the party seeking discovery has the burden of establishing relevance by making a showing that the requested discovery will "have some probable effect on the organization and presentation of the moving party's case."  *Id.* (cleaned up).  Moreover, "[d]iscovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support."  *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 340 (D.D.C. 2021).

Upon a showing of "good cause," the Court may issue a protective order to protect the party from whom discovery is sought "from annoyance, embarrassment, oppression, or undue burden of expense."  Fed. R. Civ. P. 26(c)(1).  "The court must restrict the extent of discovery otherwise allowed if it determines that" the discovery sought (i) is unreasonably cumulative or duplicative; (ii) can be obtained from some other source that is more convenient, less burdensome,

or less expensive; and/or (iii) is not proportional to the needs of the case, taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Pietrangelo*, 2022 WL 4245486, at *2 (first quote); *Am. Fed. of State, Cnty. and Mun. Emps., AFL-CIO v. Project Veritas Action Fund*, 2022 WL 3655277, at *3 (D.D.C. Aug. 25, 2022) (second quote).

<u>**ARGUMENT**</u>

**I.     THE COURT SHOULD GRANT BAM'S MOTION FOR A PROTECTIVE ORDER**

     **A.     The SEC's Requests for All Communications from Noticed Deponents Goes Far Beyond the Scope of the Consent Order**

     The SEC has not established that its requests for all communications involving at least six witnesses are within the relevant scope of the Consent Order.  Despite several requests, the SEC has not explained why the production of those communications, which would cover numerous topics well beyond customer assets and date back to November 2022, would be relevant to assessing the current custody and security of customer assets, which is the core purpose of the limited expedited discovery authorized by the Consent Order.  *See, e.g.*, *Pietrangelo*, 2022 WL 4245486, at *3-5 (denying various discovery requests on relevance grounds where they sought information having no relation to plaintiff's claim and/or plaintiff had not satisfied his "initial burden of explaining how the requested information is relevant"); *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 6 (D.D.C. 2022) (similar).  Given the breadth of the SEC's requests, BAM is also concerned that the SEC is seeking merits discovery in contravention of the Court's scheduling order.  Dkt. 88.

Even if the SEC could show that its requests sought relevant material, they are plainly overbroad and unduly burdensome.   The SEC's position that BAM must produce all communications as set forth in the RFPs is breathtaking given that 27 RFPs request "all communications" concerning at least dozens of topics, many of which are not limited to matters concerning customer assets.   Laroche Decl. Ex. 3 (listing RFP requests for "All Documents and Communications Concerning" numerous topics).   It is well settled that document requests seeking "virtually every document" in a party's possession on a topic are "overbroad on their face and exceed the bounds of fair discovery."  *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 2023 WL 2467738, at *4 (D.D.C. Mar. 7, 2023); *see also Menashe v. Covington & Burling LLP*, 552 F. Supp. 3d 35, 45 (D.D.C. 2021) (request that "asks for essentially every document [Covington] possesses relating to its representation of [Nest Affiliates] all over the world is overly broad and burdensome" (cleaned up)); *United States v. All Assets Held at Bank Julius Baer & Co, Ltd.*, 202 F. Supp. 3d 1, 4-5 (D.D.C. 2016) (request to search for and produce "all" communications about a topic "would be 'very time-consuming, extremely burdensome, and unlikely to lead to the discovery of admissible, probative evidence'"); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50-51 (S.D.N.Y. 1996) (holding that subpoena that sought discovery of "virtually every document" relating to the defendant that was generated or maintained by a non-party witness during the past ten years was overbroad and had to be quashed or modified).

The SEC has refused to meaningfully limit the burden of its requests.   For example, during meet and confers, BAM stated that it would be open to considering more tailored requests for documents and communications related to audits and the SEC stated that it would propose more narrow requests.   However, the SEC ultimately refused to narrow those requests and instead maintained that BAM was required to produce "all documents and communications" concerning

audits dating back to November 2022.  Ex. 8.  Similarly, as to communications involving deponents, BAM stated that it was open to conducting narrow searches for communications concerning pertinent issues.  The SEC responded that BAM should simply produce "all" communications concerning Customer Assets for the proposed deponents as limited by the subject matter of the RFPs.  Ex. 9.  As detailed above, the RFPs have no limit at all and purport to require BAM to produce every communication in its possession concerning customer assets and numerous other topics.

Moreover, BAM should not be forced to propose how to limit the SEC's requests for communications, as the SEC has asked BAM to do.  Ex. 9.  BAM has already proposed a detailed discovery plan that addresses issues pertinent to the Consent Order.  BAM does not understand (and the SEC has not explained) why it also needs communications to assess the custody and security of customer assets, which leaves BAM guessing as to what subset of communications about customer assets would satisfy the SEC's requests.  BAM is not obligated to narrow discovery requests that are overbroad and unduly burdensome on their face.  *See, e.g.*, *In re Application for an Ord. Pursuant to 28 U.S.C. § 1782*, 473 F. App'x 2, 4 (D.C. Cir. 2012) ("[T]he district court had no obligation to trim [a party's] discovery request after it determined it was overbroad and vague."); *Menashe*, 552 F. Supp. 3d at 45 (same).

Finally, the SEC's request is not proportional to the needs of the case.  The underlying claims in this case have nothing to do with BAM's asset custody practices.  Rather, the SEC sought a temporary restraining order based on its unfounded ***concern*** that customer assets ***could be dissipated***.  The Consent Order authorized the SEC to conduct "limited expedited discovery" to assuage that concern, and BAM has produced ample information showing that customer assets are secure and available to meet customer claims or liabilities.  BAM has also taken numerous steps

-13-

under the Consent Order to further ensure the security of customer assets.  There is simply no basis to require BAM to produce a substantial number of communications to further address whatever unsubstantiated concerns the SEC still holds about BAM.  Moreover, complying with the SEC's requests would likely take months or longer and come with significant and unwarranted expense. *See Pietrangelo*, 2022 WL 4245486, at \*2; *see also Wall*, 341 F.R.D. at 6 ("[E]ven if the RFP did seek relevant information, the sheer volume of potentially responsive documents renders it unduly burdensome and not proportional to the needs of this case."); *Darjee v. Betlach*, 2018 WL 11352595, at \*3–4 (D. Ariz. Feb. 14, 2018) (denying a motion to compel and finding that the requested discovery was not "proportional to the needs of this case" where the non-moving party contended "that it would take thousands of hours to retrieve much of the sought after information"); *Nike, Inc. v. Wu*, 2020 WL 257475, at \*12 (S.D.N.Y. Jan. 17, 2020) ("Negotiating search terms, identifying email custodians, and weeding out non-responsive emails are some of the most time-consuming stages of 21st-century document discovery.").

### B.    The SEC Should Not Be Permitted to Depose BAM's CEO and CFO

The Court also should not allow the SEC to take the depositions of BAM's CEO and CFO, BAM's two most senior executives.  Deposing BAM's CEO and CFO is unnecessary given that BAM has repeatedly offered depositions of senior employees with direct responsibility over and deep knowledge of the security, custody, and transfer of customer assets; would be unproductive given that BAM's CEO and CFO have little, if any, knowledge concerning the core issues underlying the Consent Order; and would be disruptive to BAM's business.  For these reasons alone, the SEC's request should be denied.  *See Wilson v. DNC Servs. Corp.*, 831 F. App'x 513, 515 (D.C. Cir. 2020) ("[A] district court must limit the deposition of a party when the court determines that the information sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" (quoting Fed. R. Civ. P. 26(b)(2)(C)(i))).

Moreover, when addressing deposition notices directed at an official at the highest level of corporate management, numerous courts have "observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (collecting cases); *see also Reif v. CNA*, 248 F.R.D. 448, 451-53 (E.D. Pa. 2008) (collecting cases).[2]  The "apex doctrine," which is the modern trend among federal courts, supports that requests to depose top officials and business leaders should be met with skepticism.  In order to depose them, requesting parties bear the burden of establishing that: (i) the executive has unique firsthand knowledge of relevant facts; and (ii) those facts cannot be obtained through less intrusive forms of discovery, such as other witnesses.  *See, e.g.*, *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *17 (N.D. Cal. May 9, 2011) (denying motion to compel deposition of Steve Jobs); *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (denying motion to compel depositions of Siemens AG executives).

As discussed below, BAM's CEO and CFO have no unique knowledge regarding any facts relevant to limited topics identified in the expedited discovery provision of the Consent Order. Even if they did possess such knowledge, there are numerous other witnesses and documents from which the SEC can obtain the same (and likely more detailed) information.  As a result, the burden

---

[2]      While BAM is not aware of a court in this District applying the apex doctrine to non-government executives, courts in this District regularly apply the doctrine to high-ranking government officials. *See, e.g.*, *United States v. Newman*, 531 F. Supp. 3d 181, 190 (D.D.C. 2021). At least one court in this District has also cited favorably to applying the apex doctrine to non-government executives. *See Alexander v. Fed. Bureau of Inv.*, 1998 WL 1048978, at *1 (D.D.C. Mar. 2, 1998) (noting that "courts routinely use their discretion to control the discovery process to require plaintiffs to start their discovery with witnesses most knowledgeable of the relevant facts before allowing deposition testimony of high-ranking corporate or government officials.").  As discussed above, whether the apex doctrine applies or not, the Court should still preclude depositions of BAM's CEO and CFO on a variety of grounds.

of their depositions far outweighs and exceeds any possible benefit and the discovery sought by

the SEC from them is disproportionate to the needs contemplated by the Consent Order.  This is

especially so given that the SEC ostensibly seeks to depose them on issues unrelated to the merits

of this case.

       **1.**       **BAM's CEO and CFO Do Not Have Unique Firsthand Knowledge that is Relevant to this Action**

BAM's CEO leads one of the largest digital asset trading platforms in the world, and his

responsibilities include executive level oversight of the company's operations.  BAM's CFO has

responsibility for the company's financials, and her responsibilities include executive decision

making involving digital assets.  While BAM's CEO and CFO have ultimate signatory authority

for certain fiat accounts, they are not involved in the day-to-day management details concerning

the custody and transfer of customer assets and, most importantly, they do not have unique

knowledge concerning those issues.  *See Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL

205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Where a high-level decision maker 'removed from the

daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition

of the official is improper.").

The SEC has not explained why deposing BAM's CEO and CFO would be within the

relevant scope of the Consent Order.  During the meet and confer process, the SEC suggested that

they need to depose these and other witnesses because BAM has not produced sufficient

communications concerning customer assets.   For the reasons discussed in the foregoing section,

the SEC is not entitled to "all communications" from potential witnesses in order to assess BAM's

asset custody practices.  Regardless, the SEC's position reinforces why deposing BAM's CEO and

CFO would be improper because they have no articulable basis for deposing them other than to

conduct a fishing expedition.  *See infra* Part I.C.

BAM is also concerned that the SEC plans to use depositions of BAM's CEO and CFO (and potentially other witnesses) to address topics wholly unrelated to the Consent Order and/or relating to the merits of this case.  For example, BAM has consistently taken the position that the SEC is not entitled to conduct freewheeling discovery of BAM's historical asset custody practices.  If the SEC believes it is entitled to discovery on those issues—which have nothing to do with the merits of this case or whether customer assets are presently secure—then it should file a motion with the Court.  The SEC is not, however, permitted to do an end-run-around the meet and confer process by seeking discovery during depositions on issues BAM has objected to.  Nor can the SEC use depositions pursuant to the Consent Order to conduct merits discovery.

    **2.**        **Less Intrusive Discovery is Readily Available, including Documentary Evidence and Testimony From Persons Who are Directly Responsible for the Custody, Security, and Transfer of Customer Assets**

Even if BAM's CEO and CFO possessed unique firsthand knowledge on issues relevant to the Consent Order, less intrusive discovery is readily available to the SEC.  There are many other BAM employees who do have deep firsthand knowledge about the facts surrounding the security, custody, and transfer of customer assets, and who have been offered to the SEC as appropriate witnesses.  They include (i) Mr. Kellogg, BAM's CISO who is responsible for administering and managing the security of digital assets held by BAM on behalf of its customers or for its own account; (ii) Ms. Sisenwein, BAM's Senior Director of Treasury Operations who is responsible for managing and maintaining BAM's banking and payment process relationships concerning fiat currency; and (iii) the leader of BAM's Asset Clearance Team who oversees the BAM group responsible for monitoring and managing wallet balances based on predetermined thresholds and processes, as well as validating and requesting corporate and customer transfers between wallets.

These individuals have far deeper knowledge concerning the custody, security, and transfer of customer assets than BAM's CEO and CFO.  The first logical step for the SEC is to explore

these issues with those directly responsible for them before trying to force BAM's CEO and CFO to testify about topics over which they exercise (at most) executive level oversight.  The SEC also has other less intrusive means of discovery.  The SEC possesses numerous documents and substantial information concerning BAM's asset custody practices, and it has not explained why this information is insufficient to satisfy its concerns.  Another logical step would be for the SEC to confer with BAM about any concerns it has regarding this information and documents so that BAM could identify those best situated to address those concerns, but the SEC has not meaningfully done so.  Moreover, if the SEC plans to conduct depositions of BAM's CEO and CFO to discover information outside the bounds of the Consent Order, that would be improper. *See supra* Part I.A.

In sum, BAM's CEO and CFO need not be deposed on the limited topics authorized in the Consent Order, and courts regularly preclude such depositions in the circumstances presented here. *See, e.g.*, *Treppel v. Biovail Corp.*, 2006 WL 468314, at *2 (S.D.N.Y. Feb. 28, 2006) (courts consider whether "the likelihood that the individual possesses relevant knowledge and whether another source could provide identical information"); *Regail Brand All., Inc. v. Factory Mut. Ins. Co.*, 2008 WL 622810, at *5 (S.D.N.Y. Mar. 7, 2008) ("Unless it can be demonstrated that a corporate official has 'some unique knowledge' of these issues in this case, 'it may be appropriate to preclude a deposition of a highly-placed executive' while allowing other witnesses with the same knowledge to be questioned."); *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (protective order appropriate when party seeking deposition of executives "had not yet attempted to obtain information from lower level executives"); *Hallmark Licensing LLC v. Dickens Inc.*, 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018) (precluding deposition of senior executive where subordinate with same knowledge was available to be deposed); *Affinity*

*Labs of Tex.*, 2011 WL 1753982, at *12 (the failure to obtain the answers plaintiffs wanted from lower level employees does not automatically justify their reaching higher, without the requisite showing of the higher-level official's unique personal knowledge); *Rodriguez v. SLM Corp.*, 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010) (denying deposition where requesting party failed to demonstrate apex leaders "possess any information that could not be obtained from lower-level employees or other sources").

### C.   The SEC's Discovery Demands are an Inappropriate Fishing Expedition

Discovery is not limitless, and courts routinely preclude voluminous discovery requests unmoored to the actual issues in the litigation. *Pederson v. Preston*, 250 F.R.D. 61, 66 (D.D.C. 2008). Courts do not tolerate "'fishing expeditions,' discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests." *Id.* at 65-66 (D.D.C. 2008) (quoting *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983)). Rather, "[d]iscovery should be tailored to the issues involved in a particular case." *Id.* at 66.

The SEC's approach to expedited discovery has been anything but tailored to the Consent Order. At the outset of expedited discovery, the SEC served stunningly overbroad and unduly burdensome requests, many of which have little if anything to do with BAM's customer assets. While BAM has repeatedly proposed ways to limit those requests, the SEC has refused to meaningfully do the same and, to this day, takes the position that BAM is required to produce "all communications" concerning numerous topics for noticed deponents. The SEC has also declined reasonable invitations from BAM to interview those who are best suited to address issues concerning asset custody practices. The SEC's approach is unreasonable and not designed to obtain the "limited expedited discovery" authorized by the Consent Order.

There is no basis to authorize the discovery sought by the SEC. By fulfilling its obligations under the Consent Order, BAM confirmed that customer assets are safe and secure and that it has

sufficient assets to cover any customer claims or liabilities.  BAM has repatriated to the United States all fiat and crypto customer assets and related hardware, confirmed that BAM would maintain custody and control over customer assets during the pendency of the case and not transfer any assets to Binance Entities, and ensured that all private and administrative keys are in the possession of BAM employees in the United States.  BAM has separately provided an enormous amount of documents and information to the SEC through document productions, Interrogatory responses, and follow-up letters and other correspondence.

Accordingly, the SEC already has the relief it wants—confirmation that BAM's customer assets are safe, secure, and sufficient to cover any customer claims or liabilities.  Although it has expressed its "concerns" otherwise, the SEC has still yet to identify any evidence suggesting that customer assets were misused or dissipated in any way.  Rather, the SEC continues to make unreasonable discovery demands, which would take many months or longer to address.  The SEC's discovery demands should be rejected for what they are—an inappropriate fishing expedition without a justifiable basis on matters having nothing to do with the merits of this case.  *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 340 ("Discovery is not intended to be a fishing expedition, but is rather meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should enter the Proposed Protective Order.

-20-

Dated:  August 14, 2023

Respectfully submitted,

/s/ Matthew T. Martens

/s/ George S. Canellos

William R. McLucas (*pro hac vice*)
Matthew T. Martens (D.C. Bar #1019099)
Matthew Beville (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
William.McLucas@wilmerhale.com
Matthew.Beville@wilmerhale.com
Matthew.Martens@wilmerhale.com

George S. Canellos (*pro hac vice*)
Matthew J. Laroche (*pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
GCanellos@milbank.com
MLaroche@milbank.com

*Attorneys for Defendants BAM Trading Services Inc. and BAM Management Holdings US Inc.*

Tiffany J. Smith (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tiffany.Smith@wilmerhale.com

*Attorneys for Defendants BAM Trading Services Inc. and BAM Management Holdings US Inc.*