# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 1:23-cv-01599-ABJ ) |
| BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES INC., BAM MANAGEMENT US HOLDINGS INC., AND CHANGPENG ZHAO, | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
FIRST SET OF INTERROGATORIES TO DEFENDANTS BAM
TRADING SERVICES INC. AND BAM MANAGEMENT US HOLDINGS INC.**

Plaintiff Securities and Exchange Commission (the "SEC" or the "Commission") hereby serves the following first set of interrogatories ("Interrogatories") to Defendants BAM Trading Services Inc. ("BAM Trading") and BAM Management US Holdings Inc. ("BAM Management") (collectively and incorporating the definitions below, the "BAM Entities") pursuant to Federal Rules of Civil Procedure 26 and 33, the Local Civil Rules for the United States District Court for the District of Columbia, and the Court's June 17, 2023 Consent Order, ECF No. 71, to be answered separately, fully, and under oath within twenty (20) days of service.

**DEFINITIONS AND INSTRUCTIONS**

1. "BAM Trading" means Defendant BAM Trading Services Inc., and doing business as Binance.US, and all predecessors, successors, parents, subsidiaries, affiliates, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and all entities in which

Defendant BAM Trading Services Inc. has or has had a controlling interest, such as a corporation, general partnership, limited partnership, or trade or business name.

2. "BAM Management" means BAM Management US Holdings Inc., and all predecessors, successors, parents, subsidiaries, affiliates, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and all entities in which BAM Management US Holdings Inc. has or has had a controlling interest, such as a corporation, general partnership, limited partnership, or trade or business name.

3. "Binance" means Binance Holdings Limited, and all predecessors, successors, parents, subsidiaries, affiliates, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and all entities in which Binance Holdings Limited has or has had a controlling interest, such as a corporation, general partnership, limited partnership, or trade or business name.

4. Reference to an entity in these Interrogatories should be interpreted to include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing, as required for a complete response.

5. Reference to an individual in these Interrogatories should be interpreted to include that individual's counsel, agents, representatives, or any other Person or entity acting or purporting to act on his or her behalf, as required for a complete response.

6. "Concerning" means directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing, constituting, recording, evaluating, substantiating, alluding to, in connection with, commenting on, regarding, discussing, showing, analyzing, or reflecting.

7. "Customers," "Private and Administrative Keys," "New Private and Administrative Keys," "Customer Fiat Assets," "Customer Crypto Assets," "Customer Assets," "Binance Entities," "BAM Ordinary Course Business Expenses," and "Staking Assets" are defined in accordance with the Court's June 17, 2023 Consent Order, ECF No. 71.

8. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

9. "Communication" means any correspondence, contact, discussion, e-mail,  instant message, text message, Telegram or other electronic message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

10. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

11.  "You" and "Your" means the Person(s) to whom or entity to which this subpoena was issued.

12. "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such

Agreement. A request for any Agreement, or Documents or Communications Concerning any Agreement, among or between specified parties includes a request for all Documents and Communications Concerning: (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request, or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

13. "Identify" means:

a. With respect to a communication, the date of such communication, the identification of each party to the communication, the location of (and position held by) each such party at the time of the communication, the substance, contents and subject matter thereof, the method of such communication (e.g., in person or by telephone), and if the communication has been recorded, documented, summarized, transcribed or otherwise referred to in a document, all such documents;

b. With respect to circumstances, a detailed description of the underlying happening, events, communications, and occurrences related to the subject matter of the request, as well as the timing and time period of the relevant happening, events, and occurrences;

c. With respect to the basis for a statement, contention, fact or defense, a complete and detailed description of the facts, events, Persons, communications, documents, laws, theories, and principals that relate to or support the subject matter of the interrogatory, with sufficient specificity to allow the court or a finder of fact to evaluate the merits of the claimed basis;

d. With respect to an oral statement, identify all Persons making the statement, all Persons to whom the statement was made, the date of such statement, where such statement was made, or if by telephone, the Persons participating in the telephone call, the Persons making the call, and describe the substance of such statement; and

e. With respect to a transaction, the date, customer, product, purchase order number(s), invoice number(s), or other identifying information, and all Persons involved in the transaction.

14. In addition to the foregoing, "identify and describe in detail" should be read to include (1) identification of all Persons involved in or with knowledge of the subject matter of the request and the information you believe them to possess, and (2) identification of all documents and communications related to the subject matter of the request.

15. The following rules of construction apply:

   a. "All," "any," and "each" shall each be construed as encompassing any and all;

   b. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

   c. The use of the singular form of any word includes the plural and vice versa; and

   d. The functional words "each," "every," "any," and "all" shall each be deemed to include each of the other functional words.

16. Unless otherwise stated, the relevant time period for these Interrogatories is November 1, 2022, to the present.

17. Where knowledge, information, documents, or communications are requested, such requests include knowledge, information, documents, or communications within your possession, care, custody, or control, as well as Persons with whom you associate, including family members, friends, business associates, attorneys, representatives, and agents.

18. If you cannot respond fully to any Interrogatory, you should, nonetheless, answer each to the greatest extent possible, and provide an explanation as to: (a) the nature of the information or knowledge that cannot be furnished; (b) why such information or knowledge cannot be provided; and (c) the location of the source of such information, as applicable.

19. Pursuant to Rule 33(b)(4), if and to the extent that you object to any Interrogatory or portion thereof, you must state the grounds for objection with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

20. These Interrogatories shall be deemed continuing, so as to require supplemental response(s) if and to the extent that Defendant obtains different or additional information and/or discovers additional documents or communications after service of his original response. Such supplemental responses shall be served from time to time, but not later than 20 days after such additional information and/or document or communication has been obtained or discovered.

## INTERROGATORIES

1. Identify all Persons who have access to, possession, custody, or control of any Customer Assets, the fiat or crypto assets of any of the BAM Entities, or any accounts or crypto asset wallets holding Customer Assets or the fiat or crypto assets of the BAM Entities, including, but not limited to, (i) their employment history, including job titles, during the last seven years, including whether they have been employed, affiliated with, or otherwise received compensation from, any of the BAM Entities, Binance Entities, or Zhao; (ii) their residence during the past three years and physical location while working for any of the BAM Entities, Binance Entities, or Zhao; and (iii) the time period and nature of their access, possession, custody, or control of Customer Assets, the fiat or crypto assets of any of the BAM Entities, or any accounts or crypto asset wallets holding Customer Assets or the fiat or crypto assets of the BAM Entities.

2. Identify all Persons who have access to, possession, custody, or control of Private and Administrative Keys or New Private and Administrative Keys or other software or protocols Concerning the deposit, custody, control, security, transfer, segregation, or withdrawal of Customer Crypto Assets, including, but not limited to, (i) their employment history, including

job titles, during the last seven years, including whether they have been employed, affiliated with, or otherwise received compensation from any of the BAM Entities, Binance Entities, or Zhao; (ii) their residence during the past three years and physical location while working for any of the BAM Entities, Binance Entities, or Zhao; and (iii) the time period in which they held such Private and administrative Private and Administrative Keys or New Private and Administrative Keys or other software or protocols responsive to this Interrogatory. This response should include the date when any Private and Administrative Key or New Private and Administrative Key holder who was a former employee or in any way affiliated with any of the Binance Entities ended such employment or affiliation and started employment with BAM Trading or BAM Management.

3.      Identify all Persons involved in, designated to, and/or having authority over the Treasury, Clearing, Security, SecOps, Fraud & Risk, Legal, Compliance, CX, and Custody Partners Teams, including the Persons associated with the following roles: Clearing Member, Clearing Lead, Treasury Member, Treasury Lead, CISO/Security, CFO, VP/Treasury, CX Agent, Fraud/Risk Member (*see* Binance.US Digital Asset & Custody Operations Policy at 4/18, 6/18 - BTS00833839, at BTS00833841), or any other individual or entity that are otherwise involved in the custody, control, security, clearing, settlement, deposits, transfer, withdrawals, movement, segregation, restrictions, or other management of Customer Assets. The response should include, but is not limited to, (i) their employment history, including job titles, over the last seven years, including whether they have been employed by, affiliated with, or otherwise received compensation from any of the BAM Entities, Binance Entities, or Zhao; and (ii) their residence during the past three years and physical location while working for any of the BAM Entities, Binance Entities, or Zhao.

4. Identify all BAM Trading and BAM Management officers, employees, and contractors, as of the date of the filing of the SEC's Complaint, ECF No. 1, including, but not limited to, (i) their employment history, including job titles, during the last five years; (ii) any current or past relationship or affiliation with any of the Binance Entities or Zhao; and (iii) their residence during the past three years and physical location while working for any of the BAM Entities, Binance Entities, or Zhao.

5. Identify any Persons with any equity or other ownership interest in BAM Trading and BAM Management, and any changes to the ownership interests of the BAM Entities during the relevant time period.

6. Identify and describe in detail BAM Trading's policies, procedures, protocols, and controls for the possession, custody, control, transfer, movement, security, segregation, availability, and any encumbrances or limitations of Customer Assets, including (i) the Person(s) involved in their development, maintenance, performance, operation, and enforcement; and (ii) any changes in those policies, procedures, protocols, and controls during the relevant time period.

7. Identify all crypto asset wallet addresses that are "white listed" for transfers to or from crypto asset wallets holding Customer Assets, and describe in detail the process by which new crypto asset wallets could be whitelisted, including, but not limited to, the identification of all Persons involved in the whitelisting process, and their employment history over the last seven years, including whether they have been employed by, affiliated with, or otherwise received compensation from any of the BAM Entities, Binance Entities, or Zhao.

8. Identify all Documents, Communications, and other evidence to support your contention that the Wallet Custody Agreement between Binance and BAM Trading was "never

operationalized" and "was never actually implemented and did not govern BAM's custody practices," *see, e.g.,* BAM Trading Opp. Br., ECF No. 40, at 13, including, but not limited to, all Documents, Communications, and other evidence you rely upon to rebut (i) BAM Trading's current CEO's affirmation to BAM Trading's auditors that Binance could "exert[] control over any digital wallet holding either corporate or custodial digital assets held on [BAM Trading's] behalf," *see* SEC TRO Mem., ECF No. 28, Ex. A-72, at pg. 4; *id.* Ex. A-73, at pg. 9; (ii) BAM Trading's financial statements stating that, at least until December 1, 2022, Customer Crypto Assets and company crypto assets "were held in custody accounts through the Wallet Custody Agreement." *Id.* Ex. A-74, at BTS00833810; and (iii) counsel for BAM Trading's submissions to SEC staff that identified Binance as its custodian of crypto assets, *see, e.g.,* BTS00042025, at BTS00058738.

9. Identify all Persons that have or had the role and responsibilities or otherwise performed or continue to perform the services identified in the Wallet Custody Agreement, whether or not such role, responsibilities, or services were pursuant to any formal agreement, including, but not limited to, (i) the role, responsibility, and service(s) performed by such Person(s); and (ii) the corresponding dates such Person(s) had such role or responsibility or performed such service(s).

10. Identify all Documents and Communications Concerning internal or external audits of the BAM Entities' possession, custody, control, transfer or movement, security, segregation, availability, and any encumbrances or limitations to its Customer Assets.

11. Identify all Documents, Communications, or other evidence that the BAM Entities may contend rebuts BAM Trading's auditor's finding in May 2022 that BAM Trading "is dependent on the [Binance].com custodian to tell them the addresses holding the assets," and

that it "makes it very difficult to ensure the Company is fully collateralized at specific points in time," SEC TRO Mem., Ex. A-89, at Armanino-BAM-000134, including whether You contend that the statement was not true when the finding was made, and/or is not true today.

12.     Identify and describe in detail the basis for the decision to maintain custody or control of any Customer Assets, including Staking Assets, and any Private and Administrative Keys outside of the United States, including the Persons involved in such discussions and decisions, and their employment history or any other relationship or agreement with any of the BAM Entities, Binance Entities, or Zhao.

13.     Identify any Customer Assets or fiat or corporate assets of any of the BAM Entities, including Private and Administrative Keys, that are held outside of the United States or controlled by Persons outside of the United States, including, but not limited to, (i) the type of asset; (ii) current value of the asset; (iii) where the asset is located; (iv) how it is held; (v) the name and contact information of the Persons with custody and control of such assets;(vi) the relationship or affiliation of such Persons with any of the BAM or Binance Entities; and (vii) the time period the assets or keys have been outside of the United States.

14.     Identify and describe in detail the role of any of the Binance Entities, including Sigma Chain and Merit Peak, in the possession, custody, or control of Customer Assets.

15.     Identify and describe in detail any agreement, relationship, affiliation, or association between any of the Binance Entities and any Person with any access, possession, authority, custody, or control of any Customer Assets, fiat or crypto assets of any of the BAM Entities, or any account or wallet holding Customer Assets or the fiat or crypto assets of any of the BAM Entities, including, but not limited to, the extent to which any of the Binance Entities or Zhao has the authority over or the ability to direct or instruct such Persons.

16. For all crypto asset wallets associated with the BAM Entities or Binance.US trading platform, identify each of the assets held in each wallet and the volume and the current value of each asset (including the value of each asset in U.S. Dollars) held in each wallet.

17. Identify and describe in detail all systems and Persons involved in the management of any accounts, crypto asset wallets, Customer Assets, and fiat or crypto assets of the BAM Entities.

18. Identify and describe in detail all policies, procedures, protocols, and controls Concerning or referenced in the Binance.US Digital Asset & Custody Operations Policy, including identification of the Person(s) involved and their functions or roles.

19. Identify and describe in detail how each category of Customer Assets – including Customer Crypto Assets, Staking Assets, and Customer Fiat Assets – are segregated, including from any fiat or crypto assets of the BAM Entities, Binance Entities, Zhao, or any other entity or individual.

20. Identify and describe in detail the validators of the company's staking program and BNB blockchain, including any affiliation or other relationship they have with the Binance Entities, the BAM Entities, or Zhao.

21. Identify whether any BNB wallet, including the omnibus deposit wallet, is a smart contract.

22. For each blockchain for which the BAM Entities have any crypto asset wallets for company crypto assets or Customer Assets, identify and describe in detail the following:

    a. how the wallets were established;

    b. the Person(s) who set up, maintain, have any access to, custody, or control over the wallets;

    c. how they are administrated and operated and by whom;

    d.  information about the coding and software that governs the wallets;

    e.  the Persons who hold the Private and Administrative Keys or New Private and Administrative Keys;

    f.  how the keys are issued and held;

    g.  the security or consensus protocol terms and other governing policies, procedures, protocols, or controls;

    h.  the Persons with any authority or control to change the keys, any protocol that governs any wallet, or any other authority, control, or access with respect to administration or operation of the wallet;

    i.  the authority and role of any of the Binance Entities or Zhao with respect to access, custody, control, administration, and operation of the wallets and Customer Assets, including Concerning the deposit, transfer, custody, control, and withdrawal of Customer Assets

23. Identify all Documents and Communications reviewed or relied upon in preparing the response to these Interrogatories or otherwise related to the responses to these Interrogatories.

24. Identify all Persons who provided information in response to these Interrogatories, and describe in detail the information they provided.

Dated:  June 23, 2023         Respectfully submitted,

                  s/Matthew Scarlato
                  Matthew Scarlato (D.C. Bar No. 484124)
                  Jennifer L. Farer (D.C. Bar No. 1013915)
                  J. Emmett Murphy
                  David Nasse
                  Jorge Tenreiro
                  SECURITIES AND EXCHANGE
                   COMMISSION
                  (202) 551-3749 (Scarlato)
                  scarlatom@sec.gov
                  farerj@sec.gov
                  murphyjoh@sec.gov

                  *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that, on June 23, 2023, I served, via email, the foregoing Plaintiff's First Set of Interrogatories to Defendants BAM Trading Services Inc. and BAM Management US Holdings Inc. on the individuals and entities identified below:

| | |
|---|---|
| Michael Celio | Andrew M. Leblanc |
| Mary Beth Maloney | George Canellos |
| Daniel W. Nelson | Adam Fee |
| Jason J. Mendro | Matthew Laroche |
| Stephanie Brooker | MILBANK LLP |
| M. Kendall Day | aleblanc@milbank.com |
| Richard W. Grime | gcanellos@milbank.com |
| GIBSON, DUNN & | afee@milbank.com |
|  CRUTCHER LLP | mlaroche@milbank.com |
| MCelio@gibsondunn.com | |
| MMaloney@gibsondunn.com | |
| DNelson@gibsondunn.com | Matthew T. Martens |
| JMendro@gibsondunn.com | William R. McLucas |
| SBrooker@gibsondunn.com | Tiffany J. Smith |
| KDay@gibsondunn.com | WILMER CUTLER PICKERING HALE |
| RGrime@gibsondunn.com |  AND DORR LLP |
| | matthew.martens@wilmerhale.com |
| | william.mclucas@wilmerhale.com |
| |  tiffany.smith@wilmerhale.com |
| | |
| *Attorneys for Defendant Binance Holdings Limited* | *Attorneys for Defendants BAM Trading Services Inc. and BAM Management Holdings US Inc.* |

13

Abid R. Qureshi
William R. Baker, III
Michael E. Bern
Douglas K. Yatter
Benjamin Naftalis
Heather A. Waller
Melanie M. Blunschi
LATHAM & WATKINS LLP
abid.qureshi@lw.com
william.baker@lw.com
michael.bern@lw.com
douglas.yatter@lw.com
benjamin.naftalis@lw.com
heather.waller@lw.com
melanie.blunschi@lw.com

*Attorneys for Defendant Changpeng Zhao*

            s/Matthew Scarlato
            Matthew Scarlato