# Exhibit 8

WILMERHALE

**Matthew Beville**

+1 202 663 6255 (t)
+1 202 663 6363 (f)
matthew.beville@wilmerhale.com

July 31, 2023

**VIA EMAIL**

Jennifer L. Farer
Matthew F. Scarlato
Senior Trial Counsel
Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

> Re: ***Binance Holdings Limited, et al.* v. SEC, No. 23 Civ. 1599 (ABJ)**
> **Expedited Discovery Issues**

Dear Ms. Farer and Mr. Scarlato:

We write on behalf of BAM Trading Services Inc. and BAM Management US Holdings Inc. (collectively, "BAM") in response to various requests made during our July 24, 2023 meet and confer and to your July 28, 2023 email.

As an initial matter, you claim that BAM has produced less than 60 documents and provided limited information in response to Interrogatories, but this is a gross mischaracterization of the record. By the time the Complaint was filed in this matter, the SEC already had an immense amount of documents and information concerning BAM's asset custody practices. BAM made significant efforts over more than three years to cooperate with the SEC's investigation in this matter. During that time, BAM produced more than 700,000 individual communications, including approximately 11,391 emails, 8,196 email attachments, and 652,817 other messages. BAM also prepared bespoke data (including years' worth of revenue data) and dozens of pages of narrative and interrogatory responses to the SEC's requests and follow-up questions, detailing virtually every aspect of its business. Moreover, in the months before the Complaint was filed, the SEC began to focus on the custody of BAM's assets, and BAM continued to cooperate in good faith, working around the clock to address the SEC's questions. In addition to numerous telephone conversations, BAM provided the SEC with detailed written responses to the SEC's questions about BAM's customer assets in letters dated May 25, 2023, May 26, 2023, June 1, 2023, and June 2, 2023.

Despite having access to this documentation and information, the SEC chose to serve incredibly overbroad and unduly burdensome discovery requests that seek, on their face, every document and communication in BAM's possession related to Customer Assets. The SEC's

WILMERHALE

Jennifer L. Farer and Matthew F. Scarlato
July 31, 2023
Page 2

approach ignores and has gone far beyond the scope of expedited discovery authorized by the Consent Order.  The Consent Order states that the SEC may conduct "limited expedited discovery" concerning, in substance, the possession, custody, transfer, and control of Customer Assets, including whether BAM can meet customer claims and liabilities.  This provision does not permit the SEC to conduct freewheeling discovery of historical asset custody practices that have no bearing on or relevance to the security and custody of Customer Assets today.

Regardless, BAM has worked in good faith to respond to your requests, diligently collected documents and information, made several productions, made witnesses available for depositions, and provided a substantial amount of additional information through letters, interrogatory responses, and declarations.  This has included providing a detailed discovery plan with priority and secondary priority productions, which BAM has executed on.  The SEC has chosen not to take advantage of the availability of witnesses who are best positioned to answer your questions.

Your correspondence suggests that our approach is inconsistent with the Consent Order, but you do not explain why that is so.  When you have raised specific issues during our meet and confers, we addressed them in follow-up correspondence or are doing so below.  However, when we requested that the SEC consider limiting its requests, the SEC has declined to do so and continued to take the position that BAM is required to produce "All Documents and Communications Concerning" various topics.  The SEC's approach is unreasonable, appears to be a fishing expedition, and leaves BAM guessing as to what additional documents and information would satisfy the SEC's stated concerns.

Nevertheless, BAM remains willing to work with you in good faith to address specific concerns.  BAM intends to complete its production of materials in response to the SEC's discovery requests by the end of this week.  BAM responds to the SEC's open requests as follows:

- Policies and Procedures Related to BAM Customer Assets (RFP Nos. 1, 4, 5; Interrogatory No. 6):  You made several requests related to the policies and procedures concerning BAM Customer Assets, including that BAM (i) identify the policies currently in place; (ii) summarize how policies are conveyed to employees; (iii) identify the commentor on Binance.US Digital Asset & Custody Security Standard; (iv) identify who received the Device Management and Handling Procedures and whether it is still in place; and (v) explain when revised policies will be finalized and produced.  While these requests are more appropriate lines of inquiry for depositions, we have conferred with BAM personnel and provide the following responses:

*First*, the policies produced to date remain in place, including the Binance.US Digital Asset & Custody Operations Policy (BAM_SEC_LIT_00000001); Device Management and Handling Procedures (BAM_SEC_LIT_00000021); Binance.US Business Continuity and Disaster Recovery Plan (BAM_SEC_LIT_00000043); Binance.US Risk Methodology (BAM_SEC_LIT_00000094); and Binance.US Vendor Due Diligence Policy

WILMERHALE

Jennifer L. Farer and Matthew F. Scarlato
July 31, 2023
Page 3

(BAM_SEC_LIT_00000130).  While the Binance.US Digital Asset & Custody Security Standard policy is in draft form, BAM has summarized the procedures concerning the security of Customer Assets in other documents, including in the Declaration of Erik Kellogg and BAM's responses to the SEC's First Set of Interrogatories.  BAM also has policies focused on IT and cybersecurity. While we do not understand the SEC to be focused on those policies, out of an abundance of caution, we are producing them with this letter bearing Bates Nos. BAM_SEC_LIT_00000366 through BAM_SEC_LIT_00000903.

Second, BAM's Security team, including Mr. Kellogg, BAM's Chief Information Security Officer, are responsible for ensuring that policies concerning Customer Assets are conveyed to the appropriate BAM personnel.  This occurs in a variety of ways, including through briefings, communications, and making policies available to the necessary personnel.  For security purposes, BAM's policies concerning Customer Assets are conveyed to employees on a need-to-know basis.

Third, the commentor on the Binance.US Digital Asset & Custody Security Standard, previously produced bearing Bates Nos. BAM_SEC_LIT_00000104, is Mr. Kellogg, and we are producing the native draft document with this letter.  As to the "Users" and "Requestors" identified in the draft, those functions are filled by members of the Clearing Team as described in our July 7, 2023 correspondence.

Fourth, BAM's Security team provided the Device Management and Handling Procedures to the holders of the New Private and Administrative Keys.  BAM's Security team also briefed those individuals on the procedures and best practices for security regarding the New Private and Administrative Keys.  As noted, the Device Management and Handling Procedures remain in place.

Finally, as you know, BAM is in the process of revising its policies, which involves drafting and/or review by BAM's Security team and appropriate BAM executives.  There is no set timeline in place for approval of the revised policies.

● Custody of Customer Assets (RFP Nos. 6-8, 20):  You requested additional materials relating to BAM's banking arrangements, including account opening documents and bank statements.  BAM is conducting a search for responsive documents during the relevant time period (November 2022 to present) involving its banking partners—including (i) Prime Trust/Cross River Bank; (ii) Axos; (iii) BitGo/Customers Bank; (iv) Orum/Silicon Valley Bank; (v) Nuvei/Fresno First Bank; (vi) Wyre; and (vii) Aegis—and will complete its production this week.

● Old and New Private and Administrative Keys (Interrogatory No. 2):  You requested the dates when individuals held the Private and Administrative Keys and New Private and Administrative Keys.  BAM will respond to this request this week.

WILMERHALE

Jennifer L. Farer and Matthew F. Scarlato
July 31, 2023
Page 4


- Prior BHL/Zhao Employment (Interrogatory No. 4):  You requested that BAM identify the dates when BAM employees were employed by BHL and/or Zhao.  BAM continues to believe that this information is not within the relevant scope of the Consent Order.

- BAM's Ownership Interests (Interrogatory No. 5):  BAM is producing a document bearing Bates Nos. BAM_SEC_LIT_00000904 through BAM_SEC_LIT_00000908 identifying the Series Seed Investors who have an ownership interest in BAM Management US Holdings Inc.

- Wallet Custody Agreement (Interrogatory No. 9):  As we have explained, the Wallet Custody Agreement was never fully operationalized.  To the extent that there are services listed in the Wallet Custody Agreement that were provided under the Software Licensing Agreement, we believe that relevant individuals have been fully identified in responses to other requests.

- Audit-Related Requests (RFP Nos. 26, 27; Interrogatory Nos. 10-11):  We do not intend to produce documents in response to your requests for "All Documents and Communications" related to audit-related materials absent the SEC limiting those requests, which you have declined to do.  We remain willing to discuss audit-related issues with you but are unable to move those requests forward without further dialogue.

- Custody of Assets Outside the United States (Interrogatory No. 12):  Pursuant to the Consent Order, BAM has confirmed that it maintains possession, custody, and control in the United States of all Customer Assets.  BAM does not believe that the SEC's request for information concerning historical asset custody practices and the reason for those practices is within the relevant scope of or proportional to the needs of the Consent Order.  Absent further dialogue with the SEC on this Interrogatory, BAM will not produce documents or provide information in response to it.

- Sigma Chain and Merit Peak (Interrogatory No. 14):  You asked for more information concerning the roles of Sigma Chain and Merit Peak, including their role with respect to security and control over Customer Assets.  As we explained in BAM's responses to the SEC's Interrogatories, Merit Peak no longer operates on BAM's platform and, thus, we do not believe discovery requests directed toward Merit Peak's historical role on BAM's platform (which was to act as a market maker) are within the relevant scope of or proportional to the needs of the Consent Order.  Moreover, Merit Peak did not have a role with respect to the possession, custody, or control of Customer Assets.

Sigma Chain is a public limited company formed in Switzerland in January 2019.  Although BAM and Sigma Chain share a common beneficial owner, they are entirely independent, with separate management, personnel, offices, and infrastructure.  Sigma Chain has historically played several roles on BAM's platform.

WILMERHALE

Jennifer L. Farer and Matthew F. Scarlato
July 31, 2023
Page 5

*First*, a Sigma Chain trading unit has acted as a market maker on BAM's platform.  We understand that its strategy was entirely automated and intended to passively post two-sided quotes in the instruments in which it traded.  For several months between in 2022, we understand that Sigma Chain also implemented an independent arbitrage strategy on the platform, which traded heavily in stablecoins and other price-linked tokens.

*Second*, in addition to its trading platform, BAM offers customers access to a "One Click Buy-Sell" ("OCBS") window.  This window allows retail participants to request a price, which is valid for 30 seconds, to purchase or sell listed assets, without navigating through the active order book.  We understand that a different, independent Sigma Chain algorithm has acted as the counterparty for this feature.  If a customer accepted the price offered by Sigma Chain, the OCBS algorithm executed the trade, and then exited the position via BAM's order book.

*Third*, BAM offers institutional customers access to an over-the-counter ("OTC") window to execute large positions.  A fourth, independent Sigma Chain algorithm has acted as the counterparty for this feature.  Like the OCBS window, the OTC algorithm provides quotes to interested customers to immediately buy or sell "block" size orders in supported assets. If the customer accepts the price, the OTC algorithm exits the position via the BAM Trading order book. Depending on the size of the trade and the liquidity in the market, this hedging activity could be conducted in multiple orders over time.

Related to these on-platform roles, Sigma Chain has also served as a counterparty for on-chain "network swaps," which involve exchanging an asset on one blockchain network—generally a stablecoin—for the same quantity of the same asset on another blockchain network.  These swaps are necessary to manage inventory to facilitate customer withdrawals across networks for tokens traded on multiple blockchains.  Sigma Chain does not charge BAM for this service.

We are not aware of Sigma Chain serving in any other role on BAM's platform during the relevant time period.  Moreover, as we previously explained, Sigma Chain has not and does not have a role in the possession, custody, or control of Customer Assets.

●    Digital Asset Policies and Procedures (Interrogatory No. 22):  You requested that BAM provide additional information concerning the creation of the New Private and Administrative Keys and security protocols related to them.  As of the date of this letter, BAM has created new cold wallets with New Private and Administrative Keys.  The New Private and Administrative Keys were created in consultation with Ceffu, and BAM submits that inquiries concerning how Ceffu creates wallets should be directed to Ceffu.  As noted earlier, BAM's security protocols concerning the New Private and Administrative Keys are summarized in the Device Management and Handling Procedures and overseen by BAM's Security team and CISO.

WILMERHALE

Jennifer L. Farer and Matthew F. Scarlato
July 31, 2023
Page 6


- <u>Format of Document Productions</u>:  BAM is reviewing its prior productions to ensure that their format complies with applicable law.  To the extent that BAM determines that the reproduction of materials is necessary, it will do so during the week of August 7, 2023.

- <u>BAM's Objections to Other Requests</u>:  You requested that BAM identify any requests for which it does not intend to produce documents.  As noted above, BAM does not intend to produce documents or information in response to requests for audit-related materials or information concerning historical asset custody practices.  BAM has otherwise substantively responded to all the requests made during our meet and confers and is willing to consider additional, tailored requests.  However, BAM maintains its objections to searching for or producing materials in response to requests for "All Documents and Communications Concerning" various topics and similarly worded requests.

*   *   *

Please let us know if you have any questions.  We otherwise request that you schedule depositions with Mr. Kellogg and Ms. Sisenwein, which we believe would help address your concerns.


Very truly yours,

*/s/ Matthew Beville*

Matthew Beville

Enclosure

**Exhibit A**

| Bates Range | Request No. | Interrogatory No. |
|---|---|---|
| BAM_SEC_LIT_00000104 (native draft document) | 1, 4, 5 | 6 |
| BAM_SEC_LIT_00000366- BAM_SEC_LIT_00000903 | 1, 4, 5 | 6 |
| BAM_SEC_LIT_00000904- BAM_SEC_LIT_00000908 | N/A | 5 |