# EXHIBIT 1

# WILMERHALE

**William R. McLucas**

**FOIA CONFIDENTIAL TREATMENT REQUESTED BY
BAM TRADING SERVICES INC. PURSUANT TO
17 C.F.R. § 200.83 AND 5 U.S.C. § 552**

+1 202 663 6622 (t)
+1 202 663 6363 (f)
william.mclucas@wilmerhale.com

May 25, 2023

**By Email and Secure File Transfer**

Jorge Tenreiro, Esq.
Deputy Chief, Crypto Asset and Cyber Unit
Division of Enforcement
U.S. Securities and Exchange Commission
100 Pearl Street, Suite 20-100
New York NY. 10004-2616

    Re:    **In the Matter of Binance.US (HO-13865)**

Dear Mr. Tenreiro:

    We write on behalf of BAM Trading Services Inc. ("BAM Trading" or the "Company") to summarize the information we provided to the staff on behalf of the Company yesterday in our telephone call regarding the custody of fiat currency and digital assets that BAM Trading holds on behalf of its customers. You indicated that the staff's questions and concerns relate to the Reuters article dated May 23, 2023, which suggested that customer funds were commingled with company revenue. As set forth below, we understand that customers assets are secure, appropriately segregated, and available for immediate withdrawal, subject to transaction limits imposed by the Company's banking partners and, for staked assets, any applicable unbonding periods. We will provide further responses to your May 24, 2023 email request by the close of business tomorrow.

    We begin with a summary of how BAM Trading maintains custody of customer crypto, followed by a summary of how it holds customer digital assets in the normal course and as part of its staking program.

I.    FIAT CURRENCY

    BAM Trading maintains customers' fiat currency in segregated accounts maintained with its banking partners, separate from any corporate funds. BAM Trading personnel control all transfers of fiat currency out of the Company's accounts. Customers may direct transfers of fiat currency held in their name off of the platform; transfers below predefined thresholds, set exclusively by BAM Trading personnel or its banking partners, are automatically approved by BAM Trading's systems. Larger transfers, either for the benefit of a specific customer or as part of the Company's cash management activities, may only be approved by a small number of BAM

**WILMERHALE**

Jorge Tenreiro, Esq.
May 25, 2023

Trading executives.  No Binance.com or Binance Holdings Limited ("BHL") personnel may approve transfers of fiat currency held on behalf of BAM Trading customers.

Customer fiat deposits are maintained as fiat currency until the customer uses the funds to purchase digital assets or transfers the funds off the platform.  BAM Trading has never had a practice of automatically converting customer fiat deposits to stablecoins or other digital assets.  All customer fiat currency is unencumbered and available for immediate withdrawal, subject to any periodic transaction-volume limits imposed by the Company's banking partners.

II.   DIGITAL ASSETS

   A.   *Default Custody Protocols*

As we have previously described, BAM Trading maintains control of its customers' digital assets.  As of today, the Company holds all unstaked customer and proprietary digital assets in wallets maintained in an Amazon Web Services ("AWS") datacenter in Northern Virginia.  Individual holdings are tracked via an internal ledger and regularly reconciled against the public blockchain balances for the Company's wallets.  The AWS account holding these wallets is associated with BHL.  However, as described below, BAM Trading maintains exclusive control over the movement of these assets and no BHL personnel have the ability to change the permissions for BAM Trading's wallets.

Digital assets deposited by customers from external wallets are held in customer-specific "deposit wallets."  If the balance of these wallets exceeds predefined thresholds, set exclusively by BAM Trading personnel, assets are transferred from the customer-specific deposit wallet to an omnibus "hot wallet."  These hot wallets are used to conduct on-chain activity associated with BAM Trading's business, including transferring customers' digital assets to external wallets.  Customer initiated transfers of less than $1 million (which may vary due to customer-level KYC attributes) are automatically approved by BAM Trading's system.  Transactions larger than $1 million (or the customer-specific limit) must be manually approved by a member of BAM Trading's Clearing team.  BAM Trading has configured its hot wallets to hold approximately five-times the daily-average transaction volume for each asset listed on the BAM Trading platform.

If the balance held in a hot wallet exceeds the thresholds set by Company personnel, the excess balance is automatically transferred to one of BAM Trading's cold wallets.  These cold wallets rely on Threshold Signature Scheme ("TSS") encryption to securely hold assets when they are not immediately needed to conduct on-chain transactions or to facilitate transfers off the platform.  The Company's TSS protocol is currently configured to rely on seven "key shards."  Four shards are held by BAM Trading personnel; the remaining three shards are held by BHL personnel for disaster recovery purposes.  Four shards are required to approve any transfers from the cold wallets.  As a result, no transfers may be initiated without the involvement of at least one BAM Trading employee.  BAM Trading's cold wallets are further configured to only permit transfers to a list of preapproved wallets.  This list includes only the Company's hot wallets and

Jorge Tenreiro, Esq.  
May 25, 2023

**WilmerHale**

wallets used to facilitate the Company's staking program. Adding additional "whitelisted" wallets requires the unanimous approval of all shardholders.

All of the customer assets maintained in the Company's deposit wallets, hot wallets, and cold wallets are unencumbered and available for immediate withdrawal.

### B. Staking Custody

As the Staff is aware, BAM Trading also offers an opt-in staking program. Assets staked as part of this program are held in one of three ways:

*First*, certain assets are staked from other TSS-enabled wallets in AWS's Northern Virginia datacenters. The TSS protocol for these staking wallets relies on four key shards. For each wallet, two shards are held by BAM Trading and two shards are held by BHL; two shards are required to authorize a staking operation. Like the Company's cold wallets, the TSS-enabled staking wallets are further configured to only permit transfers to a list of preapproved wallets and adding additional "whitelisted" wallets requires the unanimous approval of all shardholders.

*Second*, certain assets are staked from a Ledger hardware device. This device is currently maintained in a safe-deposit box in Singapore that is exclusively accessible to BAM Trading personnel. The Company expects to transition all assets from the Ledger device by no later than mid-July. Most of these assets will be transitioned to TSS-enabled staking wallets, but, as described below, some will be transferred to wallets maintained by third-party custody providers.

*Third*, as noted above, BAM Trading is currently in the process of transitioning custody of certain assets, including assets on the Ledger device, to Bitgo and Aegis Custody, third-party digital asset custody services. These wallets are solely used for the Company's staking program and directed solely by BAM Trading personnel. The private keys for these wallets are held by BAM Trading and Bitgo and Aegis Custody, respectively. All transfers require the approval of both BAM Trading and, as appropriate, Bitgo or Aegis Custody.

Customers retain title to assets staked through any of these methods. Assets enrolled in the program are also available for immediate withdrawal, subject to any applicable unbonding periods. As with the Company's staked assets, the Company regularly reconciles the balances of its staking wallets against its internal ledger.

### III. CONCLUSION

As set forth above, BAM Trading's policies and procedures are designed to provide for the responsible segregation of customer fiat currency and digital assets from its proprietary assets, and for holding those assets in a safe and unencumbered manner. Customers retain the ability to immediately withdraw any fiat currency or digital assets held by the Company, subject to short-term transaction volume limits or, for staked assets, applicable unbonding periods.

WILMERHALE

Jorge Tenreiro, Esq.
May 25, 2023

\* \* \*

BAM Trading requests that this letter, the materials labeled BTS_Vol_042, and all information contained in them (collectively, the "Confidential Material") be maintained in confidence by the SEC and its staff and be used solely for the purposes of this inquiry. Accordingly, the Confidential Material has been marked "Confidential Treatment Requested by BAM Trading Services Inc." for reasons of personal privacy and business confidentiality.

The Confidential Material concerns or may concern customarily non-public, confidential and privileged business, financial, commercial, and personal information concerning BAM Trading and/or its personnel. The Confidential Material is exempt from mandatory disclosure under various provisions of the Freedom of Information Act ("FOIA"), including 5 U.S.C. § 552(b)(7) (which protects certain "records or information compiled for law enforcement purposes"),[1] 5 U.S.C. § 552(b)(4) (which protects trade secrets as well as confidential commercial or financial information obtained from a person), 5 U.S.C. § 552(b)(6) (which protects files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"),[2] and 5 U.S.C. § 552(b)(7) (which protects records or information compiled for law enforcement purposes). Because the Confidential Material relates to the activities of BAM Trading and not the activities of any federal agency, we believe it is exempt from disclosure under FOIA.[3] The Commission treats records falling within the FOIA exemption categories to be "nonpublic" and "will generally not publish or make available to any person" such records. 17 C.F.R. § 200.80(b). Moreover, disclosure of this Confidential Material may be prohibited under 18 U.S.C. § 1905, and further protections may be available under the Privacy Act of 1974, 5 U.S.C. § 552a. Finally, the Confidential Material being produced voluntarily is protected from disclosure because it would not customarily be released to the public by BAM Trading.[4]

In accordance with 17 C.F.R. § 200.83 and other applicable laws and regulations, the Confidential Material is submitted to the SEC with BAM Trading's request, through the undersigned, that it be kept in a non-public file and that only SEC staff have access to it. If any person not a member of the SEC staff (including without limitation any governmental employee) should request an opportunity to inspect or copy the Confidential Material, pursuant to FOIA or otherwise, or if you or any member of the SEC staff contemplates disclosure of the Confidential Material to any other person, we request that the undersigned immediately be notified of such request, be furnished a copy of all written materials pertaining to such request (including but not limited to the request itself), and be given advance notice of any intended release so that we may,

---

[1] *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

[2] *See, e.g.*, *U.S. Dep't of Def. v. Federal Labor Relations Authority*, 510 U.S. 487 (1994).

[3] 5 U.S.C. §§ 552(b)(6) and (b)(7)(C); *U.S. Dep't of Def.*, *supra*; *see, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 449 (1989).

[4] *See, e.g.*, *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993).

WilmerHale

Jorge Tenreiro, Esq.
May 25, 2023

if deemed necessary or appropriate, pursue any remedies available.  *See, e.g., Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).  We expect to be given the opportunity to object to such disclosure.  We request that you telephone the undersigned rather than rely upon the U.S. mail for such notice.

Should the SEC be inclined to grant any FOIA request for the Confidential Material, BAM Trading expects that the procedures set forth in 17 C.F.R. § 200.83 and Executive Order 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), will be followed.  In that case, BAM Trading will further substantiate its request for confidential treatment, and will request a hearing on the claim of exemption.

The requests set forth in the preceding paragraphs also apply to any form of communication of any sort, including, but not limited to any tapes, memoranda, notes, transcripts, electronic documents, or communications containing extracts, summaries, or quotes, or other writings of any sort whatsoever that are made by, or at the request of, any employee of the SEC (or any other governmental agency) and which (1) incorporate, include or relate to any of the Confidential Material; or (2) refer to any conference, meeting, or telephone conversation between BAM Trading, its current or former employees, representatives, agents, auditors, or counsel on the one hand and employees of the SEC (or any other government agency) on the other, relating to the Confidential Material.

The Confidential Material remains the property of BAM Trading.  If the SEC staff determines to transfer any of the Confidential Material to another federal agency, we request that you forward a copy of this letter to any such agency with the Confidential Material.  We request that you indicate to any such agency that BAM Trading has requested the return of this material to the undersigned at the completion of the agency's efforts in this matter and has requested that this material be accorded confidential treatment.

Provision of the Confidential Material is not intended to, and does not, waive any applicable privilege or other legal basis under which information may not be subject to production.  If it were found that production of the Confidential Material constitutes disclosure of otherwise privileged matters, such disclosure would be inadvertent.  By the productions of such documents, BAM Trading does not intend to and has not waived the attorney-client privilege or any other protections.

\*   \*   \*

Please feel free to contact me if you have any questions about these matters.

Sincerely,

/s/ William R. McLucas
William R. McLucas

*Confidential Treatment Requested by BAM Trading Services Inc.*          BAM-WH-CORR-029