UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:23-cv-01599-ABJ-ZMF |
| BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES INC., BAM MANAGEMENT US HOLDINGS INC., AND CHANGPENG ZHAO, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF JENNIFER FARER

I, Jennifer Farer, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a Trial Attorney for the Plaintiff Securities and Exchange Commission ("SEC"). I submit this Declaration in support of the SEC's Motion to Compel Discovery and Opposition to Defendants BAM Trading Services Inc. and BAM Management US Holdings Inc.'s (collectively, "BAM") Motion for a Protective Order.

2.      I have personal knowledge of the matters set forth in this Declaration, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

3.      Attached as **Exhibit 1** is a true and correct copy of the transcript of the hearing held before the Honorable Amy Berman Jackson on June 13, 2023 in this litigation.

4.      Attached as **Exhibit 2** is a true and correct copy of the SEC's First Set of Requests for Production of Documents and Inspection ("RFPs") served on BAM on June 23, 2023.

5.      Attached as **Exhibit 3** is a true and correct copy of the SEC's First Set of Interrogatories ("Interrogatories") served on BAM on June 23, 2023.

6.      On June 21, during a discussion concerning issues relevant to the joint status

1

report (*see* Dkt. No. 87), the parties briefly discussed expedited discovery and what the SEC may want in addition to the Declarations BAM had filed in support of its opposition to the SEC's TRO Motion.

7.     On June 30, the SEC first met and conferred with BAM to discuss the SEC's first set of discovery requests.  BAM informed the SEC that it believed the SEC's discovery requests were overbroad and questioned the relevance of historic and other information.  BAM stated it would present a proposed discovery plan based on the requests BAM deemed relevant that would prioritize production of information about the current status of Customer Assets and include a proposal to address some of the other issues.

8.     At BAM's request, the SEC agreed to extend the response deadline in an effort to work with BAM in good faith and facilitate a substantive production of documents and information.

9.     On July 5, BAM served its objections and responses to the RFPs though it did not produce any documents.  Attached as **Exhibit 4** is a true and correct copy of BAM's objections and responses to the RFPs, served on July 5, 2023.

10.    Attached as **Exhibit 5** is a true and correct copy of a letter from BAM counsel Matthew Martens to the SEC dated July 5, 2023.

11.    The SEC has, from the outset, disputed BAM's characterization of any of its discovery requests as unrelated to Customer Assets or not a priority to addressing the concerns the expedited discovery is intended to address.

12.    On July 7, the parties conducted a meet and confer concerning BAM's objections and responses to the SEC's RFPs and BAM's proposed discovery plan.  The SEC explained that BAM's interrogatory responses and information required under Section IV of the Consent Order did not satisfy BAM's production obligations in response to the RFPs, as BAM proposed.  While the SEC maintained that BAM was required to produce documents in response to all of the SEC's RFPs, the SEC agreed to a rolling production of materials based on the prioritization from

BAM's July 5 letter, as expanded during the meet and confer to include, among other materials, the documents in response to Request 18 concerning Ceffu.

13.     Attached as **Exhibit 6** is a true and correct copy of BAM's objections and responses to the Interrogatories, which BAM served on July 13, 2023.

14.     Over the ensuing nearly two months, the SEC continued to press BAM on outstanding relevant discovery in response to the SEC's RFPs and Interrogatories, while also agreeing in good faith to BAM's multiple requests to extend interim deadlines.  Since then, the SEC has met and conferred with BAM's counsel via telephonic conference and email communications on at least a weekly basis, and on multiple occasions requested that BAM provide a schedule of remaining productions, noting that a prolonged production schedule would require extension of the expedited discovery period.

15.     Attached as **Exhibit 7** is a true and correct copy of an exchange of emails between the SEC and counsel for BAM, starting with the most recent email from Jennifer Farer dated July 13, 2023.

16.     Attached as **Exhibit 8** is a true and correct copy of an exchange of emails between the SEC and counsel for Defendants, starting with the most recent email from Jennifer Farer dated July 19, 2023.

17.     As of July 24, BAM had only produced approximately 32 documents in response to the RFPs, and 14 documents pursuant to their obligations to provide certain information under Section IV of the Consent Order.

18.     During a July 24 meet and confer, the SEC expressed its concerns with BAM's discovery deficiencies as to timing, scope, and format of production, including failure to complete the priority productions promised on July 7.  The SEC stressed the need to understand the relevant systems, software, devices, and operational components, including the need for diagrams and other documents describing the AWS environment, TSS protocol, related protocols, software, and technology.  BAM represented that it had not been able to identify any

such documents, suggesting depositions may be the only method to obtain such information, and the SEC reiterated that, if that was the case, an inspection may be the only option.

19.     BAM has made several statements regarding its custody and control of Customer Assets, including admitting to the involvement of Binance Entities in creating wallets and key shards relating to BAM's Customer Crypto Assets and maintaining the AWS environment that hosts the wallet custody software.  BAM has also made inconsistent statements about Ceffu's and Binance's involvement in these matters first claiming that Ceffu was BAM's wallet custody software and services provider, but later stating that Binance is BAM's wallet custody software provider.

20.     Attached as **Exhibit 9** is a true and correct copy of a letter from BAM counsel Matthew Beville to the SEC dated August 14, 2023.

21.     Attached as **Exhibit 10** is a true and correct copy of a document produced by BAM titled "Binance.US Digital Asset & Custody Operations Policy" with the initial Bates stamp BTS00833836.

22.     Attached as **Exhibit 11** is a true and correct copy of a letter from BAM counsel Matthew Beville to the SEC dated July 31, 2023.

23.     Given the admission of Ceffu's involvement in the custody and control of BAM's crypto assets, as well as subsequent public information the SEC obtained from Ceffu's website about its third-party wallet custody service offerings and registration with foreign-based Binance affiliates, on August 3, 2023, the SEC raised concerns to BAM regarding Ceffu's role in the custody and control of Customer Assets.  The SEC stressed that the Consent Order required the creation of new wallets and private keys to address this very same lack of information about the preexisting wallets created by Binance, and that BAM was prohibited from using a foreign Binance affiliated third-party for wallet custody services.

24.     Attached as **Exhibit 12** is a true and correct copy of an exchange of emails between the SEC and counsel for BAM, starting with the most recent email from Jennifer Farer

dated August 3, 2023.

25.     Attached as **Exhibit 13** is a true and correct copy of a website capture of multiple pages of the website of an entity called "Ceffu" as of August 3, with an accompanying declaration from SEC Information Technology Specialist Joseph Morgan regarding the method of capture. This information, along with other information, raised SEC concerns regarding Ceffu's role in the custody and control of Customer Assets.

26.     Attached as **Exhibit 14** is a true and correct copy of an exchange of emails between the SEC and counsel for Defendants, starting with the most recent email from Emmett Murphy dated August 16, 2023.

27.     During an August 4 meet and confer, BAM's counsel explained that Binance markets its wallet custody software to third parties as "Ceffu." However, BAM's wallet custody software had not changed—it was the same wallet custody software licensed from Binance under the Software License Agreement. BAM further explained that BAM sometimes internally referred to the wallet custody software solution as "Ceffu," but that BAM's wallet custody software solution predated Binance's commercial offering of "Ceffu" as a third-party wallet custodial solution. In other words, BAM suggested that Binance was providing the wallet services—as it had been doing all along.

28.     During that same August 4 meet and confer, BAM also agreed to provide additional information about the Wallet Custody Agreement, the roles, responsibilities, and functions set forth in the agreement, and the identification of Binance and other entities and individuals who provide the services, including a detailed chronology with back-up documentation about the evolution of the relationship with Binance through the termination of the agreement. BAM further agreed to explain its position that the Wallet Custody Agreement was purportedly "not operationalized" and therefore did not describe or govern the relationship between BAM and Binance in providing wallet custody software and related services to BAM.

29.     Attached as **Exhibit 15** is a true and correct copy of an exchange of emails

between the SEC and counsel for BAM, starting with the most recent email from Jennifer Farer dated August 11, 2023.

30.    Attached as **Exhibit 16** is a true and correct copy of an exchange of emails between the SEC and counsel for BAM, starting with the most recent email from Jennifer Farer dated August 5, 2023.

31.    Although BAM's counsel explained on August 4 that BAM was continuing to use Binance software, BAM made a document production on August 14 production in response to the SEC's August 5 request that did not contain any information about Binance's provision of that software service to BAM, as BAM's counsel had represented.  Rather, the production included, in relevant part, a security report for a Ceffu predecessor, Block Technologies, and a spreadsheet BAM identified as Ceffu's answers to a questionnaire, called the "Custody Solution Provider Security Questionnaire," that BAM requires its custody solution providers to fill out.

████████████████████████████████████████████████████

██████████████████████.

32.    Attached as **Exhibit 17** is a true and correct copy of a document ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██ ███

33.    On August 23, 2023, the SEC took the deposition ████████████████, a representative of FGMK LLC, which is BAM's external auditor.  At this time, an official transcript of the deposition is unavailable, but based on my personal knowledge of the substance of the deposition, as supported by my attendance at the deposition and review of an unofficial, or "rough," transcript provided by the Court reporter, ████████ testified, in sum and substance, in relevant part, as follows:

      a.    ██████████████████████████████████████

34.     On August 24, 2023, the SEC took the deposition of Eric Kellogg, BAM's Chief Information Security Officer.  At this time, an official transcript of the deposition is unavailable, but based on my personal knowledge of the substance of the deposition, as supported by my own examination of the witness and review of an unofficial, or "rough," transcript provided by the Court reporter, Kellogg testified, in sum and substance, in relevant part, as follows:

a.     ████████████████████████████
████████████████████████████████
████████████████████████████████
███████████████████████████.

b.     ████████████████████████████
████████████████████████████████
████████████.

c.     Despite being responsible for the security of BAM's crypto assets including Customer Assets, Kellogg testified that ████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████.

d.     Kellogg testified about ████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████



e. ██████████████████████████████████████████

██████████████████████████████████.

f. Kellogg testified ████████████████████████

██████████████████████████████████████

██████.

g. ██████████████████████████████████████

██████████████████████████████████████

████.

35.     Other than the information described herein, BAM has failed to provide any
additional information in response to the SEC's repeated requests concerning Ceffu or technical
documentation or other evidence related to BAM's infrastructure, systems, security protocols,
wallet custody software and the creation, custody, and control of the wallets and private keys.
BAM initially objected to the RFP's overbreadth and otherwise claimed such materials did not
exist; however, during his deposition, Kellogg testified ████████████████████

████████████████████████████████████.

36.     Attached as **Exhibit 18** is a true and correct copy of a document produced by
BAM's auditor ████████████████████████████████████

████████████████.

37.     Attached as **Exhibit 19** is a true and correct copy of an exchange of emails
between the SEC and counsel for Defendants, starting with the most recent email from Emmett
Murphy dated August 2, 2023.

38.     Attached as **Exhibit 20** is a true and correct copy of a letter from BAM's auditor

FGMK to ██████████████ BAM, dated June 15, 2023, ██████████████

████████████.

39.     Attached as **Exhibit 21** is a true and correct copy of a document produced by BAM titled with the initial Bates stamp BAM_SEC_LIT_00000076, which appear to be a series of screenshots of financial account reports and other data.

40.     Attached as **Exhibit 22** is a true and correct copy of an exchange of emails between the SEC and counsel for Defendants, starting with the most recent email from Matthew Laroche dated August 14, 2023.

41.     On August 28, just before the SEC filed its Motion to Compel and Opposition to BAM's Motion for a Protective Order, after the SEC's multiple requests, BAM produced its ████████████████████████████. The SEC did not even learn of the existence of BAM's auditor's concerns expressed in its June letter until it received the auditor's document production in July 2023, and the SEC did not learn ██████████████████████ ████████████████████.

42.     BAM initially claimed that its production of documents pursuant to Part IV of the Consent Order, including information showing balances of Customer Assets for each Customer as of a mutually agreed date, and a general ledger as of that date was sufficient in evaluating whether BAM maintained sufficient asset. In addition, BAM initially produced only screenshots of certain bank account information (some of which were unintelligible) and information prepared by counsel identifying account balances, owners, and signatories to establish the account balances and authorized owners and signatories for fiat accounts. But that information is insufficient. During the July 7 and July 24 meet and confers and subsequent communications, the SEC explained it needed more detailed financial information—based on documents or other evidence—and beyond this snapshot in time to evaluate and verify the information provided regarding its fiat and crypto asset holdings, expenses, and accounting and bank statement information and ensure that Binance.US maintains sufficient assets, including such documents

and information identified herein.

43.     As an attempt to compromise on the Request for Inspection, during the various meet and confers, the SEC requested diagrams and other documents describing the relevant system architecture, infrastructure, systems, software, and protocols, stressing that absent such information, an inspection may be the only option to obtain the information necessary to evaluate the custody and control of Customer Assets.  BAM has responded that no such documents exist and has insisted that Kellogg's deposition would satisfy the SEC's need for discovery on this issue.  However, when presented with documents the SEC received from BAM's third-party auditors, during his deposition, Kellogg ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓.

44.     Attached as **Exhibit 23** is a true and correct copy of a document produced by

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

45.     Attached as **Exhibit 24** is a true and correct copy of a document produced by

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

46.     Attached as **Exhibit 25** is a true and correct copy of a document produced by

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

47.     Over the course of weeks, the SEC has met and conferred with BAM on numerous occasions, with multiple follow-up communications, pressing on outstanding discovery, in a vain attempt to reach a compromise as to these issues.  But BAM has failed to respond or supplement its responses to the Interrogatories.

48.     Attached as **Exhibit 26** is a true and correct copy of a document produced by BAM's auditor FGMK that appears to be minutes of a meeting with BAM's CEO with the initial

Bates stamp FGMK_SEC_028926.

49.     Attached as **Exhibit 27** is a true and correct copy of a document produced by Prime Trust that appears to list authorized signatories for BAM's Prime Trust account with the initial Bates stamp SEC-Primetrust-E-0013680.

50.     Attached as **Exhibit 28** is a true and correct copy of a document produced by BAM's auditor FGMK that appears to be a letter from CEO Brian Shroder to Binance dated December 30, 2022, with the initial Bates stamp FGMK_SEC_40688.

51.     Attached as **Exhibit 29** is a true and correct copy of a document produced by

████████████████████████████████████████████████████████

███████████████████████████████████████████.

52.     Attached as **Exhibit 30** is a true and correct copy of a document produced by

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████.

53.     Attached as **Exhibit 31** is a true and correct copy of ████████████████

████████████████████████████████████.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of August, 2023, in Washington, D.C.

