# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )    No. 1:23-cv-01599-ABJ ) |
| BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES INC., BAM MANAGEMENT US HOLDINGS INC., AND CHANGPENG ZHAO, | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS AND INSPECTION TO DEFENDANTS BAM
<u>TRADING SERVICES INC. AND BAM MANAGEMENT US HOLDINGS INC.</u>**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the District of Columbia, and this Court's June 17, 2023 Consent Order, ECF No. 71, Plaintiff Securities and Exchange Commission ("SEC") hereby serves to Defendants BAM Trading Services Inc. ("BAM Trading") and BAM Management US Holdings Inc. ("BAM Management") (collectively and incorporating the definitions below, the "BAM Entities") this first set of requests for production and inspection ("Requests") to produce the documents described below for inspection and copying and allow for inspection of accounts, wallets, software, and environments within 10 days of service and in accordance with the definitions and instructions set forth below and in the attached Data Delivery Standards. If possible, please submit productions responsive to these Requests via FTP service, such as the SEC's "Accellion" service, the details of which can be provided upon

1

request to counsel for the SEC. If impractical, production should be made to the following address:

> ENF-CPU (U.S. Securities & Exchange Commission)
> 14420 Albemarle Point Place
> Suite 102
> Chantilly, VA 20151-1750

## **DEFINITIONS AND INSTRUCTIONS**

1. "BAM Trading" means Defendant BAM Trading Services Inc., doing business as Binance.us, and all predecessors, successors, parents, subsidiaries, affiliates, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and all entities in which Defendant BAM Trading Services Inc. has or has had a controlling interest, such as a corporation, general partnership, limited partnership, or trade or business name.

2. "BAM Management" means Defendant BAM Management US Holdings Inc., and all predecessors, successors, parents, subsidiaries, affiliates, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and all entities in which Defendant BAM Management US Holdings Inc. has or has had a controlling interest, such as a corporation, general partnership, limited partnership, or trade or business name.

3. "Binance" means Defendant Binance Holdings Limited, and all predecessors, successors, parents, subsidiaries, affiliates, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and all entities in which Defendant Binance Holdings Limited has or has had a controlling interest, such as a corporation, general partnership, limited partnership, or trade or business name.

4. Reference to an entity in these Requests should be interpreted to include that entity's parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing, as required for a complete response.

5. Reference to an individual in these Requests should be interpreted to include that individual's counsel, agents, representatives, or any other person or entity acting or purporting to act on his or her behalf, as required for a complete response.

6. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

7. "Communication" means any correspondence, contact, discussion, e-mail, instant message, text message, Telegram or other electronic message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

8. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

9. "Concerning" means directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing, constituting, recording, evaluating, substantiating, alluding to, in connection with, commenting on, regarding, discussing, showing, analyzing, or reflecting.

10. "Customers," "Private and Administrative Keys," "New Private and Administrative Keys," "Customer Fiat Assets," "Customer Crypto Assets," "Customer Assets," "Binance Entities," "BAM Ordinary Course Business Expenses," and "Staking Assets" are defined in accordance with the Court's June 17, 2023 Consent Order, ECF No. 71.

11. "You" and "Your" means the Person(s) to whom or entity to which this discovery request was issued.

12. "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement, or Documents or Communications Concerning any Agreement, among or between specified parties includes a request for all Documents and Communications Concerning: (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

13. The following rules of construction apply:

    a. "All," "any," and "each" shall each be construed as encompassing any and all;

    b. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    c. The use of the singular form of any word includes the plural and vice versa; and

    d. The functional words "each," "every," "any," and "all" shall each be deemed to include each of the other functional words.

14. Unless otherwise stated, the relevant time period for these Requests is from November 1, 2022, through the present.

15. These Requests require production of electronically stored information ("ESI") contained in any digital, electronic, mechanical, video, audio, audiovisual, and/or magnetic form, or residing in any other media or vehicle for the storage of ESI, including, without limitation, all computer files in whatever format, audio, video, audio recordings and audiovisual recordings, voicemails, electronic mails, websites, databases, regardless of whether the foregoing consist of any active, backup, deleted or fragmented files, and including all data stored or retrievable from any cloud based storage, networks, laptops, personal computers, websites, intranets, personal digital assistants, cell phones, smart phones, audio systems, hard disks, external drives, floppy disks, DVDs, CD-ROMs, or any other media on which ESI is stored or from which it can be retrieved.

16. You are requested to produce ESI in accordance with the SEC's Data Delivery Standards, a copy of which is annexed hereto as **Attachment A**.

17. With respect to each document to be produced, these Requests require the production of all attachments and enclosures. These Requests shall not be deemed to call for identical copies of documents. "Identical" means precisely the same in all respects. A draft or non-identical copy (including one with notations) is a separate document within the meaning of this term.

18. You must produce all Documents and Communications described below insofar as they are in your possession, custody, or control, pursuant to Rule 34(a).

19. Pursuant to Rule 34(b)(2)(B), with respect to each numbered category of the Requests below, you must respond by either stating that you will produce such documents (by

producing copies or producing originals for inspection and copying) or stating with specificity the grounds for objecting to the request, including the reasons.

20. Pursuant to Rule 34(b)(2)(C), any objection you make to producing documents responsive to a numbered category below must state whether any responsive documents are being withheld on the basis of that objection. An objection to part of a request must specify the part, and you must produce (or permit the inspection of) the remaining documents.

21. For each document, or portion thereof, that you seek to withhold on the basis of any privilege or protection, you must provide a written response containing the information required by Rule 26(b)(5)(A).

22. Pursuant to Rule 34(b)(2)(E)(i), you are requested to organize and label documents produced in response to the Requests below to correspond to the Requests' numbered categories.

23. These Requests are continuing in nature. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you are required to promptly supplement your responses and produce additional documents if and to the extent that you obtain further or different information and/or learn that your production is incomplete or incorrect.

### DOCUMENT REQUESTS

1. All Documents and Communications Concerning the policies, procedures, protocols, controls, software, and any changes thereto, as to the deposit, custody, control, storage, transfer, movement, withdrawal, security, segregation, and availability of Customer Assets, and any encumbrances or limitations that would make them unavailable for transfer or withdrawal by Customers, including, but not limited to, Communications with Binance and Zhao.

2. All Documents and Communications Concerning the deposit, custody, control, storage, transfer, movement, withdrawal, security, segregation, and availability of Customer Assets, and any encumbrances or limitations that would make them unavailable for transfer or withdrawal by Customers, including, but not limited to, Communications with Binance and Zhao.

3. All Documents and Communications Concerning the type, identity, location, value, custody, control, restrictions, segregation, security of Customer Assets, including, but not limited to, whether there are sufficient assets to satisfy customer liabilities or meet customer claims for Customer Assets held on Customers' behalf.

4. All Documents and Communications Concerning any disaster recovery policies, procedures, protocols, and controls for Customer Crypto Assets.

5. All Documents and Communications Concerning the deposit, custody, control, storage, transfer, movement, withdrawal, security, segregation, and availability of Staking Assets, including, but not limited to, Communications with Binance and Zhao, Documents Concerning Your policies and procedures, and Documents sufficient to show segregation of Staking Assets from any crypto assets staked through the Binance.com trading platform.

6. All Documents and Communications Concerning the opening, creation, maintenance, custody, and control of any (i) crypto asset wallets, including, but not limited to, deposit wallets, hot wallets, cold wallets, hardware wallets, and any (ii) financial account, such as an account at a bank or with a payment processor, that have held or are holding Customer Assets.

7. Documents sufficient to identify all persons, companies, and financial institutions maintaining any account or crypto asset wallet that holds Customer Assets or that otherwise have possession, custody, or control of Customer Assets.

8. Documents sufficient to identify the crypto asset wallet or account information for all wallets or accounts holding Customer Assets or any fiat or crypto assets for the BAM Entities, including, but not limited to, (i) account number; (ii) wallet address; (iii) identification of each type and value of Customer Assets, fiat, or crypto held in the account or wallet; (iv) the account holder, identity of signatory and/or anyone with custody, control, and/or authority Concerning the transfer or withdrawal of Customer Assets or fiat or crypto assets for the BAM Entities; (v) all terms relating to the authorization to transfer or withdraw Customer Assets or fiat or crypto assets for the BAM Entities; (vi) onboarding or other Agreements governing the account or wallet, and (vii) account statements.

9. All Documents and Communications Concerning any freeze, closing, or transfer of any account or crypto asset wallet holding Customer Assets.

10. All Documents and Communications Concerning all accounts holding any funds identified in the "Restricted Cash" section of the Financial Statements and Independent Auditor's Report ("FGMK Report") at BTS00833810.

11. All Documents and Communications Concerning any Private and Administrative Keys and New Private and Administrative Keys.

12. Documents sufficient to identify all persons with access to, possession, custody, or control of any Private and Administrative Keys and New Private and Administrative Keys or that served or serve as a validator for the Staking Assets.

13. Documents sufficient to identify the name, contact information, employment history, and any Agreement with Zhao, BAM Trading, BAM Management, or any of the Binance Entities for all individuals or entities who have possession and/or any access, custody, authority, or control over BAM Trading and BAM Management financial accounts, crypto asset wallets, and/or any Customer Assets.

14. All Documents and Communications Concerning any relationship, prior employment, or Agreement – whether formal, information, direct, or indirect – between any of the Binance Entities and any individual or entity having any possession, custody, or control over Customer Assets, including, but not limited to, any individual or entity that is signatory or has other custody, authority, or control over any account at any bank or other financial institutions, any crypto asset wallet, or that holds, has rights to, or control of Private and Administrative Keys or New Private and Administrative Keys.

15. All Documents and Communications Concerning which entity and Person requested, instructed, authorized, approved, voted for, or signed for any transfer or withdrawal of Customer Assets, including through the use of any Private and Administrative Key.

16. Documents sufficient to identify the balances of Customer Assets for each Customer of the Binance.US trading platform.

17. A complete record of the BAM Entities' financial statements and transactions, including, but not limited to, its general ledger.

18. All Documents and Communications Concerning Ceffu, including its ownership and management, its relationship and any Agreements with the BAM Entities, its role and responsibilities, and the services they perform.

19. All Document and Communications Concerning any insurance or other financial protection for any liability relating to the custody and control of Customer Assets.

20. All Documents and Communications with third-party financial institutions or other custodians of Customer Assets, including, but not limited to, PrimeTrust LLC, Axos Bank, BitGo, Nuvei, Aegis, and Orum.

21. All Documents and Communications Concerning any Amazon Web Services ("AWS") datacenter, environment, or account that services or holds Customer Digital Assets.

22. All Documents and Communications Concerning the Wallet Custody Agreement between BAM Trading and Binance that is referenced in BAM Trading's December 31, 2022 Financial Statements and Independent Auditor's Report, *see* BTS00833798, including, but not limited to, Documents and Communications Concerning its drafting, approval, execution, operation, payment and performance, termination, and transfer of any role, responsibilities, or services under the Wallet Custody Agreement to any other person.

23. All Documents and Communications Concerning any person that had and has the role and responsibilities or otherwise has performed and is performing the services identified in the Wallet Custody Agreement, whether or not such role, responsibilities, or services were pursuant to any formal Agreement.

24. All Documents and Communications Concerning Binance's, Guangying Chen's, and/or Zhao's signatory authority or any other access to, authority, or control, whether formal, informal, direct, or indirect, over any wallet, account, Customer Assets, fiat or crypto assets of the BAM Entities, and any transfer or withdrawal of Customer Assets or fiat or crypto assets of the BAM Entities, including, but not limited to, BAM Trading's PrimeTrust Bank account ending x0274.

25. All Documents and Communications Concerning the BAM Entities' efforts to "account[] for and continually verif[y] the amount of crypto assets on its platform" and to "hold[] customer crypto assets on a 1:1 basis," *see* BTS00833798, at BTS00833819.

26. All Documents and Communications Concerning any internal or external audits conducted for the BAM Entities, including, but not limited to, any audit conducted by Armanino LLP and FGMK LLP.

27. All Documents and Communications Concerning any BAM Entity's internal or external auditors' assessment of internal control deficiencies related to the custody and control of Customer Assets, including, but not limited to, the auditors' findings that BAM Trading "is dependent on the [Binance].com custodian to tell them the addresses holding the assets," and that it "makes it very difficult to ensure the Company is fully collateralized at specific points in time." SEC Mem., Ex. A-89, at Armanino-BAM-000134.

28. All Documents and Communications Concerning any deposit, access, possession, custody, control, transfer, or withdrawal of Customer Assets involving any of the Binance Entities or Zhao, including, but not limited to, Sigma Chain AG and Merit Peak Limited.

29. All organizational charts for the BAM Entities.

30. All Documents and Communications indicating the ownership interests in the BAM Entities, and changes thereto.

31. All Documents and Communications relating to the $250 million convertible note between the BAM Entities and Zhao.

32. All Documents and Communications Concerning all crypto asset wallets governed by a "TSS" protocol.

33. All Documents and Communications Concerning all crypto asset wallets not governed by a "TSS" protocol.

34. Documents sufficient to identify all votes or other authorization by holders of any key or portion therefor for whitelisting, approving, or decommissioning wallets to which assets from the cold wallets, TSS-enabled staking wallets, or any other wallets may be transferred.

35. Documents sufficient to identify all wallets and their respective addresses for wallets that were shared, co-hosted, or used to transfer assets between Binance Holdings, BAM Trading, BAM Management, Zhao, and any Zhao or Binance-affiliated individual or entity, including Sigma Chain AG and Merit Peak Limited. The response to this request should include external wallets that are not accounts on either trading platform, deposit addresses, and transfers directly between storage wallets.

36. Documents sufficient to identify the names, job titles, and time period of employment for all BAM Trading or BAM Management employees who were formally Binance Holdings employees.

37. Documents sufficient to identify the roles and responsibilities of all directors, officers, or employees of any BAM Entity that reside or are located outside of the United States.

38. All Documents and Communications Concerning all policies, procedures, protocols, and controls Concerning or referenced in the Binance.US Digital Asset & Custody Operations Policy.

39. The general ledger that tracks deposits, trading, transfers, and withdrawals of all Customer Crypto Assets.

**REQUEST FOR INSPECTION**

40.      Make available for inspection the AWS environment, servers, accounts, wallets, software, applications, devices or hardware holding or involved in any Private and Administrative Keys, and any other hardware or technology Concerning the establishment, management, operation, custody, control, security, segregation, and transfers and withdrawals for wallets holding Customer Crypto Assets or BAM Entity crypto assets, and the deposit, custody, control, transfer, withdrawal, clearing, and settlement of crypto assets.

Dated:  June 23, 2023                                        Respectfully submitted,

                                                                          s/Matthew Scarlato
                                                                          Matthew Scarlato (D.C. Bar No. 484124)
                                                                          Jennifer L. Farer (D.C. Bar No. 1013915)
                                                                          J. Emmett Murphy
                                                                          David Nasse
                                                                          Jorge Tenreiro
                                                                          SECURITIES AND EXCHANGE
                                                                           COMMISSION
                                                                          (202) 551-3749 (Scarlato)
                                                                          scarlatom@sec.gov
                                                                          farerj@sec.gov
                                                                          murphyjoh@sec.gov
                                                                          nassed@sec.gov
                                                                          tenreiroj@sec.gov

                                                                          *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on June 23, 2023, I served, via email, the foregoing Plaintiff's First Set of Requests for Production of Documents to Defendants BAM Trading Services Inc. and BAM Management US Holdings Inc. on the individuals and entities identified below:

| | |
|---|---|
| Michael Celio | Andrew M. Leblanc |
| Mary Beth Maloney | George Canellos |
| Daniel W. Nelson | Adam Fee |
| Jason J. Mendro | Matthew Laroche |
| Stephanie Brooker | MILBANK LLP |
| M. Kendall Day | aleblanc@milbank.com |
| Richard W. Grime | gcanellos@milbank.com |
| GIBSON, DUNN & | afee@milbank.com |
|  CRUTCHER LLP | mlaroche@milbank.com |
| MCelio@gibsondunn.com | |
| MMaloney@gibsondunn.com | |
| DNelson@gibsondunn.com | Matthew T. Martens |
| JMendro@gibsondunn.com | William R. McLucas |
| SBrooker@gibsondunn.com | Tiffany J. Smith |
| KDay@gibsondunn.com | WILMER CUTLER PICKERING HALE |
| RGrime@gibsondunn.com | AND DORR LLP |
| | matthew.martens@wilmerhale.com |
| | william.mclucas@wilmerhale.com |
| | tiffany.smith@wilmerhale.com |
| *Attorneys for Defendant Binance Holdings Limited* | *Attorneys for Defendants BAM Trading Services Inc. and BAM Management Holdings US Inc.* |

Abid R. Qureshi
William R. Baker, III
Michael E. Bern
Douglas K. Yatter
Benjamin Naftalis
Heather A. Waller
Melanie M. Blunschi
LATHAM & WATKINS LLP
abid.qureshi@lw.com
william.baker@lw.com
michael.bern@lw.com
douglas.yatter@lw.com
benjamin.naftalis@lw.com
heather.waller@lw.com
melanie.blunschi@lw.com

*Attorneys for Defendant Changpeng Zhao*

                                                <u>s/Matthew Scarlato</u>
                                                Matthew Scarlato