# Exhibit 1



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549**

DIVISION OF
ENFORCEMENT

September 21, 2023

**VIA EMAIL**
George S. Canellos, Esq.
Matthew J. Laroche, Esq.
MILBANK LLP

William R. McLucas, Esq.
Matthew T. Martens, Esq.
Tiffany J. Smith, Esq.
Matthew Beville, Esq.
Jeremy Adler, Esq.
WILMER CUTLER PICKERING HALE AND DORR LLP

Re:   *SEC v. Binance Holdings Limited, et al. (1:23-cv-01599)*

Dear Counsel:

In an effort to narrow the issues in dispute consistent with the Court's recommendations at the September 18, 2023 hearing, attached are requests for specific documents and communications that fall within the SEC's June 23, 2023 Requests for Production. (*See* Attachment A). We have included representative citations to deposition transcripts where applicable. As previously discussed, please also provide updated certified interrogatory responses, including those set forth in the Proposed Order to the SEC's Motion to Compel. (*See* Dkt. 102, Proposed Order at ¶ 8.)

Please complete your production of these materials, consistent with the SEC's data delivery standards by October 6, 2023. We are open to discussing an expedited timeline for production of these materials, but many of the documents should be readily identifiable, having already been identified in deposition or our prior discussions. As the Court noted at the hearing this week, a more complete production prior to depositions will best facilitate the examination of the deponents and help avoid having to call witnesses back because of subsequent productions.

In addition, as requested in my September 19 email, please provide available dates for in-person depositions in Washington, D.C. for the individuals listed below, preferably in the order they are identified. For certain individuals, we are open to discussing scheduling more than one deposition on a given day and remote options.

September 21, 2023



- 30(b)(6) designee

We welcome the opportunity to meet and confer regarding the scope and time allotment for the 30(b)(6) deposition. As discussed, we believe such deposition testimony on the identified topics would be an efficient and effective way to address many of the key issues and may alleviate the need for, or at least help streamline, the depositions of some of the other individuals.

We reserve our rights to amend or add requests or notice additional depositions.

We appreciate your prompt attention to this matter. Feel free to contact us with any questions or concerns.

Respectfully,

_/s/ Jennifer Farer_
Jennifer L. Farer


cc:  Matthew Scarlato
  Jennifer L. Farer
  J. Emmett Murphy
  David A. Nasse
  Jorge G. Tenreiro
  SECURITIES AND EXCHANGE COMMISSION

September 21, 2023 Farer Ltr. to BAM

# ATTACHMENT A[1]

**I. DOCUMENTS**

1. Documents sufficient to identify all wallet custody software and related services provided by any Binance entity including Ceffu and the identity of the corresponding entity or individual providing such services.
2. Documents relating to Ceffu and any Binance Entity that provides wallet custody software and related services to BAM and the Binance.US Platform, including documents concerning the identification of Ceffu as a wallet custodian in policies and procedures and to the SEC and auditors; any confusion and clarification about Ceffu's and Binance Holding's role and provision of wallet software and other services; and the comparison of the services and infrastructure Ceffu provides to that of provided to BAM for purposes of evaluating security reports, practices, and controls.
3. All board minutes and resolutions relating to the purpose of the note $250 million promissory note between Zhao and BAM, BAM's review and approval of the note, and any priority rights that would encumber Customer Assets.

**A. For the time period January 2023 to Present**

4. [REDACTED]
5. Big Data Team's Daily reconciliation reports for deposit wallets, cold wallets, hot wallets and staking wallets, including "Block Chain Reconciliation Diff Report." (Zhang 62-64)
6. All records of Zhang transfer and whitelisting requests, including requests he initiates to shard holders. (Zhang 113-115, 123-124, 143)
7. SOC2, ISO, and other reports and questionnaires relating to the security and controls of third-party custody or wallet software providers including BitGo, Aegis, BHL, CEFFU, Block Technologies, and any other Binance Entity. (Kellogg 110-113, 334).
8. All documents related to Ceffu, BHL wallet software or custody, security reports, and any wallet custody questionnaires, including cybersecurity due diligence questionnaires. (Kellogg 67-68, 77, 90-91, 301, 303-304, 319, 332, 335)
9. Technical documentation concerning the architecture, infrastructure, systems, user applications, software, and protocols relating to clearing; custody and control of the wallets and private keys wallet; and whitelisting implementation, including:
    a. Diagrams of the infrastructure and relevant systems, how systems talk to each other, and flow of funds and assets and related data, including those provided to third parties. (Kellogg 281, 292-293)
    b. Diagram and other documents referenced in Exhibit 18 to [REDACTED] eposition. [REDACTED] 05:32-5:33)

---

[1] Attachment A incorporates by reference, as if fully set forth herein, definitions provided in the Consent Order wherever defined terms from the Consent Order are used. Deposition transcript citations are representative and do not reflect all references to the identified documents.

1

September 21, 2023 Farer Ltr. to BAM

    c. Technical documentation regarding BAM's wallet whitelisting implementation, as described in section 4.7 of the Binance.US Digital Asset & Custody Operations Policy, including overall system architecture, user applications involved in requesting and confirming changes to the whitelist (including, but not limited to, web and/or mobile applications), and any supporting backend infrastructure.

10. Documentation concerning controls, access to, and activity involving the architecture, infrastructure, systems, user applications, software, and protocols relating to clearing; custody and control of the wallets and private keys wallet; and whitelisting implementation, including:
    a. Forms and documents authorizing access to AWS, documentation of access controls, and logs for the AWS environment that show history of rights and access, and root and admin account holders, rights, and activity. (Kellogg 121, 125; ▇▇▇ 5:59-6:00).
    b. Risk registry relating to control and access to PNK. (Kellogg 136, 208).
    c. All logs identifying individuals' rights to PNK and access, admin, and activity logs (including setting thresholds) for PNK, including documents sufficient to confirm historical access and that changes were made to remove all access and rights of personnel of any Binance Entity. (Kellogg 138-142; 154-155; 202-203; ▇▇▇ 11:35 – 11:37 AM)
    d. Access and activity logs and reports for TSS portal. (Kellogg 244; Zhang 119-123, 133)
    e. Access and activity logs and reports for BitGo and Aegis. (Kellogg 278, 280)
    f. Quarterly access reviews for systems. (▇▇▇ 10:34:35 AM-10:36AM (Audit Plan), 11:30-11:34 AM (PNK), 3:59-4:00 PM (Logistical access change management))
    g. Key shard processes and use of key shards, including historical records, audit logs identifying internal requests to transfer Customer Assets, source and destination wallet addresses, and which key shard holders participated in approving and signing the associated blockchain transaction.
11. Documents related to "custody oversight team." (Kellogg 240, 252)
12. Policies, procedures, logs, technical documentation, and documents concerning validation relating to the generation, transfer, revocation, decommissioning of keys or key shards used to control wallets holding company or Customer Assets, and monitoring of certain control activities. (Kellogg 328-29)
13. Policies and procedures for current shard holders regarding custody and control of the shard. (Kellogg 250)
14. Document or Procedures concerning controls in place for private keys, including "Private key authorization methodology" maintained by operations team. (Kellogg 297-299)
15. Documents related to staking and internal staking ledgers, including documents related to any Binance Entity's involvement in staking. (Kellogg 169, 191, 194-196)
16. Documents or logs reflecting security testing of BAM systems and platforms, including PNK, TSS, shard activity, and whitelisting process. (Kellogg 57, 86)

September 21, 2023 Farer Ltr. to BAM

17. Clearing team and Treasury team spreadsheets monitoring approvals and intraday activity. (Kellogg 210-211, 268)
18. Documents related to Approval Max evidencing approval chain for asset disposition. (Kellogg 210-211)
19. Documents sufficient to identify Boran's ownership, relationship to the Binance Entities, relationship with and services provided to BAM, and any compensation for such relationship and services provided. (Kellogg 228-232)
20. Any data collected or produced in connection with "packet capture" or any other network capture exercises involving Binance.US and the BHL environment. (Kellogg 78, 79, 203, 282)
21. List of Binance Entities considered for purposes of the Consent Order. (Kellogg 214-216)
22. Policy governing shard process and the approval process. ( 01:20:08 -01:21:11)
23. Any notes of meetings with FGMK relating to security, custody, and control of assets and reconciliation of assets. ( 05:19:13PM; *see* Fernandez Exs. 7-9, 11, 19, 20)
24. Reports on cash reconciliation and customer liability for fiat and crypto  05:23:47PM; 5:31-5:32 PM)
25. Key Control Matrix. ( 5:54:40)
26. Memo from  listing related parties. ( 55:26)
27. Documents BAM provided to FGMK referenced in FGMK_SEC_029026.
28. Reports from Lukka about the reconciliation of crypto balances. ( 6:07:22PM)
29. Board materials, including invitations, agendas, meeting minutes, meeting materials, resolutions, and documentation of any other Board action, and all communications regarding same, concerning compliance with the Consent Order and possession, custody, control, transfer, security, segregation, availability, and any encumbrances for company and Customer Assets, and sufficiency of assets to satisfy Customer liabilities.
30. Data and logs concerning use and the source code, for the TSS portal and mobile applications, including that which is depicted in BAM_SEC_LIT00005028-BAM_SEC_LIT00005035.
31. Source code for server-side components involved in the transaction signing process for cold storage wallets.
32. Data generated by or logs associated with the "Shadowrocket" application in connection with the Key Shard devices, TSS protocol (including TSS portal and application), or other infrastructure associated with the TSS protocol and its implementation.
33. For each of the wallet and/or key management software, TSS protocol, TSS portal, PNK, and any other software relating to clearing, custody, whitelisting, and control of company or Customer Assets, provide the following:
    a. Documents sufficient to identify all current and former code repository names, descriptions, repository bundle, and platform, including but not limited to GitHub, GitLab, AWS, self-hosted, etc.
    b. Documents sufficient to identify all current and former root or administrative account holders and their permission level(s) for the backend production systems, including but not limited to the servers, databases, etc.
    c. Documents sufficient to show when users accessed the backend production systems, including but not limited to the servers, databases, etc.

    d. Documents related to the release of and updates to software and corresponding applications, including but not limited to Release Notes, Change Logs, Change Requests, Technical Diagrams, etc.
    e. Documents sufficient to identify all current and former code repository members and their role permissions.

34. Documents sufficient to identify all current and former code platform (*e.g.*, GitHub, GitLab, AWS, self-hosted) organization users and their permission levels, including but not limited to Owners, Members, Moderators, Billing Managers, and Security Managers.
35. All Documents related to changes in the PNK system configuration, including but not limited to change requests, threshold configuration, and system documentation of all updated parameters.
36. Forensic image of a key shard device or sufficient data or documentation to provide assurance that the source code and test environment are representative of the operation of a production key shard device.
37. Apple account information for the Apple ID associated with each key shard device, including name of account holder, address, email address, payment information, and any access or administrative rights to the device, software, or applications on the device.
38. Detailed monthly trial balances and general ledger account detail, including general ledgers that track deposits, trading, transfers, and withdrawals through quarters end.
39. Monthly reconciliation demonstrating how corporate fiat and digital assets (on an individual digital asset basis) reported in the trial balances/general ledgers tie to the corporate wallet balances in the PNK system.
40. Monthly reconciliation demonstrating how customer fiat and digital assets reported in the crypto wallets (e.g., customer deposit wallets, staking wallets, hot wallets, and cold wallets) reconcile to the customer wallet or account balances in the PNK system.

**B. For the time period June 2023 to present**

41. Bank account opening documents for all new bank accounts or payment processors and documents sufficient to identify: beneficial owners, signatories, and any other personnel authorized to make transfers and withdrawals.
42. Monthly statements for all accounts holding company and/or Customer Assets

## II. COMMUNICATIONS

1. Communications, including Telegram chats, regarding $250 Million loan. (Zhang 98-100)
2. Communications concerning Ceffu and any Binance Entity that provides wallet custody software and related services to BAM, including communications concerning the identification of Ceffu as a wallet custodian in policies and procedures and to the SEC and auditors; any confusion and clarification about Ceffu's and Binance Holding's role and provision of wallet software and other services; and the comparison of the services and infrastructure Ceffu provides and the services and infrastructure Ceffu or any Binance Entity provides to BAM for purposes of evaluating security reports, practices, and controls.

September 21, 2023 Farer Ltr. to BAM

**A. For the time period January 1, 2023 to Present**

3. Slack or other communications with Big Data team. (Zhang 63-68)
4. Communications with Binance Holdings Wallet Team, including group Telegram chat channel called "U.S. Wallet." (Zhang 70-72; 78)
5. Communications and Wea chats related to the Sigma Chain transaction and related issues about which Zhang testified during his deposition. (Zhang 86-88)
6. Communications relating to shard initiators, shard requests, and shard review and approvals or denials, including communications on the Shard devices and with and between Shard holders. (Zhang 119-123; Kellogg 258, 338-340; ▮▮▮▮)
7. All communications regarding transferring key shards from to Binance.US personnel in U.S. (Zhang 134-135; ▮ 01:39; Kellogg 340-342)
8. Communication about access to TSS system. (Zhang 134-135)
9. Communications, including all Wea chats, concerning ▮ transfer of her control over staking ledgers to BAM (Zhang 136-138), adding another BAM initiators for shard approval (Zhang 133), and transfer of shards (Zhang 120-21, 143).
10. Any and all Slack communications from Zhang relating to shard requests for approvals, shard approvals and declinations, and shard app updates. ▮ 01:49-01-01:56; 2:10)
11. Communications with BHL regarding crypto asset wallet software, private keys, and the possession, custody, control, transfer, withdrawal, security, segregation, availability, and encumbrances of company or Customer Assets. (Kellogg 312)
12. Communications with BHL regarding safety and security of Customer Assets.
13. Communications related to responses to the due diligence questionnaire, including communications through WHISTIC platform. (Kellogg 77; 91; 319; 334-35)
14. Slack communications related to access permissions and authorizations. (Kellogg 152)
15. Slack or other communications related to security, wallet custody, MBX, and PNK permission changes. (Kellogg 311-312; 145)
16. Communications with ▮ at BHL concerning possession, security, custody, control, segregation, transfer, availability, encumbrances, and/or withdrawal of company or Customer Assets and related systems and software. (Kellogg 68, 303, 306, 320).
17. Communications with BHL about SOC or other security reports and custody questionnaire, including requests, provision of reports and information, and discussion of such reports. (Kellogg 304, 315)
18. Communications with or about ▮ concerning possession, security, custody, control, segregation, transfer, encumbrances, and/or withdrawal of company or Customer Assets and related systems and software, including, but not limited to, clearing, TSS protocol, TSS portal, key shards, and associated devices and software. (Kellogg 339-344, Zhang 133-140).
19. Communications related to "custody oversight team," including communications relating to regrouping. (Kellogg 240, 252; BAM_SEC_LIT_00005034)