UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-01599-ABJ-ZMF ) |
| BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES INC., BAM MANAGEMENT US HOLDINGS INC., AND CHANGPENG ZHAO, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Notice to inform the Court of recent events relevant to the Court's consideration of the pending Joint Motion to Dismiss the Complaint by Defendants Binance Holdings Limited ("Binance") and Changpeng Zhao, Dkt. No. 118 ("Joint Motion").

On November 21, 2023, Binance and Zhao pleaded guilty to criminal violations involving U.S. anti-money laundering requirements under the Bank Secrecy Act ("BSA"), and Binance further pleaded guilty to criminal violations of U.S. sanctions under the International Emergency Economic Powers Act ("IEEPA"). *See* Plea Agreement, *United States v. Binance Holdings Ltd.*, No. 2:23-cr-00178 (W.D. Wash. Nov. 21, 2023) ("*Binance Holdings*"), Dkt. No. 23, attached as Exhibit 1; Plea Agreement, *United States v. Changpeng Zhao*, No. 2:23-cr-00179 (W.D. Wash. Nov. 21, 2023) ("*Zhao*"), Dkt. No. 31, attached as Exhibit 2. On December 6, 2023, the United States District Court for the Western District of Washington accepted both

1

Defendants' guilty pleas, adjudged Defendants guilty of the applicable charges, and directed Defendants to appear for sentencing on February 23, 2024.  *Binance Holdings*, Dkt. No. 26; *Zhao*, Dkt. No. 45.  Binance also settled with several U.S. civil enforcement agencies, including pursuant to a Consent Order with the Financial Crimes Enforcement Network ("FinCEN").  *See In the Matter of Binance Holdings Ltd.*, *et al.*, No. 2023-04 (FinCEN Nov. 21, 2023) ("Consent Order"), attached as Exhibit 3.

This Court may take judicial notice of facts contained in Zhao's and Binance's plea agreements and the Consent Order, and consider them in deciding the Joint Motion.  *E.g., Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 294-95 n.3 & 4 (S.D.N.Y. 2019) (court may take judicial notice of DOJ plea agreements, government consent orders, and similar public documents on a motion to dismiss) (citing, *inter alia*, Fed. R. Evid. 201(b)(2) (court can take judicial notice of facts that are "not subject to reasonable dispute because [they] … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")).  Many of these facts and admissions reinforce the SEC's arguments in opposition to the Joint Motion.  First, contrary to Zhao's and Binance's arguments that they lacked "fair notice" they were violating the law (Joint Mot. at 42-43), their plea agreements admit what the SEC alleges:  they were aware of and deliberately took steps to subvert U.S. law.  *See* Compl. ¶¶ 110-140, Dkt. No. 1.  Zhao and Binance implemented a plan to give the public appearance that the Binance.com Platform did not serve U.S. customers, while secretly permitting at least larger U.S. customers to trade on the platform, and creating U.S. entities (Defendants BAM Trading Services Inc., and BAM Management US Holdings Inc.) to "reduce regulatory pressure on Binance."  Ex. 1, Attach. A (Statement of Facts) ¶¶ 32-47.

Second, the plea agreements and Consent Order further undermine Zhao's and Binance's arguments that the SEC's claims relating to the Binance.com Platform involve non-actionable extraterritorial conduct. *See* Joint Mot. at 36-42. Binance admitted that it "intentionally sought and served millions of customers located in the United States," and "intentionally maintained substantial connections to the United States, from which it generated, among other things, web traffic, user base, transaction volume, and profit." Ex. 1, Attach. A ¶ 27. Binance further admitted that it deliberately conspired to not comply with U.S. law "because it determined that doing so would limit its ability to attract and maintain U.S. users." *Id.* ¶ 21. U.S. customers were "critical" to Binance because they provided market liquidity on the Binance.com Platform that helped grow its business. *Id.* ¶¶ 16, 21.

By August 2017, Binance estimated that more than 23 percent of its 122,729 users were based in the United States, which was more than any other country it served. *Id.* ¶ 29. Over time, the number of its U.S. customers continued to increase, and by March 2018, Binance had approximately three million U.S. customers, which represented more than a third of its total customers on the Binance.com Platform. *Id.* ¶ 30. And around June 2019, Zhao estimated that 20 to 30 percent of Binance's website "traffic comes from the U.S." and the U.S. market represented about 20 to 30 percent of its potential revenue. *Id.* In all, the total U.S. market volume on the Binance.com Platform was staggering: Between August 2017 and October 2022, U.S. customers conducted **trillions of dollars** in transactions on the Binance.com Platform, which generated approximately $1.6 billion in profit for Binance. *Id.* ¶ 48. This activity included U.S. customer deposits and withdrawals of over $65 billion. Ex. 2 ¶ 9.d.

In addition, the domestic nature of transactions on the Binance.com Platform is demonstrated by Binance's admission that it utilized a U.S.-based technology service provider to

3

store its data, host its website, and operate the Binance.com Platform.  Ex. 1, Attach. A ¶ 10.  Further, the Binance.com Platform's over-the-counter, or "OTC," market maker, a Zhao-owned entity called Merit Peak Limited, settled approximately $1.2 billion in transactions using U.S. banks and a U.S.-based customer identified as Customer A.  Ex. 3 at 18-19.  Merit Peak was also a market maker on the Binance.US Platform, and served as a "conduit" between the two platforms for certain transactions "while exploiting Binance.us's corporate governance weaknesses to avoid scrutiny of this activity."  *Id.* at 29-30.

Third, numerous facts contradict Zhao's argument that this Court does not have personal jurisdiction over him because he lacked sufficient contacts with the United States.  *See* Joint Mot. at 43-45.  Zhao exercised "day-to-day" control of Binance, which included making "strategic decisions for Binance."  Ex. 1, Attach. A ¶ 3; Ex. 2 ¶ 9.d.  Among other things, he "authorized and directed" Binance's strategies to secretly encourage U.S. customers to trade on the Binance.com Platform.  Ex. 1, Attach. A ¶ 40; *see also id.* ¶¶ 30-33.  This was important to Zhao because he knew that U.S. customers "were essential for Binance to grow, were a significant source of revenue, and had a substantial network effect."  Ex. 2 ¶ 9.f.  Zhao "sought those benefits for the Company while disregarding the legal obligation to implement an effective [anti-money laundering] program."  *Id.*  These admissions further compel the conclusion that Zhao "'purposefully directed'" conduct at the United States, such that "he should reasonably anticipate being haled into court here."  *Lewis v. Mutond*, 62 F.4th 587, 591 (D.C. Cir. 2023) (citation omitted).

Accordingly, Zhao's and Binance's plea agreements and the Consent Order provide further grounds for this Court to deny the Joint Motion.

5

Dated:  December 8, 2023                    Respectfully submitted,

s/ Matthew Scarlato
Matthew Scarlato (D.C. Bar No. 484124)
Jennifer L. Farer (D.C. Bar No. 1013915)
J. Emmett Murphy
David A. Nasse (D.C. Bar No. 1002567)
Jorge G. Tenreiro
Elisa S. Solomon
SECURITIES AND EXCHANGE
 COMMISSION
100 F Street, NE
Washington, DC 20549
(202) 551-3749 (Scarlato)
scarlatom@sec.gov

*Attorneys for Plaintiff*