UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES INC., BAM MANAGEMENT US HOLDINGS INC., AND CHANGPENG ZHAO,<br><br>*Defendants*. | No. 1:23-cv-01599-ABJ-ZMF |

**Binance Holdings Limited and Changpeng Zhao's Response
to Plaintiff's Notice of Supplemental Authority**

Binance Holdings Limited ("BHL") and Mr. Changpeng Zhao respectfully submit this response to the "Notice of Supplemental Authority" filed by the SEC on December 8, 2023. *See* ECF No. 188 ("SEC Notice"). In addition to being procedurally improper and impermissible, the SEC Notice fails to demonstrate the relevance of the resolutions with the Department of Justice and FinCEN to any of the SEC's defective claims against BHL and Mr. Zhao.

As an initial matter, the SEC Notice is an impermissible supplemental brief that identifies no new "authority" and instead attempts to introduce new factual information and arguments. This alone is reason to disregard it. *See* Order Granting Mot. to Strike Notice of Supp. Authority, ECF No. 2301, *Cobell v. Norton*, No. 96-cv-01285 (D.D.C. Sept. 25, 2003) (striking notice of supplemental "authority" that attempted to introduce additional evidence). Nor is judicial notice "an alternative avenue for amending the complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). The one case cited by the SEC to support its "Notice," *Contant v. Bank of America Corp.*, 385 F. Supp. 3d 284 (S.D.N.Y. 2019), involved resolutions discussed in the operative complaint, *id.* at 294–95 nn.3 & 4. Here, the SEC has decided not to amend its Complaint.

Even on its substance, the SEC Notice does not support the agency's claims.

***Fair notice.*** The SEC's attempt to use the resolutions to defeat BHL's and Mr. Zhao's fair-notice argument is deeply misguided. SEC Notice at 2. That facts in the plea agreements with the Department of Justice show that BHL and Mr. Zhao violated the Bank Secrecy Act ("BSA") does not say anything about whether there was fair notice of the SEC's theory that the crypto assets at issue were securities under the Securities Act or the Exchange Act. The SEC's attempt to conflate different statutory schemes by calling them all "U.S. law," *id.*, is unavailing. Indeed, the history of regulation by other agencies only underscores the lack of notice of any relevant

1

regulatory authority on the part of the SEC, and the SEC's effort to benefit from other agencies' resolutions under a different statutory regime is another example of its refusal to accept Congress's decision to assign authority over the kinds of assets at issue here to other agencies. BHL's and Mr. Zhao's subjective knowledge is also irrelevant, because the fair-notice inquiry is objective. *See Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1303 (D.C. Cir. 2023).

*Extraterritoriality.* The SEC's reliance on the negotiated resolutions misunderstands the territorial reach of the securities laws and mischaracterizes the resolutions themselves. As an initial matter, the applicability of U.S. law to foreign defendants is determined on a statute-by-statute basis depending on each statute's "focus." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417–19 (2023). Jurisdictional admissions under the BSA do not bring any of the SEC's claims within the reach of the securities laws, and the SEC's invocation of factual admissions concerning customers located in the United States fundamentally misunderstands the "focus" of those laws. As explained in *Morrison*, the securities laws focus on whether any securities transactions occurred in the United States or irrevocable liability for them was incurred in the United States. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266–68 (2010).

No admission in the plea agreements indicates that relevant transactions occurred, or irrevocable liability attached, in the United States. Indeed, similar or identical facts are already alleged in the SEC's Complaint, which fails to state a plausible claim. ECF No. 118 ("Mot.") at 35–41. For example, statements that BHL "sought and served" customers located in the United States, that "20 to 30 percent of Binance's website traffic [came] from the U.S.," and that "U.S. Customers conducted trillions of dollars in transactions on Binance.com Platform," SEC Notice at 3 (emphasis and quotation marks omitted), are no different from allegations in the Complaint concerning the prevalence of U.S. users on Binance.com. *See, e.g.*, Compl. ¶ 104 ("Binance has

2

regularly solicited customers in the United States[.]"); *id.* ¶ 108 ("U.S. customers made up a substantial portion of Binance's business. . . . Binance estimated that the Binance.com Platform had over 1.47 million customers in the United States."). But this does not mean the securities laws apply extraterritorially to BHL or Mr. Zhao. Mot. at 39–40. That U.S. residents used Binance.com "is irrelevant to the location of a given transaction." *Absolute Activist Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69–70 (2d Cir. 2012); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 5108131, at *26 (S.D.N.Y. Sept. 20, 2016). Nor do marketing efforts to "attract and maintain U.S. users," SEC Notice at 3 (quotation marks omitted), "satisfy the transactional test announced in *Morrison*." *Absolute Activist*, 677 F.3d at 70.

The SEC contends that BHL admitted to using "a U.S.-based technology service provider to store its data, host its website, and operate the Binance.com platform." SEC Notice at 3–4. This argument is misleading, as the SEC omits the rest of that very same sentence: that the service provider hosted and operated Binance.com "on servers *in Japan*"—in other words, that the transactions were consummated, and irrevocable liability attached, outside the United States. SEC Notice, Ex. 1 Attach. A ¶ 10 (emphasis added). The location of servers in Japan confirms that the SEC is impermissibly challenging extraterritorial transactions. *See Banco Safra S.A.-Cayman Isl. Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289, 293 n.2 (2d Cir. 2021) (transaction is domestic when parties match on electronic exchange in the United States); *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (location of host server relevant to where transaction occurred).

As for the allegations that BHL used Merit Peak to settle billions of dollars "using U.S. banks and a U.S.-based customer," SEC Notice at 4, those allegations come only from the FinCEN Consent Order, to which Mr. Zhao is not a party, and were neither admitted nor denied by BHL,

3

nor did BHL consent to their use by any other party.  *See* SEC Notice Ex. 3; *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[A] consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . can not be used as evidence in subsequent litigation.").  In any event, under *Morrison* the presence of a U.S.-based customer does not determine where the transactions took place, *see supra* at 2–3, nor does the use of U.S. bank accounts, *see Loginovskaya v. Batratchenko*, 764 F.3d 266, 275 (2d Cir. 2014).

Finally, applicability of the BSA to BHL and Mr. Zhao is irrelevant because that statute has a different "focus" than the securities laws and expressly extends its reach to foreign businesses and conduct.  In contrast to the securities laws' focus on domestic transactions, Mot. at 37, the BSA focuses more broadly on "money transmitting," including "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or *to locations abroad*."  18 U.S.C. § 1960(b)(2) (emphasis added).[1]  Under the BSA, having U.S. customers may be sufficient to trigger the registration and compliance obligations of a foreign-located money services business like BHL.  *See, e.g.*, *United States v. Budovsky*, 2015 WL 5602853, at *7 (S.D.N.Y. Sept. 23, 2015).  For all the reasons set forth in Defendants' Motion to Dismiss, that is not so under the securities laws.

***Personal Jurisdiction.***  The SEC asserts that "numerous facts" from the plea agreements "contradict" Mr. Zhao's personal jurisdiction defense to its control person claims.  SEC Notice

---

[1] Other provisions of the BSA also make clear that it has broader applicability to foreign companies than the securities laws.  *See, e.g.*, 31 U.S.C. § 5312(a)(2)(R) (defining financial institution to include "any network of people who engage as a business in facilitating the transfer of money *domestically or internationally* outside of the conventional financial institutions system") (emphasis added); 31 C.F.R. § 1010.100(ff) (defining a money services business as any person "wherever located" that does business "within the United States").

at 4. Not so. "Personal jurisdiction has an entirely different meaning in a criminal context" than the analysis required for specific jurisdiction in civil actions. *In re Bulk [Extruded] Graphite Prod. Antitrust Litig.*, 2004 WL 7338471, at *6 (D.N.J. Oct. 28, 2004). And the SEC does not and cannot contend that the plea confers blanket jurisdiction over any and all other claims, for good reason: "[s]pecific jurisdiction is tied to each defendant and to each claim." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018).

A plea agreement that supports jurisdiction for a charge of failing to maintain an adequate anti-money-laundering program under the BSA says nothing about registration obligations under federal securities law, nor does it say anything about any role in the alleged conduct of securities transactions or listing of assets alleged to be securities. As set forth in the Motion to Dismiss, control person allegations are alone insufficient to support specific jurisdiction. Mot. at 44. The SEC continues to ignore the requirement of the due process analysis that it must show *suit-related* minimum contacts, which neither its Complaint nor its Notice does. Where the factual predicates for civil and criminal liability differ, courts have dismissed a civil complaint for lack of personal jurisdiction, notwithstanding an existing criminal plea by the same defendant based on related conduct. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, 2015 WL 10376958, at *3–4 (E.D. Mich. Dec. 30, 2015) (finding guilty plea to antitrust conspiracy affecting one category of consumers insufficient to establish personal jurisdiction in civil antitrust case brought by a different category of consumers, and granting motion to dismiss for lack of personal jurisdiction). This Court should do the same.

\*   \*   \*

In sum, the SEC's Notice should be disregarded and, in any event, does not undermine any of BHL's and Mr. Zhao's arguments for dismissal.

Dated:  December 12, 2023                                   Respectfully submitted,


   */s/ Daniel W. Nelson*
Daniel W. Nelson (D.C. Bar #433415)
Jason J. Mendro (D.C. Bar #482040)
Stephanie Brooker (*pro hac vice*)
M. Kendall Day (*pro hac vice*)
Richard W. Grime (*pro hac vice*)
Amy Feagles (*pro hac vice*)
Matt Gregory (D.C. Bar #1033813)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel: (202) 955-8500
Fax: (202) 467-0539
dnelson@gibsondunn.com
jmendro@gibsondunn.com
sbrooker@gibsondunn.com
kday@gibsondunn.com
rgrime@gibsondunn.com
afeagles@gibsondunn.com
mgregory@gibsondunn.com

*Attorneys for Defendant Binance Holdings Limited*

                 */s/ Abid R. Qureshi*
Abid R. Qureshi (D.C. Bar No. 459227)
William R. Baker, III (D.C. Bar No. 383944)
Eric S. Volkman (D.C. Bar No. 490999)
Michael E. Bern (D.C. Bar No. 994791)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
abid.qureshi@lw.com
william.baker@lw.com
eric.volkman@lw.com
michael.bern@lw.com

Douglas K. Yatter (*pro hac vice*)
Benjamin Naftalis (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
douglas.yatter@lw.com
benjamin.naftalis@lw.com

Heather A. Waller (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
heather.waller@lw.com

Melanie M. Blunschi (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: (415) 391-0600
Fax: (415) 395-8095
melanie.blunschi@lw.com

*Attorneys for Defendant Changpeng Zhao*