# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *Plaintiff*, v. BINANCE HOLDINGS LIMITED, BAM TRADING SERVICES INC., BAM MANAGEMENT US HOLDINGS INC., AND CHANGPENG ZHAO, *Defendants*. | No. 1:23-cv-01599-ABJ-ZMF |

**Defendants' Joint Response
to Plaintiff's Notice of Supplemental Authority**

Binance Holdings Limited ("BHL"), BAM Trading Services Inc., BAM Management US Holdings Inc. ("BAM"), and Mr. Changpeng Zhao respectfully submit this response to the "Notice of Supplemental Authority" filed by the SEC on January 3, 2024, *see* ECF No. 202 ("SEC Notice"), concerning the recent summary-judgment decision in *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) ("*Terraform II*").

None of the points raised in the SEC Notice about *Terraform II* save its claims in this action any more than the SEC's arguments based on *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299 (S.D.N.Y. July 31, 2023) ("*Terraform I*"), which were fully addressed in the parties' briefs, *see* ECF No. 118 ("BHL Mot.") at 18, 24; ECF No. 172 at 26, 34, 39; ECF No. 192 ("Joint Reply") at 8–9; ECF No. 117 at 25-26 ("BAM Mot."); ECF No. 191 at 10, 14 ("BAM Reply").  Contrary to the SEC's assertion, SEC Notice at 2, it is the SEC who seeks to "cast aside decades of settled law" by ignoring longstanding precedent in this Circuit and elsewhere governing the plain meaning of an "investment contract."  *See* BAM Mot. at 11–12; Joint Reply at 3–6.

Even if the SEC's position were permissible in the Second Circuit (it is not), binding precedent in this Circuit requires "post-purchase commitments" and requires courts to apply a test that can "distinguish securities from non-securities." *SEC v. Life Partners, Inc.*, 87 F.3d 536, 545 (D.C. Cir. 1996).  The SEC's non-test, to the extent it has been adopted in *Terraform I* and *II*, cannot distinguish securities from Pokémon cards.  Joint Reply at 1.  Moreover, to the extent *Terraform II* reasons that *Howey* implicitly abolished the self-evident requirement that an "investment contract" be a contract, 2023 WL 8944860, at *13, that view is incorrect.  The relevant passage of *Howey* clarified that splitting an investment "transaction" or "scheme" across *multiple* contracts still constitutes an investment contract.  *See* BAM Reply at 10; BHL Mot. at 17–19.

1

As importantly, even if *Terraform I* or *II* could be reconciled with the statutory text, *Howey*, or controlling precedent in the D.C. Circuit (they cannot), the court had no occasion to consider whether third-party resales of digital assets can satisfy *Howey*'s "investment of money" or "common enterprise" prongs, which is an independent flaw in the SEC's theory here.  BAM Reply at 11–13; Joint Reply at 5–6, 9.  Unlike here, there were no third-party resales of digital assets at issue in *Terraform I* or *II*.  And another decision in the Southern District of New York rejected the SEC's theory and recognized that blind exchange sales do *not* involve securities.  *See SEC v. Ripple Labs, Inc.*, 2023 WL 4507900, at *11–13 (S.D.N.Y. Jul. 13, 2023) ("the economic reality of the Programmatic Sales [on exchanges] . . . does not establish the third *Howey* prong").

Regarding BUSD, the SEC deems "particularly relevant" *Terraform II*'s discussion of the stablecoin UST.  SEC Notice at 2.  Yet that discussion disproves the SEC's theory here.  *Terraform II* held that UST "*in combination with* the Anchor protocol"—a distinct program promising 20% returns—"constituted an investment contract," but that UST holders who did not "deposit[] tokens in the Anchor Protocol" "'ch[o]se not to accept the *full offer* of an investment contract.'"  2023 WL 8944860, at *14 (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 300 (1946)) (emphasis added).  In other words, the court held that a *program* in which a stablecoin can be deployed may represent an "investment contract."  But the SEC has declined to pursue that theory here, claiming instead that BUSD *itself* constitutes a security—in contradiction of the CFTC's position that BUSD is a commodity subject to that agency's enforcement authority.  Joint Reply at 13–14; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaints must "give the defendant fair notice of what the … claim is and the grounds upon which it rests").

The SEC goes even further, attempting to contort *Terraform I* and *II*'s analysis of the Anchor Protocol in combination with UST tokens to BAM's ministerial IT support to customers

2

who want to stake their own digital assets through third-party node operators. SEC Notice at 2. They are not similar at all, and nothing in *Terraform I* or *II* suggests otherwise. As explained above, the Anchor Protocol was launched by Terraform as a way of allowing "UST holders to earn interest payments by depositing their tokens in a shared pool from which others could borrow UST." *Terraform II*, 2023 WL 8944860 at *3. The Anchor Protocol promised investors a 20% return. *Id.* Staking was not involved directly or indirectly. Here, BAM has not promised to pay investors anything but is merely providing ministerial services to allow access to third parties' fully independent blockchain consensus validation mechanisms.

The SEC's invocation of LUNA and MIR likewise falls short. *See* SEC Notice at 3. Notwithstanding *Terraform II*'s comment that those tokens were sold by their issuer to "secondary market purchasers on Binance and other crypto trading exchanges," 2023 WL 8944860, at *16, the SEC has alleged nothing in this case concerning those tokens. *See* Compl. ¶¶ 364–509 (discussing ten third-party tokens, none of which is LUNA or MIR). Moreover, third-party resales were not at issue there. The SEC wishes to paint the entire market as securities, but Supreme Court precedent requires that *each* transaction must be analyzed individually. *Marine Bank v. Weaver*, 455 U.S. 551, 560 n.11 (1982).

Finally, *Terraform II*'s discussion of Regulation S has no bearing on this case. *See* SEC Notice at 3. Most obviously, unlike here, the defendant in *Terraform II* did not argue that the SEC's application of the securities laws was impermissibly extraterritorial, so the court did not address that question at all. Regulation S provides a regulatory safe harbor—it does not purport to determine the extraterritorial reach of the securities laws. *See* Joint Reply at 21. And the SEC's contention that it can extend the securities laws to a foreign defendant whenever it "offered and sold securities to a U.S. investor," SEC Notice at 3, disregards recent Supreme Court precedent

3

making clear that it is the location of the *defendant's* "conduct relevant to the statute's focus" that matters, *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 422 (2023); *see also, e.g.*, *Laydon v. Cooperatieve Rabobank U.S.*, 55 F.4th 86, 96–97 (2d Cir. 2022), and caselaw providing that the SEC must also show that irrevocable liability attached in the United States, *e.g.*, *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012).

\*   \*   \*

In sum, *Terraform II* does not save the SEC's claims any more than *Terraform I*.

Dated:  January 12, 2024                                Respectfully submitted,

 /s/ Daniel W. Nelson
Daniel W. Nelson (D.C. Bar #433415)
Jason J. Mendro (D.C. Bar #482040)
Stephanie Brooker (*pro hac vice*)
M. Kendall Day (*pro hac vice*)
Richard W. Grime (*pro hac vice*)
Amy Feagles (*pro hac vice*)
Matt Gregory (D.C. Bar #1033813)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel: (202) 955-8500
Fax: (202) 467-0539
dnelson@gibsondunn.com
jmendro@gibsondunn.com
sbrooker@gibsondunn.com
kday@gibsondunn.com
rgrime@gibsondunn.com
afeagles@gibsondunn.com
mgregory@gibsondunn.com

*Attorneys for Defendant Binance Holdings Limited*

     /s/ *Daniel J. Davis*
Daniel J. Davis (D.C. Bar #484717) (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave NW
Washington DC 20006
daniel.davis@katten.com

Christian T. Kemnitz (*pro hac vice*)
Levi Giovanetto (D.C. Bar #1001160) (*pro hac vice*)
Sheehan H. Band (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
christian.kemnitz@katten.com
levi.giovanetto@katten.com
sheehan.band@katten.com

Gary DeWaal (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
gary.dewaal@katten.com

George S. Canellos (*pro hac vice*)
Matthew J. Laroche (*pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
GCanellos@milbank.com
MLaroche@milbank.com

*Attorneys for Defendants BAM Trading Services Inc. and BAM Management Holdings US Inc.*

 */s/ Abid R. Qureshi*
Abid R. Qureshi (D.C. Bar No. 459227)
William R. Baker, III (D.C. Bar No. 383944)
Eric S. Volkman (D.C. Bar No. 490999)
Michael E. Bern (D.C. Bar No. 994791)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
abid.qureshi@lw.com
william.baker@lw.com
eric.volkman@lw.com
michael.bern@lw.com

Douglas K. Yatter (*pro hac vice*)
Benjamin Naftalis (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
douglas.yatter@lw.com
benjamin.naftalis@lw.com

Heather A. Waller (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
heather.waller@lw.com

Melanie M. Blunschi (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: (415) 391-0600
Fax: (415) 395-8095
melanie.blunschi@lw.com

*Attorneys for Defendant Changpeng Zhao*