# Exhibit 1



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

February 8, 2024

**VIA EMAIL**

Matthew Laroche
Milbank LLP
55 Hudson Yards
New York, NY 10001

      Re:    *SEC v. Binance Holdings Ltd.*, No.1:23-cv-01599-ABJ-ZMF (D.D.C.)

Dear Counsel:

      We write to follow up on BAM's January 23, 2024 presentation of BAM's systems, BAM's January 23, 2024 letter, and other outstanding items under the Consent Order.

      Despite claiming to want expedited discovery to end, over the past seven months, BAM has repeatedly sought to delay or refuse to provide basic information evidencing BAM's compliance with the Consent Order. Among other things, BAM has been unable or unwilling to answer key questions related to whether BAM personnel in the United States have "sole" and "complete" possession, custody, and control of all Customer Assets, including the sole ability transfer such assets, and whether Binance Holdings Limited ("BHL"), Zhao, or any of their affiliated entities have any custody, control, or the ability to transfer BAM's Customer Assets. Consent Order §§ I-II, Dkt. No. 71.

      Most recently, our December 22, 2023 letter provided a subset of still outstanding discovery requests seeking to address questions concerning core requirements of the Consent Order. On January 23, 2024, BAM provided a letter response, citing to its demonstrably deficient discovery and otherwise refusing to engage in any further document discovery other than producing certain Slack communications it committed to produce. *See* Jan. 23, 2024 Matthew Laroche Ltr.[1] BAM even refused to comply with basic discovery obligations, such as producing attachments and associated metadata to responsive documents, providing written responses to discovery requests, and identifying whether BAM is withholding responsive documents on the basis of privilege. But neither the depositions of BAM employees nor BAM's

---

[1] BAM made what appears to be a voluminous production late on February 7, 2024, primarily consisting of the Slack communications responsive to the SEC's September 21, 2023 requests. We have not yet been able to access that production.

recent "inspection" have resolved these issues. Thus, the SEC requests that BAM address outstanding issues relating to the Consent Order, as explained below.

I.   **The January 23, 2024 Inspection Failed to Demonstrate that BAM Has Sole Custody and Control of BAM's Customer Assets**

As previously discussed, a thorough understanding of BAM's systems, software, and infrastructure is necessary to evaluate the custody and control of the private keys and BAM's Customer Assets. Since requesting the inspection in June 2023, the SEC has attempted to work with BAM concerning its scope and process to resolve outstanding issues relating to the Consent Order, and obviate the need for other forms of discovery, including the production of source code, that BAM has asserted are too burdensome. To this end, the SEC repeatedly explained the need for a substantive review beyond the software interface, including an inspection of backend[2] processes and information, how BAM's systems and software interact with BHL's systems, wallet software, and the private keys and underlying data associated with BAM's wallets.

BAM, however, insisted on several limitations that morphed the January 23, 2024 "inspection" into an unrecorded and mostly choreographed presentation by BAM that failed to answer outstanding questions about BAM's compliance with the Consent Order.[3] Specifically:

(1) BAM stated that its presentation would not address how the PNK system and the SQL database interact with the BHL wallet software and private keys. During the presentation concerning PNK, BAM did not demonstrate how the private key(s) for these wallets were accessed or how the software operated to enable the movement of funds, and counsel blocked the SEC's questions concerning the interactions between PNK and external systems. Without additional information about how the program works and who is responsible for operating and maintaining it, BAM failed to demonstrate it maintains exclusive possession, custody, and control of Customer Assets (including the private keys and software and hardware maintaining the private keys) and the extent to which BHL has access to the private keys or otherwise can transfer these assets.

(2) During the presentation of the software for managing user roles and permissions (Okta and UniAuth), BAM refused the SEC's request to review in real time a sample of current personnel access and the scope of user rights to PNK, including those who have rights to effect a manual withdrawal, and whether BHL personnel had such capabilities.

---

[2] During discussions regarding the inspection, BAM claimed it did not know what the SEC meant by "backend." However, the SEC identified personnel that were identified as performing backend functions, and during BAM's presentation, Mr. Kellogg repeatedly referred to the "backend team" that worked on the "backend" of the relevant systems and software.

[3] In addition, BAM represented it took screenshots of each screen during the presentation, but refuses to produce them to the SEC. The SEC again requests copies of the screenshots taken during BAM's presentation. As we have throughout expedited discovery, the SEC is willing to work with BAM to address any security and confidentiality considerations, as appropriate.

(3) BAM's presentation of the TSS Portal / SuperCold App and certain related features and functions was limited to portions of the software interface that did not include a demonstration of how a whitelisted address would be added to the TSS Portal or incorporated as a control to ensure transfers only to whitelisted addresses.  Thus, the presentation seemed to confirm that BAM only has access to the software interface to request transfers and approve transfers through the key shards, and that BAM lacks access to, or has information about, the underlying software, how whitelisting works, how the shard devices control the private keys, or the personnel involved in the development, operation, and change management of the software.

(4) BAM did not present any information concerning access and rights to the TSS Portal, including identifying personnel who can initiate transfers and whitelisting, and the extent to which Heina Chen, a senior BHL employee, or any other BHL employee has access or rights with respect to this software.

## II. BAM Either Does Not Know or Refuses to Answer Key Questions As To Whether It Has Sole Custody and Control of Customer Assets

Despite BAM's claim that it has completed its obligations in expedited discovery, BAM has not produced evidence demonstrating that it has sole custody and control of Customer Assets, and the sole ability to transfer those assets as required by the Consent Order.  The SEC has repeatedly explained these outstanding issues, both to BAM and to the Court.  At this stage, it is unclear if BAM is unwilling or unable to address these issues, but in the interests of resolving these outstanding issues absent Court intervention, we will identify them once more.

*First, BAM has not explained how its systems interact with BHL's wallet software, or identified the personnel with access to its systems to ensure that BAM has sole custody and control over Customer Assets, and the sole ability to transfer these assets.*  BAM maintains it has exclusive control of its hot and customer deposit wallets and related transfers through its PNK system and exclusive control of its staking and cold wallets and related transfers through the TSS portal and its seven TSS key shards.  Yet discovery to date reveals that BHL plays critical roles as to the systems and software governing BAM's Customer Assets and related transfers.

As to BAM's customer deposit and omnibus hot wallets, the private keys that control the wallets and transfers are maintained in a BHL AWS environment that BAM cannot access.  *See* Erik Kellogg Depo. Tr. 199.  And BAM has provided no evidence concerning how PNK interacts with the private keys and wallet software, or that substantiates its assertion that BHL cannot access and control those keys, wallets, or otherwise transfer these assets.  Rather, discovery has revealed that, when BAM has experienced issues executing an asset transfer, BHL personnel needed to intervene, and Tao Zhang, BAM's head of clearing, could not explain what BHL did to effectuate the movement of assets.  *See* Tao Zhang Depo. Tr. 73-74.  Further, while BAM purportedly relies upon asset threshold configurations to control the movement of assets from deposit wallets to hot wallets to cold wallets, BAM has not provided information concerning controls to prevent manual transfers of Customer Assets.

As to BAM's staking wallets and cold wallets, discovery has revealed that BAM has only a surface-level interaction with the TSS software, and BAM witness has testified that BAM lacks

further access or information about how the software operates, including control of Customer Assets and related transfers. *See, e.g.,* Kellogg Depo. Tr. 75, 106-110. Further, BAM has relied on its process of whitelisting wallets, see June 12, 2023 Kellogg Decl. ¶ 33.b, Dkt. No. 42, but it has not produced any evidence—during the inspection or otherwise—to demonstrate that BHL has no control over the whitelisting process, or did not have the ability to circumvent this control. Rather, discovery has identified Heina Chen as the administrator of the TSS Portal involved with BAM's key shard devices. *See, e.g.,* Zhang Depo. Tr. 133; ▓▓▓▓▓▓ Depo. Tr. 72-76. And to the extent these circumstances may have changed, BAM has not explained how and when these changes occurred.

Further, even as to the PNK and TSS systems through which BAM claims to control Customer Assets and related transfers, BAM has not demonstrated it has exclusive access to and control over these systems as required under the Consent Order. *See* Consent Order §§ I-II. Expedited discovery instead has revealed that BHL employees have recently accessed BAM's TSS Portal. *See* BAM_SEC_LIT_00005075. And PNK access logs evidence PNK access by several individuals with email addresses that have a "binancecf.net" domain name, and BAM has refused to provide information concerning this domain name. *See* BAM_SEC_LIT_00005052. In addition, BAM has refused to produce evidence concerning current access rights to its relevant systems. Thus, BAM has still not reconciled BHL's pervasive involvement with the relevant software and systems with BAM's position that it has exclusive custody and control of Customer Assets, and that BHL cannot transfer or otherwise control BAM's Customer Assets.

*Second, BAM has not explained why BAM employees outside the United States are controlling transfers of Customer Assets and/or receiving payments from Binance Entities.* Discovery has demonstrated that Tao Zhang, a former BHL employee located outside the United States, is the only BAM employee that initiates requests through the TSS portal to whitelist wallets or conduct asset transfers or staking operations. Zhang Depo. Tr. 115; Christopher Blodgett Depo. Tr. 105. Although BAM claims its TSS key shardholders are currently within the United States, Zhang's role in directing transfers raises questions as to whether all transfers of Customer Assets are solely under the direction of and controlled by BAM employees in the United States.

Discovery has also revealed that key employees involved in BAM's operations, including those involved in managing Customer Assets, receive payments directly or indirectly from BHL. BAM has represented that certain BAM employees receive an "allowance that is currently being paid by an entity affiliated with BHL." Nov. 20, 2023 Beville Ltr. The fact of these payments was evidenced in the testimony of Gerry Ho (BAM's Head of Product), who admitted he received hundreds-of-thousands of dollars per year through several payments made directly or indirectly by BHL, including that BHL conducts performance reviews that dictate his bonuses. *See* Ho Depo. Tr. 69; 84-87; 123-130. Ho also knew of about 10 additional employees who were similarly compensated, Ho Depo. Tr. at 154, and Rose Gao (Director of Operations) confirmed she was one of them. Rose Gao Tr. 62-66. Further, numerous employees working on the Binance.US Platform, including Zhang, currently receive substantial compensation from a company called Boran, *see* Zhang Depo. Tr. 106-07, and BHL has made payments to Boran employees who were working on the Binance.US Platform, which BAM reimbursed BHL through Sigma Chain, a Zhao-controlled entity. *See, e.g.,* Mar. 4, 2022 Grant P. Fondo Ltr.; Depo. Ex. 102. This evidence raises questions as to the extent to which BAM employees are

influenced or controlled by BHL and/or Zhao for purposes of compliance with the Consent Order. Nevertheless, BAM has refused to produce any further discovery on this issue.

*Third, BAM has not identified sufficient controls to ensure there are no prohibited transfers under the Consent Order.* The SEC has asked BAM witnesses to explain how BAM is monitoring for compliance with the Consent Order, and they have failed to explain how they review requests to whitelist wallets or other transactions to ensure no Binance Entity has custody, control, or the ability to transfer Customer Assets. *See, e.g.,* Sara Sisenwein Depo. Tr. 112, 206. BAM's key shardholders have testified that they do not conduct due diligence before approving transfers, including that they simply rely on Zhang. *See, e.g.,* ▇▇▇ Depo. Tr. 54, 64; ▇▇▇ Depo. Tr. 251-57; ▇▇ Depo. Tr. 88-90, 95. Further, although some shardholders identified that Sara Sisenwein currently reviews transactions, Sisenwein testified that she had not reviewed a list of BHL- or Zhou-affiliated entities that would enable her to determine whether transactions were prohibited by the Consent Order. *See* Sisenwein Depo. Tr. 101-04, 206-07. In fact, despite repeated requests, BAM has not provided a list of Binance Entities for which it is monitoring for prohibited transactions and control of Customer Assets to ensure compliance with the Consent Order.

### III.   New Wallet Information

In addition, BAM has not provided sufficient information to the SEC to demonstrate its compliance with specific provisions of the Consent Order relating to its creation of new crypto asset wallets and deletion or destruction of certain Private and Administrative Keys.

First, pursuant to Section II.2 of the Consent Order, within 14 days of entry of the Consent Order, BAM was required to begin to establish new wallets with new private and administrative keys, and to transfer all Customer Crypto Assets to the new wallets within the sole possession, custody, and control of BAM personnel located in the United States. Counsel for BAM represented to the SEC that the establishment of new wallets referenced in various communications dated after the Consent Order was not part of the process to establish new wallets under the Consent Order, but BAM has not provided any additional information. Please provide the information required under this provision. This should include information on the deletion or destruction of any Private and Administrative Keys or copies thereof that do not currently control BAM's wallets pursuant to the Consent Order, including shards that were not transferred to the United States. *See* Consent Order § II.1.

Second, Section II.5 of the Consent Order requires BAM to provide the SEC with current lists of its hot and cold wallets upon request. Please confirm that the list BAM previously produced remains current, or otherwise provide an updated list.

### IV.   Outstanding Accounting Information

There are also a few open questions as to whether BAM has complied with the accounting requirements set forth in Section IV of the Consent Order.

First, BAM has still not explained the discrepancy noted in the SEC's November 17, 2023 email requesting additional information concerning certain crypto assets. BAM responded

that it was willing to "explore any perceived discrepancies," but has not since responded to the SEC's follow-up questions. Please let us know when we should expect a response.

Second, BAM provided information concerning transfers between BAM and Sigma Chain subsequent to the Consent Order. We have tried to verify BAM's information via the blockchain, but have been unable to do so. Thus, we ask that BAM provide additional information concerning those transfers, including wallet addresses and transaction IDs.

Third, please provide a status update on the production of supplemental deposit wallet information to associate the deposit wallets with the User IDs that has been pending since at least November 2023.

***

In sum, BAM has not completed its obligations under the Consent Order. Among other things, the SEC is entitled to additional discovery to ensure BAM's compliance with the Consent Order. Our December 22, 2023 letter sought to address these issues, and BAM's January 23, 2023 response stating an unwillingness or inability to address these outstanding discovery obligations is troubling given the questions that remain. Thus, the SEC requests that BAM address the outstanding items to avoid the need for Court intervention. Given the upcoming status report and Court hearing, we request that you respond by Monday, February 12. We are available to meet and confer, if necessary.

Respectfully,

s/Matthew Scarlato

Cc:     Counsel of record