# Exhibit 39

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


* * * * * * * * * * * * * * *    )
SECURITIES AND EXCHANGE          )    Civil Action
COMMISSION,                      )    No. 23-01599
                                 )
            Plaintiff,           )
                                 )
   vs.                           )
                                 )
BINANCE HOLDINGS LIMITED, et al.,)    Washington, D.C.
                                 )    November 27, 2023
            Defendants.          )    9:39 a.m.
                                 )
* * * * * * * * * * * * * * *    )


              TRANSCRIPT OF STATUS CONFERENCE
       CONDUCTED IN PERSON AND VIA VIDEOCONFERENCE
           BEFORE THE HONORABLE ZIA M. FARUQUI
              UNITED STATES MAGISTRATE JUDGE
            (Transcribed from the Audio Recording)
```

APPEARANCES:

FOR THE PLAINTIFF:        JOHN EMMETT MURPHY, ESQ.
                          SECURITIES AND EXCHANGE COMMISSION
                          100 Pearl Street
                          Suite 20-100
                          New York, New York 10004

                          JENNIFER L. FARER, ESQ.
                          SECURITIES AND EXCHANGE COMMISSION
                          100 F Street, Northeast
                          Washington, D.C. 20549


FOR THE DEFENDANT         JASON MENDRO, ESQ.
 BINANCE HOLDINGS:        DANIEL W. NELSON, ESQ.
                          RICHARD W. GRIME, ESQ.
                          AMY FEAGLES, ESQ.
                          TEDDY KRISTEK, ESQ.
                          GIBSON, DUNN & CRUTCHER, LLP
                          1050 Connecticut Avenue, Northwest
                          Suite 300
                          Washington, D.C. 20036

```
 1    APPEARANCES, CONT'D:

 2    FOR THE BAM              MATTHEW LAROCHE, ESQ.
      DEFENDANTS:              MILBANK, LLP
 3                             55 Hudson Yards
                               New York, New York 10001
 4
                               WILLIAM R. McLUCAS, ESQ.
 5                             MATTHEW BEVILLE, ESQ.
                               WILMER, CUTLER, PICKERING, HALE &
 6                                DORR, LLP
                               2100 Pennsylvania Avenue, Northwest
 7                             Washington, D.C. 20037

 8                             DANIEL J. DAVIS, ESQ.
                               KATTEN, MUCHIN, ROSENMAN, P.A.
 9                             1919 Pennsylvania Avenue, Northwest
                               Suite 800
10                             Washington, D.C. 20006

11
      FOR DEFENDANT            WILLIAM R. BAKER, III, ESQ.
12    CHENGPENG ZHAO:          MOLLY ROSEN, ESQ.
                               LATHAM & WATKINS, LLP
13                             555 Eleventh Street, Northwest
                               Suite 1000
14                             Washington, D.C. 20004

15
      TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
16                             Official Court Reporter
                               United States District Court for the
17                                District of Columbia
                               333 Constitution Avenue, Northwest
18                             Room 6706
                               Washington, D.C. 20001
19                             (202) 354-3269

20

21

22

23

24

25
```

1   satisfied, and I'm just going to have to split somewhere in
2   there because we can't just keep going.  You guys have a
3   business to run and litigation to operate and you can't
4   juggle all these things.
5             So yes.  Please go through and talk about what it
6   is.  But I want you to know that I'm very receptive to your
7   concerns.
8             MR. LAROCHE:  I appreciate that, your Honor.  And
9   part of the reason I want to do this is because I do think
10  it goes directly to some of the issues that Mr. Murphy just
11  raised, which I think from our perspective we're just a
12  little surprised that they -- that Mr. Murphy is raising
13  issues with the control of the keys and how the system
14  works.
15            I mean, to be very clear, we told him how the
16  system worked six months ago.  This stuff is no surprise in
17  terms of how the keys are stored and how they're controlled
18  and our perspective as to what that means with respect to
19  control.
20            So when Mr. Murphy comes up and says, Well, Judge,
21  I mean, the keys are in an environment that, you know,
22  apparently BAM doesn't have control of, there's no surprise
23  there.  We said that in the first declaration in June.
24            And so it's a bit shocking to us to hear that as
25  the basis to continue doing this and to continue requiring

1     more discovery on the issues that we raised in June.  We
2     just don't think that's an appropriate way to go.
3              And as we said in June and as we gave them the
4     declarations, this is how our system works.  But we said:
5     Okay.  We're going to do expedited discovery in good faith.
6     We're going to try to address your concerns.
7              Now we're almost six months later.  And what have
8     we done?  BAM has produced thousands of documents about
9     every conceivable aspect of its asset custody practices.
10    It's responded to two dozen interrogatories.  It's
11    supplemented them last week.  It's had inspections of
12    multiple shard devices.  It's going to allow more
13    inspections of its systems.  It submitted at least half a
14    dozen declarations concerning its compliance with the
15    consent order and asset custody practices.  It provides a
16    monthly report of its expenses to the SEC saying what it's
17    doing with all of its expenses.
18             The SEC has taken seven depositions to date.  In
19    the next two weeks, they're going to do five more, for a
20    total of 12 depositions.  I mean, this is just not limited
21    by any reasonable definition of the word "limited."
22             And despite all of that, we're in the same exact
23    spot we were six months ago.  The SEC has no evidence that
24    assets had been misused in any way.  And in fact, we believe
25    that discovery has confirmed that our systems work exactly

1      as we told them they work six months ago.  There's been no
2      surprises.
3              And Mr. Murphy referred to this, but we've
4      improved the systems.  We've added more controls.  We've
5      added more security, which should just give everybody more
6      comfort that we're trying to do the right thing on this.
7              And what the SEC is left arguing about are
8      hypothetical and speculative concerns that software might be
9      used to transfer assets away from the platform.
10             And frankly, that's just not good enough.  It's
11     just not good enough six months ago, discovery to keep the
12     parties going through this exercise.
13             And this comes with significant harm to BAM.  I
14     mean, when the SEC filed its TRO, they tried to shut down
15     BAM's business immediately.  And if you couple that with the
16     really onerous discovery requests that we've been dealing
17     with for six months now, I mean, that's a really significant
18     impact on BAM.
19             And your Honor mentioned one of the real impacts
20     we've had is we've had to reduce our workforce by hundreds
21     of employees.  That's really painful for the organization.
22     And beyond that, it makes it really difficult to keep
23     responding to all these requests.
24             In addition to that, because of the TRO, our
25     banking partners either limited or effectively ended their

1   relationship with BAM.  Multiple potential banking partners
2   won't do business with BAM, citing the TRO.  We've lost
3   significant revenue.  Our average value, average monthly
4   value in terms of what the assets are on the platform, have
5   decreased by almost 90 percent.  We've lost almost half of
6   our users on a monthly basis.  I mean, this has had really
7   significant and negative impacts.
8            And we're not even close to the merits, your
9   Honor.  There's been no determination that BAM's done
10  anything wrong.  Like we want to litigate this case.  The
11  mere filing of an enforcement action and a TRO should not
12  cripple a company, particularly a company that's operated
13  openly for years and when the underlying claims have nothing
14  to do with the misuse of assets.
15           But that's exactly where we are.  And I know
16  Mr. Murphy is saying, you know, I don't want to, you know,
17  say who's more, you know -- but frankly, I mean, this is
18  having real pain on the organization.
19           The SEC is drowning us in requests.  We've been
20  doing this for six months.  And respectfully, it just needs
21  to end.  And from our perspective, we've done more than
22  enough to satisfy the purpose of the consent order.
23           And so very -- you know, we just want -- you know,
24  your Honor knows this.  But very clearly, our position is
25  this has to stop after we get through these next set of fact

1   depositions and inspections.
2              And I would just add, I was going to mention what
3   your Honor raised, which is our reaction to the resolutions
4   last week.
5              So a couple points from our perspective.
6              THE COURT:  Yes.  Please.
7              MR. LAROCHE:  And obviously, BHL and CISO are
8   here.  Mr. Zhou's counsel are here.
9              One is, there's nothing in those resolutions which
10  suggests in any way that BAM's assets are at risk or have
11  been misused in any way.
12             And then I think the second point which your Honor
13  focused on, which I think for us reinforces why the need for
14  expedited discovery is essentially gone, is the fact that
15  the whole concern from the SEC at the outset was that there
16  was going to be an inappropriate transfer of assets for the
17  benefit of Mr. Zhou through binance.com.
18             The resolution means that Mr. Zhou no longer has a
19  role with binance.com.  And with respect to BAM, the same is
20  true:  He's no longer a director with respect to BAM.  He no
21  longer has voting rights.  They're now exercised through
22  BAM's CEO.  So he no longer has a role with respect to BAM
23  as well.
24             And in addition to that, there's going to be a
25  monitor to -- put in place to make sure that binance.com is