```
1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
2

3        Securities Exchange              )
         Commission,                      ) Civil Action
4                                         ) No. 23-cv-1599
                          Plaintiff,      )
5                                         ) Status Conference
         vs.                              )
6                                         ) Washington, DC
         Binance Holdings Limited,        ) July 9, 2024
7        et al.,                          ) Time:  2:00 p.m.
                                          )
8                         Defendants.     )
         _____
9
                     TRANSCRIPT OF STATUS CONFERENCE
10                            HELD BEFORE
                THE HONORABLE JUDGE AMY BERMAN JACKSON
11                   UNITED STATES DISTRICT JUDGE
         _____
12
                          A P P E A R A N C E S
13
         For Plaintiff:      Matthew Scarlato
14                           Jennifer Farer
                             David Nasse
15                           Securities and Exchange Commission
                             100 F Street, NE
16                           Washington, DC  20549

17                           Elisa Solomon
                             Securities and Exchange Commission
18                           100 Pearl Street
                             New York, NY  10004
19
         For Defendant:
20         Binance           Daniel Nelson
                             Matthew Gregory
21                           Gibson, Dunn & Crutcher, LLP
                             1050 Connecticut Avenue, NW, Suite 300
22                           Washington, DC  20036

23         BAM Entities      Daniel Davis
                             Katten Muchin Rosenman, LLP
24                           1919 Pennsylvania Avenue, NW
                             Suite 800
25                           Washington, DC  20006
```

```
 1        Changpeng Zhao    Abid R. Qureshi
                            William Baker, III
 2                          Douglas Yatter
                            Latham & Watkins, LLP
 3                          555 11th Street, NW, Suite 1000
                            Washington, DC  20004
 4
         _____
 5
         Court Reporter:    Janice Dickman
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  We are on the record with

2     civil case 23-1599, *Securities and Exchange Commission versus*

3     *Binance Holdings Limited, et al.*

4          Parties introduce yourselves, starting with the

5     plaintiff; speaking counsel, please.

6          MR. SACARLATO:  Good afternoon, Your Honor.  This is

7     Matt Scarlato on behalf of the SEC.  And I have with me on the

8     left Jennifer Farer, on the right Elisa Solomon and David

9     Nasse.

10          THE COURT:  All right.  Good afternoon.

11          MR. SACARLATO:  Good afternoon.

12          MR. NELSON:  Good afternoon, Your Honor.  Dan Nelson

13     from Gibson, Dunn, and with me is my colleague Matt Gregory,

14     for BHL.

15          THE COURT:  Okay.

16          MR DAVIS:  Good afternoon, Your Honor.  Dan Davis

17     from the Katten law firm, along with David Luger from the

18     Katten law firm, and Matt LaRoche from Milbank law firm for the

19     BAM defendants.

20          THE COURT:  All right.  Good afternoon.

21          MR. QURESHI:  Good afternoon, Your Honor.  Abid

22     Qureshi of Latham and Watkins on behalf of Mr. Zhao.  With me

23     are my colleagues Mr. Baker and Mr. Yatter.

24          THE COURT:  All right.  We can tell you because

25     you're wearing the light gray suits; stand out in the crowd.

```
1              Well, as you all know, I ruled on the motion to
2    dismiss on Friday, June 28th.  And the federal rules set out
3    the schedule for a responsive pleading to the complaint, but I
4    thought it might make some sense to get together just to figure
5    out where we're going and what we're doing and how long it's
6    going to take to get there and what kind of a schedule we
7    should be creating.
8              And I want to just start with a question for the SEC.
9    One thing we put aside for purposes of the motion was
10   Section VIII of your complaint, the paragraphs 352 to 513 that
11   addressed other issues and other coins.  And we had a long
12   discussion at the hearing about whether they needed to be there
13   or not.  And at that point you weren't really committed to
14   where you wanted to retain them or for what.  And, so, I
15   wondered at this point if you thought about which of these
16   tokens you plan to move forward on, if any, or what we're going
17   to do with that part of the complaint before they have to
18   answer it?
19             MR. SACARLATO:  We appreciate the question, Your
20   Honor.  We're sensitive to the Court's concerns that were
21   raised previously.  And the answer is yes, we do intend to move
22   forward on the third-party tokens.  The Court has denied the
23   defendant's motion to dismiss on our Exchange Act registration
24   claims.  We believe those third-party tokens -- while it's our
25   position, Your Honor, that this case is not about any
```

1    particular token, this case is about defendant's unlawful

2    conduct in intermediating secondary sales and other sales of

3    securities, which, as we allege in the complaint, we provide a

4    representative sample of third-party tokens, as well as some

5    tokens that were offered and sold by Binance or BAM directly.

6         THE COURT:  Is that your representative sample?  Is

7    it going to be a smaller sample?  Is it going to be a larger

8    sample?

9         MR. SACARLATO:  Those, the ten third-party tokens,

10   Your Honor, reference would be the scope of the case.  We're

11   not trying to make this -- you know, we have limited resources,

12   as does the Court and defendants, and we want to keep this

13   focused to get us to the relief we're requesting and we think

14   those ten tokens will get us there.

15        THE COURT:  And do the issuers of those tokens get to

16   play a role here?

17        MR. SACARLATO:  We believe, Your Honor, that, no, in

18   the sense that we believe this case is about defendant's

19   unlawful conduct in intermediating and having a business that

20   involved intermediating securities transactions.  And while we

21   need a security in order to prove that and we understand there

22   may be some collateral consequences to these tokens issuers,

23   they are not before this Court.  We are not asking this Court

24   to adjudicate their liability.  They may have defenses or other

25   arguments that the defendants do not have.  But what's at issue

1    here is whether those tokens meet the *Howey* test in the context

2    of how they were offered and sold on defendant's platforms.

3          THE COURT:  How they were offered and sold by the

4    defendants or how they were offered and sold by the issuers and

5    then sold on the defendant's platforms?

6          MR. SACARLATO:  I would say all the above, Your

7    Honor.  It's typically that the issuers of the tokens would

8    normally be the primary promoters.  There are a number of

9    tokens that may have different circumstances.  We believe the

10   defendants did help these token issuers promote and sort of

11   amplify the reasonable expectation of profits and the other

12   elements this Court must analyze pursuant to *Howey.*

13         THE COURT:  While you're standing there, what do you

14   anticipate is necessary for discovery at this point?  And

15   obviously the SEC has had a lot of opportunity to obtain

16   records on an ongoing basis and there's been some back and

17   forth discovery with respect to creating the consent decree.

18   But at this point, what does the government still need to do in

19   terms of discovery?

20         MR. SACARLATO:  In terms of substance or timing, Your

21   Honor?

22         THE COURT:  Well, both.

23         MR. SACARLATO:  In terms of substance, we do intend

24   to take discovery from the defendant, certainly on all of our

25   claims that survive the Court's opinion, which in our view are

1    almost all of them, or as the Court described them, as the bulk

2    of those claims.  That would include, as to the third-party

3    tokens -- just to give Your Honor an example, you know, we

4    believe the defendants were acting in assisting those token

5    issuers to promote the investment value of the tokens.  So

6    we'll be seeking discovery from defendants on that.

7          You know, I'll note, among other things, to the

8    extent Your Honor is interested in the fact we had an

9    investigation that preceded this case, it's important for the

10   Court to note that Binance never accepted service of subpoena.

11   So this will be our first attempt to be able to get documents

12   that we think are necessary to prove our claims.  So that's one

13   example of why we need some time.

14          THE COURT:  Will there be third-party discovery,

15   though, with respect to those coins?

16          MR. SACARIATO:  There will be.

17          THE COURT:  Okay.  Have the parties given any thought

18   to early mediation in this case?  I don't know if you call it

19   early, if it took six months to get a ruling on the motion to

20   dismiss, but --

21          MR. SACARLATO:  It hasn't been discussed recently,

22   Your Honor, but I can inform the Court that before we filed,

23   there were some discussions about settlement.  Obviously, they

24   didn't come to fruition.  The Commission is prepared to move

25   forward.  And we would like to move forward, we're anxious to

1    move forward with this case.  If defendants have some desire to

2    mediate or otherwise try to settle, the Commission is always

3    open to them.

4              THE COURT:  All right.  With that, I guess I want to

5    get some sense about -- what I'm thinking makes the most sense

6    is -- obviously, we need the responsive pleading, but then to

7    have the parties meet and confer and try to propose an agreed

8    schedule for moving forward, and giving you enough time to do

9    that because you're both going to figure out, well, what do I

10   need to do?  And then how long is that going to take?  And how

11   long we need?  And it makes sense to have you all develop a

12   schedule and provide it to me in the first instance, rather

13   than my just coming up with one.

14             One thing I was thinking should be part of any

15   scheduling order -- and I would want to know what the parties

16   think about this also -- would be retaining Magistrate Judge

17   Faruqui to address discovery disputes as they arise.  And, you

18   know, I just sort of think they might.  So what would the

19   government's position be with respect to that?

20             MR. SACARLATO:  With Magistrate Judge Faruqui?

21             THE COURT:  Um-hum.

22             MR. SACARLATO:  We've had a great experience with him

23   and we'd be happy to -- I have to discuss it with my

24   colleagues -- but we would be inclined to move forward.

25             THE COURT:  Is there anything else that I need to be

1    thinking about today?  And really, I just wanted to start

2    feeling you out about what the schedule is going to look like

3    and how we can create one.

4              MR. SACARLATO:  Appreciate that, Your Honor.  I think

5    it may be helpful to know that the parties have engaged in

6    some -- just over email, not in detail -- but some back and

7    forth on what might be an appropriate schedule.

8              It's our position that we should just follow the

9    rules as normally constructed.  There's no reason this civil

10   case should move unlike any other.  Defendants have proposed an

11   alternative schedule that involves an initial period where the

12   parties have to consider whether -- the SEC, excuse me, first

13   would decide whether to amend its complaint.  And at the same

14   time, defendants -- they or other parties -- might be able to

15   make a motion for relief, is how they described it, during that

16   same time.

17             And it's our view that given we want this case to

18   move forward, it's an efficient process to have us potentially

19   amend the complaint while defendants make a motion to try to

20   amend or alter the Court's judgment, as we understand it, at

21   the same time.  So we --

22             THE COURT:  Were you thinking of seeking to amend

23   your complaint?  Or are you going to move forward on what's

24   there?

25             MR. SACARLATO:  Your Honor, at this stage we're not

1    inclined, as we understand the Court's ruling -- which, as Your

2    Honor used the words, the bulk of our claims are moving

3    forward, which as we understand it are all the alleged

4    securities in the complaint, with the exception of simple earn,

5    the USD and a limited scope of secondary BNB sales only as it

6    relates to the Securities Act claims.

7        So putting those dismissed claims aside, we are

8    considering whether to amend our complaint on that and other

9    issues.  But, otherwise, we don't think that's a reason to not

10   move forward with the discovery schedule.

11       THE COURT:  Well, I think it would helpful to set

12   some sort of timetable when we know if you're going to be

13   amending or not amending before, A., we all get started.

14   Everybody needs to know the parameters of the complaint.  As of

15   this moment we know the parameters of this complaint.  But if

16   you're thinking that they should be different or they're

17   planning to come back to me on something, it probably would be

18   useful to have a schedule, very short turnaround when that

19   needs to be done.

20       MR. SACARLATO:  And if that's Your Honor's

21   preference, we're not against that.  What we are objecting to

22   is the idea that defendants may try to amend the scope of this

23   case based on the Court's ruling while we're considering an

24   amendment, which could contemplate a second amendment,

25   depending if the Court agrees with the defendants.

 1          THE COURT:  Well, I'll be interested in finding out

 2   what you mean and what they mean by the defendants amending the

 3   scope of the case.

 4          MR. SACARLATO:  That would be helpful.  Thank you.

 5          THE COURT:  All right.  Let me hear from counsel for

 6   Binance.  And what are you thinking about when you look at the

 7   schedule?  And do your clients have any interest in some sort

 8   of early mediation of this matter?

 9          MR. NELSON:  Thank you, Your Honor.  Dan Nelson.

10          So maybe is a threshold matter, just picking up on

11   the colloquy that you had with Mr. Scarlato.  We do believe

12   that we should sort out whether or not the SEC is going to

13   amend the complaint before we set a deadline to answer.  If

14   they plan to, you know, seek leave to amend to address claims

15   that the Court dismissed, we would like to have that be on the

16   table before we go through the exercise of filing an answer to

17   a 550-some-odd-paragraph complaint that's on file now.  And we

18   have attempted to engage the SEC on that and don't have clarity

19   on that question yet.

20          With respect to the issue of, you know, whether my

21   client, BHL, plans to file any motion relating to the Court's

22   ruling on June 28th, the answer to that is no, we do not.

23   Well, we would, obviously, reserve rights, if some other party,

24   including the SEC, were to file any motion.  We -- I think I

25   heard Mr. Sacarlato say they don't intend to, but we didn't

1    hear that until this morning.

2            THE COURT:  So what do you think in terms of -- let's

3    say we resolve the amendment issue and it's time for discovery,

4    what kind of time are you thinking the parties are going to

5    need?  Or have you all talked about that among yourselves at

6    all?

7            MR. NELSON:  No.  In part because of what we view as

8    kind of a gating question:  What's in the case?  And one of the

9    things that Your Honor raised was the third-party tokens.  We

10   actually read the order as putting the third-party tokens out

11   of the case.

12           THE COURT:  No, I just said they were out of my

13   motion to dismiss because no one filed a motion that related to

14   them.

15           The government made some statements at the hearing on

16   the motion to dismiss when I asked why they were there, and it

17   said that they went to the extent of the violation and the

18   scope of the violations and the remedies at issue.  And then

19   they said:  We are not saying we would pursue or need to

20   evaluate the hundreds of tokens on the particular -- on these

21   platforms.  And again, we would work would the Court and the

22   parties to come up with a solution as to how to address these

23   issues.  But they didn't say -- I got the impression they were

24   saying we're going to be thinking about whether they're in or

25   out after we see how we do with everything else.  And now I

1    think they're telling me -- correct me if I'm wrong -- they're

2    not changing a word.

3            Is that what you're saying, from the SEC's

4    perspective?

5            MR. SACARLATO:  As to the third-party tokens, Your

6    Honor?

7            THE COURT:  Yes.

8            MR. SACARLATO:  As I mentioned earlier, we do intend

9    to pursue them in discovery in support of our Exchange Act

10   claims against the defendants.

11           THE COURT:  So that's your answer.  I never said they

12   were gone, you never asked me to throw them out.  So they're

13   there.

14           MR. NELSON:  Your Honor, if I may, the Binance motion

15   to dismiss, Document 118, pages 26 to 28, we did move to

16   dismiss the third-party token claims.  And the way that we read

17   the Court's opinion, specifically regarding secondary sales, is

18   that the SEC had failed to plead facts to substantiate

19   secondary sales.  And it was the section of the order relating

20   to BNB.  But we think the logic of that finding applies with

21   even greater force to the cursory allegations relating to

22   third-party tokens.

23           And as Your Honor noted at the motion to dismiss

24   hearing, the scope of this case is going to be vastly different

25   if those tokens are in.  And I would respectfully submit that

1    given the thin read on which the SEC has purported to plead

2    claims relating to the third-party tokens, they should be out,

3    at least unless there's more heft to the allegation to have

4    them in.

5         THE COURT:  Did the government address the motion to

6    dismiss in their opposition?  Because I spent a lot of time

7    with these documents and don't recall that they were -- I

8    thought, at the hearing, they basically said we're going to

9    talk about that later.

10        MR. NELSON:  I think they kind of punted on that at

11   the hearing, Your Honor, in all candor.  In the opposition --

12   and this is Document 172, pages 18 to 20 -- the government did

13   address the third-party tokens.

14        THE COURT:  All right.  And what were the pages in

15   your motion to dismiss where you addressed them?

16        MR. NELSON:  The motion to dismiss is pages 26 to 28.

17        THE COURT:  All right.  Well, does anybody think that

18   I need anything more than what you've already given me on those

19   to address that issue?

20        MR. NELSON:  Speaking for BHL, we believe we

21   addressed it in the briefing.

22        THE COURT:  Okay.

23        MR. SACARLATO:  Your Honor, my initial response would

24   be it's not an efficient use of resources, given that the Court

25   already held and sustained our Exchange Act claims because it

1    found that there were Securities trading on both defendants'

2    platforms.  So delving into this third-party tokens now will

3    basically put us in the same place at the end of the day with

4    those claims proceeding.

5              THE COURT:  Well, that was what you told me at the

6    beginning; we have one, we only need one, and we don't know

7    what the scope is going to be later.  And so we put that issue

8    aside.  And now they're saying but now since the Exchange Act

9    claim is going forward and you're saying that, no, that wasn't

10   just a, you know, kind of for shock and all purposes, but we're

11   actually moving forward on every single one of those

12   allegations, they're saying we have an outstanding motion to

13   dismiss those allegations.  Why would I not have to rule on

14   that?

15             MR. SACARLATO:  Because as Your Honor said, there's

16   only one security required in order to sustain our Exchange Act

17   claims, which Your Honor has already found and said those

18   claims can proceed.

19             THE COURT:  But you can't, on the one hand, say they

20   bear on the scope of the violation, they bear on the remedies,

21   they're part of our case, we're moving forward, and they don't

22   get to challenge it.  The Exchange Act claim could be this

23   broad, it could be that broad, it could be -- I don't know

24   what -- I don't understand your argument.

25             MR. SACARLATO:  Your Honor, I'm sorry, we were just

1    reacting to Your Honor's opinion on that motion.  And we agree

2    that the one security is all that's required to sustain the

3    claim.  So we think, you know, this case should move forward

4    and we do --

5         THE COURT:  We're not saying the case isn't going to

6    move forward.  I think we're talking about the hundreds of

7    paragraphs about -- which you now say bear on the scope of your

8    claim, right, and the scope of the remedy.  Didn't you tell me

9    that then and you're consistent about that?

10        MR. SACARLATO:  I'm sorry, Your Honor.  I don't have

11   the transcription in front of me, but I'm sure we did.  It

12   wasn't -- I think we said --

13        THE COURT:  I asked:  Why do we have these 40 pages

14   in the complaint?  And the answer was, on page 105:  We have

15   alleged the other tokens because we maintain that this

16   representative sample is just that, it's a representative

17   sample of another crypto -- of others' crypto asset securities

18   that are offered and traded on the platform.  And so it's

19   relevant to both the scope of the violation and the remedy at

20   issue.

21        And then when I asked again about it, you said:

22   We'll work with the Court and defense counsel to come up with

23   an appropriate discovery plan, but the extent of the violation

24   may turn on the different crypto assets at issue.  And it's

25   relevant to the scope of the violation and the remedies at

1    issue.  So that seems like that's your position.

2            MR. SACARLATO:  It is.  And I believe that's what I

3    said earlier, as well.

4            THE COURT:  Okay.  And so is that what you were

5    talking about when you were having conversations with them

6    about narrowing the scope of the complaint?  Or is there some

7    other aspect in my ruling that actually was there, as opposed

8    to wasn't there, that you're going to be asking me to

9    reconsider?

10           MR DAVIS:  Your Honor, we haven't had any

11   conversations with the SEC about this.  I will note, BHL's

12   counsel told you in their brief where this argument was raised.

13   For the BAM defendants, we also believe we've raised this

14   argument with respect to the third-party tokens.  That's docket

15   No. 117-1, pages 20 to 25 of our brief.  We identified the

16   dozen or so digital assets that they claimed in that Section

17   VIII of the complaint.  And our arguments were that those

18   allegations themselves were not sufficient under *Howey*.

19           And like BHL, we believe the rationale that you

20   offered in the opinion regarding the BNB secondary tokens

21   applies with equal or greater force to those allegations.  So

22   we believe Your Honor has the arguments that you need to make a

23   decision regarding that.

24           THE COURT:  I mean, I do think that by the time the

25   hearing was done there was a general understanding that we

1    weren't going to be ruling on those now and that they were

2    putting those aside to wait and see.  It certainly didn't seem

3    clear to me at the end of the hearing that people were waiting

4    around, waiting for a ruling on those counts.

5         MR DAVIS:  We'll certainly proceed however Your Honor

6    wants to proceed, but we do think we raised arguments, specific

7    arguments in the briefing about this issue.

8         THE COURT:  All right.

9         MR DAVIS:  And as you noted, it would change

10    dramatically the scope of discovery in this case if those

11    third-party tokens --

12         THE COURT:  Well, that was why that was the first

13    question I asked the government, as to whether or not, now that

14    they've seen what's moving forward and what's not, if they're

15    moving forward with it.  If they're planning to move forward

16    with it, then I guess we have to address the sufficiency of the

17    allegations.  So that's -- and that's already been briefed, so

18    no one needs to do anything further with respect to that.  And

19    I guess it -- if there are amendments the government is

20    planning to seek, that makes sense to do that, rather than

21    getting into discovery and then you move to amend the complaint

22    and everybody says, well, you know, if we'd known that, we

23    would have asked for this.

24         MR. SACARLATO:  You want me to react to that, Your

25    Honor?

1          THE COURT:  Sure.

2          MR. SACARLATO:  So it sounds to me like defendants

3    are seeking a motion for reconsideration of Your Honor's

4    opinion.  You know, we were reacting to Your Honor's opinion as

5    we understood it and read it.  We thought it was a very

6    thoughtful and well-written opinion, but --

7          THE COURT:  I don't think they're objecting to

8    anything in the opinion because these weren't addressed in the

9    opinion.  So I wasn't thoughtful about those in the opinion.  I

10   didn't talk about them at all.

11         MR. SACARLATO:  Right.

12         THE COURT:  I had 88 pages of other things to talk

13   about.

14         MR. SACARLATO:  Right.  And our understanding was

15   Your Honor didn't address those also because it had already

16   sustained our Exchange Act claims based on other -- finding

17   other securities trading on these platforms.  So --

18         THE COURT:  Well, I didn't address them because you

19   said it wasn't necessary to address them to rule on the

20   Exchange Act claim going forward.  So the Exchange Act claim is

21   going forward.  They're not asking me to reconsider that.

22   They're asking me to consider the scope of it, which is what

23   these add to, in the government's own words to me:  The scope

24   of the violation and the scope of the remedy.  And I didn't

25   rule on that because I thought I was waiting for you to come

1   back and tell me, okay, we want -- we actually want to go

2   forward with that stuff or we don't.  And now you're saying you

3   are.  And they're saying if they're going forward with it,

4   first we want to test the sufficiency of the allegations.

5          So I'm familiar with *Howey* now.  I will be able to

6   read them and determine whether each -- how many coins are we

7   talking about in those paragraphs?

8          MR. SACARLATO:  Ten.

9          THE COURT:  Okay.  And without the benefit of the

10  point of view of the people that issued them, I'm going to just

11  be looking at the face of your allegations as to whether it

12  states that those were sold as securities, as I understand it.

13  I don't see why, if you're moving forward on the whole thing,

14  they don't have the right to have those allegations tested.

15         MR. SACARLATO:  Your Honor, I'm not saying they don't

16  have that right.  And we did argue it at the motion to dismiss

17  hearing.  We were just reacting to Your Honor's opinion which

18  did find that claims could proceed based on at least one

19  security trading.  But if that's Your Honor's view on what

20  should be done about the other third-party tokens, we have no

21  objection to that.

22         THE COURT:  Even if they're successful and that huge

23  portion of the complaint is excised completely, doesn't change

24  anything I said before.  There's a claim going forward.  All

25  your -- the claims that are still going forward are still going

1     forward.

2          I don't know why that necessarily needs to hold up

3     discovery or meeting and talking about how much time you need,

4     et cetera, because you know what the charges are against

5     Binance and BAM and you know what's going forward.  You know

6     what depositions you want to take, they know what documents

7     they want from you.  And I don't see why some of this stuff

8     can't proceed on a parallel track.

9          MR. SACARLATO:  So if I'm understanding Your Honor,

10    you're kind of putting sort of a bifurcated approach, where we

11    move forward on the claims that Your Honor sustained while we

12    adjudicate on the pleadings these third-party tokens and then

13    see how discovery goes from there.  Is that what I'm hearing?

14         THE COURT:  I mean, I think I should give you all a

15    chance to meet and confer and propose a schedule.  I think the

16    schedule needs to include up front the stuff that's already

17    been briefed so we don't have to prepare for it being briefed;

18    I can look at it.  And I do think up front we need some

19    indication from the government whether they're seeking --

20    they're going to try to amend any of the counts.  And after we

21    have clarity on all of that, they can file their responsive

22    pleading.

23         But I don't know why you couldn't file a responsive

24    pleading to all of the paragraphs except those paragraphs and

25    start thinking about discovery and start thinking about what

```
 1    your position is on whether you're interested in mediation,

 2    et cetera.  I think we all can do more than one thing at one

 3    time.  But I would like the two of you to talk it through

 4    yourselves in the first instance and send me a proposed

 5    schedule for moving forward.  And whatever you can't agree

 6    upon, set out your positions.  I mean, they don't have to be

 7    briefed, but just we propose this and we propose that and

 8    briefly why.

 9              MR. SACARLATO:  Just thinking about how this might

10    play out, Your Honor, there is a world in which, you know, we

11    now have the benefit of Your Honor's interpretation of Howey.

12    And that may -- plus any adjudication of the third-party

13    tokens -- might influence our decision as to whether to amend

14    as to those tokens.

15              THE COURT:  Whether to amend as to what?

16              MR. SACARLATO:  As to the third-party tokens that

17    Your Honor is talking about.

18              THE COURT:  Okay.  Well, if you're going to seek to

19    amend those, you should probably do that first, before we -- I

20    go through the trouble of assessing all ten of them on their

21    face at this point --

22              MR. SACARLATO:  Yeah, and I'm just trying --

23              THE COURT:  -- because they haven't been dismissed

24    yet.

25              MR. SACARLATO:  I'm just reacting to Your Honor on
```

1    the fly here, and I need to discuss with my colleagues.

2              THE COURT:  I think that's why I wanted everybody to

3    get together, because I didn't know what anybody was thinking

4    about any of this and I thought it would be helpful, before I

5    ordered you to go off and just do a Rule 16.3 report and tell

6    me what we should do.

7              It seems that there's some benefit to knowing what

8    the extent of the complaint is before you move forward.  But, I

9    think, by and large we do, with the exception of these

10   tokens -- other tokens which, while it takes up a huge portion

11   of the complaint, is just a portion of the one claim and it

12   doesn't change anything about the discovery that has to go on

13   with respect to the defendants who are in the courtroom right

14   now.

15             MR. SACARLATO:  Well, we would -- with the caveat,

16   Your Honor, that we would be seeking discovery from the

17   defendants about their involvement with those third-party

18   tokens because these are not happenstance listings.  These were

19   defendants affirmatively entering business relationships with

20   these issuers to make their tokens available on the defendants'

21   platforms.  So there would be additional discovery as to

22   defendants as well.  So I'm just trying to think of the most

23   efficient way to movie forward, as I know Your Honor is.

24             THE COURT:  Well, certainly wasn't my plan before I

25   came in here to think that I was going to be looking at the

1    complaint again before we could move forward.  And I don't see

2    why -- you have plenty of issues to move forward on that can be

3    somewhat staged.  It wouldn't hold you back from doing

4    discovery about that, if they're sustained and they move

5    forward.

6              I don't think everybody should just -- we've already

7    frozen for a long time and I think it would make sense to talk

8    among yourselves about a way to at least get started on the

9    claims that are going forward while we're doing this.

10             What's your thought about that?

11             MR. NELSON:  Your Honor, first, I want to thank you

12   for calling the conference.  I think this has been very helpful

13   for us.  I do agree that it makes sense for the defendants and

14   SEC to confer and make a proposal to Your Honor.  I do remain

15   of the view that understanding whether the SEC plans to amend

16   in the near future is something that would be helpful for us to

17   know before we start talking about a deadline to answer the

18   complaint.  So I would plan to talk with Mr. Scarlato about

19   that.

20             In the meantime, you know, we do still have a

21   deadline under the federal rules to the pending complaint.  We

22   would ask for relief from that until we are able to work

23   through a proposed schedule with the SEC.

24             THE COURT:  No.  Yes, if we set a date where you

25   submit a schedule to meet, then you're not going to have to

1    answer by Friday or whatever it is.  That's understood.  How

2    long -- how much time do you all think you would need to do

3    that?

4           MR. NELSON:  May I confer with other defense counsel

5    briefly?

6           THE COURT:  Sure.

7           (Pause.)

8           THE COURT:  All I'm asking you to tell me right now

9    is not what you're going to agree to in the document, but how

10   long you think you need to talk and file something?

11          MR. SACARLATO:  Do you want to go first, or do you

12   want me?

13          MR. NELSON:  You're the plaintiff.

14          MR. SACARLATO:  I think the concern -- apologies for

15   the delay and appreciate the Court's indulgence -- is how that

16   sort of dual track Your Honor is envisioning affects amendment.

17   Because there is a current present opinion that dismissed some

18   claims that we are not inclined to, but considering, amending

19   and now there may be this second track where Your Honor

20   potentially could -- we don't think she should -- but the Court

21   may dismiss some aspect of those third-party tokens, at which

22   time we'd be concerned about exercising our right to amend.

23          THE COURT:  I looked back very briefly at your

24   argument about the tokens.  It fell under the larger heading

25   where you said:  The SEC fails to plead that any token is a

1    security, beginning, primarily, because an investment contract

2    requires a contract, which I think has been soundly rejected in

3    the opinion.  And then you finished up with:  Because the Major

4    Questions Doctrine forecloses the SEC's novel interpretation of

5    securities laws, which has also been soundly rejected in the

6    opinion.

7          So what's left is what portion of pages 26 to 28

8    didn't just repeat the contract issue, but went into investment

9    of money and reasonable expectation of profits.  So I need to

10   look at the complaint and see if those were alleged with

11   respect to those assets.  But I'm not, just because we're

12   talking about different tokens, going to revisit whether a

13   contract is required because I think I took care of that and

14   that's done.  So --

15          MR. SACARLATO:  We agree with that, Your Honor.

16          THE COURT:  Okay.  But, clearly, I have not looked at

17   each of the tokens allegations with respect to how they fit

18   under *Howey*.  And there is some abbreviated argument with

19   respect to that in this that needs to be decided before we know

20   if we're moving forward on those, unless you're planning to

21   change them first.  And I think we all fairly thought that

22   there was a possibility that you wouldn't be moving forward on

23   those after the way you all addressed it at the motion to

24   dismiss.

25          So we need some clarity.  If they're all in, then I

1    need to look at them.  If there's something else you're seeking

2    to amend, it would be useful to have a schedule to do that.

3    And maybe you all need to think about all of this and then you

4    need to think about what makes the most sense to do first.  I'm

5    not telling you what makes the most sense to go first.  I would

6    prefer not to hold up the entire case while I'm looking at this

7    issue, which really would be, notwithstanding how many

8    paragraphs are devoted to it, the tail wagging the dog.

9         MR. SACARLATO:  That would be our preference as well,

10   Your Honor.  We're very anxious to move this case forward.

11   We're also just trying to understand our most efficient way to

12   preserve our right to amend based on any subsequent ruling that

13   may come.  So we need to talk about that as well.

14        THE COURT:  All right.  I guess the question is what

15   you're seeking to amend.  If you're seeking to amend the things

16   that I've carved out already, then I think we should see that

17   sooner rather than later, as opposed to at the close of the

18   discovery period.  It just wouldn't be -- people would like a

19   heads-up as to whether we're talking about the USD anymore or

20   not, or whether we're talking about the other things that are

21   carved out, which are --

22        MR. SACARLATO:  Right.  That's fair enough.

23        THE COURT:  Well, why don't we do this:  You can both

24   retreat to your own corners and think about what you think,

25   from the government's perspective, with respect to all these

1    issues, is the best schedule for moving forward, and the

2    defense can do the same thing and then you can talk to each

3    other and maybe, with respect to some aspects of that, you'll

4    be in agreement, in which case you can tell me that and I will

5    be happy to move forward on a track that makes sense to both of

6    you.  And if you are really opposed to how -- to each other's

7    proposals, then I'll try to figure out what makes the most

8    sense from my perspective.  But I would like to give you all

9    the chance to tell me what you think makes sense first.

10            MR. SACARLATO:  Your Honor, I think that makes a lot

11    of sense, with one exception.  And if I can quickly confer with

12    my colleagues?

13            THE COURT:  All right.

14            MR. SACARLATO:  I'll be quick.

15            (Pause.)

16            MR. NELSON:  Your Honor, if I could just make a quick

17    point about the briefing.

18            THE COURT:  I know.  I just looked at theirs.  I

19    didn't look at yours yet.

20            MR. NELSON:  Okay.  I just want to make sure.  It's

21    arguments 1.B. and 1.C. of our brief.  I understand that you've

22    addressed other aspects of it, but those are all *Howey*

23    arguments and they do differ from what the other defendant

24    raised.

25            THE COURT:  All right.  I understand there's

1    something in your brief, too.  I didn't look at them both

2    within the last five minutes.

3                    (Pause.)

4            MR. SACARLATO:  Appreciate the indulgence, Your

5    Honor.

6            THE COURT:  All right.

7            MR. SACARLATO:  I just want to refer the Court to the

8    portions of our motion to dismiss opposition where we address

9    the third-party tokens.

10           THE COURT:  Obviously, if I'm going take up their

11   allegations, I'm going to look at your response to those

12   allegations.

13           MR. SACARLATO:  I appreciate that.  I think our

14   argument is also very well presented, so you may also want to

15   consider that as well.  I'm just trying to find the page

16   number.

17           THE COURT:  I would never just consider one side's

18   argument, even if it wasn't well presented.  I will look at it

19   all.  We did have the hearing after you filed all that stuff.

20   And, so, at that point the SEC wasn't pushing hard on those

21   claims and was saying, well, we might need them, we might not.

22           So understand, though, that if I'm going to read

23   something, I'm going to read everything.  Every lawyer keeps

24   standing up to tell me that they wrote something, and I'm

25   pretty sure there was a reply after the opposition.  So don't

1    worry, I'll look at it.

2         MR. SACARLATO:  We appreciate that and we apologize

3    if there was any lack of clarity on our part, Your Honor.  But

4    just for Your Honor's benefit, starting on page 18 of our

5    opposition from November, you'll find some argument on that

6    point.

7         THE COURT:  All right.

8         MR. SACARLATO:  Thank you very much.

9         THE COURT:  You're welcome.  I do also just want to

10    emphasize one thing, which is that I hope everybody has paid

11    close attention, and I think you all have because, I think,

12    unlike some of the bloggers who have expressed a lot of

13    interest in this decision, you understand what a motion to

14    dismiss is and what it isn't.  But I do want to underscore that

15    this is what it was.

16         It was a ruling on a motion to dismiss for failure to

17    state a claim.  I wasn't asked to decide and I did not decide

18    whether a stablecoin could ever be sold as an investment

19    contract and, therefore, whether it ever could fall within the

20    definition of a security.  And I wasn't asked to decide

21    whether, on the totality of circumstances around a secondary

22    sale, could ever satisfy the definition of a security.

23         My task was to determine whether this complaint in

24    this case plausibly alleged that the BNBs on secondary market,

25    or the BUSDs, were sold as investment contracts.  And I found

1    that it didn't and so, therefore, they didn't -- what was

2    alleged didn't fall within the statutory definition for the

3    security.  I didn't make a grand ruling about all stablecoins

4    or all secondary sales for all time.  And I thought I said that

5    pretty clearly in the opinion, but it appears to have been

6    missed at various points, so I just wanted to underscore that.

7            Is there anything -- we have yet to decide when

8    you're all going to submit something.  And, you know, if we set

9    a date and you're not ready, you can always ask, if you want to

10   extend the date.  But what should we set as a target date for a

11   joint submission on a proposed schedule for moving forward?

12           MR. SACARLATO:  Your Honor, apologies.  It took a

13   while.  We have depositions in -- as part of the expedited

14   discovery phase of this case -- in Dubai next week.  So there's

15   a bunch of folks that won't be available.  So for that reason,

16   we just need a little extra time, which I think the Friday

17   after, which is, I believe, the 28th.

18           MR DAVIS:  The 26th.

19           MR. SACARLATO:  The 26th.  With Your Honor's

20   indulgence, we can maybe have until that Monday, just to make

21   sure, which is the 29th of July.

22           THE COURT:  Okay.  I'll look for a joint submission

23   on a proposed schedule for moving forward, what's agreed and

24   what your dueling positions are, if it's not agreed, by July

25   29.  In the meantime, the obligation of all the defendants to

1    answer the claims that are still moving forward is held in

2    abeyance until we have a schedule.

3              MR. SACARLATO:  Understood.  Thank you.

4              THE COURT:  Is there anything further I need to do on

5    behalf of the SEC right now?

6              MR. SACARLATO:  Not for the SEC.  Thank you very much

7    for your time.

8              THE COURT:  All right.  Anything further on behalf of

9    Binance?

10             MR. NELSON:  Not at this time.

11             THE COURT:  All right.  Thank you very much,

12   everybody.

13                            *   *   *

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3        I, JANICE DICKMAN, do hereby certify that the above

4   and foregoing constitutes a true and accurate transcript of

5   my stenographic notes and is a full, true and complete

6   transcript of the proceedings to the best of my ability.

7              Dated this 10th day of July, 2024

8

9

10                          _____

11                          Janice E. Dickman, CRR, CMR, CCR
                            Official Court Reporter
12                          Room 6523
                            333 Constitution Avenue, N.W.
13                          Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25