UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

        *Plaintiff*,

   v.

BINANCE HOLDINGS LIMITED,
BAM TRADING SERVICES INC.,
BAM MANAGEMENT US HOLDINGS
INC., AND CHANGPENG ZHAO,

        *Defendants*.

No. 1:23-cv-01599-ABJ-ZMF

**BAM MANAGEMENT US HOLDINGS INC.'S AND BAM TRADING SERVICES INC.'S MOTION FOR RELIEF FROM THE CONSENT ORDER**

Defendants BAM Trading Services Inc. and BAM Management US Holdings Inc., (together, "BAM") respectfully request that the Court enter an order granting BAM relief from the Consent Order (Dkt. No. 71) pursuant to its inherent authority and Section IX of the Consent Order. As set forth below, BAM is seeking authorization to (1) invest its corporate assets in the ordinary course of its business; (2) invest a limited subset of Customer Assets, as defined in the Consent Order, in United States Treasury Bills; and (3) transfer crypto assets to a non-affiliated third-party custodian or custodians as contemplated by the Consent Order.

Counsel for BAM have conferred with counsel for Plaintiff Securities and Exchange Commission ("SEC" or "Commission") concerning the relief sought in this motion. Although the Commission disagrees with BAM's assessment as to whether the relief sought implicates the Consent Order, the Commission, solely for purposes of compliance with the Consent Order, does

not oppose the relief sought in this motion as set forth in the proposed order.[1]  Binance Holdings Limited ("BHL") and Changpeng Zhao also do not oppose this motion.

## BACKGROUND

**A.   BAM's Investment of Corporate Assets**

1. On June 17, 2023, by stipulation of the parties, the Court entered the Consent Order (Dkt. No. 71).

2. The Consent Order provides, in relevant part, that:

> [F]or the pendency of this litigation Defendants BAM Management and BAM Trading may dispose, transfer, pledge, encumber, or assign assets presently owned by BAM Management or BAM Trading, in whatever form such assets may exist and wherever located, solely to make payments or to satisfy obligations incurred in the ordinary course of business as set forth in Docket #62 ("BAM Ordinary Course Business Expenses") and for no other purpose.  BAM Trading and BAM Management may not in any circumstance make payments, incur any new obligations, or transfer any assets, to or for the benefit of any of the Binance Entities or any individual entity acting on behalf or for the benefit of any such Binance Entity.
>
> \*\*\*
>
> It is further ordered that BAM Trading may continue to transfer Customer Assets to external wallets or accounts solely at the direction of the beneficial owners of such Customer Assets or to support redemptions or transfers directed by such customers subject to the prohibition above that BAM Trading and BAM Management, including their officers and employees, may not in any circumstance transfer Customer Asserts to or for the benefit of any of the Binance Entities.

*Id.* at § II.3; II.6.

3. BAM invests portions of its corporate assets as part of its ordinary course business. To diversify its investment strategy, BAM plans to engage third-party investment advisors and has provided the names of those advisors to the SEC.  BAM has conducted substantial due diligence

---

[1] BAM understands that the SEC reserves its rights to make any argument or introduce any evidence concerning the activities proposed in this motion for any other purpose in this litigation.

on each of these third-party advisors and determined that none of the investment advisors is a Binance Entity, as defined in the Consent Order. Furthermore, BAM represents that it will advise third-party advisors of the obligations under the Consent Order and direct third-party advisors not to invest in any Binance Entity.

4. BAM may further diversify its corporate assets by lending its corporate assets to or investing its corporate assets in other businesses. Prior to any such investment of BAM's corporate assets, BAM will conduct due diligence to confirm that any such entity is not a Binance Entity and direct the entity not to invest in any Binance Entity.

5. BAM would be deprived of significant returns that it requires to operate its business should it be restricted from investing corporate assets.

B. **BAM's Investment of Customer Fiat Assets**

6. BAM also intends to invest certain Customer Fiat Assets, as that term is defined in the Consent Order, currently custodied at BitGo, in United States Treasury bills. Although BAM terminated fiat banking services for Customer Fiat Assets in June 2023, BAM still holds a sizable amount in Customer Fiat Assets that remains in a BAM customer account at BitGo. Over a four-week period, BAM will invest approximately $40 million ($10 million per week for the four-week period), which is less than half of the Customer Fiat Assets custodied through BAM, in United States Treasury bills directly via a BAM Trading account on TreasuryDirect. These bonds will mature on a rolling four-week basis. No third parties—including Binance Entities—will be involved in this investment. Based on historical customer withdrawals of Customer Fiat Assets, BAM has estimated volumes of fiat withdrawal requests during the period in which BAM will be investing these Customer Fiat Assets. Based on this estimate, BAM will maintain sufficient USD on the platform to honor all such estimated requests.

7. Upon entry of an order granting this relief, BAM will update its terms of use regarding investment of Customer Fiat Assets on BAM's website and directly notify all customers by sending an email to the email address associated with each of its customers' accounts. BAM will send the notification email two weeks prior to when BAM will begin to invest Customer Fiat Assets in United States Treasury bills.

**C.     BAM's Use of Non-Affiliated Third-Party Custodians**

8. The Consent Order provides, in relevant part, that:

> BAM Trading and BAM Management [will] maintain sole possession, custody, and control of Customer Assets . . . and all transfers and withdrawal of Customer Assets will solely be under the direction and control of BAM Trading and BAM Management, through officers and employees located in the United States, or a non-affiliated third party custodian in the United States . . . . [And] that within 14 days of entry of the Consent Order, BAM Trading and BAM Management will begin to establish new wallets, and Stipulating Defendants will begin to transfer all Customer Crypto Assets to the new wallets with new private and administrative keys. These "New Private and Administrative Keys" . . . will be in the sole possession, custody, and control of BAM Trading officers and employees who are located in the United States.

Consent Order § II.2.

9. The Consent Order also includes provisions authorizing the custody of Staking Assets by third-party custodians. *Id.* § II.7.

10. BAM Trading has maintained custody of most Customer Assets using wallet custody software developed by and licensed from Binance Holdings Limited ("BHL"). BAM's use of BHL's wallet software was a significant factor in the SEC's request for a temporary restraining order at the outset of this case, and the SEC has repeatedly pointed to BAM's use of BHL's wallet software as a basis to continue seeking extensive discovery from BAM, pursuant to the Consent Order. Shortly following the entry of the Consent Order, BAM created new cold wallets using BHL's wallet software, as well as New Private and Administrative Keys for those wallets, and BAM transferred Customer Assets to those wallets.

11. BAM plans to transition from BHL's wallet software to wallet software provided by a non-affiliated third-party custodian or custodians located in the United States ("Third-Party Custodian"). Although BAM believes such a transition is contemplated by the Consent Order, after conferring with the SEC, BAM is seeking relief from the Consent Order out of an abundance of caution.

12. In particular, BAM seeks authorization to custody assets with and transfer assets to wallets provided by a Third-Party Custodian provided that: (i) the control of Customer Assets in wallets provided by the Third-Party Custodian, including the New Private and Administrative Keys for those wallets, are maintained and directed solely by BAM Trading officers and employees located in the United States or by the Third-Party Custodian; (ii) if BAM Trading holds the New Private and Administrative Keys for wallets provided by the Third-Party Custodian, custody and control of these keys is held in the United States by BAM Trading personnel located in the United States; (iii) all transfers and withdrawals require the approval of both BAM Trading and, as necessary, the Third-Party Custodian; and (iv) the Binance Entities will not have possession, custody, or control of any assets in wallets provided by a Third-Party Custodian. *See* Consent Order § II.7 (including identical provisions for the custody of BAM's Staking Assets with BitGo or Aegis).

13. BAM has engaged one Third-Party Custodian to provide BAM with new wallets. BAM conducted substantial diligence on that Third-Party Custodian and determined that it is not a Binance Entity. BAM has shared the name of that custodian with the SEC, as well as its plan for transitioning certain assets to that Third-Party Custodian. During the pendency of the Consent Order, BAM agrees to provide the SEC with the names of any additional Third-Party Custodians

that BAM engages for the provision of wallet software and to conduct similar diligence on any additional Third-Party Custodians.

## ARGUMENT

14. Section IX of the Consent Order provides that "[t]he stipulating parties retain the right to seek additional relief, or relief from this Consent Order, as available under the Federal Rules of Civil Procedure and applicable law." The Court also has the inherent power to modify the Consent Order. *See Dietz v. Bouldin*, 579 U.S. 40, 46-47 (2016) ("[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case"); *United States v. DaSilva*, No. 1:21-CR-00564 (CJN), 2024 WL 519909, at *3 (D.D.C. Feb. 8, 2024) ("[A]s long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.") (cleaned up).

15. BAM respectfully submits that the Court should authorize BAM to invest its assets and use Third-Party Custodians as outlined in this memorandum.

16. *First*, any fees or costs arising from BAM's engagement of a third-party investment advisor qualify as a reasonable and necessary operating expense under the Consent Order. *See* § II.3  Because none of the third-party investment advisors are "Binance Entities," the provisions of the Consent Order concerning transfers to Binance Entities are not implicated by such investments. Likewise, BAM's proposed investments in and loans to businesses will not involve Binance Entities. However, out of an abundance of caution, BAM seeks relief from the Court to engage non-Binance Entity, third-party investment advisors and to invest in other businesses as part of its ordinary course investment strategy related to BAM's corporate assets.

17. Likewise, any fees and costs arising from BAM's investment of customer fiat in United States Treasury bills would qualify as a reasonable and necessary operating expense under the Consent Order.  *Id.*  Because BAM would purchase Treasury bills directly from the United States government without the involvement of a Binance Entity, the Consent Order is not implicated.  Moreover, investments of customer funds in secure investment vehicles like United States Treasury bills are consistent with financial industry standards.

18. *Second*, the Consent Order expressly contemplates that BAM will move to using a Third-Party Custodian to custody its assets, which would address the SEC's concerns about BAM's use of BHL's wallet software.  Moreover, BAM's proposed guidelines for using a Third-Party Custodian are identical to those for other Third-Party Custodians that are already authorized to custody BAM's Staking Assets.

19. For the reasons described above, it would be consonant with justice for the Court to exercise its inherent power to grant the relief requested in this motion.  BAM's requested relief from the Consent Order is also narrowly tailored to address significant impediments to BAM's ordinary business operations and to address the SEC's concerns about BAM's use of BHL's wallet software.

**CONCLUSION**

For the reasons set forth above, BAM respectfully requests that the Court enter the proposed order attached hereto.

Dated: July 17, 2024

Respectfully submitted,

/s/ Daniel J. Davis
Daniel J. Davis (D.C. Bar #484717) (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave NW
Washington DC 20006
daniel.davis@katten.com

Christian T. Kemnitz (*pro hac vice*)
Levi Giovanetto (D.C. Bar #1001160) (*pro hac vice*)
David Luger (*pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
christian.kemnitz@katten.com
levi.giovanetto@katten.com
david.luger@katten.com

*Attorneys for Defendants BAM Trading Services Inc. and BAM Management US Holdings Inc.*

/s/ Matthew J. Laroche
George S. Canellos (*pro hac vice*)
Matthew J. Laroche (*pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
GCanellos@milbank.com
MLaroche@milbank.com

*Attorneys for Defendants BAM Trading Services Inc. and BAM Management US Holdings Inc.*