UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 23-1599-ABJ-ZMF |
| BINANCE HOLDINGS LIMITED, *et al.*, | ) ) ) |  |
| Defendants. | ) ) |  |

**ORDER**

According to the Joint Rule 26(f) Report [Dkt. # 278], the parties are agreed that they may conduct fact discovery on all of the claims in the original complaint that are proceeding pursuant to the Court's June 28, 2024 Memorandum Opinion and Order ("Mem. Op.") [Dkt. #248]. *See* Pls.' Proposed Scheduling Order [Dkt. # 278-1] and Defs.' Proposed Scheduling Order [Dkt. # 278-2]. However, since the parties appear to be unable to read the same language the same way, the Court will reiterate what it decided and, importantly, what it did not decide, in June.

The claims that are proceeding pursuant to the Court's June 28, 2024 opinion are: the portions of Count One against Binance relating to the initial coin offering ("ICO") of BNB and Binance's ongoing sales of BNB after the ICO; the claim against Binance in Count Three regarding BNB Vault; the claim in Count Four that BAM Trading offered and sold its Staking Program as an investment contract; the claims that Binance (Counts Five, Six, Seven, Eight, and Ten) and BAM Trading (Counts Eight, Nine, and Ten) failed to register under the Exchange Act; Counts Eleven and Twelve: the claims in Counts Eleven and Twelve against defendant Zhao as a control person over Binance and BAM Trading for their alleged violations of the Exchange Act; and the claim in Count Thirteen that BAM Management and BAM Trading violated the anti-fraud provisions of the Securities Act. *See* Mem. Op. at 89.

This means that the Court did not authorize other claims to proceed at that time, and the parties may NOT embark on fact discovery with respect to: the allegations in Count One concerning secondary sales of BNB by sellers other than Binance, *see* Mem. Op. at 37–44;

Count Two, concerning BUSD; Count Three insofar as it concerns Binance's Simple Earn Program; the allegations in paragraphs 306 and 310 that Binance "offered and sold BNB to its employees . . . by offering to pay salaries in the form of BNB," and allegations concerning Binance's Employee Stock Token Options Plan, *see* Mem. Op. at 35, n.11 ("Since the complaint does not have an independent claim alleging that the offer to employees was an 'investment contract,' and the SEC appears to be highlighting the statements about compensation and the stock option plans to advance its claim that after the ICO, Binance continued to market BNB to the public as an investment contract, the Court does not find it necessary to determine at this time whether the SEC has shown that the offer to pay employees BNB itself includes all of the elements of an investment contract . . . ."); or the allegations in Section VIII of the Complaint, Compl. ¶¶ 352–509, concerning at least ten other crypto assets.  *See* Mem. Op. at 57 ("Since no party has challenged the sufficiency of these allegations, or relied on these allegations to attack or sustain the sufficiency of any count, the Court need not address their merits at this time.  Indeed, it would be highly irregular to do so, since the issuers are not parties to this action and have not had an opportunity to weigh in on the claims that the offerings satisfy the requirements of an "investment contract" or security; the parties have not submitted memoranda measuring the allegations against the *Howey* framework; and the SEC has not yet specified which crypto assets should be brought under the umbrella of this case or why.").[1]

As the Scheduling Order, to be docketed separately, will provide, once it has become clear whether additional claims set forth in the proposed amended complaint will be proceeding as well, the scope of this discovery order can be expanded.

---

1   Defendants assert that "the Court clearly did not sustain any claims concerning these tokens," Joint Report at 4, when the more accurate characterization would be that it "clearly" did not address them at all.  The SEC maintains that "[t]here is no reason to further delay any discovery on claims that have not been specifically dismissed by the MTD order," but "not specifically dismissed" is not the same thing as "proceeding pursuant to" the Memorandum Opinion.  It was a waste of the Court's time and resources to be forced to parse this sort of lawyer-like posturing in order to complete the ordinary exercise of establishing a discovery schedule.  The Joint Report could easily have taken up less than seventeen pages; the parties were invited to set out their individual positions if they did not agree, but there was no reason for each party to also recite what the other side's position "appears to be."

Finally, the Court notes that the SEC proposed discovery management provisions to be included in the Scheduling Order, and those authorize the parties to submit ten page briefs under a set timetable in the event of any dispute. But the August 13, 2024 Interim Scheduling Order and Referral to a Magistrate Judge [Dkt. # 254] already entered in this case specifically provides:

> Counsel are required to confer in good faith in an effort to resolve all discovery disputes before bringing any dispute to the Court. Pursuant to Local Civil Rule 72.2, the Court hereby refers the oversight of discovery and resolution of discovery disputes to Magistrate Judge Zia M. Faruqui. **The Magistrate Judge may, in his discretion, establish procedures or prerequisites for the filing of discovery motions, such as the requirement of a telephone conference.**

Interim Scheduling Order at 2 (emphasis added). The Scheduling Order will repeat that language and the parties must submit any proposals for how to resolve discovery disputes directly to the Magistrate Judge.

SO ORDERED.

AMY BERMAN JACKSON
United States District Judge

DATE: October 17, 2024